IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| STEVEN HOTZE, M.D., WENDELL CHAMPION, HON. STEVE TOTH, AND SHARON HEMPHILL, <br><br> Plaintiffs, <br><br> v. <br><br> CHRIS HOLLINS, in his official capacity as Harris County Clerk, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |  Civil Action <br><br> No. |

**COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF**

Plaintiffs STEVEN HOTZE, M.D., WENDELL CHAMPION, HON. STEVE TOTH and SHARON HEMPHILL, seek emergency and permanent injunctive relief against Defendant CHRIS HOLLINS, in his official capacity as Harris County Clerk, as follows:

**NATURE OF THE ACTION**

1. By indiscriminately encouraging and allowing any and all Harris County registered voters to cast their ballots via curbside drive-thru voting, Defendant is violating both federal and state law, and Plaintiffs will suffer irreparable injury if such ultra vires action is not stopped. By circumventing the Texas Legislature and implementing a manner of voting not recognized under the Texas Election Code, Defendant is violating Article I, section IV, clause 1 of the United States Constitution. Additionally, by adopting a manner of voting that is inconsistent with the T33exas Election Code, and upon information and belief not adopted by any other county in Texas, Defendant is violating the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

2. Plaintiffs seek declaratory relief to prevent Defendant from continuing these violations.

## THE PARTIES.

3. Plaintiff Steven F. Hotze, MD, is a registered voter in Harris County and will be voting in the general election.

4. Plaintiff Hon. Steve Toth is a member of the Texas House of Representatives, representing District 15. Representative Toth is on the November 3, 2020 ballot.

5. Plaintiff Wendell Champion is .the Republican nominee for Texas' 18th Congressional District, Texas. He is on the ballot in the general election on November 3, 2020.

6. Plaintiff Sharon Hemphill is a registered voter in Harris County. Sharon Hemphill is the Republican nominee for judge of the Texas 80th District Court, Harris County, Texas. She is on the ballot in the general election on November 3, 2020. She advanced from the Republican primary on March 3, 2020.

7. Defendant Hon. Chris Hollins is Harris County Clerk Harris County Clerk, and is sued here in his official capacity only.

## JURISDICTION

8. This Court has original jurisdiction under 28 U.S.C. § 1331 as this is a civil action arising under the Constitution, laws, or treaties of the United States. Specifically, this case involves application of: 1) Article I, section IV, clause 1 of the United States Constitution, and 2) the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

**VENUE**

9. Venue is proper in this district under 28 U.S.C. § 1391(e) because Plaintiff Hotze resides here and Defendant works here.

**STANDING**

10. Defendant Hollins' non-compliance with the law is significantly harming the interests of Plaintiffs herein. Plaintiffs, absent relief, will imminently suffer specific and substantial injuries in fact to a legally protected interest; such injuries are directly traceable to the defendant's challenged action herein; and a favorable judgment by this Court will likely redress such injuries.

11. Plaintiff Hotze has standing because he is threatened with a violation of his right to vote. Allowing an illegal voting scheme that invites corruption and fraud is tantamount to voter suppression because legal votes will be nullified by illegal votes.

12. Plaintiff Champion is the Republican nominee for the 18th District, Harris County, Texas. Hollins's illegal vote scheme results in votes being illegally cast in his race for the United States Congress.

13. Plaintiff Hemphill is also on the November 3, 2020 general election ballot in Harris County, Texas. Hollins's illegal vote scheme results in votes being illegally cast in her race for the 80th Judicial District Court.

14. Representative Steve Toth is a member of the Texas Legislature and is also on the November 3, 2020 general election ballot. As a member of the State Legislature, Hollins's is usurping his authority as a lawmaker by creating a voting scheme that was not adopted by the Texas Legislature.

15. "Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections." *Reynolds v. Sims*, 377 U.S. 533, 554 (1964). This right "can neither be denied outright. . . nor destroyed by alteration of ballots. . . nor diluted by ballot-box stuffing." *Id*. "The right to vote is 'individual and personal in nature,' and 'voters who allege facts showing disadvantage to themselves as individuals have standing to sue' to remedy that disadvantage." *Gill v. Whitford*, 138 S. Ct. 1916, 1920 (2018) (quoting *Reynolds*, 377 U.S. at 561 and *Baker v. Carr*, 369 U.S. 186, 206 (1962)). Plaintiffs object to the casting and to the counting of any ineligible or illegal curbside voting as the consequence of permitting such activity hurts not only the integrity and the reported outcomes of the election for all of the candidates and all of the voters who voted, but it could also dilute or otherwise diminish and cancel Plaintiffs' casting of a legal vote for the candidates of their choice in the General Election.

**FACTUAL BACKGROUND**

A. **Defendant Hollins' Ministerial Duties Under the Texas Election Code – the Applicable Authority Pursuant to U.S. Const. art. I, § 4, cl. 1**

16. As the early voting clerk for Harris County, Defendant has the responsibility of enforcing the election laws to ensure a fair and honest election in Harris County. One of the statutory election mandates for which Defendant Hollins is responsible deals with curbside voting. This is a method of voting whereby a qualifying voter may vote from a vehicle in lieu of coming inside to vote at a polling location. In order to take advantage of curbside voting, a registered voter must prepare and sign a sworn application. The application is similar to the application for vote by mail, and a voter must affirmatively check specific boxes on the form in order to facially demonstrate to the Early Voting Clerk

4

(Defendant Hollins) compliance with the curbside voting statutes under the Texas Election Code.

17. Under Texas Election Code Sections 64.009, curbside voting is restricted to distinct categories: (i) the voter is sick at the time of the vote; (ii) the voter has a physical condition requiring personal assistance (e.g., is physically handicapped); or (iii) voting inside the polling location would create a likelihood of injuring the voter's health. Tex. Elec. Code §§ 64.009, 82.02 and 104.001-005.

18. The pertinent statutes for curbside voting are as follows:

Section 64.009.  VOTER UNABLE TO ENTER POLLING PLACE.

(a) If a voter is physically unable to enter the polling place without personal assistance or likelihood of injuring the voter's health, on the voter's request, an election officer shall deliver a ballot to the voter at the polling place entrance or curb.
(b) The regular voting procedures may be modified by the election officer to the extent necessary to conduct voting under this section.
(c) After the voter is accepted for voting, the voter shall mark the ballot and give it to the election officer who shall deposit it in the ballot box.
(d) On the voter's request, a person accompanying the voter shall be permitted to select the voter's ballot and deposit the ballot in the ballot box.

Sec. 82.002.   DISABILITY.

(a) A qualified voter is eligible for early voting by mail if the voter has a sickness or physical condition that prevents the voter from appearing at the polling place on election day without a likelihood of needing personal assistance or of injuring the voter's health.

TITLE 7.  EARLY VOTING
SUBTITLE B.  SPECIAL FORMS OF EARLY VOTING
CHAPTER 104.  VOTING ON ELECTION DAY BY DISABLED VOTER FROM VOTING SYSTEM PRECINCT

Sec. 104.001.  ELIGIBILITY.

A qualified voter in whose precinct polling place voting is conducted by voting machine is eligible to vote by the early voting procedure provided by this chapter if the voter has a sickness or physical condition that prevents

the voter from voting in the regular manner without personal assistance or likelihood of injuring the voter's health.

Sec. 104.002.   FORM AND CONTENTS OF APPLICATION.

An application for a ballot voted under this chapter must:
(1)     be in the form of an affidavit; and
(2)     include, in addition to the information required by the applicable provisions of Section 84.002, a statement that the applicant has not previously voted in the election.

Sec. 104.003.   TIME AND PLACE FOR VOTING.

Voting under this chapter shall be conducted on election day, beginning at 7 a.m. and concluding at 7 p.m., at the main early voting polling place. However, if the early voting ballots voted by mail are processed at a location other than the main early voting polling place, the early voting clerk may require the voting to be conducted at that location.

Sec. 104.004.   VOTING PROCEDURE.

(a) On submission of an application to the early voting clerk, the clerk shall review the application and verify the applicant's registration status in accordance with the procedure applicable to early voting by mail.
(b) The voting shall be conducted with the balloting materials for early voting by mail.
(c) The voter must mark and seal the ballot in the same manner as if voting by mail except that the certificate on the carrier envelope need not be completed.
(d) On sealing the carrier envelope, the voter must give it to the clerk, who shall note on the envelope that the ballot is voted under this chapter.
(e) If the voter is physically unable to enter the early voting polling place without personal assistance or a likelihood of injuring the voter's health, the clerk shall deliver the balloting materials to the voter at the polling place entrance or curb.

Sec. 104.005.   PROCESSING RESULTS.

The results of voting under this chapter shall be processed in accordance with the procedures applicable to processing early voting ballots voted by mail.

19.     Despite the fact that the Texas Election Code restricts curbside voting to specific and narrowly defined categories of voters, Defendant – using the COVID-19

6

pandemic as his pretext – is permitting any and all Harris County registered voters to vote curbside or drive-thru and vote in violation of the Texas Election Code, which is the applicable authority pursuant to U.S. Const. art. I, § 4, cl. 1.

B. **Defendant Hollins Is Permitting Countywide Drive-Thru Voting in Direct Violation of the Texas Election Code**

20.   Defendant Hollins has implemented a countywide "drive-thru" voting program for every registered voter in Harris County. A true and correct transcription of the pertinent excerpt from a press conference in which Defendant Hollins identifies the program is attached to this Complaint. (Exhibit "A" at 5-6) Beginning at the 4-minute mark, and continuing on to 4:33, Defendant Hollins says the following:

> "Drive-thru voting is an option for all voters who would like to be able to vote from the safety and comfort of your vehicle. Drive-thru voting allows those who don't qualify to vote by mail to minimize your exposure to other voters and to election workers. While we hope to have short lines across the county, drive-thru voters waiting in line will be able to wait in the comfort of your vehicle where you can listen to the radio or converse with loved ones until you are pointed to your drive-thru voting booth. We hope that Harris County voters will consider utilizing drive-thru voting."

(Exhibit "A" at 5-6) Hollins' position is that anyone and everyone may vote curbside/drive-thru in Harris County should they wish to do so.

21.   Because Defendant Hollins is allowing Harris County Registered voters to vote curbside (drive-thru) without regard to whether they are eligible to vote curbside, and because of the very clear threat of imminent harm which will result from ineligible curbside voting taking place in violation of the Texas Election Code and the United States Constitution, Plaintiffs bring this Complaint and Emergency Motion for Temporary Restraining Order and Preliminary Injunction and request for a Permanent Injunction to mandate compliance by the Defendant with his clear and non-discretionary ministerial

duties and to prevent further violations of the United States Constitution and the Texas Election Code.

### C. Hollins Attempts to Redefine Polling Location

22. Under Defendant Hollins's drive-thru voting scheme, a car is turned into a polling location. Specifically, to drive-thru vote, the voter never exits the vehicle. (Exhibit "B") Instead, the voters sit in their cars as the e-slate is hand delivered to the voters who then cast their votes within the confines of their vehicles. It should be noted that many times these votes are cast by numerous people in one car, eliminating the confidentiality surrounding one's vote. The garages, tents, canopies, and other "coverings" the car drives into are not the actual polling location – the polling place is the car. The e-slate is physically placed in the car; the vote is cast in the car; and the voter remains in the car. (Exhibit "B") The voter never physically exits the car. (Exhibit "B"). A car is not a polling place. If a car is a polling place, Harris County now has millions of voting locations around the county that change locations throughout the day. Attached, as Exhibit "B", are photos of voters utilizing drive-thru voting.

23. The Texas Election Code mandates that a registered voter cast a ballot in a "voting station" at a "polling place." *See* TEX. ELEC. CODE §§ 64.001, .009(a). Qualified individuals may request their ballot curbside in a vehicle on election day and throughout the early voting period. *Id*. § 64.009(a). This exception applies only to those physically unable to enter the polling place without assistance or for whom a likelihood of injury exists. *Id*.; see also *In re State*, 602 S.W.3d 549, 550 (Tex. 2020) (a voter's general fear or lack of immunity from COVID-19 is not a "disability" as defined by the Election Code). Otherwise, voting is to take place in a "polling place." TEX. ELEC. CODE § 64.009(a). A

8

person's vehicle cannot qualify as a "polling place," as it is not a structure as commonly understood. Nor can one's vehicle be considered a "voting station," which is a specific location designated for voters to cast a ballot. Hollins's actions could only be justifiable under the applicable law if one arrives at the absurd conclusion that every voter's vehicle is a "polling place" or "voting station."

### D. Texas Attorney General Recently Addressed Drive-Thru Voting

24. On October 16, 2020, Attorney General Ken Paxton addressed the issue of "drive-thru" voting. (Exhibit "C") In the letter, General Paxton states, among other things, that the Texas Election Code "makes no provision for 'drive-thru' voting centers at which any voter may cast a ballot from his or her vehicle." (Exhibit "C")

### E. Over 100,000 Illegal Drive-Thru Votes Have Been Cast

25. Harris County accounts for nearly 15 percent of all registered voters in Texas. To date, over 100,000 "drive-thru" votes have been cast. (Exhibit "B" and "D")

### COUNT I
### (Under 42 U.S.C. § 1983 for Violation of U.S. Const. Art. I, Sec. IV, cl. 1)

26. Plaintiffs incorporate herein all of the foregoing allegations.

### Defendant Hollins is Violating the United States Constitution

27. Defendant Hollins's drive-thru voting scheme violates Article I, section IV, clause 1 of the United States Constitution in that Hollins redefines the manner of conducting elections in Harris County contrary to the Texas Election Code. Additionally, Hollins violates the Fourteenth Amendment's Equal Protection Clause by adopting a manner of voting in Harris County that has not been adopted by other Texas' counties.

### The Election Clause Requires this Court to Uphold the Manner of Voting Defined by the Legislature in the Texas Election Code

28. Art. I, section 4, cl. 1 of the United States Constitution (the Elections Clause) directs that "[t]he Times, Places, and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof," subject to the directives of Congress. U.S. Const. art. I, § 4, cl. 1.

29. Because federal offices "arise from the Constitution itself," any "state authority to regulate election to those offices . . . had to be delegated to, rather than reserved by, the States." *Cook v. Gralike*, 531 U.S. 510, 522 (2001). The Constitution effected such delegations to State Legislatures through the Electors and Elections Clauses. See U.S. Const. art. II, § 1, cl. 2; id. art. I, § 4, cl. 1. The Elections Clause vests State Legislatures, subject to Congress' enactments, with authority "to provide a complete code for congressional elections." *Smiley v. Holm*, 285 U.S. 355, 366 (1932); see also *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 826 (2015) (Roberts, C.J., dissenting) (noting that the Elections Clause "imposes a duty on States and assigns that duty to a particular state actor"). This "broad power to prescribe the procedural mechanisms for holding congressional elections," *Cook v. Granlike*, 531 U.S. 510, 523 (2001) (internal quotation marks omitted), includes authority to enact "the numerous requirements as to the procedure and safeguards which experience shows are necessary in order to enforce the fundamental right involved," *Smiley*, 285 U.S. at 366; *Cook*, 531 U.S. at 523–24; see also *Storer v. Brown*, 415 U.S. 724, 730 (1974) (stating that state legislatures may enact election laws in order to ensure that elections are "fair and honest" and that "some sort of order, rather than chaos, is to accompany the democratic process"). This sweeping grant of authority means that "the text of [state] election law itself, and not just its interpretation by the courts of the States, takes on independent significance," *Bush v.*

*Gore*, 531 U.S. 98, 112–13 (2000) (Rehnquist, C.J., concurring), and the federal Constitution "operate[s] as a limitation upon the State in respect of any attempt to circumscribe the [delegated] legislative power," *Palm Beach Cnty.*, 531 U.S. at 76; *McPherson*, 146 U.S. at 25. The United States Supreme Court has made it clear that "[a] significant departure from the legislative scheme for electing U.S. Representatives— including when such departure is carried out by the state judiciary—thus presents a federal constitutional question." *Bush*, 531 U.S. at 113 (Rehnquist, C.J., concurring); see also *Palm Beach Cnty.*, 531 U.S. at 76; *McPherson*, 146 U.S. at 25.

30. Here, the Texas Legislature has created a detailed statutory scheme related to curb-side voting to govern the conduct of federal elections. Defendant Hollins has significantly departed from the legislative scheme regarding curb-side voting. By allowing Hollins to significantly alter the manner of voting that has not been prescribed by the Legislature, Hollins' drive-thru voting scheme violates the United States Constitution art. I, §4, cl. 1. Plaintiffs request this Court to stop Hollins from essentially rewriting an integral part of the Texas Election Code's comprehensive scheme for regulating the manner for conducting federal elections.

### **Hollins's Actions are Violative of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution**

31. The Fourteenth Amendment to the United States Constitution provides that "No State shall...deny to any person…, the equal protection of the laws." U.S. CONST. amend. XIV, § 1. Harris County is the only Texas County that has adopted drive-thru voting. By using different criteria for voting and allowing a new form of voting to occur in only in Harris County, Hollins is violating the Equal Protection Clause. *Bush v. Gore*, 31 U.S. 98 (2000). Hollins violates the equal protection clause in that Harris County,

unlike other counties, surrenders the safeguards associated with curb-side voting while other counties maintain the integrity of the ballot box by complying with the strict requirements imposed by the Texas Legislature in §§ 64.009, 82.02, and 104.001-104.005 of the Texas Election Code.

32.     The Supreme Court's per curiam majority opinion in *Bush v. Gore* eviscerated the distinction between nuts-and-bolts questions and big picture questions by holding that Florida law, at least as construed by the Florida Supreme Court, violated the Equal Protection Clause of the Fourteenth Amendment. 531 U.S. 98 (2000). The Court held that a state violates equal protection when it fails to have uniform standards for the recounting of votes during a statewide election contest. *Id*. at 109. The opinion makes it clear that disparity regarding the means of voting is a justiciable question. Here, Hollins has implemented a form of voting that is unique to Harris County and differs from the remaining 253 counties in the state of Texas.

### **Defendant Hollins Has a Ministerial Duty to Review Each Sworn Application in Order to Verify that the Applicant Has Supplied All of the Required Information to Permit Curbside Voting.**

33.     Because Section 64.009 of the Texas Election Code permits curbside voting under limited circumstances during Early Voting, Defendant Hollins' duties as the Early Voting Clerk include the enforcement of curbside voting during Early Voting. In order to enable an eligible voter to legally vote curbside, the registered voter must submit a sworn application for ballot similar to the application for a ballot by mail described in Section 84.001 (Eligible voter must make an application for an early voting ballot to be voted by mail).

34. The duty to review each application is not discretionary; it is mandatory. *In re Robinson*, 175 S.W.3d 824, 830 (Tex. App. 2005) ("The use of the word shall in a statute is generally construed as creating a nondiscretionary duty."). This duty includes the specific obligation to ensure that each sworn application satisfies the criteria set forth in the Texas Election Code to permit a specific voter to vote curbside during both Early Voting and Election Day voting.

### Defendant Hollins Has a Ministerial Duty to Reject an Application for Curbside Voting That does not Contain the Required Information to Permit Curbside Voting.

35. Under Texas Election Code Sections 64.009, 82.02, and 104.001, curbside voting is restricted to three distinct categories: (i) a voter is presently sick at the time of the vote; (ii) a voter has a physical condition requiring personal assistance (e.g., is physically handicapped); or (iii) voting inside the polling location would create a likelihood of injuring the voter's health. Defendant Hollins, however, has announced his policy to permit ***any registered Harris County voter*** to cast their ballot via drive-thru voting. This illegal policy, which is grounded on the dubious notion that a lack of immunity from COVID-19 justifies a wholesale repudiation of the Texas Election Code, ***has already been expressly rejected by the Texas Supreme Court***. *In re State of Texas*, 602 S.W.3d 549 (Tex. 2020). Rejecting Defendant Hollins' argument in that case that a voter's lack of immunity from the disease and concern about contracting it a polling place justifies a voter's choice to case a ballot by mail, the Supreme Court made clear that a generalized fear of contracting a virus would not, standing alone, be sufficient to trigger a statutory right to vote by mail.

36. The Court's reasoning in *In re State of Texas*, 602 S.W.3d 549 (Tex. 2020), applies Defendant's allowing curbside voting for anyone who wants to vote curbside. The

"disability" language contained in Section 82.002(a) regarding ballots by mail tracks the same language as is contained in Sections 64, 82, and 104 regarding curbside voting. Under Texas Election Code Sections 64.009, 82.02, and 104.001, curbside voting is restricted to three distinct categories: (i) a voter is presently sick at the time of the vote; (ii) a voter has a physical condition requiring personal assistance (e.g., is physically handicapped); or (iii) voting inside the polling location would create a likelihood of injuring the voter's health. It is abundantly clear that Defendant Hollins may not, consistent with his ministerial duties to comply with the Texas Election Code, permit registered Harris County voters to engage in drive-thru voting who do not satisfy one or more of the statutorily prescribed exceptions to voting inside the polling place.

37. The obligation to reject insufficient applications to vote curbside is not discretionary; it is mandatory. *See In re Robinson*, 175 S.W.3d at 830. The duty to challenge ineligible curbside voting is not discretionary; it is mandatory. *Id*. By failing to reject insufficient applications to vote curbside, Defendant Hollins is clearly violating the Texas Elections Code, and as such, Defendant is also violating Art. I, §4, cl. 1 of the United States Constitution (the Elections Clause).

**Defendant Hollins is Permitting Curbside Voting to Voters Not Entitled to Vote Curbside in Breach of His Ministerial Duties under the Texas Election Code.**

38. Hollins is allowing curbside/drive-thru voting for all 2.37 million registered voters in Harris County. This is a clear and direct violation of his duties to enforce the Texas Election Code and the United States Constitution. Defendant Hollins has a non-discretionary, ministerial duty to limit curbside voting solely to those registered voters who submit facially valid sworn applications to vote curbside. All other requests to vote

curbside must be denied. "Failure to perform his duty subjects [Defendant Hollins] to mandamus." *Bejarano v. Hunter*, 899 S.W.2d 346, 350 (Tex. App. 1995). Absent an order compelling Defendant Hollins to comply with his ministerial duties under the Texas Election Code, ineligible applicants and/or facially invalid sworn applications will be approved.

### **The Texas Legislature has Rejected "Drive-Thru" Voting**

39. Legislators have previously attempted to amend the Texas Election Code to allow a form of Defendant Hollins's "drive-thru" voting scheme. During the 2019 legislative session, legislation was proposed to allow polling places to accommodate parents with young children, HB 2898. (Exhibit "E") Because Texas law required curbside voting for people with disabilities, HB 2898 left it up to local election officials to decide whether to offer curbside voting for parents with young children. (Exhibit "E") The bill also created a study to be performed by the Texas Secretary of State's office that would evaluate the best practices for curbside voting for people with children and report it to the legislature by December 2020. (Exhibit "E") The Texas House approved the bill that supporters believed would increase voter turnout by allowing parents with children younger than five (5) years old to participate in curbside voting. The argument is similar to that made by Defendant Hollins as a justification for his drive-thru voting scheme. On May 8, 2019, the House gave the bill final approval in a 90-52 vote; however, the Texas Senate did not pass the bill.

40. Here, Hollins is asking this Court to implement a form of curbside/drive-thru voting that is much broader than one previously rejected by the Legislature. Defendant Hollins's drive-thru voting scheme is unconstitutional under Art. I, §4, cl. 1 because it is

violative of the very authority delegated by the U.S. Constitution for "[t]he Times, Places, and Manner of holding Elections for Senators and Representatives" - namely "each State by the Legislature thereof." U.S. Const., Art. I, §4, cl. 1.

### Drive-Thru Voting Locations Placed in Democratic Strongholds

41. Nine of the ten "drive-thru" voting locations in Harris County are placed in areas that vote heavily Democratic. (Exhibit "B") State Sen. Paul Bettencourt (R-Houston) recently noted nine of the 10 drive-thru voting locations are in Democrat areas of the county, adding that "nothing in the Texas election code allows Mr. Hollins to do this setup." Erin Anderson, *Texas AG: Legal Action for Unlawful Drive-Thru Voting*, Texas Scorecard, October 20, 2020. In addition to violating the Texas Election Code and Art. I, §4, cl. 1 of the U.S. Constitution, such action also constitutes a violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

42. Plaintiffs seek relief under 42 U.S.C. § 1983.

43. Plaintiffs request under Rule 65 of the Federal Rules of Civil Procedure, and request this Court enter an Emergency Temporary Restraining Order or Preliminary Injunction enjoining Defendant from allowing drive-thru voting to continue and requiring Defendant to secure all memory cards from the ten (10) drive-thru voting locations and not enter or download the memory cards from the ten (10) drive-thru locations into the Tally machine until this Court issues an order on this Complaint and Plaintiffs request for a permanent injunction. Irreparable injury to Plaintiffs will result if such relief is not granted because if action is not taken to differentiate the votes that have been submitted in violation of federal and state law from the votes that have been cast legally, then such votes

will be commingled and tabulated alongside all other votes. Such a result will call into question the integrity and legality of a federal election.

44. Plaintiffs' request the Court to issue a permanent injunction directed to Defendant Hollins and to the Harris County Clerk's Office: 1) prohibiting the implementation of a universal drive-thru voting scheme unless such scheme is specifically adopted by the Texas Legislature; and 2) ordering Defendant to comply with his ministerial duties under the Texas Election Code.

45. Plaintiffs also seek an award of attorneys' fees under 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Plaintiffs request that the Court:

1) Grant a preliminary mandatory injunction to Defendant Hollins and the Harris County Clerk's Office requiring all memory cards from the ten (10) drive-thru voting locations be secured and not entered or downloaded into the Tally machine until this Court issues an order on this Complaint.

2) Reject any votes it finds were cast in violation of the Texas Election Code.

3) Order Defendant Hollins and the Harris County Clerk's Office to review all curbside voting applications submitted by a person requesting to vote curbside during either Early Voting or Election Day Voting in Harris County for facial compliance with Texas Election Code sections 64.009, 82.002, and 1104.001-104.005, as required by the Texas Election Code Sections 83.002 and 014.001;4.

4) Reject all curbside voting applications submitted by any person requesting to vote curbside during either Early Voting or Election Day Voting in Harris County which

lack facial compliance with Texas Election Code Sections 64.009, 82.002, and 104.001-104.005, as required by the Texas Election Code Sections 83.002 and 104.001;5.

5) Grant a permanent injunction against Defendant Hollins and the Harris County Clerk's Office prohibiting the implementation of a universal drive-thru voting scheme unless such scheme is specifically adopted by the Texas Legislature.

6) Grant to Plaintiffs such other and further relief for which they are entitled in the interests of justice.

Dated: October 28, 2020

Respectfully submitted,

 /s/ *Jared R. Woodfill*
JARED R. WOODFILL
State Bar No. 00788715
Woodfill Law Firm, P.C.
3 Riverway, Suite 750
Houston, Texas 77056
P:(713) 751-3080
Fax: (713) 751-3058
woodfillservice@gmail.com
*Counsel for Plaintiffs*