## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| STEVEN HOTZE, M.D.; WENDELL CHAMPION; HON. STEVE TOTH; and SHARON HEMPHILL, | |
| *Plaintiffs*, | Civil Action No. 4:20-cv-03709 |
| v. | |
| CHRIS HOLLINS, in his official capacity as Harris County Clerk, | |
| *Defendants*, | |
| and | |
| MJ FOR TEXAS; DSCC; DCCC; MARY CURRIE; CARLTON CURRIE JR.; JEKAYA SIMMONS; and DANIEL COLEMAN, | |
| *Proposed Intervenor-Defendants.* | |

## MOTION TO INTERVENE AND INCORPORATED MEMORANDUM OF LAW

### STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT

MJ for Texas, DSCC, DCCC, Mary Currie, Carlton Currie Jr., JeKaya Simmons, and Daniel Coleman (the "Proposed Intervenors") respectfully move pursuant to Federal Rule of Civil Procedure 24(a) to intervene as of right to defend this action. Alternatively, the Proposed Intervenors move for permissive intervention. *See* Fed. R. Civ. P. 24(b).

### SUMMARY OF THE ARGUMENT AND INTRODUCTION

**Proposed Intervenors should be permitted mandatory intervention.** The motion is timely; Proposed Intervenors have an interest that may be impacted by this litigation's outcome; and the existing defendant may not protect Proposed Intervenors' interests. **Alternatively,**

**Proposed Intervenors should be granted permissive intervention.** They will raise common questions of law and fact, and their motion is timely.

In this case, Plaintiffs invite this Court to overturn a judgment of the Texas Supreme Court and to consider a question of state law currently pending before the Texas Supreme Court. Worse yet, Plaintiffs ask this Court to throw Texas's election into chaos by invalidating the votes of more than 100,000 eligible Texas voters who cast their ballots at drive-thru voting locations at the invitation of county officials and in reliance on the Texas Supreme Court's decision to allow drive-thru voting to proceed. Plaintiffs' request is wholly unreasonable and should be rejected outright.

Proposed Intervenor-Defendants include the following parties. MJ for Texas is the official campaign of the Democratic nominee for U.S. Senate from Texas (the "Hegar Campaign"). DSCC is the national senatorial committee of the Democratic Party as defined by 52 U.S.C. § 30101(14), and its mission is to elect candidates of the Democratic Party to the U.S. Senate, including Ms. Hegar. DCCC is the national congressional committee of the Democratic Party as defined by 52 U.S.C. § 30101(14), and its mission is to elect candidates of the Democratic Party to the U.S. House of Representatives, including those running in Texas's 36 congressional districts. Mary Currie, Carlton Curry Jr., JeKaya Simmons, and Daniel Coleman (collectively, the "voters") are Harris County voters who have already cast their ballots using Harris County's drive-thru voting procedure. *See* Ex. 1-4.

Plaintiffs' claims pose a clear and direct threat to Proposed Intervenors' rights and legal interests. For the reasons that follow, this Court should find that the Hegar Campaign and the voters are entitled to intervene in this case as a matter of right under Rule 24(a)(2). In the alternative, they should be granted permissive intervention pursuant to Rule 24(b).

# I. BACKGROUND

**A**.     **Harris County's drive-thru voting was approved by the Texas Secretary of State and has been used by over 100,000 Texas voters.**

In June, Chris Hollins, the Harris County Clerk, announced his intention to offer drive-thru voting in the 2020 General Election. Over the course of the summer, Hollins conferred with the Texas Secretary of State and received her approval. During the July primary run-off election, Harris County conducted a pilot program with drive-thru voting, which was widely regarded as a resounding success. In August, Harris County approved funding to offer drive-thru voting in the General Election and announced its intent to do so after the Harris County Commissioners Court unanimously approved the list of early voting locations, which included drive-thru locations.

Since October 13, when early voting began in Texas, Harris County has offered voters ten drive-thru voting locations, which operate at ten existing early voting locations. The drive-thru locations follow identical procedures used at every other early voting location. The Hegar Campaign, as well as many other campaigns in Texas, have urged their supporters to use drive-thru voting to cast their ballots. To date, over 100,000 Harris County voters have cast their ballots as these drive-thru locations, including the Proposed Intervenor voters Mary Currie, Carlton Currie Jr., JeKava Simmons, and Daniel Coleman.

**B.**     **Nearly identical litigation has already been rejected by the Texas Supreme Court and identical litigation—by the same plaintiffs—is currently pending before the Texas Supreme Court.**

Just one week ago, the Texas Supreme Court rejected a mandamus petition challenging Harris County's drive-thru voting program. In that case, the relators—who included some of the plaintiffs in this suit—argued Harris County's drive-thru voting program violated Texas's Election Code and asked the Texas Supreme Court to prohibit Harris County from using the program. The Texas Supreme Court swiftly dismissed that Petition. *In re Steven Holtze, M.D., Harris Cnty.*

*Republican Party, Hon. Keith Nielsen, and Sharon Hemphill*, No. 20-0819, Order Denying Petition (Oct. 22, 2020).

Undeterred, on October 27, Steven Hotze, Wendell Champion, Representative Steve Toth, and Sharon Hemphill—the same exact individuals who would later file this suit as Plaintiffs—filed a new mandamus action in the Texas Supreme Court. *See In re Steven Holtze, M.D., Wendell Champion, Hon. Steven Toth, and Sharon Hemphill*, No. 20-0863, Petition for Writ of Mandamus (Oct. 27, 2020). In that Petition, which is currently pending before the Texas Supreme Court, the relators again challenge Harris County's drive-thru voting as unlawful under the Texas Election Code, and they assert the exact same two claims they would later raise in this suit.

Presumably assuming the Texas Supreme Court will deny their current Petition, as it did before, Plaintiffs filed this action on October 28. Because the Texas Supreme Court is the ultimate arbiter of the Texas Election Code, this federal action is an improper invitation for a federal court to weigh in on a question of state law while the same issue remains pending before the Texas Supreme Court.

## II.     ARGUMENT

### A.    The Hegar Campaign, DSCC, DCCC, and Harris County voters are entitled to intervene as of right pursuant to Rule 24(a).

Pursuant to Federal Rule of Civil Procedure 24(a), a court must permit a third party to intervene as of right in a litigation if four conditions are met:

> (1) the motion to intervene is timely; (2) the potential intervener asserts an interest that is related to the property or transaction that forms the basis of the controversy in the case into which she seeks to intervene; (3) the disposition of that case may impair or impede the potential intervener's ability to protect her interest; and (4) the existing parties do not adequately represent the potential intervener's interest.

*John Doe No. 1 v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001). "Although the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed," and "[f]ederal

courts should allow intervention when no one would be hurt and the greater justice could be attained." *Wal–Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016) (quoting *Texas v. United States*, 805 F.3d 653, 656 (5th Cir. 2015). For the reasons that follow, the Hegar Campaign and the voters satisfy each factor, entitling them to intervention as of right.

> **1.     The motion to intervene is timely.**

Proposed Intervenors sought intervention at the earliest possible stage of this action, and its intervention will neither delay the resolution of this matter nor prejudice any party. Plaintiffs filed their Complaint on October 28, 2020; this Motion follows just two days later. This case is still in its infancy—no motions have been fully briefed; no hearings have been held—and thus no party can legitimately claim that intervention by the Proposed Intervenors would cause any delay, let alone prejudicial delay. *See Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994) ("[P]rejudice must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervener to participate in the litigation."). Under these circumstances, the Court should find the Motion timely.

> **2.     The Hegar Campaign, DSCC, DCCC, and the voters have significant, protectable interests in the outcome of the litigation which may be impaired and impeded by the disposition of this action.**

The "interest test" seeks to determine whether the potential intervenor has a "'direct, substantial, [and] legally protectable' interest in the property or transaction that forms the basis of the controversy in the case into which she seeks to intervene." *John Doe No. 1*, 256 F.3d at 379 (quoting *Espy*, 18 F.3d at 1207). The Fifth Circuit has explained that "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Espy*, 18 F.3d at 1207.

The voters' interest here is simple: voters who cast ballots at drive-thru locations have a legally protectable interest in ensuring their ballots will be counted. *See, e.g.*, *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421 (5th Cir. 2011) (finding a legally-protectable interest where the intervenor sought to protect his right to vote).

Similarly, the Hegar Campaign, DSCC, and DCCC have legally protectable interests in ensuring that ballots that were cast at drive-thru voting locations are counted and that such locations remain open for voters to access, both of which are essential to the these organizations' electoral prospects. Courts have routinely concluded that interference with a political party's electoral prospects constitutes a direct injury that satisfies Article III standing, which is an even higher burden than the showing needed for intervention under Rule 24(a)(2). *See, e.g., Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586–87 (5th Cir. 2006) (recognizing "harm to [] election prospects" constitutes "a concrete and particularized injury"); *Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020) (granting intervention as of right to Nevada State Democratic Party where "Plaintiffs' success on their claims would disrupt the organizational intervenors' efforts to promote the franchise and ensure the election of Democratic Party candidates").

Moreover, the Hegar Campaign, DSCC, and DCCC have an interest in ensuring that election procedures are not changed during an election, which would require these organizations to retool campaigns and divert resources to counteract the disruptive and disenfranchising effects of Plaintiffs' action—a separate legally protected interest. *See, e.g.*, *OCA-Greater Houston v. Texas*, 867 F.3d 604, 610-12 (5th Cir. 2017) (finding standing where an organization was required to dedicate additional resources to assisting voters navigate the polls); *Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007) (finding standing because a "new law injure[d] the

Democratic Party by compelling the party to devote resources" that it would not have needed to devote absent the new law), *aff'd*, 553 U.S. 181 (2008); *Democratic Nat'l Comm. v. Reagan*, 329 F. Supp. 3d 824, 841 (D. Ariz. 2018) (finding standing where law "require[d] Democratic organizations . . . to retool their [get-out-the-vote] strategies and divert [] resources"), *rev'd on other grounds sub nom. Democratic Nat'l Comm. v. Hobbs*, 948 F.3d 989 (9th Cir. 2020) (en banc); *Issa v. Newsom*, No. 2:20-cv-01044, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020) (explaining courts "routinely" find a protectible interest where proposed intervenors will be required to "divert[] their limited resources to educate their members on the election procedures"). Accordingly, both the Hegar Campaign and the voters satisfy the interest requirement of Rule 24(a).

For the same reasons, Proposed Intervenor-Defendants have also shown they satisfy the third prong of intervention—that the "disposition of the action 'may' impair or impede their ability to protect their interests." *See Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014). The Proposed Intervenors need not show that their interests "will" be impaired by disposition of the ligation; only that they "may" be. *See id.* Indeed, "[t]he very purpose of intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions." *Id.* at 345.

There can be no doubt that disposition of this matter has the potential to impair the Hegar Campaign, DSCC, DCCC, and the voters' ability to protect their interests. This litigation's very purpose is to invalidate ballots and end what is a highly successful and popular form of voting in Harris County—a county which, notably, now has only one ballot return drop box for over two million voters. Should this litigation succeed, the voters may have little time, or no time at all, to re-cast a ballot that will be counted—if that is an option at all. Similarly, should this litigation

succeed, the Hegar Campaign, DSCC, and DCCC will be required to quickly respond to the ensuing chaos as voters frantically attempt to determine whether their ballots will be counted and how they can cast a new ballot.

### 3.    The Harris County Clerk may not adequately represent Proposed Intervenors' interests.

Finally, the Proposed Intervenors' interests may not be adequately represented by the County Defendant. The burden to satisfy this factor is "minimal." *Espy*, 18 F.3d at 1207; *John Doe I,* 256 F.3d at 380 ("The potential intervener need only show that the representation *may* be inadequate.") (internal citation and quotation omitted). The fact that Defendant is likely to oppose Plaintiffs' request for relief is not sufficient to establish that Defendant will adequately represent the Hegar Campaign, DSCC, DCCC, and the voters' interests. *See Brumfield*, 749 F.3d at 345-46. Nor does Defendant's status as a government actor establish that he will adequately represent Proposed Intervenors' interests. As the Fifth Circuit has explained, because the government is charged with "represent[ing] the broad public interest," those interests may diverge from the interests of the Hegar Campaign, DSCC, and DCCC, which are openly political. *Espy*, 18 F. 3d at 1208; *see also Clark v. Putnam Cnty.*, 168 F.3d 458, 461-62 (11th Cir. 1999) (finding county defendants did not adequately represent the interests of voters because county officials "have a duty to consider the expense of defending [the lawsuit] out of county coffers," which could lead the county defendants to take a different litigation strategy). As one court recently explained in granting intervention in a case in which a political party and government defendants both opposed a challenge to the state's election procedures:

> Although Defendants and the Proposed Intervenors fall on the same side of the dispute, Defendants' interests in the implementation of the [challenged law] differ from those of the Proposed Intervenors. While Defendants' arguments turn on their inherent authority as state executives and their responsibility to properly administer election laws, the Proposed Intervenors are concerned with ensuring their party members and the voters they represent have the opportunity to vote in the upcoming

> federal election . . . and allocating their limited resources to inform voters about the election procedures. As a result, the parties' interests are neither 'identical' nor 'the same.'

*Issa*, 2020 WL 3074351, at *3 (citation omitted). In other words, Defendant's stake in this lawsuit is defined solely by his statutory duties to conduct elections and his interest in protecting the public at large, which differ from the interests of the Hegar Campaign, DSCC, and DCCC, which are to ensure every eligible Democratic voter in Harris County has their ballot counted and to ensure the election of Democratic candidates. Defendant does not share—and should not share—an interest in seeing a particular candidate elected. For that reason, courts routinely hold that state and local election officials do not adequately represent the interests of political parties and political campaigns. *See, e.g.*, *Paher*, 2020 WL 2042365, at *3 (granting intervention as of right to intervenor political party even though the State Defendant committed to defending state's vote-by-mail plan as challenged by another political party). Similarly, particularly as it relates to Plaintiffs' equal protection claim, Harris County may not adequately represent the interests of the voter intervenors, who have an interest in ensuring their own vote is counted, whereas Harris County is charged with considering the interests of *all* of its voters. *See, e.g.*, *Brumfeld*, 749 F.3d at 346 ("We cannot say for sure that the state's [broader] interests will *in fact* result in inadequate representation, but surely they might, which is all that the rule requires."). Because the Proposed Intervenors cannot rely on Defendant to protect their distinct interests, they have satisfied the fourth requirement and are entitled to intervention as of right under Rule 24(a)(2).

## B.     In the alternative, the Proposed Intervenors should be granted permissive intervention.

Alternatively, this Court should grant Proposed Intervenor-Defendants permissive intervention under Federal Rule of Civil Procedure 24(b)(1)(B). This rule authorizes permissive intervention on a timely motion, where the applicant "has a claim or defense that shares with the

main action a common question of law or fact" and where intervention will not delay or prejudice adjudication of the existing parties' rights. Fed. R. Civ. P. 24(b)(1)(B), (b)(3); *see also United States v. League of United Latin Am. Citizens*, 793 F.2d 636, 644 (5th Cir. 1986) ("Although the court erred in granting intervention as of right, it might have granted permissive intervention under Rule 24(b) because the intervenors raise common questions of law and fact . . . .").

Proposed Intervenor-Defendants easily meet the requirements for permissive intervention. First, they will inevitably raise common questions of law and fact, including whether Harris County's drive-thru program is legal under the Texas Election Code, whether this Court should abstain from hearing this case, whether Plaintiffs have alleged viable claims, and the likely harm to voters, among other issues. Second, for the reasons set forth above, the motion to intervene is timely, and given the early stage of this litigation, intervention will not unduly delay or prejudice the adjudication of the rights of the original parties.

Rule 24 does not "require prospective intervenors to wait on the sidelines until after a court has already decided enough issues contrary to their interests." *Brumfield*, 749 F.3d at 344–45. Instead, "[t]he very purpose of intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions." *Id.* The Hegar Campaign, DSCC, DCCC and the voters have amply established the extensive harm each would be likely to suffer from an adverse judgment or ruling in this action. Thus, the Proposed Intervenors request this Court grant permissive intervention if it does not grant intervention as of right.

### III.   CONCLUSION

For the reasons stated, the Hegar Campaign, DSCC, DCCC, and the voters are entitled to intervention as of right. In the alternative, they request that the Court grant permissive intervention.

October 30, 2020

Marc E. Elias*
Daniel C. Osher*
Christina A. Ford*
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9996
melias@perkinscoie.com
dosher@perkinscoie.com
christinaford@perkinscoie.com


*Pro hac vice forthcoming

Respectfully submitted,

<u>/s/ Skyler M. Howton</u>
Skyler M. Howton
PERKINS COIE LLP
500 North Akard St., Suite 3300
Dallas, TX 75201-3347
Telephone: (214) 965-7700
Facsimile: (214) 965-7799
showton@perkinscoie.com

Matthew J. Mertens*
PERKINS COIE LLP
1120 N.W. Couch Street
Portland, O.R. 97209-4128
Telephone: (503) 727-2000
Facsimile: (503) 727-2222
mmertens@perkinscoie.com

## CERTIFICATE OF CONFERENCE

Pursuant to the Local Rules and Standing Orders and Procedures of this Court, I hereby certify that counsel for movant Intervenor-Defendants conferred with counsel for Defendant regarding this motion, and Defendant does not oppose the motion. Intervenor-Defendants' counsel, Daniel Osher, unsuccessfully attempted to contact counsel for Plaintiff, Mr. Jared R. Woodfill, by phone at 4:13 p.m., and by email at 4:28 p.m., both on October 30, 2020.

Intervenor-Defendants are aware of and wish to comply with Section 7(c)(3) of this Court's Civil Procedures, which state that the conference requirement under Local Civil Rule 7.1 will not be considered "satisfied by an unsuccessful attempt to reach opposing counsel occurring less than two full business days before a motion is filed." However, given that Plaintiffs expressly seek emergency relief in this suit, and that Election Day is just two business days from now, Intervenor-Defendants respectfully request that this Court consider their attempts to reach Plaintiffs' counsel sufficient to satisfy Local Rule 7.1.


Certified to on October 30, 2020

*/s/ Skyler M. Howton*
Skyler M. Howton


## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which automatically serves notification of the filing on counsel for all parties.

*/s/ Skyler M. Howton*
Skyler M. Howton

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

STEVEN HOTZE, M.D.; WENDELL
CHAMPION; HON. STEVE TOTH; and
SHARON HEMPHILL,

*Plaintiffs*,

v.

CHRIS HOLLINS, in his official capacity as Harris
County Clerk,

*Defendants*,

and

MJ  FOR TEXAS; DSCC; DCCC; MARY
CURRIE; CARLTON CURRIE, JR., JEKAYA
SIMMONS, and DANIEL COLEMAN,

*Proposed Intervenor-
Defendants*

Civil Action No. 4:20-cv-03709

## **DECLARATION OF CARLTON CURRIE JR.**

Pursuant to 20 U.S.C. § 1746, I, Carlton Currie Jr., declare as follows:

1.      My name is Carlton Currie Jr. I am over the age of 18, have personal knowledge of

the facts stated in this declaration, and can competently testify to their truth.

2.      I am currently a registered voter in Harris County, Texas. I try to vote in every

election. I am very active in my community and I have previously served as an election judge,

alternate judge, and clerk in many elections.

3.      On the first day of early voting in Harris County, I voted using Harris County's

drive-thru voting at the NRG Stadium. The process felt safe and secure. For example, I had to

show my ID and sign the register before I was permitted to vote.

4.      I chose to vote using drive-thru voting because I am 74 years old and concerned

about my health should I contract COVID-19. I also chose to vote using drive-thru voting because Harris County advertised it as an option for voters this year and I believed it was a good option for someone like me.

5.     I am now worried that my ballot may not be counted even though I did all my election officials asked of me.

6.     I also concerned that I may need to cast a second ballot to ensure my vote is counted. Because early voting ends today, the only way for me to do that would be to go to my polling place on Election Day. Given my age, I am concerned doing so would jeopardize my health.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: <u>October 30, 2020</u>

By: _Carlton Currie Jr._ _____

Carlton Currie Jr.

# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| STEVEN HOTZE, M.D.; WENDELL CHAMPION; HON. STEVE TOTH; and SHARON HEMPHILL, | |
| *Plaintiffs*, | Civil Action No. 4:20-cv-03709 |
| v. | |
| CHRIS HOLLINS, in his official capacity as Harris County Clerk, | |
| *Defendants*, | |
| and | |
| MJ FOR TEXAS; DSCC; DCCC; MARY CURRIE; CARLTON CURRIE, JR., JEKAYA SIMMONS, and DANIEL COLEMAN,, | |
| *Proposed Intervenor-Defendants* | |

## DECLARATION OF MARY CURRIE

Pursuant to 20 U.S.C. § 1746, I, Mary Currie, declare as follows:

1.     My name is Mary Currie. I am over the age of 18, have personal knowledge of the facts stated in this declaration, and can competently testify to their truth.

2.     I am currently a registered voter in Harris County, Texas. I try to vote in every election. I am very active in my community and I have served several times as an election clerk at precinct polling places on election day.

3.     On the first day of early voting in Harris County, I voted using Harris County's drive-thru voting at the NRG Stadium. The process felt safe and secure, and just like voting at an indoor polling place. For example, I had to show my ID and sign the register before I was permitted to vote.

4.      I chose to vote using drive-thru voting because I am 67 years old and concerned about my health should I contract COVID-19. I also chose to vote using drive-thru voting because Harris County advertised it as an option for voters this year and I believed it was a good option for someone like me.

5.      I am now concerned that I may need to cast a second ballot to ensure my vote is counted. Because early voting ends today, the only way for me to do that would be to go to my polling place on Election Day. Given my age, I am concerned doing so would jeopardize my health.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: _October 30, 2020_____

By: _Mary Currie_____
    95ED8241AD9B413...

Mary Currie

2

# Exhibit 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| STEVEN HOTZE, M.D.; WENDELL CHAMPION; HON. STEVE TOTH; and SHARON HEMPHILL, <br><br> *Plaintiffs*, <br><br> v. <br><br> CHRIS HOLLINS, in his official capacity as Harris County Clerk, <br><br> *Defendants*, <br><br> and <br><br> MJ FOR TEXAS; DSCC; DCCC; MARY CURRIE; CARLTON CURRIE; JEKAYA SIMMONS; and DANIEL COLEMAN, <br><br> *Proposed Intervenor-Defendants* | Civil Action No. 4:20-cv-03709 |

**<u>DECLARATION OF JEKAYA SIMMONS</u>**

Pursuant to 20 U.S.C. § 1746, I, JeKaya Simmons, declare as follows:

1.     My name is JeKaya Simmons. I am over the age of 18, have personal knowledge of the facts stated in this declaration, and can competently testify to their truth.

2.     I am a registered voter in Harris County.

3.     On October 14, I voted using Harris County's drive-thru voting at the Toyota Center. I had to show my ID and sign the register before I was permitted to vote.

4.     I chose to vote using drive-thru voting because Harris County advertised it as an option for voters this year and I believed it was a good option for someone like me. Because of this litigation, I am now worried that my ballot may not be counted even though I did everything the election officials asked of me.

5.      I am also seriously concerned that, if this court were to invalidate my legitimate vote, I would have to cast a new ballot to ensure my vote is counted. Because early voting ends today, the only way for me to do that would be to go to my polling place on Election Day. But the whole reason I chose to vote early was to avoid that situation. I have study obligations that would make it difficult to go to the polls and stand in line on Election Day. Moreover, I am very concerned about the risk of being infected with the coronavirus that accompanies standing in line at the polls. That was why I chose the drive-through option in the first place. If I have to go to a polling place on Tuesday to cast a new ballot, I would be forced into a position where I have to choose between my right to vote and my wellbeing.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: October 30, 2020

By: _____

JeKaya Simmons

# Exhibit 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| STEVEN HOTZE, M.D.; WENDELL CHAMPION; HON. STEVE TOTH; and SHARON HEMPHILL, <br><br> *Plaintiffs*, <br><br> v. <br><br> CHRIS HOLLINS, in his official capacity as Harris County Clerk, <br><br> *Defendants*, <br><br> and <br><br> MJ FOR TEXAS; DSCC; DCCC; MARY CURRIE; CARLTON CURRIE, JR.; JEKAYA SIMMONS; and DANIEL COLEMAN, <br><br> *Proposed Intervenor-Defendants* | Civil Action No. 4:20-cv-03709 |

**DECLARATION OF DANIEL COLEMAN**

Pursuant to 20 U.S.C. § 1746, I, Daniel Coleman, declare as follows:

1.     My name is Daniel Coleman. I am over the age of 18, have personal knowledge of the facts stated in this declaration, and can competently testify to their truth.

2.     I am currently a registered voter in Harris County, Texas. I registered to vote after becoming a citizen in 2018 and was thrilled to cast a vote in my first presidential election in the United States this year.

3.     On the first day of early voting in Harris County, I voted using Harris County's drive-thru voting at the Toyota Center. I had to show my ID and sign the register before I was permitted to vote.

4.     I chose to vote using drive-thru voting because Harris County advertised it as an

option for voters this year and I believed it was a good option for someone like me. Given this litigation, I am now seriously concerned that my ballot may not be counted even though I did everything election officials asked me to do.

5.      I am seriously concerned about the fact that if this court were to invalidate my legitimate vote, I would have to go cast a new ballot to ensure my vote is counted. Because early voting ends today, the only way for me to do so would be to go to my polling place on Election Day. The whole reason I voted early was to avoid having to go to the polls on Election Day. I have a full-time job and have to care for my 2-year-old and 4-year-old children.

6.      Since March, I have been strictly isolating from large groups of people because I have immunocompromised individuals in my "pod" and am very worried about passing the coronavirus to them. This was one of the main reasons I chose the drive-through option. Going to the polls to vote in-person on Election Day would force me to come into close contact with others and risk becoming infected, endangering my own health and the lives of others. I would be forced into a position where I would have to choose between my right to vote and the wellbeing of my family and myself.


I declare under penalty of perjury that the foregoing is true and correct.


DATED: October 30, 2020

By: _____

Daniel Coleman

- 2 -