# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| STEVEN HOTZE, M.D.; WENDELL CHAMPION; HON. STEVE TOTH; and SHARON HEMPHILL, | |
| *Plaintiffs*, | Civil Action No. 4:20-cv-03709 |
| v. | |
| CHRIS HOLLINS, in his official capacity as Harris County Clerk, | |
| *Defendants*, | |
| and | |
| MJ FOR TEXAS; DSCC; DCCC; MARY CURRIE; CARLTON CURRIE; JEKAYA SIMMONS; and DANIEL COLEMAN, | |
| *Proposed Intervenor-Defendants.* | |

**PROPOSED INTERVENOR-DEFENDANTS MJ FOR TEXAS, DSCC, DCCC, MARY CURRIE, CARLTON CURRIE, JR., JEKAYA SIMMONS, AND DANIEL COLEMAN'S [PROPOSED] OPPOSITION TO MOTION FOR EMERGENCY INJUNCTIVE RELIEF**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ................................. 1

II.    STATEMENT OF ISSUES ................................................................. 2

III.   STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ................... 2

     A.    Harris County's plans to offer drive-thru voting have been public since June. ............................................................................................ 2

     B.    Drive-thru voting is not curbside voting. ............................................. 3

     C.    The Texas Supreme Court has already rejected a request to stop drive-thru voting, and Plaintiffs' renewed state court challenge is currently pending in that court. .............................................................................. 4

IV.   ARGUMENT .................................................................................. 5

     A.    The Court should abstain in light of Plaintiffs' identical state court proceedings. ..................................................................................... 5

     B.    Plaintiffs are not entitled to a preliminary injunction. ........................... 8

          1.    Plaintiffs' claims have no likelihood of success. ...................... 8

              a.    The Court lacks subject-matter jurisdiction over Plaintiffs' claims. ........................................................ 8

              b.    Plaintiffs' Elections Clause claim is meritless. ........................... 13

              c.    Plaintiffs' equal protection claim is meritless. ........................... 15

          2.    Plaintiffs fail to show a substantial threat of irreparable injury. .............. 16

          3.    Plaintiffs fail to show that the balance of the equities is in their favor. ........................................................................... 18

          4.    An injunction does not serve the public interest. ...................... 19

V.    CONCLUSION ............................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Afr. Methodist Episcopal Church v. Lucien*,
   756 F.3d 788 (5th Cir. 2014) ......................................................5, 6

*Am. Civil Rights Union v. Martinez-Rivera*,
   166 F.Supp.3d 779 (W.D. Tex. 2015)......................................................11

*Barber v. Bryant*,
   860 F.3d 345 (5th Cir. 2017) ......................................................9

*Boire v. Pilot Freight Carriers, Inc.*,
   515 F.2d 1185 (5th Cir. 1975) ......................................................17

*Bush v. Gore*,
   531 U.S. 98 (2000)......................................................14, 15

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)......................................................8, 11

*Colorado River Water Conservation District v. United States*,
   424 U.S. 800 (1976)......................................................1, 4, 5, 6

*Corman v. Torres*,
   287 F. Supp. 3d 558 (M.D. Pa. 2018) ......................................................12, 13

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*,
   710 F.3d 579 (5th Cir. 2013) ......................................................16

*Donald J. Trump for President, Inc. v. Boockvar*,
   No. 2:20-CV-966, 2020 WL 5997680 (W.D. Pa. Oct. 10, 2020) ......................................................11, 16

*Donald J. Trump for President, Inc. v. Way*,
   No. 20-10753, 2020 WL 6204477 (D. N.J. Oct. 22, 2020) ......................................................11

*Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*,
   441 F.2d 560 (5th Cir. 1971) ......................................................2

*Galvan v. Vera*,
   No. 04-18-309-CV, 2018 WL 4096383 (Tex. Ct. App. Aug. 29, 2018) ......................................................10

*Gonannies, Inc. v. Goupair.com, Inc.*,
   464 F. Supp. 2d 603 (N.D. Tex. 2006) ......................................................17

*Griffin v. Burns*,
   570 F.2d 1065 (1st Cir. 1978)......................................................19

# TABLE OF AUTHORITIES

**Cases**                                                            **Page(s)**

*In re Hotze*,
  No. 20-0819, Order Denying Petition (Tex. Oct. 22, 2020) ................................4, 20

*Jones v. Morales*,
  318 S.W.3d 419 (Tex. Ct. App. 2010) ...........................................................8, 9, 10

*Justin Indus., Inc. v. Choctaw Sec., L.P.*,
  920 F.2d 262 (5th Cir. 1990) .....................................................................................2

*Karcher v. May*,
  484 U.S. 72 (1987)....................................................................................................12

*Kowalski v. Tesmer*,
  543 U.S. 125 (2004)..................................................................................................12

*Lance v. Coffman*,
  549 U.S. 437 (2007)..................................................................................................12

*League of United Latin Am. Citizens v. Abbott*,
  951 F.3d 311 (5th Cir. 2020) ...................................................................................15

*Mi Familia Vota v. Abbott*,
  No. 20-50793, 2020 WL 6058290 (5th Cir. Oct. 14, 2020) .....................................20

*Mi Familia Vota v. Abbott*,
  No. SA-20-CV-00830-JKP, 2020 WL 6304991 (W.D. Tex. Oct. 27, 2020) ...................18, 19

*Nationwide Mut. Ins. Co. v. Unauthorized Prac. of Law Comm.*,
  283 F.3d 650 (5th Cir. 2002) .................................................................................6, 7

*Ne. Ohio Coal. for Homeless v. Husted*,
  696 F.3d 580 (6th Cir. 2012) ...................................................................................18

*Paher v. Cegavske*,
  No. 3:20-cv-243, 2020 WL 2089813 (D. Nev. Apr. 30, 2020) ...............................11

*Pension Benefit Guar. Corp. v. LTV Corp.*,
  496 U.S. 633 (1990)..................................................................................................14

*Purcell v. Gonzalez*,
  549 U.S. 1 (2006).........................................................................................1, 19, 20

*Railroad Commission v. Pullman Co.*,
  312 U.S. 496 (1941).........................................................................................1, 4, 6, 7

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Stringer v. Whitley,*
  942 F.3d 715 (5th Cir. 2019) ...........................................................................8

*Tex. All. for Retired Americans v. Hughs,*
  976 F.3d 564 (5th Cir. 2020) .........................................................................19

*Tex. Voters All. v. Dallas Cnty.,*
  No. 4:20-CV-00775, 2020 WL 6146248 (E.D. Tex. Oct. 20, 2020) ...............18, 20

*Texans for Free Enter. v. Tex. Ethics Comm'n,*
  732 F.3d 535 (5th Cir. 2013) ........................................................................2, 8

*Virginia House of Delegates v. Bethune-Hill,*
  139 S. Ct. 1945 (2019) ...............................................................................11, 12

*Virginia v. Am. Booksellers Ass'n Inc.,*
  484 U.S. 383 (1988) .......................................................................................13

*Walker v. Packer,*
  827 S.W.2d 833 (Tex. 1992) ............................................................................5

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) .........................................................................................2, 16

*Wise v. Circosta,*
  --- F.3d ---, 2020 WL 6156302 (4th Cir. Oct. 20, 2020) ......................................12

**STATUTES**

Tex. Elec. Code § 31.004..................................................................................2, 3

Tex. Elec. Code § 33.056....................................................................................4

Tex. Elec. Code § 61.003....................................................................................4

Tex. Elec. Code § 64.009(a) ............................................................................3, 10

Tex. Elec. Code § 64.012..................................................................................19

Tex. Elec. Code § 64.012(a) ............................................................................10

Tex. Elec. Code § 85.062(a)(1)..........................................................................13

Tex. Elec. Code § 85.062(b) .............................................................................13

# TABLE OF AUTHORITIES

**Cases**                                                                                       **Page(s)**

**OTHER AUTHORITIES**

Wright & Miller, 11A Federal Practice and Procedure, § 2948.1 (3d ed., April
        2017 update)...................................................................................................................17

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs had four months to bring this federal suit challenging Harris County's drive-thru voting procedures. Instead, they waited until after two weeks of voting had occurred and more than 100,000 drive-thru ballots had been cast. Their attempt to inject last-minute chaos into the election, well after it is underway, should be rejected for several reasons.

First, two different doctrines strongly counsel abstention here. Despite the Texas Supreme Court's rebuff of Plaintiffs' challenge to Harris County's drive-thru voting one week ago, Plaintiffs have filed a *second* petition that remains pending in that Court, which asks questions about the meaning of Texas law and raises the same claims that Plaintiffs also raise here. Thus, both the *Colorado River* and *Pullman* abstention doctrines apply, and the Court need go no further.

But, even if the Court considered this case on the merits, Plaintiffs' motion should be denied. *First*, Plaintiffs have not shown a likelihood of success on their claims. Their failure to offer any evidence of their standing precludes this Court from granting relief. Even if Plaintiffs did offer such evidence, it would be insufficient because they have not suffered a concrete or particularized injury. They also cannot assert an Elections Clause claim because they are not suing on behalf of the Texas Legislature. And, in any event, their Elections Clause and Equal Protection Clause claims are substantively meritless. *Second*, Plaintiffs identify no substantial threat of imminent injury. Their four-and-a-half-month delay in bringing this suit eviscerates any such claim, and their claimed injury regarding the counting of "illegal votes" is not cognizable. *Third*, the equities weigh heavily against the requested relief injunction because it would disenfranchise more than 100,000 Texans through absolutely no fault of their own, while serving no countervailing harm to Plaintiffs. *Fourth*, the public interest weighs heavily against an injunction. The *Purcell* principle is intended to prevent precisely this kind of last-minute federal judicial

1

revision of state election laws and denying the motion respects Texas's interest in effectuating its own election procedures.

## II.        STATEMENT OF ISSUES

Plaintiffs' motion, ECF No. 3, presents the question of whether they are entitled to a preliminary injunction. Plaintiffs have failed to demonstrate any of the four required elements: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest. *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 537 (5th Cir. 2013). A preliminary injunction is an "extraordinary" remedy that is "never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). For this reason, courts grant preliminary injunctions "sparingly." *Justin Indus., Inc. v. Choctaw Sec., L.P.*, 920 F.2d 262, 269 (5th Cir. 1990). And because Plaintiffs seek a mandatory injunction, they must show that "the facts and law are clearly" in their favor. *Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 441 F.2d 560, 561 (5th Cir. 1971). They have not done so, and the motion should be denied.

## III.       STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

### A.      Harris County's plans to offer drive-thru voting have been public since June.

Harris County first announced it was considering offering drive-thru voting in its plan for a secure, accessible, fair, and efficient election four and a half months ago on June 15. *See* Decl. of John Devaney ("Devaney Decl."), Ex. 1, Supp.MR 14.[1] Hollins's office conferred with Secretary of State ("SOS") regarding drive-thru voting over the course of multiple conversations,

---

[1] Exhibit 1 to the Devaney Declaration is the Beth Stevens Declaration, which attaches portions of the supplemental mandamus record in Texas Supreme Court Case Nos. 20-0815 and 20-0819. Citations to Exhibit 1 include pincites to specific pages of the supplemental mandamus record ("Supp.MR ##"), which are appended to the Stevens Declaration.

*see* Tex. Elec. Code § 31.004, and the SOS approved the idea. *Id.* ¶¶ 4-5, Supp.MR 2. The County

Clerk's office also held a series of stakeholder meetings to discuss plans for the general election,

including for drive-thru voting. *Id.* ¶ 6. On July 22, Hollins announced his office had conducted a

pilot drive-thru voting service during the primary runoff and surveyed voters who used it for

feedback. *Id.* Supp.MR 16. The program was widely considered a success. *Id.* In late August, the

Commissioners Court approved funding for drive-thru voting during the November election.[2] *Id.*

Supp.MR 17. And on September 29, the Commissioners Court approved a $9.6 million grant to

help expand drive-thru voting locations. *See id.* Supp.MR 115-116.

**B.     Drive-thru voting is not curbside voting.**

Plaintiffs' entire case is predicated on the false premise that drive-thru voting is the same

as "curbside voting." Compl. ¶¶ 1, 19. Curbside voting is a method of voting offered to voters with

certain disabilities. Tex. Elec. Code § 64.009(a). If a voter is physically unable to enter the polling

place without personal assistance or a likelihood of injuring the voter's health, on the voter's

request, an election officer must deliver a ballot to the voter at the polling place entrance or the

curb. *Id.* Curbside voting must be offered at all polling locations. *Id.*

By contrast, a drive-thru voting location *is* its own polling location. Harris County has ten

drive-thru voting locations, each adjacent to a brick-and-mortar polling place. Each drive-thru

location has its own election judge and clerks. *See* Devaney Decl., Ex. 1, Supp.MR 3-4. To access

these polling locations, voters line up in their cars. When voters enter the line, an election clerk

has them turn off their cell phones, checks their identification, asks them the usual questions about

---

[2] Zach Despart, *Harris County OKs $17 million to add polls, voting hours and drive-thru voting for November election*, Houston Chron. Aug. 25, 2020, https://www.houstonchronicle.com/politics/-houston/article/Harris-County-OKs-17M-to-add-polls-voting-hours-15514804.php.

whether their address is current, determines whether they are on the voter roll, and if so, has them sign the voting roster, then hands them a voting code and a voting machine—all as if they were voting in a brick-and-mortar polling location. *Id.* ¶ 10, Supp.MR 3-4. The same rules apply as at any other polling place. For example, poll watchers may watch the processing of voters, and there is no electioneering within 100 feet. *See* Tex. Elec. Code §§ 33.056, 61.003.

Each evening, the counts of voters at each polling location (including drive-thru polling locations) are posted on the Harris Votes website. Devaney Decl., Ex. 2.  As of the end of the day on October 30, approximately 126,912 Harris County voters have voted in drive-thru polling sites, amounting to 10.03% of total in-person votes. *Id.*; *see also* Ex. 1 ¶ 11, Supp.MR 4, 9 (explaining how to determine which locations on Ex. 2 are drive-thru voting).

**C.    The Texas Supreme Court has already rejected a request to stop drive-thru voting, and Plaintiffs' renewed state court challenge is currently pending in that court.**

One week ago, the Texas Supreme Court rejected a mandamus action challenging Harris County's drive-thru voting. In that case, the relators—including some of the plaintiffs to this suit—argued Harris County's drive-thru voting program violated Texas's Election Code and asked the court to prohibit Harris County from using the program. Devaney Decl., Ex. 3. The Texas Supreme Court dismissed that Petition. *In re Hotze*, No. 20-0819, Order Denying Petition (Tex. Oct. 22, 2020). Nevertheless, on October 27, the same plaintiffs who filed this federal suit filed a new mandamus petition in the Texas Supreme Court. *In re Hotze*, No. 20-0863, Pet. for Writ of Mandamus (Oct. 27, 2020); Devaney Decl., Ex. 4. In that Petition, which remains pending, Plaintiffs again ask the Texas Supreme Court to find the drive-thru voting process unlawful under the Texas Election Code. *Id.* They also raise the same exact claims they raise here. *Id.*

## IV.    ARGUMENT

### A.    The Court should abstain in light of Plaintiffs' identical state court proceedings.

Because Plaintiffs brought this suit after filing an identical case in the Texas Supreme

Court, two abstention doctrines—*Colorado River* and *Pullman*—instruct this Court to abstain.

*First*, because the parties are already litigating the exact same issues in state court,

*Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), urges the Court

to stay its hand to prevent inconsistent outcomes. *Colorado River* abstention is "based on

considerations of '[w]ise judicial administration, giving regard to conservation of judicial

resources and comprehensive disposition of litigation.'" *Afr. Methodist Episcopal Church v.*

*Lucien*, 756 F.3d 788, 797 (5th Cir. 2014) (quoting *Colorado River*, 424 U.S. at 817). The analysis

asks one threshold question, and then balances certain factors. First, the Court considers whether

the two cases are "parallel," in that they involve "the same parties and the same issues." *Id.*

(quoting *Exxon Corp. v. St. Paul Fire & Marine Ins. Co.*, 129 F.3d 781, 785 (5th Cir. 1997)). Here,

the proceedings are identical: they involve the same exact parties and same substantive claims.[3]

Because these two identical proceedings are parallel, the Court should consider the relevant

considerations that determine whether *Colorado River* abstention is appropriate:

> [1] assumption by either court of jurisdiction over a res, [2] relative inconvenience
> of the forums, [3] avoidance of piecemeal litigation, [4] the order in which
> jurisdiction was obtained by the concurrent forums, [5] to what extent federal
> law provides the rules of decision on the merits, and [6] the adequacy of the state
> proceedings in protecting the rights of the party invoking federal jurisdiction.

*Id.* at 788 (quoting *Stewart v. W. Heritage Ins. Co.*, 438 F.3d 488, 491 (5th Cir. 2006)).

---

[3] The fact that the nature of the actions slightly differ—*i.e.*, the Texas Supreme Court proceeding
is a mandamus action, where this is a suit seeking injunctive relief—does not alter this conclusion.
*See id.* (noting doctrine does not require "a mincing insistence on precise identity of . . . issues"
(quotation marks omitted)). The Texas Supreme Court may not grant Plaintiffs relief without first
concluding their claims have merit. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). Thus, it
must consider the same substantive issue Plaintiffs bring before this Court.

Here, several factors weigh in favor of abstention, and none weigh against. The third factor, which at its "heart" is concerned with "the concomitant danger of inconsistent rulings," weighs "heavily in favor of abstention": if this action "continue[s] unabated, the district court and state court would each determine the same issues," and the "risk of inconsistent rulings would therefore be very real." *Id.* at 800. In the Texas Supreme Court action, Harris County has already filed its response brief, and the Texas Supreme Court is likely to issue a ruling shortly. If this Court were to consider and rule upon Plaintiffs' motion at the same time, there is a "very real" risk that this Court and the Texas Supreme Court would issue irreconcilably different conclusions not just on the same exact claims, *but on a pure matter of state law*.

The fourth factor also weighs in favor of abstention: Plaintiffs filed their state court action prior to filing this federal action, and the claims posed in this case are already awaiting a decision in state court. The sixth factor also supports abstention, as there is no reason to believe the Texas Supreme Court would not fully protect Plaintiffs' federal rights (if there was, Plaintiffs would not have pursued these federal claims in state court). Finally, none of the other factors support abstention: no res is involved in this matter; the fora are equally convenient; and to adjudicate Plaintiffs' claims, both courts must adjudicate questions of state *and* federal law. In sum, Plaintiffs' choice to pursue the exact same claims in state court before invoking this Court's jurisdiction creates a serious risk for inconsistent rulings, warranting abstention under *Colorado River*.

*Second*, because Plaintiffs' identical proceedings in the Texas Supreme Court involve unsettled questions of state law that would be dispositive in this case, *Railroad Commission v. Pullman Co.*, 312 U.S. 496 (1941)*,* independently supports abstention. "[U]nder the *Pullman* doctrine, a federal court should abstain from exercising its jurisdiction 'when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional

question can be decided.'" *Nationwide Mut. Ins. Co. v. Unauthorized Prac. of Law Comm.,* 283 F.3d 650, 652 (5th Cir. 2002) (quoting *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984)). The purpose is to avoid "unnecessary adjudication of federal questions and needless friction with state policies." *Id.* at 653 (quoting *Midkiff*, 467 U.S. at 236). A court should abstain under *Pullman* if there is (1) "a federal constitutional challenge to state action," and (2) "an unclear issue of state law that, if resolved, would make it unnecessary for [the Court] to rule on the federal constitutional question." *Id.*

The first element is clearly satisfied. Both of Plaintiffs' causes of action are federal constitutional claims. Compl. ¶¶ 30-31. With respect to the second element, both rely on "an uncertain issue of state law that is 'fairly susceptible' to an interpretation that would render it unnecessary for [the Court] to decide the federal constitutional questions in [this] case." *Nationwide*, 283 F.3d at 653. Plaintiffs' Elections Clause claim relies entirely on the assertion that Harris County's drive-thru procedures violate the Texas Election Code. If the Texas Supreme Court concludes that is not the case, Plaintiffs cannot argue Harris County is "depart[ing] from the legislative scheme." Compl. ¶ 30. The same applies to their Equal Protection Clause claim. Plaintiffs based this claim on their allegations that "Harris County, unlike other counties, surrenders the safeguards associated with curb-side voting while other counties maintain the integrity of the ballot box by complying with the strict requirements imposed by the Texas Legislature." Compl. ¶ 31. But if the Texas Supreme Court rules that the County is acting within the bounds of the Election Code, those procedures comply with the legislative requirements, contrary to Plaintiffs' contention.

Separately, the question of Plaintiffs' Article III standing—which asserts that they will be injured by the counting of "illegal votes"—relies entirely on a question of state law. As explained

in further detail below, *infra* § IV.B.1.a.i, Plaintiffs have alleged no cognizable injury because even if they are correct that Harris County's drive-thru procedures amount to improper curbside voting (they do not), that alone does not render votes cast under that procedure "illegal." Under Texas law, the question of whether votes cast under an improper procedure are illegal depends on whether the Legislature intended that result. *Jones v. Morales*, 318 S.W.3d 419, 425-26 (Tex. Ct. App. 2010) (refusing to reject an improperly cast vote because the relevant statutory provision did not state that noncompliance rendered the ballot illegal). If the Texas Supreme Court rules that drive-thru votes are legal regardless of whether the procedure itself violates the Election Code, Plaintiffs' claim of an injury evaporates. Thus, the Court should abstain and allow the Texas Supreme Court the opportunity to address this important question of state law.

By ruling on Plaintiffs' motion while the exact same claims are pending at the Texas Supreme Court, this Court would not only create a serious risk of inconsistent rulings, but also endeavor into an unnecessary constitutional quagmire. Abstention is appropriate.

**B.      Plaintiffs are not entitled to a preliminary injunction.**

Even if the Court declines to abstain, Plaintiffs' motion should be denied because they have not demonstrated their burden of proving any of the four factors required for a preliminary injunction. *See Texans for Free Enter.*, 732 F.3d at 537.

**1.      Plaintiffs' claims have no likelihood of success.**

**a.      The Court lacks subject-matter jurisdiction over Plaintiffs' claims.**

"To have Article III standing, a plaintiff must show an injury in fact that is fairly traceable to the challenged action of the defendant and likely to be redressed by the plaintiff's requested relief." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019). To the extent Plaintiffs claim they will be injured in the future, they must show that their injury is "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Here, Plaintiffs lack standing to sue over the drive-

8

thru voting procedures because they are not, and will not be, injured by those procedures. Separately, they lack standing to assert a claim under the Elections Clause because they are not suing on behalf of the Texas Legislature.

> ### i. The drive-thru voting procedures do not injure Plaintiffs.

Plaintiffs have not shown that Harris County's drive-thru voting procedure has caused them any injury. As an initial matter, Plaintiffs offer *no evidence* of their own injuries. They fail to even offer, for example, a declaration suggesting that any of Plaintiffs is a Texas voter. Plaintiffs cannot rely on allegations in their complaint to make this showing. "[P]laintiffs must make a 'clear showing' that they have standing to maintain the preliminary injunction" they request, which requires them to put "*evidence* in the record of an injury-in-fact." *Barber v. Bryant*, 860 F.3d 345, 352, 355 (5th Cir. 2017) (emphasis added). Plaintiffs' failure to introduce any standing-related evidence thus precludes this Court from granting injunctive relief.

In any event, Plaintiffs' alleged injury is insufficient to satisfy Article III. It relies entirely on an incorrect assertion that, if the drive-thru voting process amounts to curbside voting under the Texas Election Code, and voters ineligible to vote curbside have cast ballots under this process, those voters have cast "illegal votes" that should not be counted. Compl. ¶¶ 11-13. But that position has no basis in Texas law. Texas courts have squarely held that even ballots cast under procedures that do not comply with the Election Code are not *per se* illegal. Instead, votes cast under procedures that conflict with an Election Code provision become illegal only when the Legislature has expressly stated so. In *Jones*, for example, the court rejected a candidate's argument that a ballot should have been rejected because an individual who assisted the voter in completing the ballot failed to adhere to the Election Code's requirements for such assistance. 318 S.W.3d at 425. The court explained that even assuming these requirements were not met, that alone would not render the ballot illegal. *Id.* at 425-26. Rather, because the Legislature "expressly has provided that

*some* actions require a voter's ballot to be excluded," courts cannot "add to the legislature's expressed list" of such circumstances. *Id.* at 426 (emphasis added). When an Election Code provision does not expressly state "a legislative determination that [the] failure" to comply with a given procedure "requires rejection of the voter's ballot," that ballot remains valid. *Id.*; *see also Galvan v. Vera*, No. 04-18-309-CV, 2018 WL 4096383, at *3 & n.2 (Tex. Ct. App. Aug. 29, 2018) (same conclusion).

Here, Plaintiffs fail to cite any relevant Election Code provision where the Legislature has indicated that a ballot cast through an improper curbside-voting procedure (should drive-thru voting be deemed such) is "illegal" and therefore should not be counted. The provision governing curbside voting is completely silent on this issue. Tex. Elec. Code § 64.009(a). Moreover, a provision within the same subchapter in which the curbside-voting provision is located sets out four definitions of "illegal voting," none of which include improperly casting a ballot through curbside voting. *Id.* § 64.012(a) (defining "illegal voting" as (1) voting or attempting to vote "in an election in which the person knows the person is not eligible to vote," (2) voting or attempting to vote "more than once in an election," (3) voting or attempting to vote "a ballot belonging to another person, or by impersonating another person," or (4) marking or attempting to mark "any portion of another person's ballot without the consent of that person, or without specific direction from that person how to mark the ballot").

Texas law thus demands the conclusion that, even if the drive-thru procedures amount to curbside voting (which they do not), votes cast under the procedure by eligible voters are not "illegal" and must be counted. Plaintiffs make no assertion that any voter who has voted using the drive-thru procedure is ineligible to participate in Texas's elections. Nor could they: as explained, *supra* § III.B, before casting a ballot at a drive-thru polling location, a voter must present valid

10

identification and the poll worker must confirm the voter's eligibility to vote. Thus, ironically, to find Plaintiffs have standing to assert a claim that Defendant has violated the Texas Legislature's authority under the Elections Clause, this Court would have to *disregard the Legislature's intent* that legitimate votes cast under an improper curbside voting procedure be counted.

Finally, while the Complaint vaguely asserts that drive-thru voting "invites corruption and fraud," Plaintiffs never explain how. Compl. ¶ 10. As already noted, the security procedures involved are no different than those in a brick-and-mortar polling place: voters must show valid identification, poll workers must confirm each voter's eligibility before providing them with a ballot, and poll watchers can view the entire process. Plaintiffs fail to identify any "corruption" or "fraud" that has occurred during drive-thru voting, and they offer no reason to believe any is "certainly impending" in this context. *Clapper*, 568 U.S. at 409. Courts across this country have overwhelmingly concluded that claims based on potential voter fraud, without substantial evidence demonstrating it is likely to occur in the context of challenged voting procedures, are too speculative to support Article III standing. *E.g.*, *Donald J. Trump for President, Inc. v. Way*, No. 20-10753, 2020 WL 6204477, at *6 (D. N.J. Oct. 22, 2020); *Donald J. Trump for President, Inc. v. Boockvar*, No. 2:20-CV-966, 2020 WL 5997680, at *59 (W.D. Pa. Oct. 10, 2020); *Paher v. Cegavske*, No. 3:20-cv-243, 2020 WL 2089813, at *4-*5 (D. Nev. Apr. 30, 2020); *Am. Civil Rights Union v. Martinez-Rivera*, 166 F.Supp.3d 779, 789 (W.D. Tex. 2015).

In sum, Plaintiffs have failed to make a "clear showing" that they have been, or will be, injured by the voting procedures they challenge in this suit.

### ii.     Plaintiffs lack standing to assert an Elections Clause claim.

Separately, Plaintiffs lack standing to assert a claim under the Elections Clause because they are not suing on behalf of the Legislature. Because their claim asserts a violation of the Legislature's constitutional authority, only the Legislature, as a body, has standing to assert such

11

a claim. Private individuals—even individual legislators—do not have standing to assert a claim that a state body has usurped the Legislature's authority under the Elections Clause. *See Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1953 (2019) ("Individual members lack standing to assert the institutional interests of a legislature."); *Lance v. Coffman*, 549 U.S. 437, 441-42 (2007) (finding individuals challenging state court decision implementing districting plans as usurping the Legislature's role under the Elections Clause lacked standing because the only injury they alleged was that "the Elections Clause . . . has not been followed," which is "precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance").

Unless Plaintiffs show the Legislature expressly authorized them to assert this claim on the Legislature's behalf, they have no standing to assert this claim. *Bethune-Hill*, 139 S. Ct. 1945, 1953; *see Wise v. Circosta*, --- F.3d ---, 2020 WL 6156302, at *6 (4th Cir. Oct. 20, 2020) (holding leaders of both chambers of North Carolina General Assembly lacked standing to assert Elections Clause claim); *Corman v. Torres*, 287 F. Supp. 3d 558, 567-69 (M.D. Pa. 2018) (finding legislators lacked standing to assert claims based "on the purported usurpation of the Pennsylvania General Assembly's exclusive rights under the Elections Clause"); *cf. Karcher v. May*, 484 U.S. 72, 81-82 (1987) (explaining legislative officers had standing only because state law *authorized* them to represent the legislature in litigation). But the Texas Legislature has not authorized any of Plaintiffs to assert this claim on the Legislature's behalf. They thus lack standing to assert this claim.

Moreover, even if Plaintiffs have shown that Harris County's drive-thru procedures somehow cause a concrete and cognizable injury—which, they have not, *supra* § IV.B.1.a.i— prudential standing is a bar to their claim. Plaintiffs' Elections Clause claim necessarily "rest[s] . . . on the legal rights or interests of third parties" (*i.e.*, the Legislature), *Kowalski v.*

*Tesmer*, 543 U.S. 125, 129 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)), but they have identified no "'hindrance' to the [Legislature's] ability to protect [its] own interests," *id.* at 130 (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991)). "Absent a 'hindrance' to the third-party's ability to defend its own rights, this prudential limitation on standing cannot be excused." *Corman*, 287 F. Supp. 3d at 572 (quoting *Kowalski*, 543 U.S. at 130). Thus, applying the "usual rule" of prudential standing, *Virginia v. Am. Booksellers Ass'n Inc.*, 484 U.S. 383, 392 (1988), Plaintiffs cannot assert claims on the Legislature's behalf.

### b.   Plaintiffs' Elections Clause claim is meritless.

Putting aside the fact that Plaintiffs lack standing to assert the claim at all, their Elections Clause claim independently fails because it has no merit. Harris County's drive-thru procedures fully comply with the Texas Election Code. And even if this Court concludes that these procedures are not in alignment with the Election Code (which it should not), that fact does not give rise to an Elections Clause violation.

Harris County's drive-thru procedures fit well within the plain language of the Election Code. The Code delineates between two phases: Election Day and early voting. In early voting, the "early voting clerk" for each county oversees the process, but polling places are determined by the Commissioner's Court. Tex. Elec. Code § 85.062(a)(1). Early voting can occur "at any place in the territory served by the early voting clerk and may be located in *any* stationary structure." *Id.* § 85.062(b) (emphasis added). Such structures may be "movable," and "[r]opes and other suitable objects may be used" to protect voter privacy while ensuring election workers and poll watchers have visible access. *Id.* §§ 62.004, 85.062(b).

Harris County's drive thru voting sites are early voting sites, and thus governed by that part of the Texas Elections Code. To comply with its requirements, Harris County created stationary structures large enough to house entire cars, election workers, and poll watchers. Devaney Decl.,

Ex. 1, Supp.MR 3. The poll watcher can observe the entire voting process. *Id.* When the voter enters the structure, the procedure is no different than if the voter had walked into a polling location within a brick-and-mortar structure: she must provide identification and turn off her cell phone, and she can only cast a vote after her eligibility is confirmed. *Id.* Supp.MR 3-4. Plaintiffs have failed to identify how this procedure conflicts with any relevant provision of the Election Code.

Instead, Plaintiffs' challenge is premised on an absurd logic. They claim that because a voter participating in this process stays inside her car while completing her ballot, the voter's "car is turned into a polling location," and as such, "Harris County now has millions of voting locations around the county that change locations throughout the day." Compl. ¶ 8. Not so. A voter cannot complete an in-person ballot while sitting inside a car *unless* their car is located *inside* a drive-thru polling location, *or* if they successfully request the option of curbside voting while sitting *outside* a brick-and-mortar polling place. In other words, the only time a voter can complete a ballot while inside a car is when her car situated in a location where the Election Code allows her to do so. The fact that the voter is inside her car when voting, on its own, is legally irrelevant.[4]

Perhaps most importantly, Plaintiffs' Elections Clause argument relies on a misapplication of a theory that has never been supported by more than three justices of the Supreme Court and that was offered in a decision expressly intended *not* to be relied on in future cases. *See Bush v. Gore*, 531 U.S. 98, 109 (2000) (characterizing decision as "limited to the . . . circumstances"

---

[4] Plaintiffs' assertion that the Legislature "rejected" drive-thru voting in HB 2898, ECF No. 4 at 9, is false. That bill did nothing more than propose a new, limited curbside-voting eligibility criterion for voters with children. *Id.* That has nothing to do with the question of whether the Election Code allows a county to operate an independent polling location in a structure that houses a vehicle. In any event, courts should not interpret a legislature's failure to pass legislation as disagreement with its substance. *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990) (explaining legislative "inaction lacks persuasive significance because several equally tenable inferences may be drawn from such inaction" (quotation marks omitted)).

before the Court); *id.* at 111 (Rehnquist, C.J., concurring). According to Justice Rehnquist's Elections Clause theory, a federal question is presented only when a "*significant* departure from the legislative scheme" has occurred. *Id.* at 112 (emphasis added). In *Bush*, Justice Rehnquist thought the Florida Supreme Court had significantly departed from existing statutory law by reaching a decision that went "beyond what a fair reading required" and reached conclusions with which "[n]o reasonable person" would agree. *Id.* at 116, 119. Thus, under Justice Rehnquist's theory, the question in an Elections Clause claim is not whether the challenged action has violated state law, but instead whether it amounts to an *unreasonable* application of existing law such that it effects a "significant departure." For the reasons just explained, it cannot be seriously argued that "no reasonable person" could believe Harris County's drive-thru voting procedures fit within the Election Code's statutory framework. As a result, even if those procedures violate the Election Code (which they do not), that violation still does not give rise to a constitutional claim.

### c.    Plaintiffs' equal protection claim is meritless.

Harris County's use of drive-thru voting procedures does not result in unequal treatment of *ballots*; it simply allows individuals to cast ballots in certain locations, all of which are treated the same as ballots cast in other voting locations. As a result, Plaintiffs' reliance on *Bush v. Gore* is wholly misplaced. At issue in *Bush* was a Florida Supreme Court decision that allowed counties to use "varying standards to determine what was a legal vote." 531 U.S. at 107. As a result, under the challenged order, the same ballot would have been interpreted differently from county to county. *Id.* According to the Supreme Court, this result failed to "satisfy the minimum requirement for nonarbitrary treatment of voters." *Id.*

Putting aside the fact that the Court's decision in *Bush* was expressly limited to the facts

before it, *id.* at 109, it has no relevance here.[5] Rejecting exactly the sort of claim Plaintiffs make in this case, one court recently explained that "*Bush*'s core proposition [is] that a state may not take the votes of two voters, similarly situated in all respects, and, for no good reason, count the vote of one but not the other." *Donald J. Trump for President*, 2020 WL 5997680, at *42. In other words, a state cannot "take[] two equivalent votes and, for no good reason, adopt[] procedures that greatly increase the risk that one of them will not be counted—or perhaps gives more weight one over the other." *Id.* Here, the fact that a voter outside Harris County does not have the option of casting her ballot while sitting inside a drive-thru structure says nothing about whether her *ballot* would be treated differently in Harris County. Rather, the only difference between the experience of a Harris County voter and a voter in a different county is the number and type of locations at which they can cast a ballot.

Indeed, the implications of Plaintiffs' claim are striking. Plaintiffs essentially ask this Court to require Texas's 254 counties to offer *identical* means and manners of voting. But the Equal Protection Clause does not mandate uniformity across counties in this way. *See id. at* *38-40. Texas's counties vary substantially in terms of geographic size, population, and resources. To conclude that equal protection requires each to provide exactly the same voting procedures would amount to an explosion in the scope of federal courts' role in overseeing state election laws.

### 2. Plaintiffs fail to show a substantial threat of irreparable injury.

To satisfy the second element of their burden, Plaintiffs must show that unless an injunction issues they are "likely to suffer irreparable harm." *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013). And they must prove irreparable harm is *likely*,

---

[5] Notably, the Fifth Circuit has expressly doubted the precedential value of *Bush* given the Supreme Court's "express pronouncement" of its non-precedential status. *See League of United Latin Am. Citizens v. Abbott*, 951 F.3d 311, 317 (5th Cir. 2020).

not merely possible. *Winter*, 555 U.S. at 20, 129 S.Ct. 365. Plaintiffs have failed to carry this burden, both because of their delay in bringing this action and because of their inability to demonstrate "irreparable harm" on the merits.

Plaintiffs' inexplicable delay in seeking prompt judicial relief to prevent their "irreparable injury" is fatal to their request for relief. "A long delay by plaintiff after learning of the threatened harm also may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction." Wright & Miller, 11A Federal Practice and Procedure, § 2948.1 (3d ed., April 2017 update). Undue delay negates the contention that the feared harm will truly be irreparable. *See Gonannies, Inc. v. Goupair.com, Inc.*, 464 F. Supp. 2d 603, 609 (N.D. Tex. 2006); *see also Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1193 (5th Cir. 1975) (affirming denial of temporary injunction due in part to three-month delay in seeking relief).

Plaintiffs have not even attempted to excuse their delay of four-and-a-half months in bringing this suit. As described *supra* at § III.A, Hollins's intention to offer drive-thru voting has been well known to the public for *months*. Yet Plaintiffs did *nothing* until October 18—five days *after* early voting, including drive-thru voting, started in Harris County—when Plaintiffs Hotze and Hemphill (among others) filed their first mandamus petition, which the Texas Supreme Court summarily denied. Only after filing a *second* mandamus petition did Plaintiffs file *this* action, raising identical federal constitutional claims as their second mandamus petition.

Seeking a preliminary injunction from this Court, *four days* before the last day of voting, is Plaintiffs' third Hail Mary attempt in less than two weeks. It should be rejected. The "extraordinary" and "drastic" remedy of a preliminary injunction should not issue to save a party from the eminently foreseeable consequences of its own dilatory conduct.

Even assuming Plaintiffs' unjustified and unjustifiable delay were not fatal to their

17

contention of "irreparable injury," they have failed to demonstrate any actual irreparable injury. The only purported injury Plaintiffs cite is the vague allegation that drive-thru votes will be counted with other in-person votes, imperiling the election. Compl. ¶ 43. For the reasons discussed in § IV.B.1.a.i *supra*, Plaintiffs' ostensible injury is not cognizable under Texas law, pursuant to which even ballots cast under an improper curbside-voting procedure must be counted. Plaintiffs provide neither evidence nor argument to the contrary.

### 3.     Plaintiffs fail to show that the balance of the equities is in their favor.

When determining whether to grant a preliminary injunction, the Court must ask whether Plaintiffs' threatened injuries outweigh any damage the injunction may cause. *Tex. Voters All. v. Dallas Cnty.*, No. 4:20-CV-00775, 2020 WL 6146248, at *20 (E.D. Tex. Oct. 20, 2020). Invalidating more than 126,000 ballots cast by lawfully registered Harris County voters one day before Election Day would impose extraordinary harms, not only on these voters, but also on Harris County, all real, concrete harms that far outweigh any theoretical harm Plaintiffs allege.

If Harris County is forced to void the ballots cast by more than 126,000 lawfully registered voters, it will impose significant and severe burdens on these voters and the County's elections apparatus. If those votes were suddenly invalidated, it would be impossible to contact all of these voters to inform them of the need to cast a second ballot. Thousands upon thousands of voters would be disenfranchised, resulting in broad, severe, and irreparable harm. *See Mi Familia Vota v. Abbott*, No. SA-20-CV-00830-JKP, 2020 WL 6304991, at *16 (W.D. Tex. Oct. 27, 2020) (citing *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)).

Plaintiffs do not assert these voters did anything wrong. Yet, they seek to disenfranchise more than 126,000 eligible voters whose only fault was relying on the instructions of County elections officials—which the SOS blessed. *See* Devaney Decl., Exs. 5-9 (attaching five declarations of Harris County voters who all voted at drive-thru in reliance of Harris County's

encouragement to do so, one of whom is currently out of state and could not feasibly return to cast a second ballot). Invalidation of their ballots would be profoundly inequitable. It would also almost surely violate due process. *Ne. Ohio Coal. for Homeless v. Husted*, 696 F.3d 580, 593-595, 597 (6th Cir. 2012) (describing "disenfranchis[ing] citizens whose only error was relying on poll-worker instructions" as "fundamentally unfair"); *Griffin v. Burns*, 570 F.2d 1065 (1st Cir. 1978) (holding due process prohibited invalidation of ballots cast by "voters [who did] no more than follow[] the instructions of the officials charged with running the election"). This would result in irreparable injury to tens of thousands of voters. *Mi Familia Vota*, 2020 WL 6304991, at *16 (explaining that the violation of the "fundamental constitutional right" to vote "cannot be adequately remedied at law or after the violation occurred").

Even Plaintiffs' more limited request that memory cards be segregated and votes from drive-thru locations not be downloaded would cause massive chaos. *See* ECF No. 4 at 3-4. Such an order would cause voters to become concerned that their legitimate votes will not be counted. But those voters would be unable to do anything to fix this issue. Putting aside the fact that there is just *one more day* of voting, voters who already cast a drive-thru ballot would be reluctant to go cast a new ballot out of fear that they could be prosecuted for voting twice. Tex. Elec. Code § 64.012 (criminalizing even the attempt "to vote more than once in an election"). Already congested Election Day polling places would be inundated with voters asking what they can do to ensure their already cast ballots will be counted. The Court should not accept this invitation to throw Texas's election into such chaos.

### 4.     An injunction does not serve the public interest.

Both the Supreme Court and Fifth Circuit have made clear that federal courts should tread carefully before altering a state's elections procedures in the midst of an election. *See, e.g.*, *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006); *Tex. All. for Retired Americans v. Hughs*, 976 F.3d 564 (5th

19

Cir. 2020). While *Purcell* does not prohibit the federal judiciary from interceding close to elections when necessary to protect voters, it warns them to consider certain factors before doing so, including whether intervening would cause voter confusion and disenfranchisement. *See Purcell*, 549 U.S. at 4-6 (explaining "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls").

Plaintiffs' requested relief would cause precisely the mass confusion and disenfranchisement *Purcell* cautioned against. Harris County has offered drive-thru voting for more than two weeks, and both the County and political campaigns have encouraged voters to utilize drive-thru voting. Moreover, the Texas Supreme Court already *rejected* a challenge to Harris County's drive-thru voting, thus signaling to voters that they should feel free to continue voting in that manner. *See In re Hotze*, No. 20-0819, Order Denying Petition (Tx. Oct. 22, 2020) (denying Hotze's request to stop Harris County from operating drive-thru voting). After the state's highest court has permitted drive-thru voting to continue unimpeded, it would cause nothing but mass chaos and confusion for a federal court now to enjoin it.

Voting has now been underway *for weeks*, strongly counseling against an injunction. *See Mi Familia Vota v. Abbott*, No. 20-50793, 2020 WL 6058290, at *7 (5th Cir. Oct. 14, 2020) (refusing election-related injunctive relief because "it would be inappropriate for the district court to grant much of the requested relief with the election ongoing"); *see also Tex. Voters All.*, 2020 WL 6146248, at *20–21 ("An injunction at this late stage, when millions of votes have already been cast, would send the Counties scrambling to adjust while voting occurs."). An injunction would send Harris County and Harris County voters scrambling, leaving at the very least tens of thousands without recourse.

## V.  CONCLUSION

This Court should deny Plaintiffs' request for a preliminary injunction.

October 31, 2020

Marc E. Elias*
John Devaney*
Daniel C. Osher*
Christina A. Ford*
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Fascimile: (202) 654-9996
melias@perkinscoie.com
jdevaney@perkinscoie.com
dosher@perkinscoie.com
christinaford@perkinscoie.com

*Pro hac vice motion pending

Respectfully submitted,

*/s/ Skyler M. Howton*
Skyler M. Howton
PERKINS COIE LLP
500 North Akard St., Suite 3300
Dallas, TX 75201-3347
Telephone: (214) 965-7700
Facsimile: (214) 965-7799
showton@perkinscoie.com

Matthew J. Mertens*
PERKINS COIE LLP
1120 N.W. Couch Street
Portland, O.R. 97209-4128
Telephone: (503) 727-2000
Facsimile: (503) 727-2222
mmertens@perkinscoie.com

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 31, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Skyler M. Howton*
Skyler M. Howton
