# Exhibit 3

20-0819
10/15/2020 1:49 AM
tex-47203948
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

NO. _____

# In the Supreme Court of Texas

IN RE STEVEN HOTZE, M.D., HARRIS COUNTY REPUBLICAN PARTY, HON. KEITH NIELSEN, AND SHARON HEMPHILL,

*Relators*,

**On Petition for Writ of Mandamus to the Harris County Clerk**

## PETITION FOR WRIT OF MANDAMUS

JARED WOODFILL
Woodfill Law Firm, P.C.
State Bar No. 00788715
3 Riverway, Ste. 750
Houston, Texas 77056
(713) 751-3080 (Telephone)
(713) 751-3058 (Facsimile)
woodfillservice@gmail.com

*Counsel for Relators*

i

Exhibit 3
Page 1 of 52

## Identity of Parties and Counsel

1. **Relators**

   Steven F. Hotze, MD
   20214 Braidwood Drive
   Katy, Texas 77450 (Harris County)

   Dr. Hotze is a registered voter in Harris County and will be voting in the general election. [App. A]

   Harris County Republican Party
   2501A Central Parkway Suite A11
   Houston, Texas 77092-7716
   Phone: (713) 838-7900

   The Harris County Republican Party is a political party established under the Texas Election Code.

   Hon. Keith Nielson
   2501A Central Parkway Suite A11
   Houston, Texas 77092
   Phone: (713) 838-7900

   Hon. Keith Nielson is its elected chairman. [App. B]

   Sharon Hemphill
   ████████████████████
   ████████████████

   Sharon Hemphill is a registered voter in Harris County.  Sharon Hemphill is the Republican nominee for judge of the Texas 80th District Court, Harris County, Texas. She is on the ballot in the general election on November 3, 2020.  She advanced from the Republican primary on March 3, 2020.  [App. C]

ii

Exhibit 3
Page 2 of 52

*Lawyer for Relators:*

Jared R. Woodfill
Woodfill Law Firm, P.C.
State Bar No. 00788715
3 Riverway, Ste. 750
Houston, Texas 77056
Tel: (713) 751-3080
Fax: (713) 751-3058
woodfillservice@gmail.com

**2.     Respondent**

<u>Hon. Chris Hollins</u>
Harris County Clerk
201 Caroline Street, Suite 310
Houston, Texas 77002

*Lawyer for Respondent Hollins:*

Vince Ryan
Office of the Harris County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002
vince.ryan@cao.hctx.net

iii

Exhibit 3
Page 3 of 52

# Table of Contents

Identity of Parties and Counsel ................................................................ ii

Table of Contents ................................................................................iv

Index of Authorities ...........................................................................vi

Appendix References .........................................................................xi

Statement of the Case...........................................................................1

Statement of Jurisdiction......................................................................3

Statement Regarding Oral Argument and Request for Expedited Briefing and
Decision...............................................................................................5

Statement of the Issues Presented ........................................................6

Introduction........................................................................................7

Statement of Facts...............................................................................9

Arguments and Authorities ................................................................18

    I.     Mandamus is Appropriate to Compel Compliance with a Non-
          Discretionary, Ministerial Duty...........................................18

    II.    Respondent Hollins Has a Ministerial Duty to Comply with and
          Enforce the Requirements of the Texas Election Code ......................18

        a.    Respondent Hollins Has a Ministerial Duty to Review Each
             Sworn Application in Order to Verify that the Applicant Has
             Supplied All of the Required Information to Permit Curbside
             Voting.........................................................................18

        b.    Respondent Hollins Has a Ministerial Duty to Reject an
             Application for Curbside Voting That Does Not contain the
             Required Information to Permit Curbside Voting ...................21

Exhibit 3
Page 4 of 52

III.   Respondent Hollins is Permitting Curbside Voting to Voters Not
       Entitled to Vote Curbside in Breach of His Ministerial Duties under
       the Texas Election Code................................................................23

IV.    Relators Are Being Harmed, and Will Continue to Be Harmed, Absent
       Relief ...........................................................................................24

V.     Harris County Clerk Hollins is Violating the Texas Election Code ...26

       a.   Texas Election Code Sets Early Voting Dates .........................26
       b.   The Texas Election Code Establishes When A Voter Can
            Participate in Curbside Voting................................................28
       c.   The Plain Language of Texas Election Code §85.001(a)
            Prohibits Respondent from Allowing Curbside Voting on
            October 13, 2020...................................................................28
       d.   Due to the Early Start Date for Early In Person Voting, and
            Respondent's Illegal Definition of Curbside Voting (Drive-
            Thru Voting), It will Not be Possible for Poll Watcher to be
            Present to View the Curbside or Drive-Thru Voting................28

VI.    Respondent Hollins' Conduct and the July 27, 2020 Order Suspending
       the Texas Election Code are Unconstitutional ..................................29

       a.   Respondent Hollins' Conduct Violates Article I, Section 28 of
            the Texas Constitution ..........................................................29
       b.   Hollins' Conduct Violates Texas Government Code, Chapter
            418.......................................................................................32
       c.   Texas Government Code, Chapter 418, Violates the Texas
            Constitution..........................................................................32
       d.   Abbott's July 27, 2020 Order Violates the Separation of Powers
            Doctrine................................................................................33

VII.   Relators Have No Other Adequate Remedy .....................................36

Prayer ...............................................................................................................37

TRAP 52.3(J) Certification.................................................................................39

Certificate of Service ........................................................................................40

v

Exhibit 3
Page 5 of 52

Certificate of Compliance ........................................................................41

Appendix

Exhibit 3
Page 6 of 52

# Index of Authorities

**CASES**                                                                        **PAGE(S)**

*Anderson v. Seven Points*, 806 S.W.2d 791 (Tex. 1991)..........................................18

*Arroyo v. State*, 69 S. W. 503 (Tex. Crim. App 1902) ......................................30, 31

*Baker v. Carr*, 369 U.S. 186 (1962).........................................................................25

*Bejarano v. Hunter*, 899 S.W.2d 346 (Tex. App. 1995)...........................................23

*Brown Cracker & Candy Co. v. City of Dallas*, 104 Tex. 290 (1911) ....................30

*Davis v. Taylor*, 930 S.W.2d 581 (Tex. 1996)...........................................................5

*Dickson v. Strickland*, 265 S.W. 1012 (Tex. 1924) ...................................................3

*Ex parte Granviel*, 561 S.W.2d 503 (Tex. Crim. App. 1978) ..................................35

*Fin. Comm'n of Texas v. Norwood*, 418 S.W.3d 556 (tex. 2013) ...........................34

*Gill v. Whitford*, 138 S. Ct. 1916 (2018)..................................................................25

*Gov't Servs. Ins. Underwriters v. Jones*, 368 S.W.2d 560 (Tex. 1963) .................34

*Grant v. Ammerman*, 437 S.W.2d 547 (Tex. 1969).....................................................3

*In re Abbott*, No 20-0291, 2020 WL 1943226 (Tex. Apr. 23, 2020) ......................30

*In re Carlisle*, 209 S.W.3d 93 (Tex.2006) .................................................................4

*In re Hotze*, 2020 Tex. Lexis 680 (July 17, 2020) ................................................9, 10

*In re M.N.*, 262 S.W.3d 799 (Tex. 2008)..................................................................28

*In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124 (Tex. 2004)...............................36

*In re Robinson*, 175 S.W.3d 824 (Tex. App. 2005)............................................21, 23

*In re State of Texas*, 602 S.W.3d 549 (Tex. 2020) ..................................................22

Exhibit 3
Page 7 of 52

*In re Tex. Senate*, 36 S.W.3d 119 (Tex. 2000) .........................................................4

*In re Woodfill*, 470 S.W.3d 473 (Tex. 2015) ...........................................................4

*Jones v. State*, 803 S.W.2d 712 (Tex. Crim. App. 1991) .......................................34

*Leland v. Brandal*, 257 S.W.3d 204 (Tex.2008) ..................................................28

*Perry v. Del Rio*, 67 S.W.3d 85 (tex. 2001).........................................................34

*Reynolds v. Sims*, 377 U.S. 533 (1964).................................................................24

*Sears v. Bayoud*, 786 S.W.2d 248 (Tex. 1990).......................................................4

*Smith v. Flack*, 728 S.W.2d 784 (Tex. Crim. App. 1987) ................................36, 37

*State v. Rhine*, 297 S.W. 3d 301 (Tex. Crim. App. 2009) ................................34, 35

*State v. Waler*, 679 S.W.2d 484 (Tex. 1984) .......................................................36

*Tex. Boll Weevil Eradication Found., Inc.*, 952 S.W.2d 454 (Tex. 1997) .............34

*Tex. League of United Latin American Citizens v. Hughs*, No. 20-50867, (Fifth Circuit, October 12, 2020)(Ho, J. concurring).....................................................9, 17

*Turner v. Pruitt*, 161 Tex. 532, 342 S.W.2d 422 (1961) .......................................18

*Walker v. Packer*, 827 S.W.2d 833 (Tex. 1992).....................................................36

*Womack v. Berry*, 156 Tex. 44, 291 S.W.3d 677 (1956).......................................18

**Constitutional Provisions, Statutes, and Rules**:

Tex. Const., art. I, §28................................................................15, 29, 31, 33

Tex. Const., art. II §1 ........................................................................31, 33, 34

Tex. Const., art. III §1 .............................................................................34

Exhibit 3
Page 8 of 52

Tex. Const., art. IV §8........................................................................32

Tex. Elec. Code §41.001(a)(3)..........................................................26

Tex. Elec. Code §64.009 ................................... 1, 3, 11, 18, 21, 22, 28

Tex. Elec. Code §64.009(a) ...............................................................28

Tex. Elec. Code §82.02.............................................1, 3, 11, 19, 21, 22

Tex. Elec. Code §82.002....................................................................19

Tex. Elec. Code §82.002(a) ...............................................................22

Tex. Elec. Code §83.002..............................................................2, 7, 18

Tex. Elec. Code §84.001....................................................................19

Tex. Elec. Code 85.001.................................................................27, 29

Tex. Elec. Code 85.001(a) .......................................................14, 16, 26, 29

Tex. Elec. Code 85.001(d) ................................................................27

Tex. Elec. Code § 86.006(a-1) ...........................................................14

Tex. Elec. Code §104.001 .................................. 2, 7, 10, 11, 19, 20, 21, 22

Tex. Elec. Code §104.002..................................................................20

Tex. Elec. Code §104.003..................................................................20

Tex. Elec. Code §104.004..................................................................20

Tex. Elec. Code §104.005..................................................................21

ix

Exhibit 3
Page 9 of 52

Tex. Elec. Code §104.001-104.005 ....................................................1, 3

Tex. Elec. Code §221 .......................................................................26

Tex. Elec. Code §221.003(b) ............................................................25

Tex. Elec. Code §273.061 ................................................................3, 4

Tex. Elec. Code §273.081 ................................................................36

Tex. Gov't Code § 311.011 ...............................................................28

Tex. Gov't Code §418 ..............................................................31, 33, 35

Tex. Gov't Code §418 et seq ............................................................32

Tex. R. App. P. 52.3 .........................................................................3

**Other Authorities:**

Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal
Texas 140 (2012) ............................................................................28

George D. Braden, The Constitution of the State of Texas: An Annotated and
Comparative Analysis 84 (1977) .......................................................31

x

Exhibit 3
Page 10 of 52

## Appendix References

The attached Appendix ("App.") consists of the following:

Affidavit of Steven Hotze, M.D. ...........................................................App. A

Affidavit of Keith Nielsen ....................................................................App. B

Affidavit of Sharon Hemphill.................................................................App. C

Affidavit of Jennifer Anne Hall..............................................................App. D

July 27, 2020 Executive Order ............................................................. App. E

July 22, 2020 Hollins Request to Abbott...............................................App. F

Exhibit 3
Page 11 of 52

## Statement of the Case

## Nature of the Case

Respondent Hollins has announced that the Harris County Clerk's Office will allow any and all Harris County Registered voters – regardless of whether they are permitted to do so under the Texas Election Code – to engage in early and election day "drive-thru" or curbside voting.  Under Texas Election Code Section 64.009, 82.02, and 104.001-104.005.  The Texas Election Code restricts curbside voting to three distinct categories: (i) a voter is present sick at the time of the vote; (ii) a voter has a physical condition requiring personal assistance (e.g., is physically handicapped); or (iii) voting inside the polling location would create a likelihood of injuring the voter's health.  The criteria for curbside voting is equally applicable with ballots by mail voting.  The Texas Supreme Court recently held that a voter's lack of immunity to COVID-19, without more, is not a "disability" as defined by the Election Code, and therefore, is not a sufficient basis to permit a voter to validly vote by mail.  Accordingly, by indiscriminately encouraging any and all Harris County registered voters to cast their ballots curbside on this invalid basis, Respondent's ultra vires act to vote curbside in violation of state law must be stopped. Moreover, it appears that even legal instances of curbside voting will be illegally conducted due to the fact that the contemplated curbside voting activity will be conducted adjacent to polling locations which are not located inside of a building.  Accordingly, Relators

Exhibit 3
Page 12 of 52

seek mandamus relief to compel Respondent to perform his nondiscretionary, ministerial duties to restrict curbside voting to only those Harris County registered voters who have submitted sworn applications which facially satisfy at least one of the tree specific categories permitting curbside voting under the Texas Election Code, and to restrict any and all legal curbside voting to curbside activities which solely occur adjacent to a polling location which is located inside of a building.

**Respondent**

Chris Hollins, in his official capacity as the Harris County Clerk, who, under Section 83.002 of the Texas Election Code (early voting) and Section 104.001 of the Texas Election Code (election day voting), is designated as the "Early Voting Clerk."

**Relief Requested**

Respondent should be required to reject curbside voting to any Harris County registered voter who has not submitted the required sworn application to vote curbside or who submitted an application which does not facially satisfy any of the required criteria for curbside voting.  Further, no curbside voting should be permitted by eligible curbside voters unless and until such voting occurs adjacent to a polling location which is located inside a building.

Exhibit 3
Page 13 of 52

## Statement of Jurisdiction

Texas Election Code §273.061 gives the Court original jurisdiction to issue a writ of mandamus "to compel the performance of any duty imposed by law in connection with the holding of an election."  The Relators have a compelling reason to request mandamus from this Court in the first instance. *See* Tex. R. App. P. 52.3. The November 3rd, 2020 general election is quickly approaching and  Respondent is allowing curbside voting or "drive-thru" voting for all voters regardless of whether (i) the voter is sick at the time of the vote; (ii) has a physical condition requiring personal assistance; or (iii) voting inside the polling location would create a likelihood of injuring the  voter's health.  Tex. Elec. Code §§ 64.009, 82.02 and 104.001-104.005.

This Court has stated "that an election in this state is not a single event, but a *process*, and that the entire *process* is subject to contest." *Dickson v. Strickland*, 265 S.W. 1012, 1018 (Tex. 1924). This case involves the enforcement by mandamus of duties involved with the "holding of an election," an election being the *entire process* including the date early voting begins and when a voter can deliver a marked ballot by mail in person to the early voting clerk's office. *Grant v. Ammerman*, 437 S.W.2d 547, 548-49 (Tex. 1969). Mandamus will lie to enforce ministerial duties arising in connection with an election.  *Id.*

3

Exhibit 3
Page 14 of 52

In this Petition for Writ of Mandamus, Relators are challenging the *process* of the election, i.e., the manner in which the Respondent is implementing curbside or "drive-thru" voting.  Relators include a candidate on the November 3, 2020 ballot in Harris County, Texas, (Sharon Hemphill) the Harris County Republican Party and its Chairman, and a voter/activist (Dr. Steven Hotze).

Relators ask the Court to use the power granted by the Election Code "to compel the performance of any duty imposed by law in connection with the holding of an election."  Tex. Elec. Code § 273.061.  When time is of the essence, this Court has not hesitated to exercise its mandamus authority. *See*, e.g., *In re Woodfill*, 470 S.W.3d 473, 481 (Tex. 2015) (per curiam); *In re Carlisle*, 209 S.W.3d 93, 95-96 (Tex. 2006) (per curiam); *In re Tex. Senate*, 36 S.W.3d 119, 121 (Tex. 2000); *Sears v. Bayoud*, 786 S.W.2d 248, 250 & n.1 (Tex. 1990). The Court should exercise its original mandamus authority again in that Hollins illegal actions have begun and will continue through election day.

Exhibit 3
Page 15 of 52

## Statement Regarding Oral Argument and
## Request for Expedited Briefing and Decision

Harris County early in-person voting began on October 13, 2020[1].  Election Day voting for the 2020 General Election will take place on November 3, 2020, which is less than a month away.  Because time is of the extreme essence, Relators respectfully request that the Court expedite this Petition and issue a decision immediately.  *See Davis v. Taylor*, 930 S.W.2d 581, 582 (Tex. 1996) (expediting briefing and oral argument in election-related proceeding).  Because the duties described herein are clear and mandatory, this Petition should be granted without oral argument.

---

[1] https://www.harrisvotes.com/Docs/VotingInfo/VotingByMailFAQs-en-US.pdf (last accessed October 8, 2020

5

Exhibit 3
Page 16 of 52

## Statement of the Issues Presented

1.    Is Respondent failing to perform his nondiscretionary, ministerial duties by encouraging and permitting Harris County registered voters to cast their ballots curbside even though they do not satisfy any of the three specific categories permitting curbside voting under the Texas Election Code?

2.    Is Respondent failing to perform his nondiscretionary, ministerial duties under Section 43.031 of the Texas Election Code by encouraging and permitting Harris County registered voters to cast their ballots curbside adjacent to polling locations which are not located inside of a building?

3.    Is Governor Abbott's July 27, 2020 Proclamation unconstitutional in that it suspends the Texas Election Code?

4.    Is the Texas Disaster Act, Tex. Gov't Code §418 et seq. unconstitutional to the extent it allows Governor Abbot to unilaterally suspend laws?

Exhibit 3
Page 17 of 52

## Introduction

Under Section 83.002 of the Texas Election Code, Respondent Hollins is the early voting clerk for Harris County by virtue of his position as Harris County Clerk. Pursuant to Section 104.001 of the Texas Election Code, Respondent Hollins is also the Clerk for Election Day voting.  As such, Respondent has the responsibility of enforcing the election laws to ensure a fair and hones election in Harris County.

Despite the fact that the Texas Election Code restricts curbside voting to only three (3) specific and narrowly defined categories of voters, Respondent is – using the COVID-19 pandemic as his pretext – to permit any and all Harris County registered voters to vote curbside.  On May 15, 2020, the Texas Supreme Court rejected Respondent's contention that a voter's lack of immunity from COVID-19 and concern about contracting it at a polling place constitutes a "disability" within the meaning of the statute permitting a voter to cast a ballot by mail.  The exact same rationale applies with equal force to Respondent's latest attempt to ignore the narrow confines of the carefully defined standards for the three types of situations where a voter may properly vote curbside under the Texas Election Code.  None of those instances are satisfied by a voter's lack of immunity to COVID-19, or by a generalized subjective fear of contracting a virus, or by a desire for "convenience" or to enjoy the "comfort" of one's vehicle while voting.   Additionally, Respondent is allowing curbside voting to occur in violation of the Texas Election Code which

Exhibit 3
Page 18 of 52

requires early voting to begin on October 19, 2020, not October 13, 2020.
Respondent is relying on Governor Abbott's July 27, 2020 Proclamation suspending
the Texas Election Code and moving early voting up from October 19, 2020 to
October 13, 2020.  Unless stopped, each of these instances of illegal voting will cast
a cloud over the results of the General Election, as illegal votes will be cast and
counted in direct violation of the Texas Election Code.

Exhibit 3
Page 19 of 52

## Statement of Facts

United States Court of Appeals Judge James Ho recently addressed the abuse of power that has been exercised by Governor Abbott since March of this year, stating, "The federal district court [by allowing eleven (11) different drop off locations in Harris County for marked ballots by mail] usurped the authority that our Constitution vests in state legislatures to set the rules governing federal elections. But so did the Governor of Texas…." *Texas League of United Latin American Citizens v. Hughs,* No. 20-50867, (5th Cir. October 12, 2020)(Ho, J, concurring). Judge Ho further describes Governor Abbott's assault on the Texas Constitution: "The district court was wrong to rewrite Texas law. But the distinguished judge who did so ***was simply following in the Governor's footsteps. It is surely just as offensive to the Constitution to rewrite Texas election law by executive fiat as it is to do so by judicial fiat. Yet that is what occurred here***. Respected legislators and public leaders called on the Governor to call a special session so that legislators in both parties could consider and debate amendments to the state's election rules to accommodate voter concerns arising out of the pandemic. ***But the Governor rejected those calls, and instead issued a series of executive proclamations purporting to unilaterally 'suspend' various Texas election laws.*** Those actions have generated significant controversy. Members of the Texas Supreme Court described the Governor's actions as ***'a clear abuse of discretion of a public official,'*** *In re Hotze,*

9

Exhibit 3
Page 20 of 52

__ S.W.3d __, __ (Tex. Oct. 7, 2020) (Devine, J., dissenting) (emphasis in original) (quotations omitted), that "raise[s] important questions about the constitutionality of government action during the coronavirus crisis," id. at __ (Blacklock, J., concurring). Only the district court's rewriting of Texas law is before us today, however. And that leads us to an unfortunate irony: ***by setting aside only the district court's rewriting of Texas law, we must restore the Governor's rewriting of Texas law. It recalls the adage that sometimes it's only the guy who throws the second punch that gets caught.*** *Id.*

Here, the Court has the opportunity to "catch" the guy who has thrown the first punch, Governor Greg Abbott. As Justice Devine has previously stated**,** "The Texas Constitution is not a document of convenient consultation.  It is a steadfast, uninterrupted charter of governmental structure.  Once this structure erodes, so does the promise of liberty." *In re Hotze*, 2020 Tex. LEXIS 680, (Devine, J., concurring).

## I.    Respondent Hollins' Ministerial Duties Under the Texas Election Code

Under Section 83.002 of the Texas Election Code, Respondent Hollins is the early voting clerk for Harris County by virtue of this position as Harris County Clerk. Pursuant to Section 104.001 of the Texas Election Code, Respondent Hollins is also the clerk for Election Day voting.  As such, Respondent has the responsibility of enforcing the election laws to ensure a fair and honest election in Harris County.

Exhibit 3
Page 21 of 52

One of the statutory election mandates for which Respondent Hollins is responsible deals with curbside voting. This is a method of voting whereby a qualifying voter may vote from a vehicle in lieu of coming inside to vote at a polling location. In order to take advantage of curbside voting, a registered voter must prepare and sign a sworn application. The application is similar to the application for vote by mail, and a voter must affirmatively check specific boxes on the form in order to facially demonstrate to the Early Voting Clerk (Respondent Hollins) compliance with the curbside voting statutes under the Texas Election Code.

Under Texas Election Code Sections 64.009, 82.02, and 104.001, curbside voting is restricted to three distinct categories: (i) a voter is presently sick at the time of the vote; (ii) a voter has a physical condition requiring personal assistance (e.g., is physically handicapped); or (iii) voting inside the polling location would create a likelihood of injuring the voter's health. Despite the fact that the Texas Election Code restricts curbside voting to only three (3) specific and narrowly defined categories of voters, Respondent has publicly announced his intention – using the COVID-19 pandemic as his pretext – of permitting any and all Harris County registered voters to vote curbside. Respondent previously tried to use the same improper rationale to wrongly issue of 2.37 million unsolicited ballot by mail applications. On May 25, 2020, the Texas Supreme Court rejected this same Respondent's contention that a voter's lack of immunity from COVID-19 and

11

Exhibit 3
Page 22 of 52

concern about contracting it at a polling place constitutes a "disability" within the meaning of the statute permitting a voter to cast a ballot by mail. The exact same rationale applies with equal force to condemn Respondent's latest attempt to ignore the narrow confines of the carefully defined standards for the three types of situations where a voter may properly vote curbside under the Texas Election Code. None of those instances are satisfied by a voter's lack of immunity to COVID-19, or by a generalized subjective fear of contracting a virus, or by a desire for "convenience" or to enjoy the "comfort" of one's vehicle while voting.

## II.   **Respondent Hollins Is Permitting Countywide Drive-Thru Voting In Direct Violation of the Texas Election Code**

Respondent Hollins has implemented a countywide "drive-thru" voting program for every registered voter in Harris County. A true and correct transcription of the pertinent excerpt from a press conference where Respondent Hollins identifies the program is attached to the Appendix to this Mandamus Petition. See App. D At 5-6. Beginning at the 4-minute mark, and continuing on to 4:33, Respondent Hollins said the following:

> "Drive-thru voting is an option for all voters who would like to be able to vote from the safety and comfort of your vehicle. Drive-thru voting allows those who don't qualify to vote by mail to minimize your exposure to other voters and to election workers. While we hope to have short lines across the county, drive-thru voters waiting in line will be able to wait in the comfort of your vehicle where you can listen to the radio or converse with loved ones until you are pointed to your drive-thru voting booth. We hope that Harris County voters will consider utilizing drive-thru voting."

12

Exhibit 3
Page 23 of 52

See App. D At 5-6.  In addition to Respondent Hollins' press conference, he also released a video on YouTube, which is also posted on the Harris County Clerk's Office website, just this past Friday, October 9, 2020.  See App. D At 6.  This video is entitled "Drive-Thru Voting in five steps."  Nowhere in this demonstrative video of a voter voting curbside in his vehicle is there any discussion or caution or depiction about how a voter may determine his or her eligibility to vote curbside. Nor is there any mention or depiction that a voter desiring to vote curbside must fill out a sworn application to vote curbside.  Hollins' position that anyone and everyone may vote curbside in Harris County should they wish to do so.  This is what Hollins is allowing to occur.  Finally, the video depicts curbside voting taking place outside of a polling location and that polling location is not inside of a building.  See App. D At 6.

Because Respondent Hollins is allowing Harris County Registered voters to vote curbside without regard to whether they are eligible to vote curbside, and because of the very clear threat of imminent harm which will result from ineligible curbside voting taking place in violation of the Texas Election Code.  Relators bring this Mandamus Petition to mandate compliance by the Respondent with his clear and non-discretionary ministerial duties.  As will be shown below, Respondent's directive is in conflict with the Texas Election Code and should not be countenanced by this Court.

Exhibit 3
Page 24 of 52

### III.    On July 27, 2020, Governor Abbott Unilaterally Suspended the Texas Election Code

On July 27, 2020, Governor Abbott issued an order suspending the Texas Election Code. [App. E].   Section 85.001(a) of the Texas Election Code provides that the period for early voting by personal appearance begins 17 days before election day. In his July 27, 2020 Proclamation/Order, Abbott concluded, "[I]t has become apparent that for the November 3, 2020 elections, strict compliance with the statutory requirements in Sections 85.001(a) and 86.006(a-1) of the Texas Election Code would prevent, hinder, or delay necessary action in coping with the COVID-19 disaster, and that providing additional time for early voting will provide Texans greater safety while voting in person…."  [App. E].

In his July 27, 2020 Proclamation, Abbott "suspend Section 85.001(a) of the Texas Election Code to the extent necessary to require that, for any election ordered or authorized to occur on November 3, 2020, early voting by personal appearance shall begin on Tuesday, October 13, 2020, and shall continue through the fourth day before election day."  [App. E]

### IV.    Article I §28 of the Texas Constitution Prohibits Abbott and Respondent from Suspending Laws

The Texas Bill of Rights, article I of the Texas Constitution, unequivocally addresses Governor Abbott's and Respondent Hollins' attempt to suspend the Texas

14

Exhibit 3
Page 25 of 52

Election Code. Specifically, article I, §28 of the Texas Constitution states, "No power of suspending laws in this State shall be exercised except by the Legislature."

### a. <u>Abbott Responds to Harris County Clerk's Request by Amending Code</u>

On July 22, 2020, Harris County Clerk Chris Hollins asked Governor Abbott to extend the early voting period for the November 2020 general election. [App. F]. Specifically, Clerk Hollins asked Abbott to "please increase Early Voting by at least one week, to begin not later than Tuesday, October 13, 2020." [App. F]. Soon thereafter, July 27, 2020, Governor Abbott unilaterally amended the Texas Election Code to extend early voting by six (6) days, October 13, 2020, and allowing a voter to deliver a marked mail ballot in person to the early voting clerk's office prior to and including on election day. [App. F].

### b. <u>Respondent Hollins is Implementing Abbott's Unlawful Order</u>

Respondent Hollins has curbside or drive-thru location that are currently receiving votes in a period of time, i.e., prior to October 19, 2020, when in person voting should not be occurring under the Texas Election Code. It is only because of Abbott's July 27, 2020 Proclamation suspending the Texas Election Code that voting is taking place at this point in time.

### c. <u>The United States Court of Appeals for the Fifth Circuit Recently Questioned the Constitutionality of Abbott's Authority under the Texas Disaster Act</u>

Exhibit 3
Page 26 of 52

Governor Abbott's unilateral order and suspension of the Texas Election Code allowed Respondent Hollins' drive-thru voting to begin on or about October 13, 2020.  (App. B).  The July 27, 2020 proclamation is part of the Governor's unilateral expansion of opportunities to cast an absentee ballot in Texas well beyond the stricter confines imposed by the Texas Legislature in the Election Code. Once again, Relators Hotze, Nielsen and Hemphill challenge the Governor's ability to suspend laws under the auspices of the Texas Disaster Act.  But for Abbott's July 27, 2020 proclamation unilaterally suspending the Texas Election Code §85.001(a) and moving early voting by personal appearance to October 13, 2020, Hollins' drive-thru voting scheme would not be in place at this time.

In a recent concurring opinion involving Respondent's efforts to create eleven (11) drop-off locations for marked ballots by mail, Judge James Ho concluded: "I concur fully in Judge Duncan's typically thoughtful opinion. But I also do so grudgingly. **I firmly agree that the** *federal district court usurped the authority that our Constitution vests in state legislatures to set the rules governing federal elections. But so did the Governor of Texas*—*as Judge Duncan also cautions. See supra at __ n.7. **The district court was wrong to rewrite Texas law. But the distinguished judge who did so was simply following in the Governor's footsteps. It is surely just as offensive to the Constitution to rewrite Texas election law by executive fiat as it is to do so by judicial fiat**. Yet that is what occurred here.

Exhibit 3
Page 27 of 52

Respected legislators and public leaders called on the Governor to call a special session so that legislators in both parties could consider and debate amendments to the state's election rules to accommodate voter concerns arising out of the pandemic. ***But the Governor rejected those calls, and instead issued a series of executive proclamations purporting to unilaterally "suspend" various Texas election laws.*** Those actions have generated significant controversy. Members of the Texas Supreme Court described the Governor's actions as ***"a clear abuse of discretion of a public official,"*** *In re Hotze*, __ S.W.3d __, __ (Tex. Oct. 7, 2020) (Devine, J., dissenting) (emphasis in original) (quotations omitted), that "raise[s] important questions about the constitutionality of government action during the coronavirus crisis," *Id*. at __ (Blacklock, J., concurring). Only the district court's rewriting of Texas law is before us today, however. ***And that leads us to an unfortunate irony: by setting aside only the district court's rewriting of Texas law, we must restore the Governor's rewriting of Texas law. It recalls the adage that sometimes it's only the guy who throws the second punch that gets caught.*** The Dictionary of Modern Proverbs 209 (2012). I grudgingly concur." *Texas League of United Latin American Citizens v. Hughs,* No. 20-50867 (5th Cir. October 12, 2020)(Ho, J, concurring).

Unlike the Court in *Texas League of United Latin American Citizens v. Hughs*, this Court has an opportunity to once and for all address the constitutionality of Governor Abbott's unlawful executive orders issued under the auspices of the Texas

Exhibit 3
Page 28 of 52

Disaster Act.  Relators' pray this Court will not shrink from this responsibility, but instead for the sake of Relators and all Texans stop this abuse of power by the executive branch.

## Argument

I. **Mandamus is Appropriate to Compel Compliance with a Non-Discretionary, Ministerial Duty.**

"A writ of mandamus will issue to compel a public official to perform a ministerial act." *Anderson v. Seven Points*, 806 S.W.2d 791, 793 (Tex. 1991) (citing *Womack v. Berry*, 156 Tex. 44, 291 S.W.2d 677, 682 (1956); *Turner v. Pruitt*, 161 Tex. 532, 342 S.W.2d 422, 423 (1961)).  "An act is ministerial when the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion." *Anderson*, 291 S.W.2d at 793.  That is the case here.

II. **Respondent Hollins Has a Ministerial Duty to Comply with and Enforce the Requirements of the Texas Election Code.**

A. **Respondent Hollins Has a Ministerial Duty to Review Each Sworn Application in Order to Verify that the Applicant Has Supplied All of the Required Information to Permit Curbside Voting.**

Pursuant to Section 83.002 of the Texas Election Code, Respondent Hollins, as the Harris County Clerk, is designated as the "Early Voting Clerk."  Because Section 64.009 of the Texas Election Code permits curbside voting under limited circumstances during Early Voting, Respondent Hollins' duties as the Early Voting

18

Exhibit 3
Page 29 of 52

Clerk include the enforcement of curbside voting during Early Voting.  Moreover, under Section 104.001 of the Texas Election Code, Respondent Hollins is designated as the "Early Voting Clerk" for Election Day curbside voting.  In order to enable an eligible voter to legally vote curbside, the registered voter must submit a sworn application for ballot similar to the application for a ballot by mail described in Section 84.001 (Eligible voter must make an application for an early voting ballot to be voted by mail).

The pertinent statutes for curbside voting are as follows:

Section 64.009.  VOTER UNABLE TO ENTER POLLING PLACE.

(a)     If a voter is physically unable to enter the polling place without personal assistance or likelihood of injuring the voter's health, on the voter's request, an election officer shall deliver a ballot to the voter at the polling place entrance or curb.
(b)     The regular voting procedures may be modified by the election officer to the extent necessary to conduct voting under this section.
(c)     After the voter is accepted for voting, the voter shall mark the ballot and give it to the election officer who shall deposit it in the ballot box.
(d)     On the voter's request, a person accompanying the voter shall be permitted to select the voter's ballot and deposit the ballot in the ballot box.

Sec. 82.002. DISABILITY.

(a)     A qualified voter is eligible for early voting by mail if the voter has a sickness or physical condition that prevents the voter from appearing at the polling place on election day without a likelihood of needing personal assistance or of injuring the voter's health.

TITLE 7.  EARLY VOTING
SUBTITLE B.  SPECIAL FORMS OF EARLY VOTING

Exhibit 3
Page 30 of 52

CHAPTER 104.   VOTING ON ELECTION DAY BY DISABLED VOTER FROM VOTING SYSTEM PRECINCT

Sec. 104.001.        ELIGIBILITY.

A qualified voter in whose precinct polling place voting is conducted by voting machine is eligible to vote by the early voting procedure provided by this chapter if the voter has a sickness or physical condition that prevents the voter from voting in the regular manner without personal assistance or likelihood of injuring the voter's health.

Sec. 104.002.        FORM AND CONTENTS OF APPLICATION.

An application for a ballot voted under this chapter must:
(1)      be in the form of an affidavit; and
(2)      include, in addition to the information required by the applicable provisions of Section 84.002, a statement that the applicant has not previously voted in the election.

Sec. 104.003.        TIME AND PLACE FOR VOTING.

Voting under this chapter shall be conducted on election day, beginning at 7 a.m. and concluding at 7 p.m., at the main early voting polling place.  However, if the early voting ballots voted by mail are processed at a location other than the main early voting polling place, the early voting clerk may require the voting to be conducted at that location.

Sec. 104.004.        VOTING PROCEDURE.

(a) On submission of an application to the early voting clerk, the clerk shall review the application and verify the applicant's registration status in accordance with the procedure applicable to early voting by mail.
(b) The voting shall be conducted with the balloting materials for early voting by mail.
(c)The voter must mark and seal the ballot in the same manner as if voting by mail except that the certificate on the carrier envelope need not be completed.
(d) On sealing the carrier envelope, the voter must give it to the clerk, who shall note on the envelope that the ballot is voted under this chapter.

Exhibit 3
Page 31 of 52

(e) If the voter is physically unable to enter the early voting polling place without personal assistance or a likelihood of injuring the voter's health, the clerk shall deliver the balloting materials to the voter at the polling place entrance or curb.

Sec. 104.005.        PROCESSING RESULTS.

The results of voting under this chapter shall be processed in accordance with the procedures applicable to processing early voting ballots voted by mail.

The duty to review each application is not discretionary; it is mandatory. *In re Robinson*, 175 S.W.3d 824, 830 (Tex. App. 2005) ("The use of the word shall in a statute is generally construed as creating a nondiscretionary duty."). This duty includes the specific obligation to ensure that each sworn application satisfies the criteria set forth in the Texas Election Code to permit a specific voter to vote curbside during both Early Voting and Election Day voting.

**B.     Respondent Hollins Has a Ministerial Duty to Reject an Application for Curbside Voting That does No Contain the Required Information to Permit Curbside Voting.**

Under Texas Election Code Sections 64.009, 82.02, and 104.001, curbside voting is restricted to three distinct categories: (i) a voter is presently sick at the time of the vote; (ii) a voter has a physical condition requiring personal assistance (e.g., is physically handicapped); or (iii) voting inside the polling location would create a likelihood of injuring the voter's health. Respondent Hollins, however, has announced his policy to permit ***any registered Harris County voter*** to cast their ballot via drive-thru voting. This illegal policy, which is grounded on the dubious

21

Exhibit 3
Page 32 of 52

notion that a lack of immunity from COVID-19 justifies a wholesale repudiation of the Texas Election Code, *has already been expressly rejected by the Texas Supreme Court*. *In re State of Texas*, 602 S.W.3d 549 (Tex. 2020).  Rejecting Respondent Hollins' argument in that case that a voter's lack of immunity from the disease and concern about contracting it a polling place justifies a voter's choice to case a ballot by mail, the Supreme Court made clear that a generalized fear of contracting a virus would not, standing alone, be sufficient to trigger a statutory right to vote by mail.

The Court's reasoning in *In re State of Texas*, 602 S.W.3d 549 (Tex. 2020), applies Respondent's allowing curbside voting for anyone who wants to vote curbside.  The "disability" language contained in Section 82.002(a) regarding ballots by mail tracks the same language as is contained in Sections 64, 82, and 104 regarding curbside voting. Under Texas Election Code Sections 64.009, 82.02, and 104.001, curbside voting is restricted to three distinct categories: (i) a voter is presently sick at the time of the vote; (ii) a voter has a physical condition requiring personal assistance (e.g., is physically handicapped); or (iii) voting inside the polling location would create a likelihood of injuring the voter's health.  Given this Court's decision on mail-in ballots, see *In re State of Texas*, 602 S.W.3d 549 (Tex. 2020), it is abundantly clear that Respondent Hollins may not, consistent with his ministerial duties to comply with the Texas Election Code, encourage or permit registered

Exhibit 3
Page 33 of 52

Harris County voters to engage in drive-thru voting who do not satisfy one or more of the statutorily prescribed exceptions to voting inside the polling place.

The obligation to reject insufficient applications to vote curbside is not discretionary; it is mandatory.  *See In re Robinson*, 175 S.W.3d at 830.  The duty to challenge ineligible curbside voting is not discretionary; it is mandatory.  *Id*.

**III.     Respondent Hollins is Permitting Curbside Voting to Voters Not Entitled to Vote Curbside in Breach of His Ministerial Duties under the Texas Election Code.**

The Appendix attached to this Petition contains a true and correct copy of Respondent Hollins' announcement that he will, in his official capacity as the Early Voting Clerk, permit curbside voting for all 2.37 million registered voters in Harris County.  See App. D At 5.  In fact, he started doing so on or about October 13, 2020, the new start date for early in-person voting under Governor Abbott's July 27, 2020 Proclamation. This is a clear and direct violation of his duties to enforce the Texas Election Code.  Respondent Hollins has a non-discretionary, ministerial duty to limit curbside voting solely to those registered voters who submit facially valid sworn applications to vote curbside.  All other requests to vote curbside must be denied. "Failure to perform his duty subjects [Respondent Hollins] to mandamus." *Bejarano v. Hunter*, 899 S.W.2d 346, 350 (Tex. App. 1995). Absent an order compelling Respondent Hollins to comply with his ministerial duties under the Texas Election

Exhibit 3
Page 34 of 52

Code, ineligible applicants and/or facially invalid sworn applications will be approved.

## IV.    Relators Are Being Harmed, Have Standing, and Will Continue to be Harmed, Absent Relief.

Respondent Hollins' non-compliance with the law is harming the interests of Relators.  With respect to the Harris County Republican Party, demonstrated in the affidavit attached hereto, Respondent's policy of permitting the counting of ineligible and illegal ballots cast curbside, will continue to harm this Relator's mission and purpose, absent relief.  Relator Harris County Republican Party has standing to complain because, as an integral part of its public interest mission, this Relator is committed to advancing limited government, lower taxes, less spending, and individual liberty.  This Relator's specific goals are to grow the Republican Party by reaching new voters, advance the Platform, which is grounded in conservative principles, and to keep Texas prosperous and free.  See App. B.

With respect to Relator Hotze, he has standing because he is threatened with a violation of his right to vote.  "Undeniably the Constitution of the Untied States protects the right of all qualified citizens to vote, in state as well as in federal elections." *Reynolds v. Sims*, 377 U.S. 533, 554 (1964).  This right "can neither be denied outright. . . nor destroyed by alteration of ballots. . . nor diluted by ballot-box stuffing." *Id*.  "The right to vote is 'individual and personal in nature,' and 'voters who allege facts showing disadvantage to themselves as individuals have standing

Exhibit 3
Page 35 of 52

to sue' to remedy that disadvantage." *Gill v. Whitford*, 138 S. Ct. 1916, 1920 (2018) (quoting *Reynolds*, 377 U.S. at 561 and *Baker v. Carr*, 369 U.S. 186, 206 (1962)). As demonstrated in his attached affidavit, Dr. Hotze is a registered voter in Harris County, Texas.  See App. A.  Dr. Hotze intends to vote in the 2020 General Election and in other future elections in Harris County, Texas.  See App. A.  Dr. Hotze is very concerned that the Harris County Clerk is allowing a policy to permit curbside voting by persons who are ineligible to vote curbside.  If this is permitted, then the outcome of the election will be in doubt.  Accordingly, Relator Hotze objects to the casting and to the counting of any ineligible or illegal curbside voting, as the consequence of permitting such activity hurts not only the integrity and the reported outcomes of the election for all of the candidates and all of the voters who voted, but it could also dilute or otherwise diminish and cancel Relator Hotze's casting of a legal vote for the candidates of his choice in the General Election.

The evidence in the Appendix shows that there is an imminent threat that illegal curbside votes will be cast and counted during both Early Voting and Election Day voting in Harris County.  Pursuant to Section 221.003(b) of the Texas Election Code, illegal votes are votes which may not properly be cast and counted.  Should Respondent Hollins be permitted to continue to allow illegal curbside votes, then the only remedy would be for a defeated candidate to file an election contest after the results of the election are certified by the canvassing authority pursuant to Section

25

Exhibit 3
Page 36 of 52

221 of the Texas Election Code.  But Relator Hotze has no control over whether an election contest may be filed, as he is not a candidate on the ballot.  Irrespective of whether a contest is filed, the harm to Dr. Hotze is the same:  his legal vote is at risk of being cancelled by an illegal vote.  Dr. Hotze is therefore at risk of having his vote canceled out by an ineligible vote.  The risk of injury to his right to vote give Dr. Hotze standing.

With respect to Relator Hemphill, she is a candidate on the November 3, 2020 general election ballot in Harris County, Texas and will be irreparably harmed if this Court allows Respondent's illegal conduct to occur. [App. C]  It will be practically impossible to identify the curbside voters who did not qualify under the Texas Election Code and vote during the period allowed by Governor Abbott's July 27, 2020 Proclamation.

**V.    Harris County Clerk Hollins is Violating the Texas Election Code**

Respondent Chris Hollins is responsible for administering elections in Harris County.   On July 27, 2020, Governor Abbott issued a Proclamation suspending Texas Election Code sections 85.001(a) for the November 3rd, 2020 general election.

**a.  Texas Election Code Sets Early Voting Dates**

Texas Election Code Sec. 41.001(a)(3) provides uniform election dates:

UNIFORM ELECTION DATES.

26

Exhibit 3
Page 37 of 52

(a)  Except as otherwise provided by this subchapter, each general or special election in this state shall be held on one of the following dates:

(3)  the first Tuesday after the first Monday in November.

The general election is set for November 3, 2020.

The Texas Election Code §85.001 identifies dates for early voting:

Sec. 85.001. EARLY VOTING PERIOD.

(a)     The period for early voting by personal appearance begins on the 17th day before election day and continues through the fourth day before election day, except as otherwise provided by this section.

The Texas Election Code contains a provision specifically addressing the situation where it is not possible for early voting to begin on the prescribed date, stating, "If because of the date for which an election is ordered it is not possible to begin early voting by personal appearance on the prescribed date, the early voting period shall begin on the earliest date practicable after the prescribed date as set by the authority ordering the election."   Texas Elect. Code § 85.001(d). Unlike Governor Abbott's July 27, 2020 Order, the Texas Election Code does not move the date back, instead it sets the new date to begin early voting after the prescribed date. Here, Governor Abbott is unilaterally taking the opposite approach, extending the early voting period by almost a week.

**b.  <u>The Texas Election Code Establishes When A Voter Can Participate in Curbside Voting.</u>**

27

Exhibit 3
Page 38 of 52

Texas Election Code 64.009(a) provides that a voter who cannot physically enter the polling location without personal assistance or if there is a likelihood of injury to the voters health, the voter can request an election officer to deliver a ballot to the voter at the polling place entrance or curb.  Tex. Elec. Code 64.009 (a). Accordingly, the polling location has to be open for curb side voting to occur and, therefore, the date curbside or drive-thru voting begins is the start of in-person early voting.  Governor Abbott has unilaterally moved this dates forward from October 19, 2020 to October 13, 2020.

c. **The Plain Language of Texas Election Code §85.001(a) Prohibits Respondent from Allowing Curbside Voting on October 13, 2020.**

Texas statutes are to be interpreted based on their plain language. *See Leland v. Brandal*, 257 S.W.3d 204, 206 (Tex. 2008). The Court presumes the Legislature included each word for a purpose and that words not included were purposefully omitted. *In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008). It also presumes the Legislature understood and followed the rules of English grammar. Tex. Gov't Code § 311.011; *See also* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 140 (2012) (describing the presumption as "unshakeable").

The plain language of Texas Election Code §85.001(a) makes it clear that early voting can begin no earlier than the 17th day before election day. *Id*. Texas

Exhibit 3
Page 39 of 52

Election Code §85.001 does not allow Respondent Collins to move early voting beyond the 17th day before the election.

If the Legislature had wanted to give Governor Abbott and thus Respondent the discretion to move up or change the start date for early voting (and thus curbside voting), they could have done so.  Instead, the Legislature limited the start of early voting by personal appearance to the 17th day before election day, October 19, 2020.

> **d. Due to the Early Start Date for Early In Person Voting, and Respondent's Illegal Definition of Curbside Voting (Drive-Thru Voting), It Will Not be Possible for Poll Watchers to be Present to View the Curbside or Drive-Thru Voting.**

Under Hollins' scheme, any voter can utilize drive-thru or curbside voting at one of ten (10) locations from October 13, 2020 through election day. This scenario creates an opportunity ripe for fraud and is inconsistent with Texas law regarding curbside voting and will be impossible for poll watchers to view what is happening in the interaction that occurs between the election official and the voter in a curbside voting situation.

## VI. Respondent Hollins' Conduct and the July 27, 2020 Order Suspending the Texas Election Code are Unconstitutional

### a. Respondent Hollins' Conduct Violates Article I, Section 28 of the Texas Constitution

"The Constitution is not suspended when the government declares a state of disaster."  *In re Abbott*, No. 20-0291, 2020 WL 1943226, at *1 (Tex. Apr. 23, 2020). During a pandemic "the judiciary, the other branches of government, and our fellow

Exhibit 3
Page 40 of 52

citizens—must insist that every action our governments take complies with the Constitution, especially now. If we tolerate unconstitutional government orders during an emergency, whether out of expediency or fear, we abandon the Constitution at the moment we need it most." *Id.* "When properly called upon, the judicial branch must not shrink from its duty to require the government's anti-virus orders to comply with the Constitution and the law, no matter the circumstances." *Id*.

Government power cannot be exercised in conflict with the constitution, even in a pandemic. *In re Abbott*, 2020 WL 1943226 at *1 (Tex. Apr. 23, 2020). Texas law does not and cannot empower a Governor to unilaterally suspend the laws of the State of Texas. Article I, § 28 of the Texas Constitution states, "No power of suspending laws in this State shall be exercised except by the Legislature." The Texas Supreme Court has long held that the Legislature cannot delegate "to anyone else the authority to suspend a statute law of the state." *Brown Cracker & Candy Co. v. City of Dallas*, 104 Tex. 290, 294-95 (1911); *Arroyo v. State*, 69 S.W. 503, 504 (Tex. Crim. App. 1902) ("Under the constitution, the legislature ha[s] no right to delegate its authority . . . to set aside, vacate, suspend, or repeal the general laws of this state.").

> "[P]rior to 1874 this section was as follows: 'No power of suspending laws in this state shall be exercised, except by the legislature, *or its authority*'" (emphasis added). *Arroyo*, 69 S.W. at 504. This constitutional provision was then specifically

Exhibit 3
Page 41 of 52

amended to remove the provision allowing the Legislature to delegate its suspension power by "its authority." *Id.* This was expressly done to remedy "the history of the oppressions which grew out of the suspension of laws by reason of such delegation of legislative authority and the declaration of martial law." *Id.*

Article I, §28 was created in part in response to then-Governor F.J. Davis "declar[ing] . . . counties under martial law" and depriving of liberty "offenders by court martial in Houston," George D. Braden, The Constitution of the State of Texas: An Annotated and Comparative Analysis 84 (1977). Texas Government Code §418 is therefore unconstitutional on its face because it purports to delegate legislative power to suspend laws to the Governor in contravention of Texas Constitution, Art. I, §28 and Art. II, §1.

As Abbott's July 27, 2020 Order suspends several provisions of the Texas Election Code, and on its face admits that Abbott is suspending laws in accordance with Texas Gov't Code Chapter 418, the Order itself is an unconstitutional suspension of the laws and, therefore, violate Article I, §28 of the Texas Constitution and are "null and void." See *Arroyo*, 69 S.W. at 504. Additionally, to the extent the Texas Disaster Act allows for the suspension of laws by the Governor, it is unconstitutional and void.

The Texas Constitution limits Abbott's and Respondent Hollins' authority even in times of crisis or "extraordinary occasions." See Tex. Const. art IV, §8 (stating on "extraordinary occasions" Governor may convene the Texas Legislature).

31

Exhibit 3
Page 42 of 52

If not limited, and if Constitutional rights may be suspended or infringed unilaterally and for unlimited duration whenever a Governor "declares" an emergency, then such rights are wholly illusory. Governor Abbott's July 27, 2020 Order and Respondent Hollins' enforcement of same, violates the Texas Constitution and therefore should be declared void and unenforceable.

### b.   Hollins' Conduct Violates Texas Government Code, Chapter 418

Assuming, arguendo, the Texas Disaster Act is legal, Hollins' conduct and the July 27, 2020 Order allowing it to begin as early as October 13, 2020 violates Texas Government Code § 418 et seq., the Texas Disaster Act. Specifically, the Disaster Act limits Governor Abbott's power to those provisions expressly described in the statute. The Disaster Act does not contain any language expressly allowing Governor Abbott to amend the Texas Election Code in the manner he has chosen to do so.

### c.   Texas Government Code, Chapter 418, Violates the Texas Constitution

Texas Government Code Chapter 418 is unconstitutional on its face and as applied. Texas Government Code Chapter 418 is unconstitutional on its face because it is an improper delegation of legislative authority expressly prohibited by Texas Constitution, Art. II, §1. Abbott's July 27, 2020 Order is facially unconstitutional because Defendant issued the Order pursuant to Chapter 418 (an unconstitutional statute) and because they purport to exercise the power to suspend

Exhibit 3
Page 43 of 52

laws which authority is reserved exclusively to the legislature. Tex. Const. art. I, §28.  As such, Texas Government Code Chapter 418, and all orders issued pursuant thereto, should be declared unconstitutional and rendered null and void.

> **d.**    **Abbott's July 27, 2020 Order Violates the Separation of Powers Doctrine**

The July 27, 2020 Order Respondent Hollins is tasked with implementing/enforcing, violates the separation of powers provision of the Texas Constitution because it suspends laws.  Article II, §1 of the Texas Constitution provides that "The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted." Tex. Const. art. II, §1.   The Texas Constitution vests the Legislature with "legislative power, *i.e.*, the law-making power of the people."  Tex. Const. art. 3, § 1.

Only the Legislature can exercise law-making power, subject to restrictions imposed by the constitution.  Tex. Const. art. II, §1.   Because of the Texas Constitution's "explicit prohibition against one government branch exercising a power attached to another," *Perry v. Del Rio*, 67 S.W.3d 85, 91 (Tex. 2001),

exceptions to the constitutionally-mandated separation of powers may "never be implied in the least; they must be 'expressly permitted' by the Constitution itself." *Fin. Comm'n of Texas v. Norwood*, 418 S.W.3d 566, 570 (Tex. 2013).   These restrictions must be expressed or clearly implied. *Jones v. State*, 803 S.W.2d 712, 716 (Tex. Crim. App. 1991)  (citing  *Gov't Servs. Ins. Underwriters v. Jones*, 368 S.W.2d 560, 563 (Tex. 1963)).

The Legislature may delegate some of its powers to another branch, but only if those powers are not more properly attached to the legislature by Constitutional mandate. For example, Legislative power cannot be delegated to the executive branch, either directly or to an executive agency. *State v. Rhine*, 297 S.W.3d 301, 306 (Tex. Crim. App. 2009). The issue becomes a question of the point at which delegation becomes unconstitutional. *Id.* The Texas Supreme Court has described the problem: "the debate over unconstitutional delegation becomes a debate not over a point of principle but over a question of degree." *Tex. Boll Weevil Eradication Found., Inc.*, 952 S.W.2d 454, 466 (Tex. 1997).

The Texas Court of Criminal Appeals in *Ex parte Granviel*, 561 S.W.2d 503 (Tex. Crim. App. 1978), stated that sufficient standards are necessary to keep the degree of delegated discretion below the level of legislating. The existence of an area for exercise of discretion by the executive branch requires that standards are formulated for guidance and there is limited discretion.  *Ex parte Granviel*, 561

Exhibit 3
Page 45 of 52

S.W.2d at 514.   The statute must be sufficiently complete to accomplish the regulation of the particular matters falling within the legislature's jurisdiction, the matters of detail that are reasonably necessary for the ultimate application, operation and enforcement of the law may be expressly delegated to the authority charged with the administration of the statute. *Ex parte Granviel*, 561 S.W.2d at 514. Therefore,  if the Legislature has not provided sufficient standards to guide the executive's discretion and the delegated power is legislative, that executive has been granted a power that is more properly attached to the legislature and the delegation is an unconstitutional violation of separation of powers.  *State v. Rhine*, 297 S.W.3d 306 (Tex. Crim. App. 2019).

Texas Government Code Chapter 418 not only does not provide robust, specific standards related to delegation of legislative authority, it provides ***NO*** standards to guide Defendant's discretion when identifying penalties, including fines and incarceration.

## VII.   <u>Relators Have No Other Adequate Remedy</u>.

"Mandamus will not issue where there is 'a clear and adequate remedy at law[.]'" *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (quoting *State v. Waler*, 679 S.W.2d 484, 485 (Tex. 1984)

Texas Election Code Section 273.081 allows "injunctive relief" to "prevent" violations from occurring.   Relators seek injunctive and or mandamus relief

Exhibit 3
Page 46 of 52

prohibiting Respondent Hollins from engaging in his illegal "drive-thru" voting programs.   Alternatively, Relators seek affirmative compliance with ministerial duties.   Relators further seek mandamus and/or injunctive relief prohibiting Hollins from engaging in curbside as defined by the Texas Election Code from October 13 until October 19, 2020.   Relators further request this Court enjoin Governor Abbott from further implementing his July 27, 2020 Proclamation and any other executive orders suspending laws under the Texas Disaster Act.

Even where "a remedy at law may technically exist. . . it may nevertheless be so uncertain, tedious, burdensome, slow, inconvenient, inappropriate or ineffective as to be deemed inadequate." *Smith v. Flack*, 728 S.W. 2d 784, 792 (Tex. Crim. App. 1987).   Whether mandamus is appropriate "depends heavily on the circumstances and is better guided by general principles than by simple rules." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 137 (Tex. 2004) (orig. proceeding). Given the proximity to election day and the importance of the issues presented, "the benefits of mandamus review outweigh the detriments." *Id*. At 136.   To proceed in any other manner would be too uncertain, slow, inconvenient, and ineffective under these circumstances. *Flack*, 728 S.W.2d at 792.

## Prayer

Exhibit 3
Page 47 of 52

For these reasons, Realtors respectfully request that the Court grant this Petition for Writ of Mandamus and enter an order compelling Respondent Hollins to do the following:

1.   Review all curbside voting applications submitted by an person requesting to vote curbside during either Early Voting or Election Day Voting in Harris County for facial compliance with Texas Election Code sections 64.009, 82.002, and 1104.001-104.005, as required by the Texas Election Code Sections 83.002 and 014.001;

2.   Reject all curbside voting applications submitted by any person requesting to vote curbside during either Early Voting or Election Day Voting in Harris County which lack facial compliance with Texas Election Code Sections 64.009, 82.002, and 104.001-104.005, as required by the Texas Election Code Sections 83.002 and 104.001;

3.   Reject any curbside voting efforts during either Early Voting or Election Day Voting in Harris County which are not in compliance with Texas Election Code Sections 64.009, 82.002, and 104.001-104.004, as required by the Texas Election Code Sections 83.002 and 104.001; and

4.   Require Respondent to only allow curbside voting as defined by the Texas Election Code to begin on October 19, 2020 and reject the authority Respondent claims as a basis for beginning his curbside

37

Exhibit 3
Page 48 of 52

voting on October 13, 2020-the Texas Disaster Act and Governor Abbott's July 27 2020 Proclamation suspending the Texas Election Code.

Dated:          October 15, 2020

                                        Respectfully submitted,

                                         /s/ Jared R. Woodfill
                                        JARED R. WOODFILL
                                        State Bar No. 00788715
                                        Woodfill Law Firm, P.C.
                                        3 Riverway, Suite 750
                                        Houston, Texas 77056
                                        P:(713) 751-3080
                                        Fax: (713) 751-3058
                                        woodfillservice@gmail.com
                                        *Counsel for Relators*

Exhibit 3
Page 49 of 52

## TRAP 52.3(J) CERTIFICATION

Pursuant to TRAP 52.3(j), the undersigned certifies that he has reviewed the above Petition for Writ of Mandamus and concluded that every factual statement in the petition is supported by competent evidence included in the appendix and or the record.

/s/ Jared Woodfill
Jared Woodfill

39

Exhibit 3
Page 50 of 52

## CERTIFICATE OF SERVICE

By affixing my signature above, I , Jared Woodfill, hereby certify that a true and correct copy of the above Original Petition for Writ of Mandamus has been delivered via electronic mail to the parties below on the 15th day of October, 2020.

/s/Jared Woodfill
Jared Woodfill

40

Exhibit 3
Page 51 of 52

## CERTIFICATE OF COMPLIANCE

I, Jared Woodfill, Counsel for Relators certify that this document was generated by a computer using Microsoft Word which indicates that the word count of this document is 7,454. The typeset is Times New Roman 14 pt for text.

/s/ Jared Woodfill
Jared Woodfill

41

Exhibit 3
Page 52 of 52