# Exhibit 4

NO. _____

# In the Supreme Court of Texas

IN RE STEVEN HOTZE, M.D., WENDELL CHAMPION, HON. STEVE TOTH, AND SHARON HEMPHILL,

*Relators*,

**On Petition for Writ of Mandamus to the Harris County Clerk**

## PETITION FOR WRIT OF MANDAMUS

JARED WOODFILL
Woodfill Law Firm, P.C.
State Bar No. 00788715
3 Riverway, Ste. 750
Houston, Texas 77056
(713) 751-3080 (Telephone)
(713) 751-3058 (Facsimile)
woodfillservice@gmail.com

*Counsel for Relators*

i

Exhibit 4
Page 1 of 39

## Identity of Parties and Counsel

1. **Relators**

Steven F. Hotze, MD

███████████████████

Katy, Texas 77450 (Harris County)

Dr. Hotze is a registered voter in Harris County and will be voting in the general election.

Hon. Steve Toth

███████████████████

Conroe, Texas 77384.

State Representative Toth is a member of the Texas House of Representatives, representing District 15. Representative Toth is on the November 3, 2020 ballot.

Wendell Champion

███████████████████

Houston, Texas 77002

Mr. Champion is the Republican nominee for Texas' 18th Congressional District, Texas.  He is on the ballot in the general election on November 3, 2020.

Sharon Hemphill

███████████████████.

Spring, Texas 77379

Sharon Hemphill is a registered voter in Harris County.  Sharon Hemphill is the Republican nominee for judge of the Texas 80th District Court, Harris County, Texas. She is on the ballot in the general election on November 3, 2020.  She advanced from the Republican primary on March 3, 2020.

*Lawyer for Relators:*

Jared R. Woodfill

Exhibit 4
Page 2 of 39

State Bar No. 00788715
3 Riverway, Ste. 750
Houston, Texas 77056
Tel: (713) 751-3080
Fax: (713) 751-3058
woodfillservice@gmail.com

2.     **Respondent**

<u>Hon. Chris Hollins</u>
Harris County Clerk
201 Caroline Street, Suite 310
Houston, Texas 77002

*Lawyer for Respondent Hollins:*

Vince Ryan
Office of the Harris County Attorney
1019 Congress, 15th Floor
Houston, Texas 77002
vince.ryan@cao.hctx.net

iii

Exhibit 4
Page 3 of 39

# Table of Contents

Identity of Parties and Counsel ................................................................. ii

Table of Contents ................................................................................. iv

Index of Authorities ........................................................................... vii

Statement of the Case ........................................................................... 1

Statement of Jurisdiction ....................................................................... 5

Statement of the Issues Presented ........................................................... 7

Introduction ...................................................................................... 8

Statement of Facts .............................................................................. 10

    I.    Respondent Hollins' Ministerial Duties Under the Texas Election Code ....................................................................................... 10

    II.    Respondent Hollins Is Permitting Countywide Drive-Thru Voting In Direct Violation of the Texas Election Code ..................................... 11

Arguments ........................................................................................ 12

    I.    Hollins is Violating the United States Constitution ........................... 12

        A.    The Election Clause Requires this Court to Uphold the Manner of Voting Defined by the Legislature in the Texas Election Code ............................................................................. 12

            1.    The Texas Election Code Should Be Strictly Construed ................................................................... 14

            2.    Hollins Attempts to Redefine Polling Location ............. 15

            3.    Texas Attorney General Recently Addressed Drive-Thru Voting ................................................................. 18

Exhibit 4
Page 4 of 39

4.   The Texas Legislature has Rejected "Drive-Thru" Voting ........................................................................18

5.   Drive-Thru Voting Locations Placed in Democratic Strongholds ..................................................................19

6.   Over 100,000 Illegal Drive-Thru Votes Have Been Cast ........................................................................19

B.   Hollins' Drive-Thru Voting Scheme Violates the Fourteenth Amendment..................................................................19

II.   Mandamus is Appropriate to Compel Compliance with a Non-Discretionary, Ministerial Duty.........................................20

A.   Respondent Hollins Has a Ministerial Duty to Review Each Sworn Application in Order to Verify that the Applicant Has Supplied All of the Required Information to Permit Curbside Voting.......................................................................21

B.   Respondent Hollins Has a Ministerial Duty to Reject an Application for Curbside Voting That Does Not contain the Required Information to Permit Curbside Voting ....................21

III.   Respondent Hollins is Permitting Curbside Voting to Voters Not Entitled to Vote Curbside in Breach of His Ministerial Duties Under the Texas Election Code....................................................23

IV.   Relators Are Being Harmed, and Will Continue to Be Harmed, Absent Relief ...............................................................24

V.   Realtors Have No Other Adequate Remedy ........................25

Prayer ...........................................................................25

Certificate of Service ........................................................28

TRAP 52.3(J) Certification ..................................................29

v

Exhibit 4
Page 5 of 39

Certificate of Compliance .........................................................................30

Appendix

Exhibit 4
Page 6 of 39

## Index of Authorities

**CASES**                                                             **PAGE(S)**

*Anderson v. Seven Points*, 806 S.W.2d 791 (Tex. 1991)....................................20, 21

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787 (2015) ...............................................................................................................13

*Baker v. Carr*, 369 U.S. 186 (1962)..........................................................................25

*Bejarano v. Hunter*, 899 S.W.2d 346 (Tex. App. 1995).........................................23

*Bush v. Gore*, 531 U.S. 98 (2000).................................................................13, 14, 20

*Bush v. Palm Beach Cty. Canvassing Bd.*, 531 U.S. 70, 121 S. Ct. 471 (2000) .....14

*Cooke v. Garlike*, 531 U.S. 510 (2001) ............................................................12, 13

*Dickson v. Strickland*, 265 S.W. 1012 (Tex. 1924) ...................................................5

*Gill v. Whitford*, 138 S. Ct. 1916 (2018)..................................................................25

*Grant v. Ammerman*, 437 S.W.2d 547 (Tex. 1969)...................................................5

*In re Carlisle*, 209 S.W.3d 93 (Tex.2006) .................................................................6

*In re Hotze*, 2020 Tex. Lexis 680 (July 17, 2020)............................................14, 15

*In re Hotze*, No. 20-0819 (October 22, 2020).............................................15, 16, 17

*In re Robinson*, 175 S.W.3d 824 (Tex. App. 2005)............................................21, 23

*In re State*, 602 S.W.3d 549 (Tex. 2020).....................................................2, 8, 16, 22

*In re Tex. Senate*, 36 S.W.3d 119 (Tex. 2000) ..........................................................6

*In re Woodfill*, 470 S.W.3d 473 (Tex. 2015) .............................................................6

*McPherson v. Blacker*, 146 U.S. 1, 13 S. Ct. 3 (1892)............................................14

Exhibit 4
Page 7 of 39

*Reynolds v. Sims*, 377 U.S. 533 (1964)............................................................24, 25

*Richardson v. Hughs*, No. 20-50774, 2020 WL 6127721, at *1–2 (5th Cir. Oct. 19, 2020) ......................................................................................................................15

*Sears v. Bayoud*, 786 S.W.2d 248 (Tex. 1990)........................................................6

*Smiley v. Holm*, 285 U.S. 355 (1932) ....................................................................13

*State v. Hollins*, No. 20-0729, 64 Tex. Sup. Ct. J. 40, 2020, 2020 Tex. LEXIS 929 (Tex. Oct. 7, 2020) ..................................................................................................14

*Storer v. Brown*, 415 U.S. 724 (1974) ...................................................................13

*Turner v. Pruitt*, 161 Tex. 532, 342 S.W.2d 422 (1961) ........................................20

*Womack v. Berry*, 156 Tex. 44, 291 S.W.2d 677 (1956).........................................20

**Constitutional Provisions, Statutes, and Rules**:

USCS Const. Amend. 14 ......................................................................................2, 7

USCS Const. Amend. 14, § 1 ................................................................................19

USCS Const. Art. I, § 4, Cl 1.......................................................................2, 7, 12, 13

USCS Const. Art. II, § 1, Cl 2 ...............................................................................13

Tex. Elec. Code § 64..............................................................................................22

Tex. Elec. Code § 64.001, .009(a) .........................................................................16

Tex. Elec. Code § 64.009.....................................................................1, 5, 10, 20, 21, 22

Tex. Elec. Code § 64.09(a) ....................................................................................16

Tex. Elec. Code § 82.............................................................................................22

Exhibit 4
Page 8 of 39

Tex. Elec. Code § 82.002(a) ......................................................................22

Tex. Elec. Code § 82.02 ............................................1, 2, 5, 10, 20, 22

Tex. Elec. Code § 83.002 ........................................................................3, 8

Tex. Elec. Code § 84.001 ............................................................................21

Tex. Elec. Code § 85.036(a) ......................................................................17

Tex. Elec. Code § 85.062(b) ......................................................................17

Tex. Elec. Code § 104 ..................................................................................22

Tex. Elec. Code § 104.001 ......................................................................3, 22

Tex. Elec. Code § 104.001-104.005 .........................................1, 5, 10, 20

Tex. Elec. Code § 273.061 ........................................................................5, 6

Tex. Elec. Code § 273.081 ..........................................................................25

Tex. R. App. P. 52.3 ......................................................................................5

**Other Authorities:**

Erin Anderson, *Texas AG: Legal Action for Unlawful Drive-Thru Voting*, Texas Scorecard, October 20, 2020 ..................................................................19

Webster's New collegiate Dictionary (1975) ..........................................17

Exhibit 4
Page 9 of 39

**Statement of the Case**

**Nature of the Case**

Respondent Harris County Clerk Chris Hollins' Offices created a new "manner" of voting in Harris County, "drive-thru" voting.  Drive-thru voting is not recognized in the Texas Election Code.  Hollins' drive-thru voting scheme allows any and all Harris County registered voters – regardless of whether they are permitted to do so under the Texas Election Code – to engage in early and election day "drive-thru" voting.  Hollins who is a Democrat and currently serves as Deputy Vice-Chair of Finance for the Democratic Party of Texas, has identified ten (10) drive-thru voting locations and placed nine (9) of the locations in heavily Democratic areas.  [App. ____]

Through the Texas Election Code, the Legislature chose not to recognize drive-thru voting;  however, the Texas Legislature did expressly create a narrowly defined exception to voting in person for those who are physically unable to enter the polling place without personal assistance or likelihood of injuring the voter health - "curb-side voting."   Tex. Elect. Code §§64.009, 82.02, and 104.001-104.005.

The Legislature restricted curbside voting to three distinct categories: (i) presents sick at the time of the vote; (ii) a voter has a physical condition requiring personal assistance (e.g., is physically handicapped); or (iii) voting inside the polling

Exhibit 4
Page 10 of 39

location would create a likelihood of injuring the voter's health.  *Id.*  Additionally, if a voter qualifies as disabled under Texas Election Code § 82.002 the voter is eligible to vote by mail.  This Court recently held that a voter's lack of immunity to COVID-19, without more, is not a "disability" as defined by the Election Code, and therefore, is not a sufficient basis to permit a voter to validly vote by mail.  *In re State*, 602 S.W.3d 549, 550 (Tex. 2020) (a voter's general fear or lack of immunity from COVID-19 is not a "disability" as defined by the Election Code).

By indiscriminately encouraging and allowing any and all Harris County registered voters to cast their ballots curb side on this invalid basis, Respondent's ultra vires act regarding drive-thru voting is a violation of state and federal law and must be stopped. By circumventing the Texas Legislature and implementing a manner of voting not recognized in the Texas Election Code, Respondent is violating Art. I, section IV, clause 1 of the United States Constitution.  Additionally, by adopting a manner of voting that is inconsistent with the Texas Election Code and not adopted by any other county in Texas, Respondent is violating the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

Accordingly, Relators seek mandamus relief to compel Respondent to perform his nondiscretionary, ministerial duties to restrict curbside voting to only those Harris County registered voters who have submitted sworn applications which

Exhibit 4
Page 11 of 39

facially satisfy at least one of the specific categories permitting curbside voting under the Texas Election Code.

**Respondent**

Chris Hollins, in his official capacity as the Harris County Clerk, who, under Section 83.002 of the Texas Election Code (early voting) and Section 104.001 of the Texas Election Code (election day voting), is designated as the "Early Voting Clerk."

**Relief Requested**

Respondent should be required to stop drive-thru voting and only allow curb-side voting for registered voters in Harris County who have submitted the required sworn application to vote curbside or who submitted an application which facially satisfies any of the required criteria for curb-side voting.

On Saturday, October 31, 2020, all the Judge's Booth Controllers ("JBC") from early voting will be delivered to central count at NRG.  [App.____].  Seals will be broken and the memory cards - Mobile Ballot Box ("MBB") will be accessed to count the number of ballots contained in each MBB-not tally the vote. [App. A]. On the morning of November 3, 2020, the same MBBs will be connected to the Tally machine to download the actual ballots contained. [App. A].  The Tally machine will then conduct the counting/tabulation process for early votes utilizing the drive thru process.  [App. A].  After 7:00 p.m. on November 3, 2020, Respondent will enter

Exhibit 4
Page 12 of 39

the MBBs from election day votes at drive thru location into the Tally machine to conducting the counting/tabulation of election day votes at drive-thru locations. [App. A].  Accordingly, Relators are asking this Court to require all memory cards from the ten (10) drive-thru voting locations be secured and not entered or downloaded into the Tally machine until this Court issues an order on Relators' Petition for Writ of Mandamus.

Exhibit 4
Page 13 of 39

## Statement of Jurisdiction

Texas Election Code §273.061 gives the Court original jurisdiction to issue a writ of mandamus "to compel the performance of any duty imposed by law in connection with the holding of an election." The Relators have a compelling reason to request mandamus from this Court in the first instance. *See* Tex. R. App. P. 52.3. The November 3rd, 2020 general election is quickly approaching and Respondent is allowing drive-thru voting for all voters regardless of whether the voter: (i) is sick at the time of the vote; (ii) has a physical condition requiring personal assistance (e.g., is physically handicapped); or (iii) voting inside the polling location would create a likelihood of injuring the voter's health. Tex. Elec. Code §§ 64.009, 82.02 and 104.001-005.

This Court has stated "that an election in this state is not a single event, but a *process*, and that the entire *process* is subject to contest." *Dickson v. Strickland*, 265 S.W. 1012, 1018 (Tex. 1924). This case involves the enforcement by mandamus of duties involved with the "holding of an election," an election being the *entire process* including the date early voting begins and when a voter can deliver a marked ballot by mail in person to the early voting clerk's office. *Grant v. Ammerman*, 437 S.W.2d 547, 548-49 (Tex. 1969). Mandamus will lie to enforce ministerial duties arising in connection with an election. *Id.*

5

Exhibit 4
Page 14 of 39

In this Petition for Writ of Mandamus, Relators are challenging the *process* of the election, i.e., the manner in which the Respondent is implementing a drive-thru voting scheme that is not recognized under the Texas Election Code. Relators include federal and state candidates on the November 3, 2020 ballot in Harris County, Texas, (Wendell Champion, Hon. Steve Toth, and Sharon Hemphill) and a voter/activist (Dr. Steven Hotze).

Relators ask the Court to use the power granted by the Election Code "to compel the performance of any duty imposed by law in connection with the holding of an election." Tex. Elec. Code § 273.061.

When time is of the essence, this Court has not hesitated to exercise its mandamus authority. *See*, e.g., *In re Woodfill*, 470 S.W.3d 473, 481 (Tex. 2015) (per curiam); *In re Carlisle*, 209 S.W.3d 93, 95-96 (Tex. 2006) (per curiam); *In re Tex. Senate*, 36 S.W.3d 119, 121 (Tex. 2000); *Sears v. Bayoud*, 786 S.W.2d 248, 250 & n.1 (Tex. 1990). The Court should exercise its original mandamus authority again in that Hollins illegal actions have begun and will continue through election day.

Exhibit 4
Page 15 of 39

## Statement of the Issues Presented

1.      Does Respondent Hollins' drive-thru voting violate Article I, Section IV, Clause 1 of the United States Constitution in that Hollins redefines the manner of conducting elections in Harris County contrary to the Texas Election Code?

2.      Does Respondent Hollins' drive-thru voting violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution?

3.      Is Respondent failing to perform his nondiscretionary, ministerial duties by encouraging and permitting Harris County registered voters to cast their ballots curbside/drive-thru even though they do not satisfy any of the three specific categories permitting curbside voting under the Texas Election Code?

Exhibit 4
Page 16 of 39

### Introduction

Under Section 83.002 of the Texas Election Code, Respondent has the responsibility of enforcing the election laws to ensure a fair and honest election in Harris County.  Despite the fact that the Texas Election Code restricts curb-side voting to specific and narrowly defined categories of voters, and fails to recognize drive-thru voting, Respondent has implemented a drive-thru voting scheme that is violating the law.   Respondent abusing the COVID-19 pandemic as his pretext – of permitting any and all Harris County registered voters to vote curbside or as Hollins terms it-drive-thru.   On May 15, 2020, the Texas Supreme Court rejected Respondent's contention that a voter's lack of immunity from COVID-19 and concern about contracting it at a polling place constitutes a "disability" within the meaning of the statute permitting a voter to cast a ballot by mail. *In re State*, 602 S.W.3d 549, 550 (Tex. 2020).  The exact same rationale applies with equal force to Respondent's latest attempt to ignore the narrow confines of the carefully defined standards for the three types of situations where a voter may properly vote curbside under the Texas Election Code.  None of those instances are satisfied by a voter's lack of immunity to COVID-19, or by a generalized subjective fear of contracting a virus, or by a desire for "convenience" or to enjoy the "comfort" of one's vehicle while voting.   Unless stopped, illegal votes will be cast and counted in direct

Exhibit 4
Page 17 of 39

violation of the Texas Election Code and the United States Constitution and result

in the integrity of elections in Harris County being compromised.

Exhibit 4
Page 18 of 39

**Statement of Facts**

**I.**   **Respondent Hollins' Ministerial Duties Under the Texas Election Code**

As the early voting clerk for Harris County, Respondent has the responsibility of enforcing the election laws to ensure a fair and honest election in Harris County. One of the statutory election mandates for which Respondent Hollins is responsible deals with curb-side voting.  This is a method of voting whereby a qualifying voter may vote from a vehicle in lieu of coming inside to vote at a polling location.  In order to take advantage of curb-side voting, a registered voter must prepare and sign a sworn application.  The application is similar to the application for vote by mail, and a voter must affirmatively check specific boxes on the form in order to facially demonstrate to the Early Voting Clerk (Respondent Hollins) compliance with the curbside voting statutes under the Texas Election Code.

Under Texas Election Code, curbside voting is restricted to  distinct categories: (i) the voter is sick at the time of the vote; (ii) the voter has a physical condition requiring personal assistance (e.g., is physically handicapped); or (iii) voting inside the polling location would create a likelihood of injuring the voter's health.  Tex. Elec. Code §§ 64.009, 82.02 and 104.001-005.

Despite the fact that the Texas Election Code restricts curbside voting to specific and narrowly defined categories of voters, Respondent– using the COVID-

10

Exhibit 4
Page 19 of 39

19 pandemic as his pretext – is permitting any and all Harris County registered voters to vote curbside or drive-thru and vote.

## II.   Respondent Hollins Is Permitting Countywide Drive-Thru Voting In Direct Violation of the Texas Election Code

Respondent Hollins has implemented a countywide "drive-thru" voting program for every registered voter in Harris County. A true and correct transcription of the pertinent excerpt from a press conference where Respondent Hollins identifies the program is attached to the Appendix to this Mandamus Petition. See App. B At 5-6. Beginning at the 4-minute mark, and continuing on to 4:33, Respondent Hollins said the following:

> "Drive-thru voting is an option for all voters who would like to be able to vote from the safety and comfort of your vehicle. Drive-thru voting allows those who don't qualify to vote by mail to minimize your exposure to other voters and to election workers. While we hope to have short lines across the county, drive-thru voters waiting in line will be able to wait in the comfort of your vehicle where you can listen to the radio or converse with loved ones until you are pointed to your drive-thru voting booth. We hope that Harris County voters will consider utilizing drive-thru voting."

See App. B At 5-6. Hollins' position is that anyone and everyone may vote curb side in Harris County should they wish to do so.

Because Respondent Hollins is allowing Harris County Registered voters to vote curb side (drive-thru) without regard to whether they are eligible to vote curb-side, and because of the very clear threat of imminent harm which will result from ineligible curbside voting taking place in violation of the Texas Election Code and

11

Exhibit 4
Page 20 of 39

the United States Constitution, Relators bring this Mandamus Petition to mandate compliance by the Respondent with his clear and non-discretionary ministerial duties.

**Argument**

## I.   <u>Hollins is Violating the United States Constitution</u>

Respondent Hollins' drive-thru voting scheme violates Article I, Section IV, Clause 1 of the United States Constitution in that Hollins redefines the manner of conducting elections in Harris County contrary to the Texas Election Code. Additionally, Hollins violates the Fourteenth Amendment's Equal Protection Clause by adopting a manner of voting in Harris County that has not been adopted by other Texas' counties.

### A.   <u>The Election Clause Requires this Court to Uphold the Manner of Voting Defined by the Legislature in the Texas Election Code</u>

The Constitution's Elections Clause directs that "[t]he Times, Places, and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof," subject to the directives of Congress. U.S. Const. Art. I, § 4, Cl. 1.

Because federal offices "arise from the Constitution itself," any "state authority to regulate election to those offices . . . had to be delegated to, rather than reserved by, the States." *Cook v. Gralike*, 531 U.S. 510, 522 (2001). The

12

Exhibit 4
Page 21 of 39

Constitution effected such delegations to State Legislatures through the Electors and Elections Clauses. See U.S. Const. Art. II, § 1, Cl. 2; id. Art. I, § 4, Cl. 1. The Elections Clause vests State Legislatures, subject to Congress's enactments, with authority "to provide a complete code for congressional elections." *Smiley v. Holm*, 285 U.S. 355, 366 (1932); see also *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 826 (2015) (Roberts, C.J., dissenting) (noting that the Elections Clause "imposes a duty on States and assigns that duty to a particular state actor"). This "broad power to prescribe the procedural mechanisms for holding congressional elections," *Cook v. Granlike*, 531 U.S. 510, 523 (2001) (internal quotation marks omitted), includes authority to enact "the numerous requirements as to the procedure and safeguards which experience shows are necessary in order to enforce the fundamental right involved," *Smiley*, 285 U.S. at 366; *Cook*, 531 U.S. at 523–24; see also *Storer v. Brown*, 415 U.S. 724, 730 (1974) (stating that state legislatures may enact election laws in order to ensure that elections are "fair and honest" and that "some sort of order, rather than chaos, is to accompany the democratic process"). This sweeping grant of authority means that "the text of [state] election law itself, and not just its interpretation by the courts of the States, takes on independent significance," *Bush v. Gore*, 531 U.S. 98, 112–13 (2000) (Rehnquist, C.J., concurring), and the federal Constitution "operate[s] as a limitation upon the State in respect of any attempt to circumscribe the [delegated]

13

Exhibit 4
Page 22 of 39

legislative power," *Palm Beach Cnty.*, 531 U.S. at 76; *McPherson*, 146 U.S. at 25. The United States Supreme Court has made it clear that "[a] significant departure from the legislative scheme for electing U.S. Representatives—including when such departure is carried out by the state judiciary—thus presents a federal constitutional question." *Bush*, 531 U.S. at 113 (Rehnquist, C.J., concurring); see also *Palm Beach Cnty.*, 531 U.S. at 76; *McPherson*, 146 U.S. at 25.

Here, the Texas Legislature has created a detailed statutory scheme related to curb-side voting to govern the conduct of federal elections.   Respondent Hollins has significantly departed from the legislative scheme regarding curb-side voting.   By allowing Hollins to significantly alter the manner of voting that has not been prescribed by the Legislature, Hollins' drive-thru voting scheme violates the United States Constitution Art. I, § 4, Cl. 1.   Relators requests this Court stop Hollins from rewriting an integral part of the Texas Election Code's comprehensive scheme for regulating the manner for conducting federal elections.

### 1.   <u>The Texas Election Code Should Be Strictly Construed</u>

"This Court has stated in no uncertain terms that county election officials possess only those powers 'granted in express words' or 'necessarily or fairly implied in an express grant.'" *In re Hotze*, No. 20-0819 (October 22, 2020) (Devine, J., dissenting, quoting *State v. Hollins*, No. 20-0729, 2020 WL 5919729, at *4 (Tex.

Exhibit 4
Page 23 of 39

Oct. 7, 2020) (per curiam) (internal quotations omitted)). As Justice Devine writes in his dissent in *In re Hotze*, "These implied powers are themselves narrow—they must be 'indispensable,' 'not simply convenient.'" *Id*. The powers are governed by a "lengthy, detailed, and comprehensive Election Code." *Id*. at *2. Hollins acts are outside the scope of the Election Code and constitute ultra vires conduct that undermine the integrity of the election process. *See Richardson v. Hughs*, No. 20-50774, 2020 WL 6127721, at *1–2 (5th Cir. Oct. 19, 2020). "Though certain enumerated powers may create a narrow range of implied powers, the Legislature's silence on an issue raises the presumption that it has not granted that power." *In re Hotze*, No. 20-0819 (October 22, 2020) (Devine, J., dissenting). Nothing in the Texas Election Code allows for Hollins' drive-thru voting.

## 2. <u>Hollins Attempts to Redefine Polling Location</u>

Under Respondent Hollins' drive-thru voting scheme, a car is turned into a polling location. Specifically, to drive-thru vote, the voter never exits the vehicle. Instead, the voter sits in their car as the e-slate is hand delivered to the voter who then cast their vote within the confines of their vehicle. It should be noted that many times these votes are cast by numerous people in one car, eliminating the confidentiality surrounding one's vote. The garages, tents, canopies, and other "coverings" the car drives into are not the actual polling location -the polling place is the car. The e-slate is physically placed in the car, the vote is cast in the car, and

Exhibit 4
Page 24 of 39

the voter remains in the car.  [App. C].  The voter never physically exits the car. [App. C].  A car is not a polling place.  If a car is a polling place, Harris County now has millions of voting locations around the county that change locations throughout the day.   Attached, as App. C, are photos of voters utilizing "drive-thru" voting.

The Election Code mandates that a registered voter cast a ballot in a "voting station" at a "polling place." *See* TEX. ELEC. CODE §§ 64.001, .009(a). Qualified individuals may request their ballot curbside in a vehicle on election day and throughout the early voting period. *Id*. § 64.009(a). This exception applies only to those physically unable to enter the polling place without assistance or for whom a likelihood of injury exists. *Id*.; see also *In re State*, 602 S.W.3d 549, 550 (Tex. 2020) (a voter's general fear or lack of immunity from COVID-19 is not a "disability" as defined by the Election Code). Otherwise, voting is to take place in a "polling place." TEX. ELEC. CODE § 64.009(a). Respondent has previously argued that rows of semi-permanent tents where election officers stand awaiting dozens of cars, inside of which any voter may cast a ballot, qualify as a "polling place." In his dissent in *In re Hotze*, Justice Devine rejects Hollins' definition, stating, "I struggle to see how the Election Code contemplates such a novel concoction. Hollins stretches the text of the Code beyond its historical and common-sense understanding."  *In re Hotze*, No. 20-0819 (October 22, 2020) (Devine, J., dissenting).

16

Exhibit 4
Page 25 of 39

The Texas Election Code states that polling locations "may be located in any stationary structure," including a "movable structure." *Id*. § 85.062(b). Hollins has previously argued that these "tents" satisfy the requirements of movable structure. However, as Justice Devine has stated, "[T]he Texas Election Code likely contemplates that 'structure' is a place one enters to get to the polling place; the structure itself is not the polling place." *In re Hotze*, No. 20-0819 (October 22, 2020) (Devine, J. dissenting).  The Texas Election Code prohibits electioneering "within 100 feet of an outside door through which a voter may enter the building or structure in which the early voting polling place is located." Texas Elec. Code § 85.036(a) (emphasis added). As Justice Devine has previously identified, "The prepositional phrase 'in which' indicates that the polling place is to be inside of a building or structure. The structure itself cannot be the polling place and the voting station rolled into one. Even harder to understand is how one's vehicle could qualify as a 'polling place,' as it is not a 'structure' as commonly understood. Nor can one's vehicle be a 'voting station,' which is a specific location designated for voters to cast a ballot. Station, WEBSTER'S NEW COLLEGIATE DICTIONARY (1975) ("[A] place established to provide a public service." (emphasis added))." *Id.*  Hollins' expansion of the statute manifests itself in the absurd result that every voter's vehicle is a "polling place" or "voting station." *Id.*

17

Exhibit 4
Page 26 of 39

### 3.   Texas Attorney General Recently Addressed Drive-Thru Voting

On October 16, 2020, Attorney General Ken Paxton addressed the issue of "drive-thru" voting.  [App. D].  In the letter General Paxton states, among other things, that Texas Election Code "makes no provision for 'drive-thru' voting centers at which any voter may cast a ballot from his or her vehicle."  [App. D].

### 4.   The Texas Legislature has Rejected "Drive-Thru" Voting

Legislators have previously attempted to amend the Texas Election Code to allow a form of Respondent Hollins' "drive-thru" voting scheme. During the 2019 legislative session, legislation was proposed to allow polling places to accommodate parents with young children, HB 2898.  [App. E].  Because Texas law required curbside voting for people with disabilities, HB 2898 left it up to local election officials to decide whether to offer curbside voting for parents with young children. [App. E].  The bill also created a study to be performed by the Texas Secretary of State's office that would evaluate the best practices for curbside voting for people with children and report it to the legislature by December 2020.  [App. E].  The Texas House approved the bill that supporters believed would increase voter turnout by allowing parents with children younger than five (5) years old to participate in curbside voting.  The argument is similar to that made by Respondent Hollins as a justification for his drive-thru voting scheme.   On May 8, 2019, the House gave the bill final approval in a 90-52 vote. However, the Texas Senate failed to pass the bill.

18

Exhibit 4
Page 27 of 39

Here, Hollins is asking this Court to implement a form of "drive-thru" voting that is much broader than one previously rejected by the Legislature.  A pandemic should not be a license for this Court to turn into a super-legislature.  If the Texas Legislature has effectively rejected Hollins' scheme, so too should this Court.

### 5.    Drive-Thru Voting Locations Placed in Democratic Strongholds

Nine of the ten "drive-thru" voting locations in Harris County are placed in areas that vote heavily Democratic. [App. G]. State Sen. Paul Bettencourt (R-Houston) recently noted nine of the 10 drive-thru voting locations are in Democrat areas of the county, adding that "nothing in the Texas election code allows Mr. Hollins to do this setup."  Erin Anderson, *Texas AG: Legal Action for Unlawful Drive-Thru Voting*, Texas Scorecard, October 20, 2020.

### 6.    Over 100,000 Illegal Drive-Thru Votes Have Been Cast

Harris County accounts for nearly 15 percent of all registered voters in Texas. To date, over 100,000 "drive-thru" votes have been cast.  [App. F].

### B. Hollins' Drive-Thru Voting Scheme Violates the Fourteenth Amendment

The Fourteenth Amendment to the United States Constitution provides, "No State shall... deny to any person.., the equal protection of the laws."  USCS Const. Amend. 14, § 1.   Harris County is the only Texas County that has adopted drive-thru voting.  [App. A]. By using different criteria for voting and allowing a new form

19

Exhibit 4
Page 28 of 39

of voting to occur in only in Harris County, Hollins is violating the Equal Protection Clause. *Bush v. Gore*, 531 U.S. 98 (2000).   Hollins violates the Equal Protection Clause, in that Harris County, unlike other counties, surrenders the safeguards associated with curb-side voting while other counties maintain the integrity of the ballot box by complying with the strict requirements imposed by the Texas Legislature in §§ 64.009, 82.02, and 104.001-104.005 of the Texas Election Code.

The Supreme Court's per curiam  majority opinion in *Bush v. Gore* eviscerated the distinction between nuts-and-bolts questions and big picture questions by holding that Florida law, at least as construed by the Florida Supreme Court, violated the Equal Protection Clause of the Fourteenth Amendment. 531 U.S. 98 (2000).  The Court held that a state violates equal protection when it fails to have uniform standards for the recounting of votes during a statewide election contest. *Id.* at 109. The opinion makes it clear that disparity regarding the means of voting is a justiciable question. Here, Hollins has implemented a form of voting that is unique to Harris County and differs from the remaining 253 counties in the state of Texas.

## II.   <u>Mandamus is Appropriate to Compel Compliance with a Non-Discretionary, Ministerial Duty.</u>

"A writ of mandamus will issue to compel a public official to perform a ministerial act." *Anderson v. Seven Points*, 806 S.W.2d 791, 793 (Tex. 1991) (citing *Womack v. Berry*, 156 Tex. 44, 291 S.W.2d 677, 682 (1956); *Turner v. Pruitt*, 161 Tex. 532, 342 S.W.2d 422, 423 (1961)).  "An act is ministerial when the law clearly

Exhibit 4
Page 29 of 39

spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion." *Anderson*, 291 S.W.2d at 793.  That is the case here.

**A.** **Respondent Hollins Has a Ministerial Duty to Review Each Sworn Application in Order to Verify that the Applicant Has Supplied All of the Required Information to Permit Curbside Voting.**

Because Section 64.009 of the Texas Election Code permits curbside voting under limited circumstances during Early Voting, Respondent Hollins' duties as the Early Voting Clerk include the enforcement of curbside voting during Early Voting. In order to enable an eligible voter to legally vote curbside, the registered voter must submit a sworn application for ballot similar to the application for a ballot by mail described in Section 84.001 (Eligible voter must make an application for an early voting ballot to be voted by mail).

The duty to review each application is not discretionary; it is mandatory.  *In re Robinson*, 175 S.W.3d 824, 830 (Tex. App. 2005) ("The use of the word shall in a statute is generally construed as creating a nondiscretionary duty.").  This duty includes the specific obligation to ensure that each sworn application satisfies the criteria set forth in the Texas Election Code to permit a specific voter to vote curbside during both Early Voting and Election Day voting.

**B.** **Respondent Hollins Has a Ministerial Duty to Reject an Application for Curbside Voting That does No Contain the Required Information to Permit Curbside Voting.**

21

Exhibit 4
Page 30 of 39

Under Texas Election Code Sections 64.009, 82.02, and 104.001, curbside voting is restricted to three distinct categories: (i) a voter is presently sick at the time of the vote; (ii) a voter has a physical condition requiring personal assistance (e.g., is physically handicapped); or (iii) voting inside the polling location would create a likelihood of injuring the voter's health. Respondent Hollins, however, has announced his policy to permit **_any registered Harris County voter_** to cast their ballot via drive-thru voting.  This illegal policy, which is grounded on the dubious notion that a lack of immunity from COVID-19 justifies a wholesale repudiation of the Texas Election Code, **_has already been expressly rejected by the Texas Supreme Court_**.  _In re State_, 602 S.W.3d 549 (Tex. 2020).  Rejecting Respondent Hollins' argument in that case that a voter's lack of immunity from the disease and concern about contracting it a polling place justifies a voter's choice to case a ballot by mail, the Supreme Court made clear that a generalized fear of contracting a virus would not, standing alone, be sufficient to trigger a statutory right to vote by mail.

The Court's reasoning in _In re State_, 602 S.W.3d 549 (Tex. 2020), applies Respondent's allowing curbside voting for anyone who wants to vote curbside.  The "disability" language contained in Section 82.002(a) regarding ballots by mail tracks the same language as is contained in Sections 64, 82, and 104 regarding curbside voting. Under Texas Election Code Sections 64.009, 82.02, and 104.001, curbside voting is restricted to three distinct categories: (i) a voter is presently sick at the time

Exhibit 4
Page 31 of 39

of the vote; (ii) a voter has a physical condition requiring personal assistance (e.g., is physically handicapped); or (iii) voting inside the polling location would create a likelihood of injuring the voter's health.  It is abundantly clear that Respondent Hollins may not, consistent with his ministerial duties to comply with the Texas Election Code, permit registered Harris County voters to engage in drive-thru voting who do not satisfy one or more of the statutorily prescribed exceptions to voting inside the polling place.

The obligation to reject insufficient applications to vote curbside is not discretionary; it is mandatory.  *See In re Robinson*, 175 S.W.3d at 830.  The duty to challenge ineligible curbside voting is not discretionary; it is mandatory.  *Id*.

## III.   Respondent Hollins is Permitting Curbside Voting to Voters Not Entitled to Vote Curbside in Breach of His Ministerial Duties under the Texas Election Code.

Hollins is allowing curbside/drive-thru voting for all 2.37 million registered voters in Harris County.  This is a clear and direct violation of his duties to enforce the Texas Election Code and the United States Constitution.  Respondent Hollins has a non-discretionary, ministerial duty to limit curbside voting solely to those registered voters who submit facially valid sworn applications to vote curbside.  All other requests to vote curbside must be denied.  "Failure to perform his duty subjects [Respondent Hollins] to mandamus."  *Bejarano v. Hunter*, 899 S.W.2d 346, 350 (Tex. App. 1995). Absent an order compelling Respondent Hollins to comply with

Exhibit 4
Page 32 of 39

his ministerial duties under the Texas Election Code, ineligible applicants and/or facially invalid sworn applications will be approved.

## IV. Relators Are Being Harmed, Have Standing, and Will Continue to be Harmed, Absent Relief.

Respondent Hollins' non-compliance with the law is harming the interests of Relators. With respect to Relator Hotze, he has standing because he is threatened with a violation of his right to vote. Relator Champion is the Republican nominee for the 18th District, Harris County, Texas. Hollins illegal vote scheme results in votes being illegally cast in his race for the United States Congress. Relator Hemphill is also on the November 3, 2020 general election ballot for District Judge in Harris County, Texas. Hollins illegal vote scheme results in votes being illegally cast in her race for the 80th Judicial District Court. Representative Steve Toth is a member of the Texas Legislature and is also on the November 3, 2020 general election ballot. As a member of the State Legislature, Hollins is usurping his authority as a lawmaker by creating a voting scheme that was not adopted by the Texas Legislature.

"Undeniably the Constitution of the Untied States protects the right of all qualified citizens to vote, in state as well as in federal elections." *Reynolds v. Sims*, 377 U.S. 533, 554 (1964). This right "can neither be denied outright. . . nor destroyed by alteration of ballots. . . nor diluted by ballot-box stuffing." *Id*. "The right to vote is 'individual and personal in nature,' and 'voters who allege facts

24

Exhibit 4
Page 33 of 39

showing disadvantage to themselves as individuals have standing to sue' to remedy that disadvantage." *Gill v. Whitford*, 138 S. Ct. 1916, 1920 (2018) (quoting *Reynolds*, 377 U.S. at 561 and *Baker v. Carr*, 369 U.S. 186, 206 (1962)). Relators object to the casting and to the counting of any ineligible or illegal curbside voting, as the consequence of permitting such activity hurts not only the integrity and the reported outcomes of the election for all of the candidates and all of the voters who voted, but it could also dilute or otherwise diminish and cancel Relators casting of a legal vote for the candidates of their choice in the General Election.

## V.     **Relators Have No Other Adequate Remedy.**

Texas Election Code Section 273.081 allows "injunctive relief" to "prevent" violations from occurring. Relators seek injunctive relief prohibiting Respondent Hollins from engaging in his illegal "drive-thru" voting programs. Alternatively, Relators seek affirmative compliance with ministerial duties.

## Prayer

For these reasons, Realtors respectfully request that the Court grant this Petition for Writ of Mandamus and enter an order compelling Respondent Hollins to do the following:

1.    Relators request this Court to require all memory cards from the ten (10) drive-thru voting locations be secured and not entered or downloaded into

25

Exhibit 4
Page 34 of 39

the Tally machine until this Court issues an order on Relators' Petition for Writ of Mandamus.

2. Relators request the Court reject any votes it finds were cast in violation of the Texas Election Code.

3. Review all curbside voting applications submitted by an person requesting to vote curbside during either Early Voting or Election Day Voting in Harris County for facial compliance with Texas Election Code sections 64.009, 82.002, and 1104.001-104.005, as required by the Texas Election Code Sections 83.002 and 014.001;

4. Reject all curbside voting applications submitted by any person requesting to vote curbside during either Early Voting or Election Day Voting in Harris County which lack facial compliance with Texas Election Code Sections 64.009, 82.002, and 104.001-104.005, as required by the Texas Election Code Sections 83.002 and 104.001; and

5. Reject any curbside voting efforts during either Early Voting or Election Day Voting in Harris County which are not in compliance with Texas Election Code Sections 64.009, 82.002, and 104.001-104.004, as required by the Texas Election Code Sections 83.002 and 104.001.

Dated:         October 27, 2020

Exhibit 4
Page 35 of 39

Respectfully submitted,

 */s/ Jared R. Woodfill*

JARED R. WOODFILL
State Bar No. 00788715
Woodfill Law Firm, P.C.
3 Riverway, Suite 750
Houston, Texas 77056
P:(713) 751-3080
Fax: (713) 751-3058
woodfillservice@gmail.com
*Counsel for Relators*

27

Exhibit 4
Page 36 of 39

## CERTIFICATE OF SERVICE

By affixing my signature above, I , Jared Woodfill, hereby certify that a true and correct copy of the above Original Petition for Writ of Mandamus has been delivered via electronic mail to the parties below on the 27th day of October, 2020.

/s/Jared Woodfill
Jared Woodfill

28

Exhibit 4
Page 37 of 39

## TRAP 52.3(J) CERTIFICATION

Pursuant to TRAP 52.3(j), the undersigned certifies that he has reviewed the above Petition for Writ of Mandamus and concluded that every factual statement in the petition is supported by competent evidence included in the appendix and or the record.

/s/ Jared Woodfill
Jared Woodfill

29

Exhibit 4
Page 38 of 39

## CERTIFICATE OF COMPLIANCE

I, Jared Woodfill, Counsel for Relators certify that this document was generated by a computer using Microsoft Word which indicates that the word count of this document is 4,077. The typeset is Times New Roman 14 pt for text.

/s/ Jared Woodfill
Jared Woodfill

30

Exhibit 4
Page 39 of 39