# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

STEVEN HOTZE, M.D.; WENDELL CHAMPION; HON. STEVE TOTH; and SHARON HEMPHILL,

    Plaintiffs,

v.

CHRIS HOLLINS, in his official capacity as Harris County Clerk;

    Defendant.

Case No. 4:20-cv-03709

**MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT BY NON-PARTIES TEXAS STATE CONFERENCE OF NAACP BRANCHES, COMMON CAUSE TEXAS, ANDREA CHILTON GREER, AND YEKATERINA SNEZHKOVA**

The Texas State Conference of NAACP Branches, Common Cause Texas, Andrea Chilton Greer, and Yekaterina Snezhkova ("Proposed Intervenors") submit this memorandum in support of their Motion to Intervene as Defendants pursuant to Rule 24(a) of the Federal Rules of Civil Procedure or, in the alternative, pursuant to Rule 24(b).

## I.     INTRODUCTION

Plaintiffs have asked this Court to issue unprecedented relief: order the rejection of over 100,000 ballots cast by eligible voters in a manner that was lawfully authorized at the time they voted. Indeed, just today, the Texas Supreme Court reaffirmed, for the second time in a week, that the drive-thru voting challenged by Plaintiffs may continue. No precedent supports Plaintiffs' extraordinary request, who seek to undermine the sovereignty of the State of Texas by asking this Court to overrule a decision made by the State's highest court on a matter of state law. And equity absolutely forbids it. Proposed Intervenors – organizations, dedicated to promoting American democracy, whose members' and constituents' votes are at stake, and individual voters whose votes are in jeopardy – therefore have an absolute right to participate in this litigation to protect those interests.

Proposed Intervenor Defendants include nonpartisan organizations – the Texas State Conference of NAACP Branches and Common Cause Texas – that serve individuals whose fundamental right to vote would be eviscerated by a grant of Plaintiffs' requested relief. They also include Harris County voters who already cast their ballots using Harris County's drive-thru voting procedure. Proposed Intervenors are entitled to intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(2) because their ballots – or ballots cast by their members and constituents who are eligible registered voters in Harris County – will be tossed aside if the Plaintiffs obtain the remedy they seek. Proposed Intervenors also retain an abiding interest in promoting voter participation and have devoted substantial resources towards this goal, including by educating

1

voters about drive-thru voting. The remedies Plaintiffs seek would harm Proposed Intervenors' efforts to protect their members' and constituents' ability to exercise their right to vote in the November election.

Alternatively, Proposed Intervenors should be permitted to intervene under Rule 24(b). Because Proposed Intervenors seek leave to directly challenge Plaintiffs' attempt to eliminate drive-thru voting and throw away their ballots and the ballots cast by their members and constituents, their claims and defenses necessarily share common questions of law and fact with the main action. Plaintiffs just filed their preliminary injunction motion two days ago and granting the instant motion would neither delay nor prejudice the orderly adjudication of Plaintiffs' claims. This motion should be granted to allow Proposed Intervenors to protect their right to vote, or that of their members.

## II.   FACTUAL BACKGROUND

Earlier today, the Texas Supreme Court ruled – for the second time in two weeks –that Harris County may proceed with its drive-thru voting program. *In re Hotze*, No. 20-0863, Order Denying Petition (Nov. 1, 2020); *see also In re Hotze*, No. 20-0819, Order Denying Petition (Oct. 22, 2020). Steven Hotze, Wendell Champion, Representative Steve Toth, and Sharon Hemphill—the same exact individuals who would later file this suit as Plaintiffs—argued unsuccessfully that Harris County's drive-thru voting is unlawful under the Texas Election Code, asserting the exact same claims they would later raise in this suit. These arguments defy not only the Harris County Commissioners Court, which unanimously approved the list of early voting locations, which included drive-thru locations, but the Texas Secretary of State, who approved the drive-thru voting program. Ten of Harris County's early voting sites are drive-thru locations and, as of Friday, nearly 127,000 votes had been cast at those sites, including ballots cast by the Proposed Intervenors and their members and constituents.

### A. Proposed Intervenors Are Individual Voters and Membership Organizations that Promote the Interests of Voters

Proposed Intervenors are Texas voters and organizations that serve, represent, and have members and constituents who are Texas voters.

The NAACP—Texas State Conference ("Texas NAACP") is a non-profit advocacy group for civil rights for Americans of color, including African-Americans. Every election cycle, the Texas NAACP engages in efforts to get out the vote. Declaration of President Gary L. Bledsoe, Exhibit A, ¶¶ 7-10. The Texas NAACP is working to ensure that its constituency of voters in Texas are educated on different methods of voting during the COVID-19 pandemic, including Harris County's drive-thru voting program. *Id.* ¶ 11-12. The Texas NAACP has been encouraging its members, constitudents, and other Harris County voters who are concerned about voting in person to utilize the drive-thru voting option. *Id.* ¶ 15. Several of the Texas NAACP's members, including Juli McShay, Nickolas Spencer, Barbara Bratter and Dr. Alexander Brown, have already utilized Harris County's drive-thru voting option for the November 3, 2020 election. *Id.* ¶ 16.

Common Cause Texas is a non-profit political advocacy organization and a chapter of the national Common Cause organization. With approximately 36,000 members and supporters in Texas, Common Cause Texas works to encourage civic engagement and public participation in democracy, to ensure that public officials and public institutions are accountable to and reflective of all people, and to implement structural changes through the American democratic process. Declaration of Anthony Gutierrez, Exhibit B, ¶¶ 4-6. Common Cause Texas has been educating Harris County voters about – and encouraging voters to use – the drive-thru voting locations because they are regular polling places that may be used under Texas law by any voter. *Id.* ¶ 8. Many of Common Cause Texas's members and constituents – including Andrea Greer – used

3

drive-thru voting to ensure that their ballots are timely received and counted. *Id.* ¶ 19; Declaration of Andrea Chilton Greer, Exhibit C, ¶ 4.

Proposed Intervenors seek to intervene in this action to protect their organization's, members', and constituents' interest in having their ballots that were cast at drive-thru locations counted. If Plaintiffs succeed in invalidating the ballots cast at drive-thru locations, Applicants will be required to redirect scarce resources to reeducate confused voters about their options for voting in the November 2020 election on a single day's notice. *See, e.g.*, Bledsoe Decl., ¶¶ 17–18; Gutierrez Decl., ¶¶ 9-10. In the midst of a pandemic, the organizational Proposed Intervenors have spent substantial resources educating Harris County voters about drive-thru locations and how to vote effectively and safely. Bledsoe Decl., ¶¶ 10, 14-15; Gutierrez Decl., ¶ 11. Expending additional resources to educate each organization's members, constituents, and other eligible voters about their options tomorrow and on Election Day if the Plaintiffs are successful in this case and ballots cast at drive-thru locations are not counted will necessarily divert funds from other efforts important to their missions and the rights of their members and constituents. Bledsoe Decl., ¶¶ 11, 17; Gutierrez Decl., ¶¶ 8, 13.

Andrea Chilton Greer and Yekaterina Snezhkova are Texas voters who seek to intervene to prevent their ballots, which they cast at Harris County drive-thru locations, from not being counted. *See* Greer Decl. ¶¶ 7-8, 14; Declaration of Yekaterina Snezhkova, Exhibit D, ¶¶ 5-6, 12. These voters cast their ballots in the standard fashion; poll workers checked their driver's license and address; they signed in to vote, and the poll worker printed out their slip with a four-digit access code before allowing them to vote. Greer Decl. ¶ 11; Snezhkova Decl. ¶ 10. They were able to cast a secret ballot and found the process to be safe and secure. Greer Decl. ¶ 12; Snezhkova Decl. ¶ 11. They are concerned about being disenfranchised in the November election and are worried that they have no recourse if their ballot is rejected. Greer Decl. ¶¶ 13-14; Snezhkova

4

Decl. ¶ 12. Concerned voters have asked the Texas NAACP to intervene to try to protect their vote. Bledsoe Decl. ¶ 13.

## III. APPLICANTS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT

In the Fifth Circuit, a party is entitled to intervene upon establishing: "(1) the motion to intervene is timely; (2) the potential intervener asserts an interest that is related to the property or transaction that forms the basis of the controversy in the case into which she seeks to intervene; (3) the disposition of that case may impair or impede the potential intervener's ability to protect her interest; and (4) the existing parties do not adequately represent the potential intervener's interest." *John Doe No. 1 v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001). Courts construe these factors consistent with the principle that "Rule 24 is to be liberally construed," and "[f]ederal courts should allow intervention when no one would be hurt and the greater justice could be attained." *Wal–Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016) (quoting *Texas v. United States*, 805 F.3d 653, 656 (5th Cir. 2015)). Proposed Intervenors satisfy each factor and are entitled to intervene as of right.

### A. The Motion to Intervene Is Timely

Proposed Intervenors are seeking intervention at the earliest possible stage of this action, and their intervention will not delay the resolution of this matter or prejudice any party. Plaintiffs filed their Complaint on October 28, 2020; this Motion follows just four days later. This case is still in its infancy—no motions have been fully briefed; no hearings have been held—and thus no party can legitimately claim that intervention by the Proposed Intervenors would cause any prejudice. *See Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994) ("[P]rejudice must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervener to participate in the litigation."). Under these circumstances, the Court should find the Motion timely.

5

### B. Proposed Intervenors Have Substantial Interests in this Case

It is difficult to imagine a more substantial interest in a case than that possessed by Applicants here. The Proposed Voter Intervenors and the members of the Proposed Organization Intervenors stand to have their votes rejected, if Plaintiffs prevail. They therefore have a "significantly protectable" interest in the litigation.[1] *Donaldson v. United States*, 400 U.S. 517, 531 (1971); *see also John Doe No. 1*, 256 F.3d at 379 (the intervenor must have a "'direct, substantial, [and] legally protectable' interest in the property or transaction that forms the basis of the controversy in the case into which she seeks to intervene") (quoting *Espy*, 18 F.3d at 1207). .

If Plaintiffs prevail in this case, the ballots cast by the Proposed Voter Intervenors at drive-thru locations pursuant to a method approved by the Texas Supreme Court, at a time when they were lawfully authorized to do so, will not be counted and they will be at risk of disenfranchisement in the November 2020 election. *See*, *e.g.*, *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421 (5th Cir. 2011) (finding a legally protectable interest where the intervenor sought to protect his right to vote); *Pierce v. Allegheny Cty. Bd. of Elections*, 324 F. Supp. 2d 684, 694–95 (W.D. Pa. 2003) ("The right of qualified electors to vote … is recognized as a fundamental right, … extend[ing] to all phases of the voting process, [and applying] equally to the initial allocation of the franchise as well as the manner of its exercise.") (internal quotation marks and citation omitted); *see also Baker v. Carr*, 369 U.S. 186, 206 (1962) ("[V]oters who allege facts showing disadvantage to themselves as individuals have standing to sue.").

---

[1] Applicants have Article III standing to participate in the litigation as defendants, whether on behalf of their members or in their own right, to pursue relief that is different from that sought by the parties. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342–43 (1977).

Also, the Proposed Organizational Intervenors, the Texas NAACP and Common Cause Texas, have a substantial, legally cognizable interest in protecting their own and their members' and constituents' rights to vote safely at drive-thru locations and ensure that ballots cast at drive-thru locations are counted. If Plaintiffs prevail and ballots cast at the drive-thru locations are thrown out, these organizations will be required to retool their ongoing voter education and assistance efforts in response to the last-second disruption and minimize the ensuing widespread disenfranchisement. *See*, *e.g*., *OCA-Greater Houston v. Texas*, 867 F.3d 604, 610-12 (5th Cir. 2017) (finding standing where an organization was required to dedicate additional resources to assisting voters navigate the polls); *see also Common Cause Ind. v. Lawson*, 937 F.3d 944, 950 (7th Cir. 2019) ("[A] voting law can injure an organization enough to give it standing by compelling [it] to devote resources to combatting the effects of that law that are harmful to the organization's mission."); *Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1164-65 (11th Cir. 2008) (finding the NAACP had standing because "[t]he organizations reasonably anticipate that they will have to divert personnel and time to educating volunteers and voters on compliance with [voting law] and to resolving the problem of voters left off the registration rolls on election day"). Here, the Proposed Intervenors' interest in ensuring that their members and constituents – many of whom have already cast absentee ballots at Harris County drive-thru locations – and their constituents have access to the ballot box and are not disenfranchised in the November 2020 election is concrete, protectable, substantial, and cognizable.

C.     **Disposition of this Case Would Impair Proposed Intervenors' Interests**

Proposed Intervenor-Defendants have also shown they satisfy the third prong of intervention—that the "disposition of the action 'may' impair or impede their ability to protect their interests." *See Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014). The Proposed Intervenors need not show that their interests "will" be impaired by disposition of the ligation;

7

only that they "may" be. *See id*. Indeed, "[t]he very purpose of intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions." *Id*. at 345; *see also Brody By & Through Sugzdinis v. Spang*, 957 F.2d 1108, 1122 (3d Cir. 1992).

The disposition of this matter has the potential to impair the Proposed Intervenors' ability to protect their interests. Should this litigation succeed, the Proposed Voter Intervenors may have little time, or no time at all, to re-cast a ballot that will be counted—if that is an option at all. Similarly, should this litigation succeed, Proposed Intervenors will be required to divert and spend significant additional resources—including volunteers, time, and expenditures—to re-educate voters about their options for voting in the November 2020 election. Among the voters who have benefited the most from drive-thru voting are voters with disabilities, voters with small children and elderly voters with limited mobility—who were able to cast ballots from their autos, and who very well may not be able to vote in person Tuesday due to lack of transportation, childcare, or other reasons. Plaintiffs' desired order would result in diminished access to voting for vulnerable groups impacted by the COVID-19 crisis, which has hit the African-American community in Harris County very hard. The order would compel the individual Applicants to potentially put themselves in harm's way by voting in person and the organizational Proposed Intervenors to devote substantial resources to address its effects through public re-education and arranging transportation for impacted voters who might need to vote on Election Day because the ballot they previously cast at a drive-thru location was rejected. No matter how vigorously Proposed Intervenors' efforts were applied, many eligible voters would remain unable to have their votes counted.

Further, Applicants' rights stand to "be affected by a proposed remedy" in this case and judicial economy favors granting intervention rather than prompting them to file separate actions.

8

*See Seneca Res. Corp. v. Twp. of Highland, Elk Cty.*, 863 F.3d 245, 257 (3d Cir. 2017) (internal citation omitted).

### D. The Interests of Existing Defendant Diverges from Those of Applicants

While Proposed-Intervenors have great respect for Harris County and its legal team, Defendant will not adequately represent the particular interests of the Proposed Intervenors in this case. Proposed Intervenors bear "[t]he burden of establishing inadequate representation," but "[t]his burden is minimal and is satisfied if the applicant shows that representation of his interest may be inadequate." *Haspel & Davis Milling & Planting Co. Ltd. v. Bd. of Levee Comm'rs of the Orleans Levee Dist.*, 493 F.3d 570, 578 (5th Cir. 2007) (internal quotation marks omitted) (citing *Hopwood v. Texas*, 21 F.3d 603, 605 (5th Cir. 1994); *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996) (en banc)); *see also Brumfield v. Dodd*, 749 F.3d 339, 346 (5th Cir. 2014) ("We cannot say for sure that the [defendant's] more extensive interests will in fact result in inadequate representation, but surely they might, which is all that the rule requires."); *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)); *X-Drill Holdings, Inc. v. Jack-Up Drilling Rig SE 83*, 320 F.R.D. 444, 449-50 (S.D. Tex. 2017). There are a number of issues, positions, claims, and relief that a governmental entity may not be willing to raise that are critical to public interest organizations like the NAACP and Common Cause. For example, it was widely reported in the 2000 presidential election, one of the candidates declined to raise issues related to the disenfranchisement of minority voters; particular concerns about the impact of the instant case on minority voters have spurred NAACP members and constituents to ask the NAACP leadership to get involved.

Unlike Defendants, who are broadly responsible for the general management of elections in Harris County and primarily interested in maintaining an efficient and accurate electoral process, the interests of Proposed Intervenors are personal to them. Their right to vote – indeed

9

the votes they have already cast – is at risk. The potential for diverging priorities is particularly significant given the great strain on Defendant and other county officials in overseeing the administration of the 2020 general election, in which voter turnout has already reached unprecedented levels and election rules have changed several times over the last several months, all in the midst of the COVID-19 pandemic. The immense burden and diverse concerns vying for the attention of county officials at this time make it exceedingly likely that Defendant will not adequately represent the specific interests of Proposed Intervenors.

For these reasons, the presumption of adequate representation that exists only when the interests of proposed intervenors and existing parties "align precisely" does not apply here. *Brumfield*, 749 F.3d at 345. Further, courts routinely find that the interests of voting rights organizations and voters may reasonably diverge from government defendants who "have a duty to represent the public interest" and "[a]s such, may not adequately represent [the proposed intervenors'] specific interests." *Kobach v. U.S. Election Assistance Comm'n*, No. 13-cv-4095-EFM-DJW, 2013 WL 6511874, at *4 (D. Kan. Dec. 12, 2013); *see also, e.g.*, *Meek v. Metro. Dade County*, 985 F.2d 1471, 1478 (11th Cir. 1993), *abrogated on other grounds by Dillard v. Chilton Cty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007) ("The intervenors sought to advance their own interests in achieving the greatest possible participation in the political process. Dade County, on the other hand, was required to balance a range of interests likely to diverge from those of the intervenors."); *Pub. Interest Legal Found., Inc. v. Winfrey*, --- F. Supp. 3d ---, No. 19-13638, 2020 WL 2781826, at *3 (E.D. Mich. May 28, 2020).

## IV. IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION

Even if the Court determines that Proposed Intervenors are not entitled to intervene as a matter of right, the Court should exercise its broad discretion to grant permissive intervention. A

court may grant permissive intervention when the motion to intervene is timely and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). The decision whether or not to do so is "wholly discretionary." *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987); *see also Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 940 (N.D. Tex. 2019) (concluding that "the Court would allow them to intervene permissively"). Even where the district court denies intervention as of right, permissive intervention might be proper or warranted, as it would be here. *See United States v. League of United Latin Am. Citizens*, 793 F.2d 636, 644 (5th Cir. 1986) ("Although the court erred in granting intervention as of right, it might have granted permissive intervention under Rule 24(b) because the intervenors raise common questions of law and fact . . . .").

Proposed Intervenor-Defendants meet the requirements for permissive intervention here. First, they will inevitably raise common questions of law and fact, including whether Harris County's drive-thru program is permissible, whether Plaintiffs have alleged viable claims, and the harm to voters who already cast ballots at drive-thru locations such as the Proposed Voter Intervenors; Plaintiffs expect to contribute to the Court's resolution of these key issues and more. *Franciscan All., Inc.*, 414 F. Supp. 3d at 940 (concluding that "Putative Intervenors' argument will 'significantly contribute' to the development of the issues"); *Winfrey*, 2020 WL 2781826, at *5 (holding "a fulsome consideration of both competing interests, vigorously advocated by appropriately interested parties … unquestionably will be helpful to the Court…"). Courts have recognized that intervention is proper in comparable circumstances. *Id.*; *see also Am. Farm Bureau Fed'n*, 278 F.R.D. at 110–11 (public interest groups allowed to intervene in litigation in which EPA was a defendant, "[b]ecause the EPA represents the broad public interest … not only the interests of the public interest groups" and similar stakeholders). Similarly, the individual Proposed Intervenors seek maximized ballot access for minority voters, whereas Defendant is

11

obligated to represent equally the interests of all constituents. *See League of Women Voters of Mich. v. Johnson*, 902 F.3d 572, 579 (6th Cir. 2018) (concluding that the interest of the intervenors, for the purposes of permissive intervention, only needs to be "distinct" form the defendants, regardless of whether it is "substantial").

As set forth above, this motion to intervene is timely, and given the early stage of this litigation, intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. *See* Fed. R. Civ. P. 24(b); *Franciscan All., Inc.*, 414 F. Supp. 3d at 940 (noting courts can impose conditions on intervenors to prevent any delay or prejudice). Rule 24 does not "require prospective intervenors to wait on the sidelines until after a court has already decided enough issues contrary to their interests." *Brumfield*, 749 F.3d at 344-45. Instead, "[t]he very purpose of intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions." *Id*. The NAACP-Texas State Conference, Common Cause Texas, and the voters have amply established the extensive harm each would be likely to suffer from an adverse judgment or ruling in this action. Refusing to permit intervention, would deprive Proposed Intervenors of a meaningful chance to defend their cognizable, significant, and protectable interests in the litigation. Thus, the Proposed Intervenors request this Court grant permissive intervention if it does not grant intervention as of right.

## V.     CONCLUSION

For the reasons stated above and in the supporting declarations of Mr. Bledsoe, Mr. Gutierrez, and Proposed Intervenor-Defendants Greer and Snezhkova, the Court should grant the Applicants' Motion to Intervene as of right, or in the alternative, for permissive intervention.

Dated: November 1, 2020

Respectfully submitted,

*/s/* Lindsey B. Cohan
Lindsey B. Cohan
DECHERT LLP
500 W. 6th Street, Suite 2010
Austin, Texas 78701
Tel: (512) 394-300
lindsey.cohan@dechert.com

Jon Greenbaum*
Ezra Rosenberg*
John Libby*
John Powers*
Voting Rights Project
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005
Tel: (202) 662-8300
jgreenbaum@lawyerscommittee.org
erosenberg@lawyerscommittee.org
jlibby@lawyerscommittee.org
jpowers@lawyerscommittee.org

Robert Notzon
THE LAW OFFICE OF ROBERT NOTZON
1502 West Ave.
Austin, Texas 78701
Tel: (512) 474-7563
robert@notzonlaw.com

Nickolas Spencer
SPENCER & ASSOCIATES, PLLC
8403 Westglen Drive, Suite 2000
Houston, TX 77063
Tel: (713) 863-1409
nas@naslegal.com

Neil Steiner*
May Chiang*
Julia Markham-Cameron*
DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036-6797
Tel: (212) 698-3500
neil.steiner@dechert.com
may.chiang@dechert.com
julia.markham-cameron@dechert.com

Erik Snapp*
DECHERT LLP
35 West Wacker Drive, Suite 3400
Chicago, IL 60601
Tel: (312) 646-5800
Erik.Snapp@dechert.com

*Counsel for Proposed Intervenor-Defendants Texas State Conference of NAACP Branches, Common Cause Texas, Andrea Chilton Greer, and Yekaterina Snezhkova*

*\*Pro hac vice motion forthcoming*

**CERTIFICATE OF CONFERENCE**

Pursuant to the Local Rules and Standing Orders and Procedures of this Court, I hereby certify that counsel for movant Intervenor-Defendants conferred with counsel for Defendant regarding this motion, and Defendant does not oppose the motion.

Intervenor-Defendants' counsel, Robert Notzon, unsuccessfully attempted to contact counsel for Plaintiff, Mr. Jared R. Woodfill, by email at phone at 7:38 p.m. on November 1, 2020. Intervenor-Defendants are aware of and respect the need for compliance with Section 7(c)(3) of this Court's Civil Procedures, which state that the conference requirement under Local Civil Rule 7.1 will not be considered "satisfied by an unsuccessful attempt to reach opposing counsel occurring less than two full business days before a motion is filed." However, given that Plaintiffs expressly seek emergency relief in this suit, and that Election Day is imminent, Intervenor-Defendants respectfully request that this Court consider their attempts to reach Plaintiffs' counsel sufficient to satisfy Local Rule 7.1.

/s/ Lindsey Cohan

**CERTIFICATE OF SERVICE**

I hereby certify that on November 1, 2020, I electronically served the foregoing via ECF on all other parties in this litigation.

/s/ Lindsey Cohan