FILED
20-0863
10/30/2020 3:55 PM
tex-47697745
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

# No. 20-0863

# In the Supreme Court of Texas

———————

**IN RE STEVEN HOTZE, M.D., WENDALL CHAMPION, HON. STEVE TOTH, AND SHARON HEMPHILL,**
*Relators.*

———————

**On Petition for a Writ of Mandamus
to the Harris County Clerk**

———————

**HARRIS COUNTY CLERK CHRIS HOLLINS'S RESPONSE TO PETITION FOR WRIT OF MANDAMUS AND EMERGENCY MOTION FOR TEMPORARY RELIEF**

———————

Vince Ryan
Harris County Attorney
State Bar No. 17489500
Terence O'Rourke
Special Counsel
State Bar No. 15311000
Cameron A. Hatzel
Assistant County Attorney
State Bar No. 24074373
Seth Hopkins
Assistant County Attorney
State Bar No. 24032435
Susannah Mitcham
1019 Congress, 15th Floor
Houston, Texas 77002
Telephone: (713) 274-5376
Telecopier: (713) 755-8924

Susan Hays
Law Office of Susan Hays, PC
State Bar No. 24002249
P.O. Box 41647
Austin, Texas 78704
Telephone: (214) 557-4819
Telecopier: (214) 432-8273
hayslaw@me.com
*Lead Counsel*

*Counsel for Respondent Chris Hollins, Harris County Clerk*

Exhibit 4

## IDENTITY OF PARTIES AND COUNSEL

Juan Gerardo Perez Pichardo and the
Republican Party of Texas and Stan
Stanart
(Relators, No. 20-0815)

Andy Taylor
Andy Taylor & Associates, P.C.
2628 Highway 36S, #288
Brenham, Texas 77833

Steven Hotze, M.D., Harris County
Republican Party, Sharon Hemphill
and Keith Nielsen
(Relators, No. 20-0819)

Jared R. Woodfill
Woodfill Law Firm, P.C.
3 Riverway, Suite 750
Houston, Texas  77056

Chris Hollins, Harris County Clerk
(Respondent)

Susan Hays
Law Office of Susan Hays, PC
P.O. Box 41647
Austin, Texas 78704
hayslaw@me.com
*Lead Counsel*

Vince Ryan
Harris County Attorney
Terence O'Rourke
Special Counsel
Cameron A. Hatzel
Assistant County Attorney
cameron.hatzel@cao.hctx.net
Seth Hopkins
seth.hopkins@cao.hctx.net
Assistant County Attorney
Susannah Mitcham[*]
1019 Congress, 15th Floor
Houston, Texas 77002

---

[*] Ms. Mitcham was admitted and sworn into the State Bar of Texas today, October 30, and her bar number is not yet available.

i

Exhibit 4

# TABLE OF CONTENTS

**Page**

INDEX OF AUTHORITIES ................................................................................ iv

STATEMENT OF THE CASE ............................................................................. x

STATEMENT OF JURISDICTION ...................................................................... xi

ISSUES PRESENTED ...................................................................................... xii

STATEMENT OF FACTS .................................................................................... 1

    A.    Hollins's plans to offer drive-thru voting have been public for months. ............................................................................................... 1

    B.    Drive-thru voting is the same as any other in-person voting. .............. 4

    C.    Hotze has already sought and been denied mandamus relief.............. 8

ARGUMENT...................................................................................................... 8

I.    Hotze seeks mandamus relief too long after the plans for drive-thru voting were announced and too late during an ongoing election. .................. 9

II.    Relators each lack standing because they have not alleged any concrete injury, nor established that the conduct is causing any injury...................... 12

III.    Hotze had an adequate remedy but each Relator failed to challenge the court order approving the drive-thru polling locations, and the order cannot be collaterally attacked now. ............................................................. 16

IV.    The Election Code explicitly allows for temporary structures to accommodate voters. ..................................................................................... 18

    A.    Drive-thru voting is a polling place within a structure or a building. 19

    B.    "Curbside voting" is not drive-thru voting and does not require an application or a justification to the State........................................... 21

V.    Votes cast in a drive-thru polling place are not "illegal" and even if an election law was broken, those votes still must be counted. ........................ 24

Exhibit 4

VI.   Hotze's federal arguments are unfounded, inapplicable to the drive-thru voting locations and resulting votes, and cannot be the basis for a court order against the counting of votes. ............................................................... 28

CONCLUSION ...................................................................................................... 31

RULE 52.3(j) CERTIFICATION .......................................................................... 33

CERTIFICATE OF SERVICE ............................................................................... 33

CERTIFICATE OF COMPLIANCE ...................................................................... 33

INDEX TO SUPPLEMENTAL MANDAMUS RECORD ................................... 34

Exhibit 4

# INDEX OF AUTHORITIES

## Cases

*Alvarez v. Espinoza*, 844 S.W.2d 238 (Tex. App. – San Antonio 1992, writ dism'd w.o.j.)...................................................................... 28

*Becker v. FEC*, 230 F.3d 381 (1st Cir. 2000) ....................................... 13

*Berg v. Obama*, 586 F.3d 234 (3d Cir. 2009) ....................................... 13

*Bielamowicz v. Cedar Hill Indep. Sch. Dist.*, 136 S.W.3d 718 (Tex. App. – Dallas 2004, pet. denied) ................................................................. 21

*Blum v. Lanier*, 997 S.W.2d 250 (Tex. 1999)........................................ 18

*Brown v. Todd*, 53 S.W.3d 297 (Tex. 2001).................................... 13, 14

*Burgess v. State*, 313 S.W.3d 844 (Tex. App. – Fort Worth 2010, no pet.) .......... 17

*Bush v. Gore*, 531 U.S. 98, 121 S. Ct. 525 (2000)........................... 29, 30

*Carter v. Thompson*, 227 S.W.2d 795 (Tex. 1950) .................................. xi

*City of Austin v. Thompson*, 219 S.W.2d 57 (Tex. 1949) ..................... xi, 28

*City of Dallas v. Dallas Consolidated Elec. St. Ry. Co.*, 148 S.W 292, 105 Tex. 337 (1912)...................................................................... xi, 28

*Corman v. Torres*, 287 F. Supp. 2d 558 (M.D. Penn. 2018) ...................... 14

*ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867 (Tex. 2010) ........... 24

*Furr's Supermarkets, Inc. v. Mulanax*, 897 S.W.2d 442 (Tex. App. – El Paso 1995, orig. proceeding)............................................................. 10

*Galvan v. Vera*, 2018 WL 4096383 (Tex. App. – San Antonio Aug. 29, 2018, no pet.).......................................................................... 25

*Gottlieb v. FEC*, 143 F.3d 618 (D.C. Cir. 1998) .................................. 13

*Hanks v. Smith*, 74 S.W.3d 409 (Tex. App. – Tyler 2001, pet. denied) ............ 17

*Harrison v. Jay*, 153 Tex. 460, 271 S.W.2d 388 (1954) .......................... 17

Exhibit 4

*Heckman v. Williamson Cty.*, 369 S.W.3d 137 (Tex. 2012) .................................. 12

*Honts v. Shaw*, 975 S.W.2d 816 (Tex. App. – Austin 1998, no pet.) .............. 27, 28

*Hunt v. Bass*, 664 S.W.2d 323 (Tex. 1984) ............................................................ 15

*Husted v. Ohio State Conference of N.A.A.C.P.*, 573 U.S. 988 (2014) .................. 11

*In re Angelini*, 186 S.W.3d 558 (Tex. 2006) (orig. proceeding) ....................... 9, 15

*In re Harbrook Tool & Mfg., Co.*, 181 S.W.3d 551(Tex. App. – El Paso 2005, orig. proceeding) ................................................................................................ 10

*In re Hotze*, No. 20-0739, 20 WL 5919726 (Tex. Oct. 7, 2020) ............... 10, 12, 15

*In re Hotze*, No. 20-0819, 2020 WL 6193918 (Tex. Oct. 22, 2020) ........................ 8

*In re Int'l Profit Associates, Inc.,* 274 S.W.3d 672 (Tex. 2009).............................. 9

*In re Murrin Bros. 1885 Ltd.*, 603 S.W.3d 53 (Tex. 2019) ...................................... 9

*Jones v. Morales*, 318 S.W.3d 419 (Tex. App. – Amarillo 2010, pet. denied) ...... 25

*Law v. Johnson*, 826 S.W.2d 794 (Tex. App. – Houston [14th Dist.] 1992, no writ) ...................................................................................................................... 11

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ............................................... 13, 14

*Moore v. Edna Hospital Dist.*, 449 S.W.2d 508 (Tex. App. – Corpus Christi 1969, writ ref'd n.r.e.)........................................................................................ xi, 28

*Myers v. State*, 1992 WL 276459 (Tex. App. – Dallas Oct. 9, 1992, no writ) (per curiam) ....................................................................................................... 20

*North Carolina v. League of Women Voters of N. Carolina*, 574 U.S. 927 (2014)................................................................................................................... 11

*Owens v. State ex rel Jennett*, 64 Tex. 500 (1885) ................................................ 31

*Protect Our Parks, Inc. v. Chicago Park Dist. and City of Chicago*, 971 F.3d 722 (7th Cir. 2020) ........................................................................................... 14

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam) ................................. 10, 11, 12

*Raines v. Byrd*, 521 U.S. 811, 117 S. Ct. 2312 (1997) ........................................... 14

Exhibit 4

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205 (2020)........................................................................................................ 10, 11

*Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366 (Tex. 1993) ................................. 10

*Skelton v. Yates*, 119 S.W.2d 91 (Tex. 1938) ........................................................ 11

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440 (Tex. 1993) .............. 12

*Thomas v. Groebl*, 147 Tex. 70, 78, 212 S.W.2d 625 (1948)........................... 27, 31

*Walker v. Packer*, 827 S.W.2d 833 (Tex. 1992)........................................................ 8

*Williams v. Rhodes*, 393 U.S. 23 (1968)................................................................. 11

## **Statutes**

Act of Apr. 19, 1979, 66th Leg., R.S., ch. 91, § 1, 1979 Tex. Gen. Laws 167 (H.B. 434) ............................................................................................................ 22

TEX. ELEC. CODE § 31.004................................................................................. 1, 23

TEX. ELEC. CODE § 33.056..................................................................................... 7

TEX. ELEC. CODE § 43.001 ................................................................................... 27

TEX. ELEC. CODE § 43.002 ................................................................................... 16

TEX. ELEC. CODE § 43.031 ....................................................................... 15, 20, 26

TEX. ELEC. CODE § 52.006 ................................................................................... 26

TEX. ELEC. CODE § 61.003 ..................................................................................... 7

TEX. ELEC. CODE § 61.014 .................................................................................. 6, 7

TEX. ELEC. CODE § 62.004 ................................................................................... 19

TEX. ELEC. CODE § 64.009 ............................................................................. passim

TEX. ELEC. CODE § 64.012 ................................................................................... 25

TEX. ELEC. CODE § 65.007 ................................................................................... 26

TEX. ELEC. CODE § 65.008 ................................................................................... 26

Exhibit 4

TEX. ELEC. CODE § 65.010 ........................................................................... 26

TEX. ELEC. CODE ch. 82 ............................................................................... 23

TEX. ELEC. CODE § 84.002 ..................................................................... 15, 21

TEX. ELEC. CODE § 85.002 ........................................................................... 16

TEX. ELEC. CODE § 85.034 ..................................................................... 22, 23

TEX. ELEC. CODE § 85.061 ..................................................................... 16, 26

TEX. ELEC. CODE § 85.062 ......................................................... 15, 16, 19, 26

TEX. ELEC. CODE § 86.003 ........................................................................... 26

TEX. ELEC. CODE § 86.006 ........................................................................... 26

TEX. ELEC. CODE § 86.007 ........................................................................... 26

TEX. ELEC. CODE § 86.010 ........................................................................... 26

TEX. ELEC. CODE § 102.001 ......................................................................... 23

TEX. ELEC. CODE § 102.004 ......................................................................... 26

TEX. ELEC. CODE § 102.006 ......................................................................... 26

TEX. ELEC. CODE § 104.001 ................................................... 15, 21, 22, 23

TEX. ELEC. CODE § 104.003 ......................................................................... 23

TEX. ELEC. CODE § 146.002 ......................................................................... 26

TEX. ELEC. CODE § 146.051 ......................................................................... 26

TEX. ELEC. CODE § 146.081 ......................................................................... 26

TEX. ELEC. CODE § 171.0231 ....................................................................... 26

TEX. ELEC. CODE § 192.063 ......................................................................... 26

TEX. ELEC. CODE § 213.006 ......................................................................... 26

TEX. ELEC. CODE § 221.006 ......................................................................... 18

Exhibit 4

TEX. ELEC. CODE § 232.043 .................................................................. 26

TEX. ELEC. CODE § 273.016 .................................................................... 9

TEX. ELEC. CODE § 273.061 .................................................................... xi

TEX. ELEC. CODE, Title 14 Election Contests (chs. 221, 231-33, 241-43) ............. 17

TEX. GOV'T CODE § 402.042 ................................................................... 23

TEX. LOC. GOV'T CODE § 214.231 ........................................................... 20

TEX. LOC. GOV'T CODE § 233.0615 .......................................................... 20

TEX. PENAL CODE § 30.01 ...................................................................... 20

## **Other Authorities**

Harris County Commissioners Court Order, CTCL COVID-19 Response
  Grant, Sept. 29, 2020 ..................................................................... 4, 17

Harris County Commissioners Court Order, Notification of Election & Request
  for Election Details, Aug. 25, 2020 .................................................... 3, 17

Legislative Reference Library, Texas Legislators: Past and Present,
  https://lrl.texas.gov/–legeLeaders/members/membersearch.cfm ..................... 14

Temporary Injunction Hearing, *State v. Hollins*, No. 2020-52383, Sept. 9, 2020 ... 3

The Oxford Dictionary of English ............................................................. 20

Zach Despart, *Harris County OKs $17 million to add polls, voting hours and
  drive-thru voting for November election*, HOUSTON CHRON. Aug. 25, 2020,
  https://www.houstonchronicle.com/politics/houston/article/Harris-County-
  OKs-17M-to-add-polls-voting-hours-15514804.php. ......................... 2

## **Rules**

TEX. R. APP. P. 52.3 ............................................................................ 24

TEX. R. APP. P. 52.8 ............................................................................ 31

Exhibit 4

## **Constitutional Provisions**

Tex. Const. art. V, § 8 ......................................................................... 17

U.S. Const. art. I, § 4, cl. 1 ................................................................. 29

U.S. Const. art. II, § 1, cl.2 ................................................................. 29

Exhibit 4

## STATEMENT OF THE CASE

| | |
|---|---|
| *Nature of the Case* | Election petition for writ of mandamus asserting that Chris Hollins, the Harris County Clerk, is violating the law by providing drive-thru voting without requiring "curbside voting applications" and thus violating the Elections Clause and Equal Protection. |
| *Relators:* | Steven Hotze, M.D. (voter), Wendell Champion (candidate), Sharon Hemphill (candidate), and the Hon. Steve Toth (legislator), filed October 27, 2020 (collectively "Hotze" or "Relators") |
| *Respondent:* | Chris Hollins, Harris County Clerk |
| *Respondent's action from which Relators seek relief:* | Providing drive-thru polling locations pursuant to a Commissioners Court order |
| *Real Party in Interest:* | Voters of Harris County |

x

Exhibit 4

## STATEMENT OF JURISDICTION

While Texas courts may have jurisdiction to issue certain injunctive relief for election law violations, that jurisdiction does not include all forms of relief or the power to interfere with the "entire process" of an election.  *See* Pet. at 5-6; TEX. ELEC. CODE § 273.061.  Hotze seeks the relief of preventing the counting of votes and rejecting votes.  Pet. at 25-26.  This Court does not have jurisdiction to grant that form of relief.  *See Carter v. Thompson*, 227 S.W.2d 795 (Tex. 1950).  That relief is limited to election contests:

> The power to enact laws regulating contested elections rests with the Legislature, and the statutes enacted must be looked to in order to find the provisions controlling the trial of contested election suits. If such statutes provide a method of procedure, that method is final and exclusive, and the courts are limited to such procedure.

*Id*. at 12.  The canvassing of election returns may not be interfered with by the judiciary outside of an election contest.  *City of Austin v. Thompson*, 219 S.W.2d 57, 59-60 (Tex. 1949) (separation of powers "should constrain the courts to caution and certainty when their authority if invoked against the determination of the popular will") (quoting *City of Dallas v. Dallas Consolidated Elec. St. Ry. Co*., 148 S.W 292, 105 Tex. 337 (1912)); *see also Moore v. Edna Hospital Dist*., 449 S.W.2d 508, 521 (Tex. App. – Corpus Christi 1969, writ ref'd n.r.e.) (discussing history of court jurisdiction over election contests and noting that the statutory framework is "designed to be final, exclusive, and the courts are limited thereto").

Exhibit 4

## ISSUES PRESENTED

1.      Plans for drive-thru voting were announced beginning on June 15. Multiple subsequent public announcements ensued.  Hotze filed a petition contesting drive thru locations on the third day of early voting which this Court already denied. He filed this second petition two-and-a-half weeks into early voting, six days before Election Day, and after fifty percent of registered voters have already voted.  *Do equitable principles or the Purcell doctrine bar election mandamus relief?*

2.      The Relators have not articulated any particularized harm for each of them and premised their alleged harms on the false assertion that votes cast in drive-thru polling locations are "illegal" and may not be counted.  *Do the Relators have standing to bring their petitions for writ of mandamus?*

3.      Pursuant to the Election Code, the Harris County Commissioners Court — not the County Clerk — issued the orders approving polling locations and funding.  Each of the Relators failed to appeal these orders to the district court. *Should the petitions be dismissed as improper collateral attacks on those court orders?*

4.      The Election Code explicitly provides for temporary branch polling places in "any stationary structure" or "movable structure."  The Secretary of State

Exhibit 4

has approved and praised the drive-thru voting option at in-person polling locations. *May large metal-framed tents or parking garages serve as polling locations?*

5.     Hotze asks that votes cast in drive-thru voting locations not be counted either on Election Day or at all, yet offers no briefing or authorities to support that conclusion or explain why the plain text of the Election Code should be ignored. More than a century of Texas caselaw requires that votes be counted even if election official violate directory election laws.  *Should this Court order that more than 130,000 votes cast by eligible voters not be counted?*

Exhibit 4

## STATEMENT OF FACTS

Harris County Clerk Chris Hollins ("Hollins") first announced drive-thru voting in June and its pilot test in July, and the Commissioners Court approved the ten locations in August.  Early voting began on October 13.  As of October 29, after all but one day of early voting 1, 176,084 voters have voted in-person and 166,838 have returned their mail-in ballots constituting 54.2% of the registered voters in Harris County.  *See* Daily Record EV Totals ("Oct. 29 Daily Record EV Totals"), as of Oct. 29, 2020, https://www.harrisvotes.com/Docs/Uploads/EVPA_unofficial.pdf. Supp.MR 137, 144.

### A.    Hollins's plans to offer drive-thru voting have been public for months.

On June 15, just a few weeks after he was appointed County Clerk to fill a vacancy, Hollins first announced the possibility of drive-thru voting as he launched his plan for a secure, accessible, fair, and efficient election ("S.A.F.E. Plan"). Supp.MR 14.  In the S.A.F.E. Plan press release Hollins stated he would "[i]ncrease curbside voting and potentially introduce drive-thru voting." *Id.*

Typically, local election authority staff confer with Secretary of State ("SOS") staff about any changes to election procedures seeking advice on the law.  *See* TEX. ELEC. CODE § 31.004.  Hollins's office did so with regard to drive-thru voting over the course of multiple conversations, and the SOS approved of the idea.  Decl. of Rebecca (Beth) Stevens at ¶¶ 4-5, Supp.MR 2.  Further, as is the routine practice,

Exhibit 4

the County Clerk's office held a series of stakeholder meetings beginning in the summer to discuss plans for the general election, get informal input from stakeholders, get formal input on topics like the names of proposed election judges and alternate judges for early voting and Election Day, and explain decisions the County Clerk made to manage and conduct the election including the drive-thru program. *Id*. at ¶ 6.

On July 22, after the primary runoff, Hollins issued another press release announcing that his office had conducted a pilot drive-thru voting service during the primary runoff on July 10 at one polling location surveying voters who used the service for feedback. Supp.MR 16. Voters raved about the experience responding to the question of whether they would use the service again with a score of 9.7 on a 1-to-10 scale. *Id*.

On August 25, the *Houston Chronicle* reported on the Harris County Commissioners Court approving additional funding for the general election including funding for drive-thru voting. Zach Despart, *Harris County OKs $17 million to add polls, voting hours and drive-thru voting for November election*, HOUSTON CHRON. Aug. 25, 2020, https://www.houstonchronicle.com/politics/-houston/article/Harris-County-OKs-17M-to-add-polls-voting-hours-15514804.php. Supp.MR 17. At that August 25 meeting, the Court unanimously approved the list of early voting locations including the drive-thru locations. *See* Harris County

2

Exhibit 4

Commissioners Court Order, Notification of Election & Request for Election Details, Aug. 25, 2020, Supp.MR 22.  None of the Relators appealed that order.

On September 9, during the temporary injunction hearing in *State v. Hollins* Texas Secretary of State Director of Elections Keith Ingram was asked on direct exam about the legal propriety of drive-thru voting.  He answered:

> You know, it's – it's a creative approach that is probably okay legally. You know, the requirement is that polling places be located in a building so what we've told counties who want to try this is that they need to have the location associated with a physical building and that they need to take whoever shows up at that location, whether they are walking, riding a bicycle or driving a car, they need to be able to provide all of those folks with an opportunity to vote.

Transcript, Temporary Injunction Hearing, *State v. Hollins*, No. 2020-52383, Sept. 9, 2020, RR71-72, Supp.MR 108-09.  In Hollins's testimony he confirmed he would be providing drive-thru voting as a method to making voting as safe as it can be during the pandemic.  *Id*., RR134.  On cross exam, the State asked him to "wrap it up on a high note" and "brag about how great and how safe your in-person voting is."  *Id*., RR169.  Hollins again publicly stated that drive-thru voting would be offered during the general election.  *Id*., RR170.

On September 29, the Harris County Commissioners court approved acceptance of a $9.6 million grant in part to expand drive-thru voting locations.  The Court again issued an order approving drive-thru voting, this time to accept grant money to expand their number.  *See* Harris County Commissioners Court Order,

Exhibit 4

CTCL COVID-19 Response Grant, Sept. 29, 2020, Supp.MR 115.  None of the Relators appealed that order either.

**B.     Drive-thru voting is the same as any other in-person voting.**

Harris County has ten drive-thru voting locations, each of which is adjacent to a traditional indoor polling place.  There are 122 early voting polling locations at 112 addresses.  *See* EV Location Map, Supp.MR 123.  The drive-thru locations were co-located with traditional polling locations to accommodate all voters in case of inclement weather or technical difficulties.  *See* Stevens Decl. at ¶ 11, Supp.MR 4.  Each drive-thru polling location has its own election judge and clerks.  *Id*.  In essence, the drive-thru lines provide additional capacity of voting booths at each of the ten locations.  For example, at the NRG Arena location there are thirty drive-thru lanes.  *Id*., at ¶ 8.

The photos below are typical of the drive-thru voting centers.  Voters line up in their cars:



Exhibit 4

Then form separate lines:



A Greeter asks them to have photo identification ready and tells them to turn off their cell phones.  *Id*., at ¶ 9, Decl. of Lillian Henry at ¶ 4, Supp.MR 125; Decl. of Anne Whitlock at ¶ 2, Supp.MR 127; Decl. of Edwin Alexander at ¶ 3, Supp.MR 129; Decl. of Robert O'Sullivan, Supp.MR 131.  Then they enter the voting area:



When they enter a particular line, an election clerk again requests that they turn off

5

<span style="color:red">Exhibit 4</span>

their cell phone, checks their identification, asks the voter the usual questions about whether their address is current, determines whether the voter is on the voter roll, and if so, has them sign the voting roster, then hands them a voting code and a voting machine — all just as if they were casting a vote at a walk-in polling location. Stevens Decl. at ¶ 10; Henny Decl. at ¶ 4; Whitlock Decl. at ¶ 3; Alexander Decl. at ¶ 3; O'Sullivan Decl.  The election worker then sanitizes the voting machine before the next car enters the voting area.   Stevens Decl. at ¶ 10; Henny Decl. at ¶ 4; Whitlock Decl. at ¶ 3; Alexander Decl. at ¶¶ 4, 5.

Most of the drive-thru locations are constructed of metal frames and durable tent covers covering a space of at least ten feet by twenty feet with a ten foot wide lane for a car to pass through.  Stevens Decl. at ¶ 7.  Depending on the location, the size of the drive-thru polling place can be quite large.  *See* Supp.MR 132, Declaration of Michael Winn at ¶ 10.[1]  The Toyota Center location is in a parking garage. Stevens Decl. at ¶ 7; *see* Pet. App. C.  These polling locations were designed to allow space for election clerks to work and poll watchers to watch, and a number of poll watchers have shown up at the drive-thru locations.  *Id*.  There are no photos of the inside of the tent during actual voting because recording devices are banned in polling places.  *See* TEX. ELEC. CODE § 61.014.  The same rules apply to drive-thru voting as any other polling place.  Poll watchers may watch the processing of voters.

---

[1] https://twitter.com/Tejasimo/status/1321994048710782976 (video of overall structure).

Exhibit 4

TEX. ELEC. CODE § 33.056.  There is no electioneering within 100 feet.  TEX. ELEC. CODE § 61.003.  Voters must turn off their cell phones as they enter the tent structures.  *See* TEX. ELEC. CODE § 61.014; *see also* Video.[2]

Similar tent structures are being used at walk-in polling locations.  Stevens Decl. at ¶ 12.  For example, to alleviate lines at the Barbara Bush Library, the County Clerk's office constructed similar tents so that the polling place check in lines can come outside the permanent building to allow more space for socially-distanced voting booths inside the building.  *Id*.  The expanded arrangement includes voting machines in the tent structures.  Winn Decl. at ¶ 12.

Each evening, the counts of voters at each location including the drive-thru locations that are co-located with traditional locations, are posted on the Harris Votes website.  *See* Oct. 29 Daily Record EV Totals.  As of Thursday, October 29, more than 117,462 Harris County voters used this service amounting to 10% of the total in-person votes and 8.7% of the total votes.  The most popular drive-thru locations are the NRG Center, the Humble Civic Center in northeast Harris County, Fallbrook Church in the northwest, and HCC West Loop South.  *See id*.  Hollins anticipates at least 135,000 votes will be cast at the ten drive-thru locations through Election Day.

---

[2] https://twitter.com/HarrisVotes/status/1316493237906026496.  "Curbside Larry" is a recurring character who promotes the Harris County Public Library.  *See* https://twitter.com/TXLA/status/-1316378479890489346.  His video explains drive-thru voting and makes it clear that pick-up trucks are welcome.

Exhibit 4

**C.      Hotze has already sought and been denied mandamus relief.**

On October 15, Hotze and a slightly different array of relators filed a similar petition for writ of mandamus with this Court seeking nearly identical relief.  *In re Hotze*, No. 20-0819.  This Court denied relief on October 22.  *In re Hotze*, No. 20-0819, 2020 WL 6193918 (Tex. Oct. 22, 2020).

## ARGUMENT

Hotze's petition is based on the false premises that: (1) drive-thru voting is the same as "curbside voting"; (2) there is such a thing as "curbside applications"; and (3) votes cast in drive thru voting locations are "illegal."  He also fails to appreciate how polling locations are selected for early voting and election day — namely that the Commissioners Court did so by orders all of the Relators failed to appeal.  Hotze also ignores that the Election Code explicitly allows temporary and movable structures for voting.  Hotze still pretends that drive-thru voting was first raised on September 10, but the topic was raised in June and publicly tested on July 10.  This Court has already held on October 7 that election petitions for writ of mandamus are too late for the general election.  In short, Relators are wrong about the law, too late, and in the wrong forum; thus, their petition and motion should be promptly denied.

"Mandamus is intended to be an extraordinary remedy, available only in limited circumstances."  *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

Exhibit 4

"Mandamus issues only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy by law." *Id.* (quotation omitted). Thus, to obtain a writ of mandamus under Election Code § 273.016, a relator must establish (1) "a clear abuse of discretion" by the respondent and (2) the lack of "a clear and adequate remedy at law, such as a normal appeal." *Id.* (citations omitted). Mandamus relief is meant for circumstances "involving manifest and urgent necessity and not for grievances that may be addressed by other remedies." *In re Murrin Bros. 1885 Ltd.*, 603 S.W.3d 53, 57 (Tex. 2019) (citation omitted). Further, "[d]isputed facts . . . prevent the Court from resolving issues in a mandamus proceeding." *In re Angelini*, 186 S.W.3d 558, 560 (Tex. 2006) (orig. proceeding). Here, the Relators had the remedy of appealing the Commissioners Court order. They failed to do so. Moreover, the proper remedy for election law violations resulting in "illegal" votes is an election contest after the votes have been counted.

## I.   Hotze seeks mandamus relief too long after the plans for drive-thru voting were announced and too late during an ongoing election.

Relators' petition should be dismissed because it is woefully untimely and thus are barred by: (1) equitable principles and (2) the well-established principle that courts should not alter election procedures on the eve of — much less during — an election.

Mandamus relief is largely controlled by equitable principles. *In re Int'l Profit Associates, Inc.,* 274 S.W.3d 672, 676 (Tex. 2009); *Rivercenter Assocs. v.*

Exhibit 4

*Rivera*, 858 S.W.2d 366, 367 (Tex. 1993).  Courts should not grant mandamus relief to those who slumber on their rights.  *Id.*  Texas courts have denied mandamus when, for example, relators offered no explanation for a multi-month delay before challenging a trial-court order.  *See In re Harbrook Tool & Mfg., Co.*, 181 S.W.3d 551, 552 (Tex. App. – El Paso 2005, orig. proceeding); *Furr's Supermarkets, Inc. v. Mulanax*, 897 S.W.2d 442, 443 (Tex. App. – El Paso 1995, orig. proceeding).  This principle applies with more urgency in the context of election mandamuses.  *See In re Hotze*, 2020 WL 5919726, at *2-3 (Tex. Oct. 7, 2020) (denying relief where petition filed after mail-in balloting had begun and weeks after the offending order had issued).

That the petition seeks relief *after* an election has begun and after a nearly identical petition was denied makes the application of equitable principles all the more necessary, as granting relief would cause severe prejudice that could have been avoided if Relators sought relief sooner.  The U.S. Supreme Court, applying equitable principles, "has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election."  *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020).  The U.S. Supreme Court frequently applies these principles to stay lower-court decisions that would alter election procedures when an election is "imminen[t]."  *Purcell v. Gonzalez*, 549 U.S. 1, 5 (2006) (per curiam).  The *Purcell* doctrine reflects that court-

Exhibit 4

ordered changes to election procedures immediately before an election can cause "serious disruption of [the] election process" and "confusion" for voters. *See Williams v. Rhodes*, 393 U.S. 23, 34-35 (1968). The Court has explained that "voter confusion" is a paramount concern whenever a court orders changes to election procedures on the eve of an election, and "[a]s an election draws closer, that risk will increase." *Purcell*, 549 U.S. at 4-5. In recent years, the Supreme Court has applied *Purcell* to stay lower-court orders that would have changed election laws 32 days before Election Day, *N. Carolina v. League of Women Voters*, 574 U.S. 927 (2014), and even 61 days before election day, *Husted v. Ohio State Conference of N.A.A.C.P.*, 573 U.S. 988 (2014). And the Court has reaffirmed the importance of the *Purcell* doctrine within the past year. *Republican Nat'l Comm.*, 140 S. Ct. at 1207.

The same result obtains under Texas law. Applying the related doctrine of mootness, this Court has dismissed election-related mandamus petitions once "absentee balloting has begun," reasoning that the election was "already in progress, and no order which this court might enter could be effective at this late date to govern such election." *Skelton v. Yates*, 119 S.W.2d 91, 91-92 (Tex. 1938); *see also, e.g.*, *Law v. Johnson*, 826 S.W.2d 794, 797 (Tex. App. – Houston [14th Dist.] 1992, no writ) ("A case is moot once it has become too late to invalidate a candidate and print new absentee ballots in time for the beginning of the casting of ballots."). Not even

Exhibit 4

three weeks ago, this Court applied *Purcell* to deny mandamus relief that would have disrupted an ongoing election. *In re Hotze*, No. 20-0739, 2020 WL 5919726, at *3 & *3 n.18 (citing, *inter alia*, *Purcell*, 549 U.S. 1).

Here the election is not just "imminent" — it is happening. More than fifty percent of the Harris County electorate has already voted. Supp.MR. 13 (628,708 votes as of October 18); Supp. MR 144 (1,344,915 votes as of October 29). Voters have cast their ballots in reliance of the SOS-approved polling locations. *See* Amicus Ltr. of Janice Jucker, No. 20-0819, Supp.MR 145; Amicus Ltr. of Elizabeth Schreiber, No. 20-0819, Supp.MR 146 ("I should not have my vote stolen."). Changing these procedures now by court order will cause the sort of disruption that the *Purcell* doctrine prohibits.

## II.   Relators each lack standing because they have not alleged any concrete injury, nor established that the conduct is causing any injury.

Relators have no standing to pursue the writ they request. "[S]tanding is a constitutional prerequisite to maintaining a suit" in Texas courts. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). It requires "a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court." *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 154 (Tex. 2012). Relators have the burden to establish (1) an "injury in fact" that is both "concrete and particularized" and "actual or imminent"; (2) that the injury is "fairly traceable" to the defendant's challenged actions; and (3) that it is "'likely,' as opposed to

Exhibit 4

merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 154-55 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Relators' allegations of harm are premised on the assertion that votes cast in drive thru polling places are "illegal." Pet. at 8-9, 24-25. As explained in Part IV, they are wrong about the propriety of drive-thru voting locations. Moreover, as explained in Part V, they are wrong about such votes being "illegal" and not countable.

None of the Relators — who are an individual voter, hopeful candidates, and a single member of the Legislature from another county — allege any "injury distinct from that sustained by the public at large." *Brown v. Todd*, 53 S.W.3d 297, 302 (Tex. 2001). That failure alone forecloses standing.

Hotze claims his right to vote has been threatened by drive thru voting. Pet. at 24. But, "[n]o Texas court has ever recognized that a plaintiff's status as a voter, without more, confers standing to challenge the lawfulness of governmental acts." *Brown*, 53 S.W.3d at 302. Even when a "preferred candidate . . . has less chance of being elected," the "harm" is not "a restriction on voters' rights and by itself is not a legally cognizable injury sufficient for standing." *Becker v. FEC*, 230 F.3d 381, 390 (1st Cir. 2000); *see also Berg v. Obama*, 586 F.3d 234, 240 (3d Cir. 2009); *Gottlieb v. FEC*, 143 F.3d 618, 622 (D.C. Cir. 1998). Hotze does not have standing.

13

Exhibit 4

Under these well-established principles, Relators' allegations about vote dilution or "votes being illegally cast" — in addition to being entirely baseless — are irrelevant. *See* Pet. at 24.  "[R]ecognizing standing based on such an 'undifferentiated' injury is fundamentally 'inconsistent' with the exercise of the judicial power." *Protect Our Parks, Inc. v. Chicago Park Dist.*, 971 F.3d 722, 731 (7th Cir. 2020) (Barrett, J.) (quoting *Lujan*, 504 U.S. at 575).

Relators make no argument as to why Rep. Toth has standing other than the fact he is currently a representative.  But individual legislators do not have standing by virtue of their office alone. *See Raines v. Byrd*, 521 U.S. 811, 829-30, 117 S. Ct. 2312, 2321 (1997); *Corman v. Torres*, 287 F. Supp. 2d 558, 567 (M.D. Penn. 2018) ("a legislator suffers no Article III injury when alleged harm is borne equally by all members of the legislature").  Relators' position is also misplaced because this case does not allege the invalidation of a specific legislative act. *See Brown*, 53 S.W.3d at 303-04.  As this Court made clear in *Brown*, it is inappropriate to conceive of an amalgam of disparate legislative pronouncements as "*a* specific legislative act" that legislators might have standing to defend.  *Id*. at 304 (emphasis in original). Moreover, Rep. Toth only entered the Legislature in 2013.  *See* Legislative Reference Library, Texas Legislators: Past and Present, https://lrl.texas.gov/–legeLeaders/members/membersearch.cfm.  All of the sections at issue were enacted

Exhibit 4

at least before the 1985 Election Code.  *See* TEX. ELEC. CODE §§ 43.031, 64.009, 84.002, 85.062, 104.001.  These laws are not Rep. Toth's to defend.

Even if any Relators had alleged cognizable, redressable injuries, they surely have not proven them.  To establish standing in an original proceeding, Relators need evidence.  *See In re Hotze*, 2020 WL 5919726, at *5 (Blacklock, J. concurring) (citing *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984)).  That evidence must show a "particular personal interest which separates [relator] from the general public." *Hunt*, 664 S.W.2d at 324.  Even if Relators' threadbare presumptions that drive-thru voting will disfavor their candidates and candidacies were credible, they have introduced no evidence supporting that the voting method will actually harm candidates or cause any concrete, particularized injury.  At an absolute minimum, there are "[d]isputed facts" in this case that "prevent the Court from resolving issues in a mandamus proceeding."  *In re Angelini*, 186 S.W.3d at 560.  Finally, as candidates, Relators Champion and Hemphill should be careful what they ask for. Whether they are polling better or worse with voters who choose to and can access drive-thru polling locations versus conventional ones is unknowable, and they may very well harm their own election chances by seeking relief should drive-thru voters disproportionately prefer their candidacies compared to Harris County voters as a whole.  This failure to produce any evidence to show concrete harm from voters voting from their cars undermines their claim for standing to bring suit.

Exhibit 4

**III.    Hotze had an adequate remedy but each Relator failed to challenge the court order approving the drive-thru polling locations, and the order cannot be collaterally attacked now.**

In addition to the independent reasons to deny mandamus relief for a too-late filed petition and lack of standing, the Relators are suing the wrong respondent in the wrong forum.  As early voting clerk and County Clerk, Hollins recommends voting locations, but the Commissioners Court issues an order approving them both for early voting and Election Day.  *See* TEX. ELEC. CODE §§ 43.002 (election day for general election); 85.062(a)(1) (early voting).   That order should have been timely challenged in district court.

In its initial incarnations, early voting typically took place at the county clerk's main office.  *See* TEX. ELEC. CODE § 85.002(a).  However, the Commissioners Court may determine that space is impracticable and select a different location in the same city as Harris County has done by selecting the NRG Arena as its headquarters.  *See* TEX. ELEC. CODE § 85.002(b).  When the county clerk is the early voting clerk as is the case in Harris County, each of the clerk's branch offices may be an early voting polling place known as a "permanent branch polling place."  TEX. ELEC. CODE § 85.061(a), (c).  But the Commissioners Court may also by order provide that other locations be "temporary branch polling" locations.  TEX. ELEC. CODE §§ 85.061(b), 85.062(a)(1).

Exhibit 4

On August 25, the Commissioners' Court issued an unanimous order approving the drive-thru polling places. Supp.MR 22. The Relators did not appeal that order. On September 29, the Commissioners' Court issued another order approving additional funding including for expanded drive-thru voting locations. Supp.MR 115. The Relators did not appeal that order. Commissioners court orders are appealed to a district court. TEX. CONST. art. V, § 8.[3] Orders of the Commis–sioners Court are binding and conclusive and may not be collaterally attacked. *Burgess v. State*, 313 S.W.3d 844, 852-54 (Tex. App. – Fort Worth 2010, no pet.) (collecting cases); *Hanks v. Smith*, 74 S.W.3d 409, 412 (Tex. App. – Tyler 2001, pet. denied). This is true for election cases as well including election contests. *Harrison v. Jay*, 153 Tex. 460, 463-64, 271 S.W.2d 388, 389-90 (1954) (refusing a collateral attack on court order establishing polling precincts). *Harrison* is directly on point to Hotze's challenge to polling locations. Hotze has sued the wrong respondent, in the wrong forum, and failed to timely challenge the polling location orders. Consequently, his petition and motion should be denied.

Moreover, the Election Code provides an adequate remedy for those truly aggrieved by a violation of election laws: an election contest. *See* TEX. ELEC. CODE, Title 14 Election Contests (chs. 221, 231-33, 241-43). The Code specifies the scope

---

[3] *See Henry v. Cox*, 520 S.W.3d 28, (Tex. 2017) (noting that courts supervision of commissioners court acts is limited).

Exhibit 4

of inquiry in an election contest.  TEX. ELEC. CODE § 221.003.  Notably, the filing of an election contest does not affect the canvass, and the counting and certification of the election results shall continue as if a contest had not been filed.  TEX. ELEC. CODE § 221.006.  Only through the process of an election contest can votes be declared invalid and not counted.  But Hotze is asking this Court to ignore that statutory scheme, create a new remedy outside the bounds of the Code, and order that Harris County drive-thru votes be quarantined and not counted on Election Day.  *See Blum v. Lanier*, 997 S.W.2d 250 (Tex. 1999) ("An injunction that delays the election would be improper, but an injunction that facilitates the elective process may be appropriate.").  That request runs directly contrary to the election laws the Legislature has enacted and such an end run around the law should not be indulged.

## IV.    The Election Code explicitly allows for temporary structures to accommodate voters.

Hotze's misreading of the Election Code is so off base, it seems willful.  He complains about drive-thru polling locations, yet under the Code it is the Commissioners Court that approved these drive-thru locations — not the Clerk who can only recommend them.  He alleges that the locations are an "illegal scheme" but the Code explicitly allows "temporary" and "movable structures" and even the use of "ropes."  He claims the votes are "illegal" and thus cause the Relators redressable harm, but the Election Code says nothing about polling location violations resulting in votes that "may not be counted."

Exhibit 4

### A.   Drive-thru voting is a polling place within a structure or a building.

Temporary branch polling locations may be located "at any place in the territory served by the early voting clerk and may be located in *any stationary structure*." TEX. ELEC. CODE §§ 85.062(b) (emphasis added).   In addition, the polling place may be located "in a movable structure" and "[r]opes and other suitable objects may be used" to arrange voting stations so that voters have privacy but election workers and poll watchers can view the voting area. *Id*.; *see also* TEX. ELEC. CODE § 62.004.   Thus, temporary branch polling locations do not even have to be in a "building" at all.   They may be in any structure including those that are movable.

Here, the drive-thru voting locations use more than "ropes" to arrange voting stations.   Sturdy metal frames form large stationary structures that cars can drive through in distinct lines to pass through voting stations and create voting areas that are in view of election officers, watchers, and persons waiting to vote, but are separated from others waiting to vote. *See* TEX. ELEC. CODE § 62.004(1).   One location is a parking garage.   Thus, structures like the drive-thru voting locations Harris County has innovated are explicitly allowed under the Election Code.   They are not "illegal" or even legitimately questionable under the Code's plain language.

Exhibit 4

The drive thru locations are also legally permitted on Election Day.  *See* TEX. ELEC. CODE § 43.031 (polling locations must be in a building).[4]  The drive-thru polling locations are buildings.  The Oxford Dictionary of English defines "building" as "a structure with roof and walls such as a house or a factory."  The Election Code does not define a building, but other statutes do.  *See* TEX. PENAL CODE § 30.01 ("any enclosed structure intended for use or occupation as a habitation or for some purpose of trade, manufacture, ornament, or use"); TEX. LOC. GOV'T CODE § 233.0615 ("any enclosed structure intended for use or occupation as a habitation or for some purpose of trade, manufacture, ornament, or use"); TEX. LOC. GOV'T CODE § 214.231 ("any enclosed structure designed for use as a habitation or for a commercial use, including engaging in trade or manufacture").

Texas law liberally applies "building" as used in these code provisions.  In *Myers v. State*, the defendant was arrested after being found partially inside a ten foot by twenty foot tent on the State Fair grounds and charged with burglary of a "building."  *Myers v. State*, 1992 WL 276459 (Tex. App. – Dallas Oct. 9, 1992, no writ) (per curiam).  That edifice is very similar to but not as sturdy as those used for drive-thru voting and precisely the same dimensions as individual voting stations in the drive-thru locations.  The court held that the tent was a "building."  *Id*., at *2.

---

[4] Section 43.031 is part of Title 4 of the Election Code which only applies to Election Day.  Title 7 governs early voting.

Exhibit 4

The Dallas Court of Appeals has also held that a football stadium qualifies as a polling location.  *Bielamowicz v. Cedar Hill Indep. Sch. Dist.*, 136 S.W.3d 718, 721 (Tex. App. – Dallas 2004, pet. denied).  There the court refused a challenge to a temporary branch polling location in a football stadium to make voting convenient for a school bond election.  The drive-thru voting locations are both a structure and a building and are expressly permitted under the Election Code.

### B. "Curbside voting" is not drive-thru voting and does not require an application or a justification to the State.

The Relators ask that the Court order Hollins to review "all curbside voting applications" and reject those that lack compliance with Sections 64.009, 84.002, and 104.001.  Pet. at 26.  There is no such thing as a "curbside voting application" under the Election Code.  Winn Decl. at ¶ 9.  Voters simply ask for curbside assistance, and the election clerks provide it without interrogating them as to their health status.  *Id*.  An application is not required.  *Id*.; *see* TEX. ELEC. CODE § 64.009.

While drive-thru voting is just another polling place with a different layout and structure than traditional polling places, curbside voting is a *method* of voting that must be available at *all* polling places to accommodate voters with certain disabilities.  If a voter is physically unable to enter the polling place without personal

Exhibit 4

assistance or a likelihood of injuring the voter's health,[5] on the voter's request, an election officer shall deliver a ballot to the voter at the polling place entrance or the curb.   TEX. ELEC. CODE § 64.009(a).   While this restricted method of voting is colloquially known as "curbside voting" in what physical circumstance it takes place depends on the nature and physical layout of each polling location.   (On Election Day Harris County will have 800 polling locations which of course will vary widely. Winn Decl. at ¶ 8).   Regular voting procedures may be modified by the election officer to the extent necessary to conduct voting to accommodate the voter.   TEX. ELEC. CODE § 64.009(b).   The same accommodations must be applied at every polling place during early voting.   TEX. ELEC. CODE § 85.034.   Drive-thru voting is a different physical layout of an in-person polling location, not a special accommodation for people with disabilities who cannot physically enter the polling places, where all election laws, including the accommodation of poll watchers are in force.   Winn Decl. at ¶ 10.

Hotze repeats a string citation to Election Code Sections in his petition to Sections "64.009, 82.02 and 104.001."   Pet. 1, 5, 10, 20, 22.   The citations are misplaced and confused.   As explained above, "curbside voting" is not the same as drive-thru voting temporary polling locations.   *See* TEX. ELEC. CODE § 64.009.   The

---

[5] This description resembles the definition of "disability" for voting-by-mail before the 1985 modernization of the Election Code.   *See* Act of Apr. 19, 1979, 66th Leg., R.S., ch. 91, § 1, 1979 Tex. Gen. Laws 167 (H.B. 434).

Exhibit 4

citation to "82.02" presumably intends Section 82.002 which does not come into play at all because Chapter 82 governs mail-in ballots and has a different criteria than Section 64.009.  *See* TEX. ELEC. CODE ch. 82 (eligibility for early voting by mail).  The citation to Section 104.001 is baffling.  That provision has nothing to do with the role of an early voting clerk, but instead allows a voter whose precinct polling place uses a voting machine and who has a sickness or physical condition that prevents the voter from using that machine to vote at the *main* early voting polling place on Election Day.  *See* TEX. ELEC. CODE §§ 104.001, 104.003; Winn Decl. at ¶ 11.  Unlike Chapter 102's provisions for late voting by a sick or disabled voter, Chapter 104 does not reference Section 82.002.  *See* TEX. ELEC. CODE § 102.001(a).  Moreover, modern voting systems and better physical facilities for voting, along with the universal requirement for curbside voting make Chapter 104 largely obsolete and rarely used.[6]  *See* TEX. ELEC. CODE § 64.009, 85.034; Winn Decl. at ¶ 11.

---

[6] As for the Attorney General's memo it too confuses the disability accommodation of "curbside voting" with the layout and establishment of polling locations.  Pet. at 18.  This "memo" is not a letter opinion.  *See* TEX. GOV'T CODE § 402.042.  Moreover, the Election Code charges the Secretary of State with advising local election authorities on election law, not the Attorney General.  TEX. ELEC. CODE § 31.004.

Exhibit 4

**V.    Votes cast in a drive-thru polling place are not "illegal" and even if an election law was broken, those votes still must be counted.**

Hotze argues that the votes cast in drive thru voting locations are "illegal" and should not be counted.  Pet. at 8-9.  Yet, Hotze offers no argument or authorites as to why such votes — even if there were Election Code violations — should not be counted.  For this failure alone the petition should be denied as Hotze's failure to brief the issue waives it.  TEX. R. APP. P. 52.3(h); *see also ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 889 (Tex. 2010).

In fact, the plain language of the Election Code and more than a century of Texas jurisprudence requires that even if the drive thru locations violate the Election Code, the votes cast there must be counted.  An "'illegal vote' means a vote that is not legally countable."  TEX. ELEC. CODE § 221.003(b).  A ballot cast in person is not "illegal" because of the physical lay-out of the polling location.  An "illegal vote" is a criminal offense *only if* a person:

> (1) votes or attempts to vote in an election in which the person knows the person is not eligible to vote;
>
> (2) knowingly votes or attempts to vote more than once in an election;
>
> (3) knowingly votes or attempts to vote a ballot belonging to another person, or by impersonating another person; or
>
> (4) knowingly marks or attempts to mark any portion of another person's ballot without the consent of that person, or without specific direction from that person how to mark the ballot.

Exhibit 4

TEX. ELEC. CODE § 64.012(a).  Thus, uncountable votes are those that resulted from clear fraudulent behavior:  ineligible voters voting, voting twice, voting for another, or marking another's ballot without permission and compliance with the law.  There is nothing about an eligible voter casting an in-person vote from their car that renders their vote "illegal," fraudulent, or not countable.

The Elections Code is very specific as to when a vote is "not legally countable" by simply specifying in what circumstances a vote "may not be counted" including that phrase in nearly two dozen separate statutes.  Thus, there is a clear textual reason for ballots to be voided or not counted whether during the canvass or in an election contest, and an absence of the text phrase in the provisions alleged to have been violated means any votes cast that way must still be counted.  *See Galvan v. Vera*, 2018 WL 4096383, at *3 & *3 n.2 (Tex. App. – San Antonio Aug. 29, 2018, no pet.); *Jones v. Morales*, 318 S.W.3d 419, 426 (Tex. App. – Amarillo 2010, pet. denied) (both counting ballots despite election code violations where the sections violated did not specify the votes "may not be counted").

Exhibit 4

Some of these twenty provisions concern whether marred or irregular paper ballots may be counted.[7]  Other provisions concern the procedure for mail-in ballots[8] or certain other methods of voting by mail such as late voting by mail because of a sickness or disability that begins after the deadline for voting by mail.[9]  Still others concern when votes for types of candidates may be counted such as write in candidates whose name does not appear on the list of candidates.[10]  And a few concern conduct of recounts and new elections.[11]  The sections concerning polling locations and curbside voting do not contain the phrase "may not be counted;" thus any alleged violations will not render those now 100,000 plus votes "not legally countable."  *See* TEX. ELEC. CODE §§ 43.031, 64.009, 85.061, 85.062.  Even Chapter 104 which the Relators claim Hollins is violating does not contain any language

---

[7] TEX. ELEC. CODE §§ 52.006 (ballots corrected by a sticker), 65.007 (tallying straight-party votes where a voter marks more than one party), 65.008 (tallying write-in votes where a sticker for a write-in candidate is affixed to the ballot), 65.010 (physical ballots with irregularities or a provisional ballot that does not qualify to be counted).

[8] TEX. ELEC. CODE §§ 86.003 (sending a ballot to a voter other than by mail), 86.006 (voter returns ballot other than by mail, common carrier, or hand delivery without showing identification), 86.007 (ballot received after the deadline), 86.010 (unlawful assistance of a voter including inadequate documentation thereon).

[9] TEX. ELEC. CODE § 102.004 (providing a ballot in violation of this section), 102.006 (returning a ballot other than in person, in the carrier envelope, by the person who submitted the application for the 'late disabled' voter).

[10] TEX. ELEC. CODE §§ 146.002 (general election), 146.051 (city election), 146.081 (special legislative election), 171.0231 (county or precinct chair), 192.063(b) (independent presidential candidate who has withdrawn, died, or been declared ineligible)

[11] TEX. ELEC. CODE §§ 213.006 (early voting ballots rejected by early voting ballot board in a recount); 232.043 (write-in votes in a new election ordered by the court where the candidate did not receive votes in the first election).

Exhibit 4

indicating that votes cast by an improper method by an otherwise eligible voters are not legally countable.

Outside of these "may not be counted" statutes Election Code language prohibiting certain acts or not explicitly and in detail allowing others is not applied mechanically by Texas courts. Under the "substantial compliance" rule, review of allegations that an elections officer engaged in "fraud or illegal conduct or made a mistake" is limited to violations of statutes that are mandatory and not directory. *See* TEX. ELEC. CODE § 221.003. Further, election laws that are mandatory may be construed as directory in the absence of fraud or a statutory provision voiding ballots for failure to comply with a statute. Even the addition of the word "shall" does not make an election statute mandatory so as to defeat the will of the voters. *Thomas v. Groebl*, 147 Tex. 70, 78, 212 S.W.2d 625, 630 (1948) (following the "well established rule of construction that statutes regulating the right to vote should be given a liberal interpretation in favor of that right.").

Election contestants must prove that a violation affected the outcome of the election, and violations of even mandatory provisions do not amount to an automatic invalidation of an election. *Honts v. Shaw*, 975 S.W.2d 816, 820 (Tex. App. – Austin 1998, no pet.). In *Honts*, the contestant alleged violations of Chapter 43 Polling Places because the election administrator had improperly combined voting precincts violating Section 43.001 (one polling place in each precinct). The court did not

27

Exhibit 4

invalidate the election holding that (1) statutes governing the *manner* of the election are directory in the sense that their violation does not justify setting aside an election, 975 S.W.2d at 821-22 (citations omitted) and (2) violations of directory provisions stemming from the election officials' conduct do not result in illegal votes.  *Id*. at 823; *see also Alvarez v. Espinoza*, 844 S.W.2d 238, 243 (Tex. App. – San Antonio 1992, writ dism'd w.o.j.) ("a sanction for the sins of the . . . official should not [be] visited upon the voter").  Likewise, here the manner of voting in a drive-thru polling location versus any other polling place is governed by directory statutes, and any violation cannot result in illegal or uncountable votes.

Finally, as discussed in the Statement of Jurisdiction this Court does not have the jurisdiction to grant the relief requested — prior restraint on the counting of votes and interference with the canvass — outside of an election contest.  *See City of Austin v. Thompson*, 219 S.W.2d 57, 59-60 (Tex. 1949); *City of Dallas v. Dallas Consolidated Elec. St. Ry. Co*., 148 S.W 292, 105 Tex. 337 (1912); *see also Moore v. Edna Hospital Dist*., 449 S.W.2d 508, 521 (Tex. Civ. App. – Corpus Christi 1969, writ ref'd n.r.e.)

## VI.  Hotze's federal arguments are unfounded, inapplicable to the drive-thru voting locations and resulting votes, and cannot be the basis for a court order against the counting of votes.

Hotze argues the Elections Clause and the Electors Clause of the United States Constitution create a redressable federal constitutional right because Hollins has

Exhibit 4

"significantly departed" from the Election Code.  Pet. at 12-14 (citing U.S. CONST. art. I, § 4, cl. 1; U.S. CONST. art. II, § 1, cl.2; *Bush v. Gore*, 531 U.S. 98, 112-13, 121 S. Ct. 525, 534 (2000) (Rehnquist, C.J., concurring)).  Putting aside that, as argued above, the drive-thru location are supported by rather than contrary to the statutes, Hotze's position is unsupported by federal law.  Notably, Hotze does not cite to *Bush v. Gore*'s holding, but to the Rehnquist concurrence even while claiming that the "United States Supreme Court has made it clear" that the law is as Hotze says.  Pet. at 14.

To the contrary *Bush v. Gore* was about the *method* of counting *votes already cast*.  The majority opinion held that counting ballots differently in different counties would violate the Equal Protection Clause.  531 U.S. at 108-11.  The majority expressly limited its opinion to "present circumstances" given the complexity of election processes.  *Id*. at 19.  Nothing in the majority opinion supports Hotze's theory of a private right of action under the Elections and Electors Clauses or their application to the facts at hand — which does not include a court order changing the method of counting votes cast.

Even the Rehnquist concurrence does not support Hotze's case.  Rehnquist argued that although "comity and respect for federalism compel us to defer to the decisions of state courts on issues of state law" a "significant departure from a legislative scheme for appointing Presidential electors presents a federal

29

Exhibit 4

constitutional question." 531 U.S. at 112-13.  Rehnquist continued to limit the scope

of his theory in his analysis:

> Isolated sections of the code may well admit of more than one interpretation, but the general coherence of the legislative scheme may not be altered by judicial interpretation so as to wholly change the statutorily provided apportionment of responsibility among these various bodies. In any election but a Presidential election, the Florida Supreme Court can give as little or as much deference to Florida's executives as it chooses . . . .

*Id*. at 114.  Hotze does not even argue that Hollins violates the "general coherence

of the legislative scheme" but only of a few "isolated sections."  Thus, even under

the Rehnquist analysis his claim for relief fails.

Hotze's Equal Protection argument is likewise uncoupled from *Bush v. Gore*

by seeking to apply it to means of voting, rather than the method of counting votes

cast.  *Bush* is limited to its "present circumstances" and cannot be stretched to

encompass any allegations of election law violations.  In a perverse twist to the

majority opinion's preservation of the fundamental right to vote and to have one's

vote counted, 531 U.S. at 104, 111, Hotze asks this Court to order those votes not be

counted.  This Court should decline.

Finally, Hotze has produced no evidence that Harris County is the only county

in Texas utilizing drive-thru voting locations.  Preventing Harris County's drive-thru

votes from being counted, when other counties' drive-thru votes would be counted,

Exhibit 4

would create the very problem *Bush v. Gore* addressed:  unequal standards in counting votes created by the courts.

In sum, Hotze has not shown he is entitled to the relief sought.  Thus, his petition must be denied.  *See* Tex. R. App. P. 52.8(a).

\*   \*   \*

Voting is a good thing.  Texas courts have long liberally construed statutes tending to limit citizens in their exercise of the right to vote in the favor of voters. *Thomas*, 147 Tex. at 78, 212 S.W.2d at 630 ("The right to vote is so fundamental in our form of government that it should be as zealously safeguarded as are our natural rights."); *Owens v. State ex rel Jennett*, 64 Tex. 500, 509 (1885).  Here the statutes explicitly allow polling places to be temporary, movable, and any sort of structure or building that meets the needs of the community.  Hollins has not violated the law. Even if he had, the votes cast must still be counted.  This Court lacks jurisdiction over the Relator's claims and their request for relief.  Thus, this Court should deny the petition.

## CONCLUSION

For the foregoing reasons, this Court should deny the petition and the motion.

31

Exhibit 4

Respectfully submitted,


/s/ *Susan Hays*
Susan Hays
Law Office of Susan Hays, PC
State Bar No. 24002249
P.O. Box 41647
Austin, Texas 78704
Telephone: (214) 557-4819
Telecopier: (214) 432-8273
hayslaw@me.com

Vince Ryan
Harris County Attorney
Terence O'Rourke
Special Counsel
State Bar No. 15311000
Cameron A. Hatzel
Assistant County Attorney
State Bar No. 24074373
Seth Hopkins
Assistant County Attorney
State Bar No. 24032435
Susannah Mitcham
1019 Congress, 15th Floor
Houston, Texas 77002
Telephone: (713) 274-5376
Telecopier: (713) 755-8924

Exhibit 4

## RULE 52.3(j) CERTIFICATION

I hereby certify that I have reviewed this response brief and every factual statement is supported by the record.

*/s/ Susan Hays*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing instrument was served on all parties of record via eFiling on October 30, 2020.

*/s/ Susan Hays*

## CERTIFICATE OF COMPLIANCE

Microsoft Word reports that this brief contains 7,474 words, excluding the portions of the brief exempted by Rule.

*/s/ Susan Hays*

Exhibit 4