IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| STEVEN HOTZE, M.D.; WENDELL CHAMPION; HON. STEVE TOTH; and SHARON HEMPHILL,<br><br>              Plaintiffs,<br><br>  v.<br><br>CHRIS HOLLINS, in his official capacity as Harris County Clerk,<br><br>             *Defendants*,<br><br>MJ FOR TEXAS; DSCC; DCCC; MARY CURRIE; CARLTON CURRIE JR.; JEKAYA SIMMONS; and DANIEL COLEMAN,<br><br>            *Proposed Intervenor-Defendants*,<br><br>and<br><br>LEAGUE OF WOMEN VOTERS OF TEXAS; JOY DAVIS-HARASEMAY, DIANA UNTERMEYER, MICHELLE COLVARD, KAREN VIDOR, MALKIA HUTCHINSON-ARVIZU, ANTON MONTANO, HELEN ANICE SHELTON, and ELIZABETH FURLER<br><br>            *Proposed Intervenor-Defendants*. | No. 4:20-cv-03709 |

**PROPOSED INTERVENOR-DEFENDANTS' EMERGENCY MOTION TO INTERVENE AND INCORPORATED MEMORANDUM OF LAW**

Proposed Intervenor-Defendants move to intervene in this action as defendants in order to safeguard their fundamental right to vote. Joy Davis-Harasemay, Diana Untermeyer, Michelle Colvard, Karen Vidor, Malkia Hutchinson-Arvizu, Anton Montano, Helen Anice Shelton, and

1

Elizabeth Furler are voters who cast ballots in the 2020 election in Harris County using drive-thru voting. Proposed Intervenor-Defendant League of Women Voters educates its members about how to access voting in Harris County, including through drive-thru voting, and some of its members have availed themselves of drive-thru voting to exercise their fundamental right to vote. Proposed Intervenor-Defendants relied upon, and Proposed Intervenor-Defendant League of Women Voters promoted, the safe and convenient mechanism of drive-thru voting offered by their local government. Plaintiffs' lawsuit, and the relief they seek, threatens to retrospectively obviate Proposed Intervenor-Defendants' votes and to vitiate their participation in the 2020 election.

"There is no right more basic in our democracy than the right to participate in electing our political leaders." *McCutcheon v. FEC*, 572 U.S. 185, 191 (2014). Intervention is therefore warranted. This motion is timely; Proposed Intervenor-Defendants have a substantial legal interest in the subject matter of the pending action; their ability to protect their interests will be impaired absent intervention; and Defendant may inadequately represent their interests. Proposed Intervenor-Defendants are therefore entitled to intervene as of right under Federal Rule of Civil Procedure 24(a)(2). In the alternative, the Court should permit Proposed Intervenor-Defendants to intervene under Federal Rule of Civil Procedure 24(b)(1)(B). For these reasons, and for the reasons explained further below, the Court should grant Proposed Intervenor-Defendants' motion to intervene.

## **DESCRIPTION OF PROPOSED INTERVENOR-DEFENDANTS**

The League of Women Voters of Texas ("LWVTX") is a non-profit, non-partisan organization whose mission includes educating and empowering voters, defending democracy, and envisioning a democracy where every person has the desire, the right, the knowledge and the confidence to participate. Chimene Decl. ¶ 1. Voters in Harris County are served by four LWVTX

2

chapters, known as Local Leagues, which have approximately 500 members. *Id.* ¶ 2. LWVTX has expended resources to educate its members and the public about all available methods of voting in this election cycle, including drive-thru voting; some of its members have utilized these options. *Id.* ¶¶ 4-6. LWVTX is concerned that its members might be disenfranchised and that it will not be able to provide accurate information about voting procedures on Election Day to its members and the public. *Id.* ¶¶ 6-7.

Joy Davis-Harasemay is a 44-year-old registered voter who lives in Houston. Davis-Harasemay Decl. ¶¶ 1-2. She has both asthma and spondylitis, a degenerative spine disease that makes her unable to stand for long periods of time. *Id.* ¶ 3. Because of both health risks and her inability to stand in line for extended periods, Ms. Davis-Harasemay voted using drive-thru voting at the Houston Food Bank location on October 18, accompanied only by her 17-year old son. *Id.* ¶¶ 4, 6. Ms. Davis-Harasamey found the process smooth and secure, and it included the normal steps of voting, including having her ID checked and privately accessing and voting her ballot. *Id.* ¶¶ 5-6. If her vote is not counted as a result of the relief requested in this lawsuit, she will be heartbroken and disenfranchised. *Id.* ¶ 8. As a Black woman, she likely will not vote again in this election for fear of breaking election rules and being accused of voting twice. *Id.* ¶ 8.

Diana Untermeyer is a 58-year-old registered voter who lives in Houston. Untermeyer Decl. ¶¶ 1-2. She votes in Republican ballots and routinely votes for Republican candidates during general elections, including for Plaintiff Sharon Hemphill over her opponent in the 2020 general election. *Id.* ¶ 3. Mrs. Untermeyer and her husband voted drive-thru at the Houston Community College polling location, following procedures defined by Harris County. *Id.* ¶ 4. The procedure for drive-thru voting was the same as that followed for walk-up voting, within a building and utilizing the same identification and security procedures. *Id.* ¶¶ 4-5. An order casting doubt on the

validity of her vote, or invalidating that vote, would either disenfranchise Mrs. Untermeyer or cause substantial confusion and hardship. *Id.* ¶ 6.

Michelle Colvard is a 45-year-old registered voter who lives in Houston. Colvard Decl. ¶¶ 1-2. She has both spina bifida and monoclonal gammopathy; because of these conditions, she uses a wheelchair and is more susceptible to severe illness from COVID-19. *Id.* ¶ 3. Ms. Colvard also has a Master's Degree in Public Health, and she chose to drive-thru vote at the Metropolitan Community Church as the option that would minimize her risk of COVID-19 exposure. *Id.* ¶¶ 2, 4, 6. Ms. Colvard has experienced inaccessible polling places as a wheelchair user but has never voted curbside because it is inconvenient (would require her to find a way to call a knowledgeable poll worker to receive assistance) and she is unsure whether curbside voting would afford her the same experience as voting inside a polling place. *Id.* ¶¶ 5-6. Ms. Colvard had requested a mail-in ballot but surrendered it at the drive-thru, believing that drive-thru voting would maximize her chance of having her vote successfully cast and counted. *Id.* ¶¶ 6-8. If her vote does not count because of this lawsuit, the only way Ms. Colvard will potentially be able to cast her vote is by voting at a polling place on Election Day, which she had hoped to avoid "at all costs" due to her weakened immune system and the heightened risk of COVID-19 exposure. *Id.* ¶ 9. Additionally, she is not sure whether she is legally eligible to cast another vote in this election. *Id.*

Karen "Kim" Vidor is a 64-year-old registered voter living in Houston, Texas. Vidor Decl. ¶¶ 1-2. As a lifelong voter, Mrs. Vidor has been a registered voter in Harris County since she was approximately 18, and identifies as a Republican. *Id.* ¶ 2. In addition to being a new grandmother, Mrs. Vidor surfers from hypertension, cardiac issues, asthma, and rheumatoid arthritis, all of which heighten her risk from COVID-19. *Id.* ¶ 3-4. Following news about the drive-thru polling locations, as well as her son's experience voting at these locations, Mrs. Vidor cast her vote in the November

4

general election at the West Loop Houston Community College drive-thru polling location. *Id.* ¶ 6. She voted inside of a tented structure, following the same process she has followed while voting in previous elections. *Id.* ¶ 7. If her vote is at risk of not being counted, she fears she will be totally disenfranchised. *Id.* ¶ 9. For Mrs. Vidor, a Republican, "[t]his is not a partisan issue;" it is an issue of having her vote counted. *Id.*

Malkia Hutchinson-Arvizu is a 37-year-old registered voter who lives in Houston. Hutchinso-Arvizu Dec. ¶ 1. Her pre-existing medical conditions of high blood pressure and borderline diabetes, as well as the fact she is overweight, make her high-risk for serious COVID-19 symptoms. *Id.* ¶ 3. She and her husband used drive-thru voting at the NRG Arena on October 14, 2020, accompanied by their two children. *Id.* ¶ 4. The process was smooth and efficient, with pollworkers verifying identification and instructing the family to power off phones and to not look at each other as they cast ballots. *Id.* ¶¶ 6-7. If her vote does not count because of this lawsuit, she will have great difficulty voting in person, because in addition to her health issues, she works full time and must supervise her oldest daughter's remote schooling. *Id.* ¶ 9.

Anton Montano is a 49-year-old Filipino-American who lives in Humble, Texas. Montano Decl. ¶¶ 1-2. He is overweight and frequently interacts with his parents, who are in their 70s, have had heart surgery, and are at risk of severe complications from COVID-19. *Id.* ¶ 3. Mr. Montano cast his ballot via drive-thru voting on October 17. *Id.* ¶ 4. He voted early to avoid long lines, COVID-19 exposure, and work conflicts. *Id.* Mr. Montano found the drive-thru voting process to be private, safe, and secure, affording him the opportunity to review and submit his ballot in privacy and with minimal contact with others. *Id.* ¶¶ 5-7. Mr. Montano is very concerned that his vote will not be counted. Though he may vote again on Election Day if permitted to do so, it would

be burdensome, as he works full time, has safety concerns about Election Day, seeks to avoid potentially exposing his family to COVID-19, and fears being accused of voting twice. *Id.* ¶ 10.

Helen Anice Shelton is a 55-year old registered voter who lives in Houston, Texas. Shelton Decl. ¶ 1. She has stage IV uterine cancer, and, as a result of chemotherapy, hypertension and hypothyroidism, she is at greater risk by COVID-19. *Id.* ¶ 3. She also has a spinal injury that requires spinal surgery, a procedure which, because she already voted, is scheduled for Election Day. *Id.* ¶ 3,7. Ms. Shelton voted using drive-thru voting on the first day of early voting. *Id.* ¶ 4. She used drive-thru voting because standing is difficult and painful, and critically given her health conditions, it reduced her COVID-19 exposure risk. *Id.* If her vote does not count because of this lawsuit, she will not be able to vote on Election Day, as she will be in the hospital preparing for surgery. *Id.* ¶ 8. Ms. Shelton will be "devastated that [she] did not have a chance to make my voice heard," especially because due to her stage IV cancer this may be her last opportunity to vote. Her vote is her "hope for the future." *Id.*

Elizabeth Furler is a 53-year-old registered voter who lives in Houston. Furler Decl. ¶ 1. She views voting as her civic responsibility and votes in every election. *Id.* Ms. Furler is a Republican, as are her husband and son, who are also members of the National Rifle Association. *Id.* ¶ 2. She suffers from multiple autoimmune conditions—common variable immunodeficiency, Sjogren's syndrome, and lupus. *Id.* ¶ 3. Her 22-year-old son has a neurological autoimmune disease and is highly medically vulnerable. *Id.* ¶ 4. As a result, Ms. Furler and her family minimize their exposure to COVID-19: she seeks to socially distance, avoids enclosed spaces and crowds, always wears a mask, and primarily conducts her speech therapy work remotely. *Id.* ¶ 8. Ms. Furler voted using drive-thru voting at the Houston Community College location on October 27. *Id.* ¶ 5. She learned about drive-thru voting through social media and chose it in order to minimize

COVID-19 risk for herself and her family, to ensure her vote counted, and to avoid lines. *Id.* ¶¶ 5, 8. If her vote does not count due to this lawsuit, Ms. Furler would not only need to successfully rearrange her work schedule but would have to jeopardize her own health and that of her son in order to vote again. *Id.* ¶ 9.

Proposed Intervenor-Defendants therefore move to intervene. This motion is timely; Proposed Intervenor-Defendants have a substantial interest in the resolution of the pending case; their defenses have common questions of law and fact with those of Defendant Hollins; their ability to fully protect their interests will be impaired by waiting for resolution; and Defendant cannot fully represent Proposed Intervenor-Defendants' interests. Together, this allows Proposed Intervenor-Defendants to intervene as of right under Federal Rule of Civil Procedure 24(a)(2). Alternatively, the Court should allow Proposed Intervenor-Defendants to intervene under Federal Rule of Civil Procedure 24(b)(1)(B), as they use the same legal arguments based on the same facts to defend against Plaintiffs' claims.

## STATEMENT OF THE ISSUES

The Proposed Intervenor-Defendants respectfully move pursuant to Federal Rule of Civil Procedure 24 to intervene in this action.

## SUMMARY OF THE ARGUMENT

Proposed Intervenor-Defendants are entitled to intervention as of right under Rule 24(a). Their motion is timely, made only four days after the start of this litigation. They seek to protect their interest in their fundamental right to vote, and absent intervention their ability to do so will be impaired. Defendant Harris County, as a government entity, may be inadequate in representing Proposed Intervenor-Defendants' distinct interests. Alternatively, permissive

intervention is warranted. There is no undue delay, nor will intervention result in prejudice to the original parties' rights.

## ARGUMENT

**I.  Proposed Intervenor-Defendants Are Entitled to Intervene as of Right Under Rule 24(a)(2).**

A non-party has the right to intervene in an action when: (1) the application for intervention is timely; (2) the Proposed Intervenor-Defendants have an interest relating to the property or transaction which is the subject of the action; (3) the Proposed Intervenor-Defendants are so situated that the disposition of the action may, as a practical matter, impair or impede their ability to protect that interest; and (4) the Proposed Intervenor-Defendants' interests are inadequately represented by the existing parties to the suit. *Int'l Tank Terminals, Ltd. v. M/V Acadia Forest,* 579 F.2d 964, 967 (5th Cir. 1978); Fed. R. Civ. P. 24(a)(2). Here, Proposed Intervenor-Defendants satisfy each of these elements.

**A.  Proposed Intervenor-Defendants' Motion Is Timely.**

Proposed Intervenor-Defendants' motion is timely. In deciding a motion to intervene, courts "evaluate timeliness in the context of all relevant circumstances." *Ross v. Marshall*, 426 F.3d 745, 754 (5th Cir. 2005). The Fifth Circuit has articulated a four-factor test for determining the timeliness of a motion to intervene, all of which counsel in favor of allowing the participation of Proposed Intervenor-Defendants: (1) the amount of time during which intervenors "actually know or reasonably should have known of [their] interest in the case;" (2) how much prejudice existing parties may suffer as a result of intervenors' failure to request intervention "as soon as [they] knew or reasonably should have known about [their] interest in the action;" (3) the amount

of prejudice that would be suffered by the intervenors if their request is denied; and (4) "the existence of unusual circumstances militating either for or against a determination that the application is timely." *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977).

The most important factor in determining whether intervention is timely is whether any delay in seeking intervention will prejudice the existing parties to the case. *See, e.g.*, *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1073 (5th Cir. 1970) ("In fact, this may well be the only significant consideration when the proposed intervenor seeks intervention of right."); *accord Jones v. Caddo Par. Sch. Bd.*, 735 F.2d 923, 946 (5th Cir. 1984) ("Prejudice is the heart of the timeliness requirement."). Where intervention will not delay resolution of the litigation, intervention does not prejudice the parties and should be allowed, so long as the proposed intervenor satisfies the criteria of Rule 24(a). *Texas v. United States*, 802 F. Supp. 481, 482 n.1 (D.D.C. 1992) (affirming the propriety of granting intervention); *Cummings v. United States*, 704 F.2d 437, 441 (9th Cir. 1983) (finding that the trial court abused its discretion by denying intervention in the absence of a showing of prejudice to the government).

Proposed Intervenor-Defendants' motion easily meets the *Stallworth* factors. They are cognizant of the Court's interest in a prompt resolution of this case and are similarly eager for a prompt resolution. This case is in its infancy and, under the circumstances, there is no danger of delay or disruption of the proceedings and no party will be prejudiced by the proposed intervention. Plaintiffs filed suit on October 28, 2020, and Proposed Intervenor-Defendants moved to intervene a mere four days later, before the scheduled preliminary injunction hearing in this case. Because the last day to vote in the election at issue is November 3, 2020, this action has the potential to endanger Proposed Intervenor-Defendants' already-cast ballots. At a minimum, any relief awarded to Plaintiffs, whether partial or total, will implicate Intervenor-

Defendants' rights to vote, including by discounting or casting a shadow on their votes already cast, or requiring that they take immediate steps to ensure they can vote on Election Day and these votes are counted. Proposed Intervenor-Defendants would suffer extreme prejudice if they cannot defend and protect their right to vote in the present action.

### B. Proposed Intervenor-Defendants Have a Substantial Legal Interest in the Case.

The Fifth Circuit has explained that a substantial legal interest is "an interest that is concrete, personalized, and legally protectable." *Texas v. United States*, 805 F.3d 653, 658 (5th Cir. 2015). It has further held that the right to vote in an election is such an interest. *See League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 434 (5th Cir. 2011) ("*LULAC, Dist. 19*") (intervenor had substantial interest in "his right to vote in elections to choose all five city council members"). The test for determining the sufficiency of intervenors' interest is a non-stringent, "practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Ross v. Marshall*, 426 F.3d 745, 757 (5th Cir. 2005) (internal citations and quotation marks omitted).

Plaintiffs seek an injunction rejecting all ballots cast through drive-thru voting. Proposed Intervenor-Defendants seek to intervene to protect their interest in their fundamental right to vote. *See Burdick v. Takashi*, 504 U.S. 428, 433 (1992) ("It is beyond cavil that voting is of the most fundamental significance under our constitutional structure.") (internal citation and quotations omitted); *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964) ("No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live."); *see also Hatten v. Rains*, 854 F.2d 687, 693 (5th Cir. 1988) ("Limitations on ballot access nonetheless burden two fundamental rights: the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters,

10

regardless of their political persuasions to cast their votes effectively."). Included within the right to vote "secured by the Constitution, is the right of qualified voters within a state to cast their ballots and have them counted." *United States v. Classic*, 313 U.S. 299, 315 (1941).

Proposed Intervenor-Defendants include eligible voters from both political parties and independent from such parties who seek to have their vote counted and engage in our democractic process. Likewise, the League of Women Voters of Texas, in addition to having members who have utilized the voting processes at issue, seeks to fulfill its mission of providing accurate information about the voting process to its members and the public in order to promote democracy. Therefore, Intervenor-Defendants have a special interest in the outcome of this litigation and can offer a unique local perspective to the issues before the Court.

### C. Proposed Intervenor-Defendants' Ability to Protect Their Interests Will Be Impaired Absent Intervention.

Proposed Intervenor-Defendants are also "so situated that disposing of th[is] action may as a practical matter impair or impede th[eir] ability to protect [their] interest" in protecting their voting rights and preventing further constitutional injury. Fed. R. Civ. P. 24(a)(2). Proposed Intervenor-Defendants meet the "minimal" burden to show that "the disposition of the action 'may' impair or impede their ability to protect their interests." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014).

In this suit, Plaintiffs seek to "reject any votes" the Court finds were cast unlawfully. Compl. at 17. If successful, the votes already cast by Proposed Intervenor-Defendants and members of the League of Women Voters of Texas in every office that was on their ballot would not be counted. Moreover, the election at issue in this suit will take place on November 3, 2020. Given this impending deadline, Proposed Intervenor-Defendants have no alternative to intervening in this lawsuit to protect their interests. If the Court grants the requested injunctive

11

relief, Proposed Intervenor-Defendants, including LWVTX members, and nearly 127,000 other voters—all of whom cast ballots using a method of voting designed to conform with the Texas Election Code, in concert with the Texas Secretary of the State, and which the Texas Supreme Court has permitted to stand despite *two* attempts to challenge it—will have to scramble to understand how, if at all, they may vote, cast replacement votes, or, due to the ongoing health emergency and myriad other factors, cast no vote at all. As a practical matter, denying intervention would result in voters being unable to contest the arguments put forth by the Plaintiffs and ensure their already-cast ballots are counted. *See Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994).

### D. Defendant May Inadequately Represent Proposed Intervenor-Defendants' Interests.

The final requirement for intervention as of right is that the applicant's interest must not be adequately represented by existing parties. Fed. R. Civ. Pro. 24(a)(2). A proposed intervenor need not show that the representation by existing parties will be inadequate. *Entergy Gulf States Louisiana*, *L.L.C. v. U.S. E.P.A*., 817 F.3d 198, 203 (5th Cir. 2016). All that is required is the "minimal" burden of showing that the representation "may be" inadequate. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10 (1972).

Harris County cannot fully represent Proposed Intervenor-Defendants' interests. As a government entity, it must "represent the broad public interest." *Sierra Club*, 18 F.3d at 1208. Accordingly, financial pressures and institutional constraints may shape the County's litigation strategy. *Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996) (concluding that interests of government and proposed intervenor "will not necessarily coincide, even though, at this point, they share common ground" and intervenor has "more flexibility" in advocating its position).

Proposed Intervenor-Defendant individuals have distinct interests from municipalities. *LULAC, Dist. 19*, 659 F.3d at 434-35 (finding voter's interest sufficient to challenge consent decree entered into by municipality). They are members of multiple political parties and registered voters at risk of disenfranchisement with no possibility for cure. Proposed Intervenor-Defendant LWVTX—a non-partisan entity whose members stand to be harmed by the invalidation of their votes and which itself engages in voter education and turnout work —will also be uniquely harmed. *Doe No. 1 v. Glickman*, 256 F.3d 371, 381 (5th Cir. 2001) (contrasting agency's broad interest in representing the public against advocacy organization intervenor's more narrow concerns).

## II. Alternatively, Proposed Intervenor-Defendants Should Be Granted Permissive Intervention.

In the alternative, the Court should grant Proposed Intervenor-Defendants permissive intervention. The Court may permit intervention by a Proposed Intervenor who files a timely motion and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P.. 24(b)(1)(B).  The Court should permit intervention where it "will [not] unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P.. 24(b)(3).

Proposed Intervenor-Defendants would raise many common questions of law and fact, including the legality of drive-thru voting, the standing of Plaintiffs to pursue this suit, the viability of the asserted claims under the Elections Clause, whether the suit is barred by the nearness of the election and the reliance interests of voters, whether injunctive relief of the type requested is appropriate at this stage, and others. Resolution of these questions is central to both the original parties' dispute and Proposed Intervenor-Defendants' claims.

In no way can intervention be said to unduly delay or prejudice the original parties' rights. Defendant Hollins announced the drive-thru voting program in June and executed a successful pilot program in July. For the General Election, drive-thru voting began on October 13, 2020. Plaintiffs brought this suit after *two weeks* of early voting and over 100,000 votes had been cast. Proposed Intervenor-Defendants acted as quickly as they could--in stark contrast to Plaintiffs' response to the drive-thru program.

## CONCLUSION

For the foregoing reasons, the Court should grant the Proposed Intervenor-Defendants' motion.

| | |
|---|---|
| Sophia Lin Lakin | /s/ *Andre Segura* |
| Davin Rosborough | Andre Segura (Attorney-In-Charge) |
| Adriel I. Cepeda Derieux | (TX Bar No. 24107112; S.D. Tex. 3123385) |
| Theresa J. Lee | David Donatti (TX Bar No. 24097612, S.D. |
| Jennesa Calvo-Friedman | Tex. 3371067) |
| Ihaab Syed | Kathryn Huddleston |
| Dale E Ho | Edgar Saldivar (TX Bar No. 24038188; S.D. Tex. 618958) |
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION | Anjali Salvador (TX Bar No. 24110324) |
| 125 Broad Street, 18th Floor | |
| New York, NY 10004 | |
| (212) 549-2600 | AMERICAN CIVIL LIBERTIES UNION |
| slakin@aclu.org | FOUNDATION OF TEXAS, INC. |
| drosborough@aclu.org | 5225 Katy Fwy., Suite 350 |
| acepedaderieux@aclu.org | Houston, Texas 77007 |
| tlee@aclu.org | (713) 942-8146 |
| jcalvo-friedman@aclu.org | asegura@aclutx.org |
| isyed@aclu.org | ddonatti@aclutx.org |
| dho@aclu.org | khuddleston@aclutx.org |
| | esaldivar@aclutx.org |
| Perry Grossman | asalvador@aclutx.org |
| NEW YORK CIVIL LIBERTIES UNION FOUNDATION | |
| 125 Broad Street | |
| New York, NY 10004 | |
| (212) 607-3000 | |
| pgrossman@nyclu.org | |

**CERTIFICATE OF CONFERENCE**

Pursuant to the Local Rules and Standing Orders and Procedures of this Court, I hereby certify that counsel for movant Intervenor-Defendants conferred with counsel for Defendant Hollins regarding this motion, and Defendant does not oppose the motion. Intervenor-Defendants' counsel also conferred with proposed Intervenor-Defendants MJ for Texas et al., and they do not oppose the motion. Intervenor-Defendants' counsel, Edgar Saldivar, unsuccessfully attempted to contact counsel for Plaintiff, Mr. Jared R. Woodfill, by email at 12:15 P.M. on November 1, 2020.

Intervenor-Defendants are aware of and wish to comply with Section 7(c)(3) of this Court's Civil Procedures, which state that the conference requirement under Local Civil Rule 7.1 will not be considered "satisfied by an unsuccessful attempt to reach opposing counsel occurring less than two full business days before a motion is filed." However, given that Plaintiffs expressly seek emergency relief in this suit, that a hearing has been scheduled for tomorrow morning, and that Election Day is just one business day from now, Intervenor-Defendants respectfully request that this Court consider their attempts to reach all counsel sufficient to satisfy Local Rule 7.1.

*/s/Andre Segura*
Andre Segura

**CERTIFICATE OF SERVICE**

I hereby certify that on November 1, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which automatically serves notification of the filing on counsel for all parties.

*/s/Andre Segura*
Andre Segura