## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| STEVEN HOTZE, M.D.; WENDELL CHAMPION; HON. STEVE TOTH; and SHARON HEMPHILL, | |
| *Plaintiffs,* | |
| v. | No. 4:20-cv-03709 |
| CHRIS HOLLINS, in his official capacity as Harris County Clerk, | |
| *Defendants,* | |
| MJ FOR TEXAS; DSCC; DCCC; MARY CURRIE; CARLTON CURRIE JR.; JEKAYA SIMMONS; and DANIEL COLEMAN, | |
| *Proposed Intervenor-Defendants,* | |
| *and* | |
| LEAGUE OF WOMEN VOTERS OF TEXAS, JOY DAVIS-HARASEMAY, DIANA UNTERMEYER, MICHELLE COLVARD, KAREN VIDOR, MALKIA HUTCHINSON-ARVIZU, ANTON MONTANO, HELEN ANICE SHELTON, and ELIZABETH FURLER | |
| *Proposed Intervenor-Defendants.* | |

## PROPOSED INTERVENOR-DEFENDANTS LEAGUE OF WOMEN VOTERS OF TEXAS, JOY DAVIS-HARASEMAY, DIANA UNTERMEYER, MICHELLE COLVARD, KAREN VIDOR, MALKIA HUTCHINSON-ARVIZU, ANTON MONTANO, HELEN ANICE SHELTON AND ELIZABETH FURLER'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

**INTRODUCTION** ................................................................................................... 1

**STATEMENT OF THE ISSUES**................................................................................ 3

**SUMMARY OF THE ARGUMENT** ......................................................................... 3

**ARGUMENT**............................................................................................................ 4

   I.   The Balance of Hardships and the Public Interest Weigh Heavily in Intervenor-Defendants' Favor. ............................................................................................... 4

     A.   Plaintiffs May Not Use Federal Courts to Alter State Election Procedures on the Eve of an Election Several Months After Drive-Thru Voting Was Announced and After Over 100,000 People Have Voted Using that Method. .................................................. 5

     B.   An Injunction Would Irreparably Harm Defendant-Intervenors and the Public Interest by Disenfranchising Over 120,000 Voters and Throwing Harris County Elections into Chaos. ........................................................................................................... 7

   II.   Plaintiffs Fail to Demonstrate Sufficient Injury to Establish Standing, Let the Alone Irreparable Harm Required for an Injunction......................................................... 11

     A.   Plaintiffs' Alleged Injuries Are Generalized Grievances, Depend Upon Rank Speculation, and Improperly Assert Institutional Injuries of the Legislature........................ 11

       1.   Voter-Plaintiff Hotze Asserts Only Generalized and Speculative Injuries that are Insufficient for Standing. ................................................................................. 12

       2.   Plaintiffs Champion and Hemphill Lack Standing.................................................. 15

       3.   Legislator Toth Lacks Any Personalized Injury and Lacks Standing to Redress Alleged Institutional Injury to the Legislature. ................................................... 17

   III.   Plaintiffs' Claims Lack Merit.................................................................................... 18

     A.   Drive-Thru Voting in Harris County Does Not Violate the Elections Clause.............. 18

     B.   Plaintiffs' Equal Protection Claim Likewise Lacks Merit. ........................................ 20

**CONCLUSION** ...................................................................................................... **20**

i

# TABLE OF AUTHORITIES

**Cases**

*American Civil Rights Union v. Martinez-Rivera,*
   166 F. Supp. 3d 779 (W.D. Tex. 2015) ........................................................................ 14

*Amicus, Inc. v. Post-Tension of Texas, Inc.,*
   686 F. Supp. 583 (S.D. Tex. 1987) ............................................................................ 8

*Andino v. Middleton,*
   2020 WL 5887393 (Oct. 5, 2020) ............................................................................ 4

*Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'n,*
   576 U.S. 787 (2015) ........................................................................................ 17, 19

*Armco, Inc. v. Armco Burglar Alarm Co., Inc.,*
   693 F.2d 1155 (5th Cir. 1982) .................................................................................. 8

*Bensiker. Taitz v. Democrat Party of Miss.,*
   No. 3:12-CV-280-HTW-LRA, 2015 WL 11017373 (S.D. Miss. Mar. 31, 2015) .................. 16

*Bognet v. Boockvar,*
   No. 3:20-CV-215, 2020 WL 6323121 (W.D. Pa. Oct. 28, 2020) ...................................... 13, 16

*Bruni v. Hughs,*
   2020 WL 3452229 (S.D. Tex. June 24, 2020) ............................................................ 17

*Bush v. Gore,*
   531 U.S. 98 (2000) ........................................................................................ 10, 20

*Canal Auth. of Fla. v. Calloway,*
   489 F.2d 567 (5th Cir. 1974) .................................................................................. 4

*Clapper v. Amnesty Intern. USA,*
   568 U.S. 398 (2013) ........................................................................................ 13, 14

*Cook v. Gralike,*
   531 U.S. 510 (2001) ........................................................................................ 19

*Donald J. Trump for Pres., Inc. v. Cegavske,*
   2020 WL 5626974 (D. Nev. Sept. 18, 2020) ............................................................ 13, 14, 15

*Donelon v. La. Div. of Admin. L. ex rel. Wise,*
   522 F.3d 564 (5th Cir. 2008) .................................................................................. 12, 13, 18

*Duncan v. Poythress*,
  657 F.2d 691 (5th Cir. 1981) ................................................................ 10

*Dunn v. Blumstein*,
  405 U.S. 330 (1972) .............................................................................. 7

*Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*,
  441 F.2d 560 (5th Cir. 1971) .............................................................. 3

*Griffin v. Burns*,
  570 F.2d 1065 (1st Cir. 1978) ........................................................... 10

*In re Hotze*,
  No. 20-0863 (Nov. 1, 2020) ......................................................... 6, 18

*Lance v. Coffman*,
  549 U.S. 437 (2007) ............................................................................ 14

*Langley v. Dardenne*,
  77 F.3d 479, 1996 WL 46781 (5th Cir. 1996) ................................... 17

*Lemon v. Kurtzman*,
  411 U.S. 192 (1973) ............................................................................ 7

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ...................................................................... 12, 16

*Martel v. Condos*,
  2020 WL 5755289 (D. Vt. Sept. 16, 2020) ....................................... 14

*Mi Familia Vota v. Abbott*,
  No. 20-50793, 2020 WL 6058290 (5th Cir. Oct. 14, 2020) ............... 6

*Monumental Task Comm., Inc. v. Foxx*,
  157 F. Supp. 3d 573 (E.D. La. 2016) ................................................ 11

*Moore v. Circosta*,
  2020 WL 6063332 (M.D.N.C. Oct. 14, 2020) ................................... 13

*Paher v. Cegavske*,
  457 F. Supp. 3d 919 (D. Nev. 2020) ............................................ 14, 15

*Pub. Interest Leg. Found., Inc. v. Bennett*,
  No. 4:18-CV-00981, 2018 WL 2722331 (S.D. Tex. June 6, 2018) ........... 15

*Purcell v. Gonzalez*,
    549 U.S. 1 (2006) ................................................................................................ 4, 6, 7

*Raines v. Byrd*,
    521 U.S. 811 (1997) ............................................................................................ 12, 17

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*,
    140 S. Ct. 1205 (2020) ......................................................................................... 4, 5

*Reynolds v. Sims*,
    377 U.S. 533 (1964) ............................................................................................. 7, 10

*Smiley v. Holm*,
    285 U.S. 355 (1932) .............................................................................................. 19

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) .......................................................................................... 11, 12

*Tex. Alliance for Retired Am. v. Hughs*,
    976 F.3d 564 (5th Cir. 2020) ................................................................................ 6

*Tex. Democratic Party v. Benkiser*,
    459 F.3d 582 (5th Cir. 2006) ................................................................................ 15

*Texans for Free Enter. v. Tex. Ethics Comm'n*,
    732 F.3d 535 (5th Cir. 2013) ................................................................................ 3

*Texas League of United Latin Am. Citizens v. Abbott*,
    No. 1:20-CV-1006-RP, 2020 WL 5995969 (W.D. Tex. Oct. 9, 2020) ...................... 7

*Texas v. United States*,
    328 F. Supp. 3d 662 (S.D. Tex. 2018) ................................................................... 9, 10

*Texas Voters All. v. Dallas Cty.*,
    No. 4:20-CV-00775, 2020 WL 6146248 (E.D. Tex. Oct. 20, 2020) ........................ 7

*Trinity Industries, Inc. v. Martin*,
    963 F.2d 795 (5th Cir. 1992) ................................................................................ 16

*Va. House of Delegates v. Bethune-Hill*,
    139 S. Ct. 1945 (2019) .......................................................................................... 17

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ................................................................................................. 3, 4, 11

**Texas Statutes**

Tex. Election Code § 31.004 ................................................................................. 19

Tex. Election Code § 32.071 ................................................................................. 18

Tex. Election Code § 63.001 ................................................................................... 9

Tex. Election Code § 63.009 ................................................................................... 9

Tex. Election Code § 63.011 ................................................................................... 9

Tex. Election Code § 64.009 ................................................................................. 15

Tex. Election Code § 64.012 ................................................................................... 9

Tex. Gov't Code § 301.061 ................................................................................... 18

## **<u>INTRODUCTION</u>**

This is Plaintiffs' third attempt to convince a court to cancel tens of thousands of ballots that have already been cast, and to strip the fundamental right to vote from registered and indisputably qualified voters in Texas. After having tried and failed twice in our state courts, Plaintiffs now come before this court hoping that, for mass disenfranchisement, the third time will be the charm.  Plaintiffs do not dispute the eligibility of any of the voters who used drive-thru voting, or the authenticity of any of the ballots cast. Rather, they assert that the fact these ballots were cast by registered voters sitting inside of cars (rather than as pedestrians inside of a building) renders them unlawful. Their claim is based on an unprecedented legal theory that has never been relied on by any court to alter the rules of any election—let alone an ongoing election where the intended relief would be the invalidation of tens of thousands of ballots that have already been cast. This Court should swiftly reject this latest last-minute effort to silence tens of thousands of Texans and to sow chaos in this election.

Harris County has undertaken laudable, common-sense efforts well within its legal authority to protect voters' health in light of the extreme safety concerns posed by COVID-19, in consultation with state authorities.  In establishing the drive-thru voting system, the County sought and obtained approval from the Texas Secretary of State, our top Senate-confirmed election official; worked with other officials on logistics; and received funding from the County Commissioner's Court on two occasions. Drive-thru voting was used in the preceding election, in July of 2020, and the County's drive-thru voting plan for the general election has been in place for months.  Perplexingly, Plaintiffs waited until the three weeks of early voting in Texas for this election were nearly complete—and after approximately 127,000 votes had been cast pursuant to a carefully-crafted system that had been in place for months—to challenge it in federal court.

Plaintiffs' belated attempt to deprive tens of thousands of Texans of their voting rights would be laughable if the potential consequences were not so severe.

This Court should reject Plaintiffs' requested relief for several reasons.  Most critically, courts and especially federal courts must not alter election rules while an election is ongoing— particularly where, as here, tens of thousands of voters have relied in good faith on the existing rules at the time that they cast their ballots, and where the Plaintiffs' requested relief would result in their disenfranchisement.  If the "*Purcell* principle" means anything, then regardless of the merits, Plaintiffs' requested relief must be denied. Plaintiffs, moreover, bring only speculative and conspiratorial allegations—not an allegation of any particularized harm that would confer standing. And, as detailed in other parties' briefs, Plaintiffs' claims lack legal merit, as the drive-thru process squarely aligns with the Texas Election Code and cannot plausibly be characterized as a violation of the Elections Clause.

Intervenor-Defendants include several of the tens of thousands of voters whom Plaintiffs seek to disenfranchise.  They include both Republicans and Democrats.  Like many of their fellow Texans, they voted drive-thru to ensure the health and safety of themselves, their families, and their communities.  Several have disabilities or medical issues rendering them particularly high-risk to COVID-19; several are caretakers of young children.  All simply sought to discharge their civic duty to participate in this election.  Likewise, the League of Women Voters of Texas has members who stand to be directly impacted by this case and will be forced to further expend a significant amount of resources to inform and educate their members and the public about the continued use of this system.

As this Court is well-aware, Election Day is on Tuesday, with polls opening at 7:00 am— less than 36 hours from now. If Plaintiffs' requested relief is granted, there will be no way to

ensure that Defendant-Intervenors and the more than 127,000 voters who have already cast their

ballots drive-thru can vindicate their right to participate in the 2020 general election.  They will

be disenfranchised, and the public's confidence in this election will be irreparably damaged.  The

Court must keep to our democratic values and deny Plaintiffs' request.

## STATEMENT OF THE ISSUES

The issue presented by Plaintiffs' motion, ECF No. 3, is whether this Court should issue a

preliminary injunction. A preliminary injunction is an "extraordinary" remedy that is "never

awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). 19 days after

the election has begun, Plaintiffs seek an extraordinary remedy—invalidation of 127,000 votes

already cast, and the shuttering of ten polling locations—without demonstrating *any* of the four

required elements for a preliminary injunction: (1) a substantial likelihood of success on the

merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the

threatened injury if the injunction is denied outweighs any harm that will result if the injunction

is granted, and (4) that the grant of an injunction will not disserve the public interest. *Texans for

Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 537 (5th Cir. 2013).  Because Plaintiffs seek a

mandatory injunction, they must show that "the facts and law are clearly" in their favor.

*Exhibitors Poster Exch., Inc. v. Nat'l Screen Serv. Corp.*, 441 F.2d 560, 561 (5th Cir. 1971).

## SUMMARY OF THE ARGUMENT

Plaintiffs' belated effort to attack Harris County polling locations that have been in

operation for three weeks of early voting, and to invalidate nearly 127,000 ballots that have

*already* been cast therein, meets none of the requirements for issuance of a preliminary

injunction. Here, all factors weigh heavily against the relief requested. While Plaintiffs have

suffered no injury *at all*, they invite the Court to disenfranchise Intervenor-Defendants and

3

nearly 127,000 other voters and sow irreparable confusion the day before Election Day. Not only would such relief deprive Intervenor-Defendants of their fundamental right to vote, it would disserve the public interest. Nor could they prevail, 19 days after this election has begun, in invalidating polling locations designed in accordance with the Texas Election Code, in concert with the Secretary of State, which the Texas Supreme Court has twice declined to shutter, and which have operated during this election without issue.

## ARGUMENT

**I.     The Balance of Hardships and the Public Interest Weigh Heavily in Intervenor-Defendants' Favor.**

To weigh the equities, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) (internal quotations and citation omitted).  "The purpose of a preliminary injunction is always to prevent irreparable injury." *Canal Auth. of Fla. v. Calloway*, 489 F.2d 567, 576 (5th Cir. 1974). The Court gives particular regard to the public consequences of "employing the extraordinary remedy of injunction." *Id.*  "[F]or many years, this Court has repeatedly emphasized that federal courts ordinarily should not alter state election rules in the period close to an election." *Andino v. Middleton*, 2020 WL 5887393, at *1 (Oct. 5, 2020) (Kavanaugh, J., concurring).

Plaintiffs' motion requests the precise kind of "judicially created confusion" that *Purcell* purportedly forbids.  *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020).  Granting an injunction would cause irreparable harm to Intervenor-Defendants and nearly 127,000 other Harris County voters who have already cast their ballots in this election. An injunction will disenfranchise those voters, who will risk possible prosecution as well as serious medical consequences if they appear in person to vote again.  Moreover, granting

4

Plaintiffs relief would lead to electoral chaos in the third-most populous county in the United States, undermining public faith in the integrity of the electoral process and engendering confusion. Here, the balance of the equities and the public interest heavily weighs against Plaintiffs' requested injunction.

>   A.   **Plaintiffs May Not Use Federal Courts to Alter State Election Procedures on the Eve of an Election Several Months After Drive-Thru Voting Was Announced and After Over 100,000 People Have Voted Using that Method.**

The Supreme Court has time and again admonished federal courts that they "should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020). Harris County Clerk Chris Hollins first announced the County's intent to implement drive-thru voting on June 15 and subsequently took a number of steps to ensure its smooth implementation for the general election,[1] including:

- Hollins's office received the Texas Secretary of State's approval;
- Harris County conducted a pilot drive-thru program during the July 10 primary runoff;[2]
- the Harris County Commissioners Court *twice* approved funding for drive-thru voting in the November general election.[3]

Since then:

- Texas's early voting period opened on October 13;
- the Texas Supreme Court twice rejected a challenge by Plaintiffs in this case to halt drive-thru voting;[4]
- Texas's early voting period closed on October 30, 2020;
- and nearly 127,000 voters voted in this election using Harris County drive-thru voting.

Invalidating these votes after months of notice on the day before Election Day will wreak

---

[1] *See* Press Release, *Harris County Clerk Chris Hollins Launches 23-Point S.A.F.E. Plan Ahead of July Primary Runoff Elections* (June 15, 2020), https://www.harrisvotes.com/PressReleases/SAFE_Launch_en-US.pdf.
[2] Press Release, *Harris County Clerk's Drive-Thru Voting Pilot is Highly Successful* (July 22, 2020), https://www.harrisvotes.com/PressReleases/Drive%20Thru%20Voting_en-US.pdf.
[3] *See* Harris Cty. Comm'rs Court Order, Notification of Election & Request for Election Details, Aug. 25, 2020; Harris Cty. Comm'rs Court Order CTCL COVID-19 Response Grant, Sept. 29, 2020.
[4] *In re Hotze*, No. 20-0863 (Nov. 1, 2020).

confusion and chaos, not to mention disenfranchise many tens of thousands of voters who properly relied on State and local officials' guidance. That is precisely the opposite of what the Supreme Court intended when it counseled that courts must consider whether their "orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls," particularly as "an election draws closer." *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006).

Here, Harris County has carefully provided, with the approval of the State's Chief Election Officer, a safe and convenient way for voters to participate in this election.  The County's drive-thru plan was finalized more than four months ago, and Harris County voters have not only relied on these well-publicized rules in planning how they will vote—*they have voted*.  *Mi Familia Vota v. Abbott*, No. 20-50793, 2020 WL 6058290, at *7 (5th Cir. Oct. 14, 2020) (refusing election-related injunctive relief because "it would be inappropriate for the district court to grant much of the requested relief with the election ongoing").  Importantly, the Texas Supreme Court has already *twice* declined Plaintiffs' request for the same relief they now ask of this Court, most recently this afternoon. Order, *In re Hotze*, No. 20-0863 (Nov. 1, 2020).

Plaintiffs thus ask for something extraordinary: they ask a federal court to not only give them a *third* bite at the apple, but also to change election rules that Texas's Senate-confirmed Election Officer and highest court have allowed to stand; they ask for such relief only *after* over a hundred thousand people relied on those rules to cast their ballots. Put another way, they ask the Court to disenfranchise nearly 127,000 of those voters by invalidating their ballots and denying them the chance to participate in this election. That would run roughshod over *Purcell*'s core teaching: "court changes of election laws close in time to the election are strongly disfavored."  *Tex. Alliance for Retired Am. v. Hughs*, 976 F.3d 564 (5th Cir. 2020). Were this

Court to change those rules not just on the eve of an election, but with voting underway and the early vote period already behind us, it would terribly disrupt Texas's election in a way *Purcell* forbids. *See Texas League of United Latin Am. Citizens v. Abbott,* No. 1:20-CV-1006-RP, 2020 WL 5995969, at \*16-17 (W.D. Tex. Oct. 9, 2020) (closing ballot return centers at last minute would cause confusion, especially when those centers were deemed safe, authorized, and advertised as a convenient option). And it would surely wreak havoc on voter confidence in the midst of the election. As another district court recently explained in rejecting another "eve of election" challenge brought during Texas's early vote period, "Texans deserve confidence in their electoral process . . . . That confidence comes from their elected officials making policy decisions, not from courts creating policy." *Texas Voters All. v. Dallas Cty.*, No. 4:20-CV-00775, 2020 WL 6146248, at \*20–21 (E.D. Tex. Oct. 20, 2020).

If the *Purcell* principle has any meaning at all, it demands denying Plaintiffs' motion.

**B.    An Injunction Would Irreparably Harm Defendant-Intervenors and the Public Interest by Disenfranchising Over 120,000 Voters and Throwing Harris County Elections into Chaos.**

An injunction would irreparably harm Intervenor-Defendants and over one hundred twenty thousand others who reasonably relied upon Harris County's provision of drive-thru polling locations in order to vote. At the absolute last minute, Plaintiffs seek to invalidate all of the votes cast in reliance upon Harris County's thoroughly-vetted electoral infrastructure— depriving tens of thousands of their exercise of "a fundamental political right . . . preservative of all rights." *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972) (quoting *Reynolds v. Sims*, 377 U.S. 533, 562 (1964)). Such an injunction would cause, not remedy, irreparable harm.

"It is well established that reliance interests weigh heavily in the shaping of an appropriate equitable remedy." *Lemon v. Kurtzman*, 411 U.S. 192, 203 (1973) (plurality

opinion).  Harris County established drive-thru polling locations and advertised the process after consulting with Texas's Secretary of State.  The county offered drive-thru voting without a hitch during the July primary election, received state approval to offer it again, and built the infrastructure to provide voters with the option in this general election. No one disputes that these voters are eligible to vote in this election. Nor does anyone dispute the authenticity of any of the ballots cast. Without more, Plaintiffs' inexcusable delay and the extreme prejudice to the County and its voters that would result from an injunction is sufficient basis for the denial of relief.  *See Amicus, Inc. v. Post-Tension of Texas, Inc*., 686 F. Supp. 583, 589 (S.D. Tex. 1987) ("Laches may defeat claims for injunctive relief." (citing *Armco, Inc. v. Armco Burglar Alarm Co., Inc.*, 693 F.2d 1155, 1161 (5th Cir. 1982)).  Intervenor-Defendants, and over one hundred twenty thousand others followed the directions of their elected officials. Subsequently invalidating those votes would have drastic implications for the integrity and stability of Texas elections. In other words, through no fault of their own, with a clear vote and with full reliance on the electoral process, a legal challenge to the voting infrastructure could disenfranchise them.

Plaintiffs' requested relief would also severely injure the public interest by throwing the 2020 election in Harris County into chaos. There is now no practicable way to ensure that the nearly 127,000 affected voters may otherwise vindicate their right to participate in this election if their ballots are discarded. The election ends on Tuesday. Many voters are unlikely to receive the news that their drive-thru votes have been rejected before that time. Of those who do, some will be logistically unable at this late hour to return to the polls to vote in person—for example, due to inability to request time off work or to rearrange caregiving obligations. This is particularly likely since drive-thru voting provided flexibility to accommodate schedules that preclude voting during ordinary polling hours.  Ms. Shelton, who has stage IV uterine cancer will be in the

hospital on Election Day for a scheduled spinal surgery. Ms. Hutchinson-Arvizu works full time, as does her husband, and one of them must supervise her 14-year-old's remote schooling.

Even if all of the nearly 127,000 voters could be reached and make it to the polls, there is no clear mechanism for casting a second vote—particularly as the question of the first vote's legality remains uncertain. The Texas Election Code provides for the casting of a provisional ballot in a limited set of circumstances, where a voter lacks identification, does not appear on the voting list and does not present a voter registration certificate, or was required to receive an early voting ballot by mail and did not vote early. Tex. Election Code § 63.011(a), (a-1); *id.* § 63.001(g); *id.* § 63.009. There is no clear procedural mechanism in the Election Code that provides for the recasting of initially validly cast ballots, pending a determination as to whether the initially cast ballots will be retained.

Moreover, the felony criminal prohibition on "knowingly vot[ing] or attempt[ing] to vote more than once in an election" would likely chill at least some voters who had previously exercised their right to vote and from doing so again even if they could do so. Tex. Election Code § 64.012. For example, Joy Davis-Harasemay, a Black Harris County voter, would likely not vote again if her drive-thru vote is invalidated because she does not want to risk prosecution. There is simply no way to ensure that those who have already exercised their right to vote in Harris County will not be retroactively disenfranchised by this last-minute challenge.

As this Court explained in denying a preliminary injunction to states challenging the deferred action program, where "the egg has been scrambled," "[t]o try to put it back in the shell with only a preliminary injunction record, and perhaps at great risk to many, does not make sense nor serve the best interests of this country." *Texas v. United States*, 328 F. Supp. 3d 662, 742 (S.D. Tex. 2018). In that case, because individuals had relied upon a governmental program for

an extended period of time without challenge to it, "the delay" and the reliance interests engendered outweighed any countervailing state interest in upending the status quo. *Id.* at 741-42. Similarly, where "a State's election machinery is already in progress, equitable considerations might justify a court withholding the granting of immediately effective relief." *Reynolds v. Sims*, 377 U.S. 533, 585 (1964). In evaluating a decision as to immediate relief, "a court is entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles." *Id.* "Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98, 104-05 (2000). Yet that is precisely the result that Plaintiffs seek to compel here.

The 2020 general election began, at this point, 19 days ago. In light of Intervenor-Defendants' substantial reliance interests in having voted pursuant to Harris County's electoral process and the importance of maintaining the integrity and legitimacy of the 2020 election, it "does not make sense nor serve the best interests of this country" to obviate more than 100,000 votes cast pursuant to local governmental protocol. *Texas*, 328 F. Supp. 3d at 742. Moreover, Plaintiffs' right to have their votes counted is in no way under threat. Instead, Plaintiffs bring the kind of "garden variety challenge[]" to local election procedures that could implicate, at most, solely "insubstantial election irregularities"—not constitutional considerations. *Duncan v. Poythress*, 657 F.2d 691, 704 (5th Cir. 1981); *see also Griffin v. Burns*, 570 F.2d 1065, 1076 (1st Cir. 1978). On the other hand, the relief that Plaintiffs seek would cause precisely the "fundamental breakdown of the democratic system" that implicates due process. *Duncan*, 657 F.2d at 704; *see also Griffin*, 570 F.2d at 1077 (potential for due process violation "[i]f the

election process itself reaches the point of patent and fundamental unfairness"). An invalidation

of the drive-thru votes by this Court would not safeguard constitutional rights—it would instead

violate the due process and equal protection rights of Intervenor-Defendants and thousands of

others in the county to throw out their validly cast ballots.

**II.      Plaintiffs Fail to Demonstrate Sufficient Injury to Establish Standing, Let the Alone Irreparable Harm Required for an Injunction.**

To receive a preliminary injunction Plaintiffs "*must show* that 'irreparable injury is likely

in the absence of an injunction.'" *Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573,

583 (E.D. La. 2016), *aff'd*, 678 F. App'x 250 (5th Cir. 2017) (emphasis added) (quoting *Winter*,

555 U.S. at 22).  "[A] preliminary injunction will not be issued simply to prevent the possibility

of some remote future injury."  *Winter*, 555 U.S. at 22.  Plaintiffs have failed to demonstrate

even the bare injury-in-fact required to establish standing.  There is no basis for their presence in

federal court: They filed this federal lawsuit 19 days after the start of the election in Harris

County and months after drive-thru voting's initial successful roll-out; they raise claims, which

turn entirely on state statutory interpretation, that the Supreme Court of Texas has twice declined

to entertain; and the extraordinary relief they request comes far too late to be entertained,

upending Harris County's duly-enacted procedures for election administration.

**A.      Plaintiffs' Alleged Injuries Are Generalized Grievances, Depend Upon Rank Speculation, and Improperly Assert Institutional Injuries of the Legislature.**

To establish Article III standing, plaintiffs must plead facts sufficient to prove that they

"(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the

defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v.*

*Robins*, 136 S. Ct. 1540, 1547 (2016). Establishing an injury in fact requires showing the

"invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or

imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted). To constitute a "particularized" injury, the harm "must affect the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548 (internal quotation marks and citation omitted).

Here, none of the Plaintiffs have the type of cognizable injuries required by Article III of the Constitution. Voter-Plaintiff Hotze's fear that drive-thru voting will lead to fraudulent voting is both baseless and not particularized. The candidate Plaintiffs' alleged injuries based on the possibility of illegal votes being cast due to drive-thru voting suffer from the same defects, and in any event are more appropriately resolved through an election contest which will not implicate the entirety of voters' ballots. Finally, the U.S. Supreme Court and Fifth Circuit have rejected injuries by individual legislators where, like the injuries asserted here by Plaintiff Toth,[5] they are not unique to the legislator and attempt to assert an institutional injury to the legislature instead. *See Raines v. Byrd*, 521 U.S. 811, 821 (1997); *Donelon v. La. Div. of Admin. L. ex rel. Wise*, 522 F.3d 564, 566 (5th Cir. 2008).

### 1. Voter-Plaintiff Hotze Asserts Only Generalized and Speculative Injuries that are Insufficient for Standing.

The Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573–74. "Put another way, the plaintiff must establish a

---

[5] To the extent the candidate Plaintiffs and Plaintiff Toth characterize themselves as Texas voters, this fails to establish standing for the same reason it fails as to Plaintiff Hotze.  And claims of Plaintiff Toth related to his status as a candidate up for election in the general election fail for the same reason as the other candidate Plaintiffs.

'personal stake' in the dispute and that the injury is particularized to him. The injury cannot be one suffered by the citizens at large." *Donelon*, 522 F.3d at 566 (internal citations omitted). Moreover, a plaintiff's alleged future injuries cannot be "too speculative to satisfy the well-established requirement that threatened injury must be 'certainly impending.'" *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 401 (2013).

Plaintiff Hotze alleges that his "right to vote" is threatened because of the allowance of "an illegal voting scheme that invites corruption and fraud" where "legal votes will be nullified by illegal votes." Compl. ¶ 11, ECF No. 1. These alleged injuries are both too generalized—as they would be shared equally by all registered voters—and too speculative, as Plaintiffs have not put forth any evidence to suggest that allowing drive-thru voting led to any fraudulent activity. Hotze lacks standing on each of these independent bases.

Court after court has dismissed claims from individual voters based on allegations of the risk of vote dilution due to improper or illegal voting because all voters would share such an injury, making it too generalized. As one court recently explained, "courts which have addressed standing in vote dilution cases arising out of the possibility of unlawful or invalid ballots being counted . . . have said that this harm is unduly speculative and impermissibly generalized because all voters in a state are affected, rather than a small group of voters." *Moore v. Circosta*, 2020 WL 6063332, at \*14 (M.D.N.C. Oct. 14, 2020); *see also Bognet v. Boockvar*, No. 3:20-CV-215, 2020 WL 6323121, at \*5 (W.D. Pa. Oct. 28, 2020) ("[A]ny dilution affects all voters. This generalized harm is insufficient to confer standing."); *Donald J. Trump for Pres., Inc. v. Cegavske*, 2020 WL 5626974, at \*4 (D. Nev. Sept. 18, 2020) ("Plaintiffs never describe how their member voters will be harmed by vote dilution where other voters will not."). Because a claim relying on the "purported injury of having [ ] votes diluted due to ostensible election fraud

may be conceivably raised by any [ ] voter," this "does not satisfy the requirement that Plaintiffs must state a concrete and particularized injury." *Paher v. Cegavske*, 457 F. Supp. 3d 919, 926 (D. Nev. 2020). In other words, if "every voter suffers the same incremental dilution of the franchise caused by some third-party's fraudulent vote, then these voters have experienced a generalized injury." *Martel v. Condos*, 2020 WL 5755289, at *4 (D. Vt. Sept. 16, 2020). Here, Plaintiff Hotze's alleged injuries are indistinguishable from the ones rejected as generalized in the cases cited above, because they are indistinguishable from all other Texas voters.

Indeed, the U.S. Supreme Court has rejected this precise type of claim *under the Elections Clause* for this very reason. As the Court held in *Lance v. Coffman*, 549 U.S. 437, 442 (2007), an injury based on the Elections Clause not being followed "is precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past. It is quite different from the injuries alleged by plaintiffs in voting rights cases where we have found standing." In fact, Plaintiffs' *own* characterization of their supposed injuries as alleged in the Complaint demonstrates that they are entirely generalized. Compl. ¶ 15, ECF No. 1 (describing objected-to conduct as injuring "the integrity and the reported outcomes of the election for *all of the candidates* and *all of the voters who voted*") (emphasis added).

But even if Hotze's alleged injuries were not too generalized, they are entirely speculative. *See Clapper*, 568 U.S. at 401. In *American Civil Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 787 (W.D. Tex. 2015), the court considered and rejected a claim by the plaintiff organization based on the dilution of its members' votes due to one county allegedly failing to properly engage in voter registration list maintenance, holding that "any injury would be entirely speculative." *Id.* at 803; *see also Donald J. Trump for Pres.*, 2020 WL 5626974, at *4 (holding plaintiffs' alleged vote-dilution injuries based on potential voter fraud are

"speculative"); *Pub. Interest Leg. Found., Inc. v. Bennett*, No. 4:18-CV-00981, 2018 WL 2722331, at *4 (S.D. Tex. June 6, 2018). While Hotze presents "this case as one about voter disenfranchisement due to purported vote dilution as a result of voter fraud," his "claim of voter fraud is without any factual basis." *Paher*, 457 F. Supp. 3d at 928.

Plaintiffs have failed to offer any evidence that the drive-thru voting procedure used by Harris County resulted in any voter fraud. This is unsurprising, as the drive-thru voting process requires the same safeguards as voting taking place within a permanent structure, including ID checks. *See* ECF No. 4-2 at 4. Indeed, the Texas Secretary of State endorsed this process as safe and legal. *See* Tex. Elec. Code § 64.009(a). The only allegation Plaintiffs present regarding potential differences in drive-thru voting comes from the Chairman of the Harris County Republican Party Ballot Security Committee, who does not point to any potential for fraud but rather a generalized, and speculative, concern that multiple people in the car at once means the voter does not have complete confidentiality. ECF No. 4-1 at 2.

## 2.  Plaintiffs Champion and Hemphill Lack Standing.

The Fifth Circuit has recognized that candidates or political parties may have a basis for standing if they face "harm to their election prospects," *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586 (5th Cir. 2006), but they must provide facts showing that they face "an unfair advantage in the election process," *Drake v. Obama*, 664 F.3d 774, 783 (9th Cir. 2011). Where candidates have not shown they face "harms that are unique from their electoral opponents," they lack standing on this basis. *Donald J. Trump for Pres.*, 2020 WL 5626974, at *6.

Here, none of the candidate plaintiffs have even pleaded, much less produced, evidence that they face any harms unique from their competitors or face an electoral disadvantage due to the allowance of drive-thru voting. They have not shown that their opponents' supporters have

used drive-thru voting and would not have otherwise voted at a greater rate than their own supporters, let alone in such numbers as could measurably impact the outcome. Indeed, the voting locations were accessible to any voters in Harris County, and it would be rank speculation to presume for whom the voters using these sites cast their ballots—assumptions as to which cut to the heart of the secrecy of ballots. Plaintiffs seek even to discount the votes cast at these locations *by their own supporters*. *E.g.*, Untermeyer Decl. ¶ 3.

And when it comes to irreparable harm, Plaintiffs do not assert a competitive injury whatsoever—they merely contend that drive-thru voting somehow created a "loss of freedoms under the United States Constitution." ECF No. 4 at 11-12. This vague assertion is not concrete or particularized. *Lujan*, 504 U.S. at 560. Where, as here, "the plaintiffs have provided no evidence nor alleged any facts that show they have a particularized injury," a plaintiff cannot rely on the competitive injury theory outlined in *Bensiker*. *Taitz v. Democrat Party of Miss.*, No. 3:12-CV-280-HTW-LRA, 2015 WL 11017373, at *20 (S.D. Miss. Mar. 31, 2015).

Moreover, because the candidate-Plaintiffs' alleged injuries "are contingent on innumerable suppositions," they are not only unparticularized but also speculative as "[a]llegations of *possible* future injury do not satisfy the requirement of Art[icle] III." *Trinity Industries, Inc. v. Martin*, 963 F.2d 795, 799 (5th Cir. 1992) (emphasis added). In order for Plaintiffs to show a non-speculative chance that relief from the Court concerning drive-thru voting would redress their injuries, they would need to show that in the absence of drive-thru voting, "more votes which otherwise would not have been counted [were] cast in favor of [the candidate's] opponent than in his favor." *Bognet*, 2020 WL 6323121, at *3. Plaintiffs have not even alleged such an injury, let alone offered evidence for it. Therefore, any such competitive standing-based injury is speculative and "fail[s] to satisfy the imminence requirement of Article

III because they are premised on numerous predicted "effects" of [the challenged conduct] which are uncertain to occur." *Bruni v. Hughs*, 2020 WL 3452229, at *5 (S.D. Tex. June 24, 2020).

### 3. Legislator Toth Lacks Any Personalized Injury and Lacks Standing to Redress Alleged Institutional Injury to the Legislature.

"[I]ndividual members lack standing to assert the institutional interests of a legislature." *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1953 (2019) (citing *Raines v. Byrd*, 521 U.S. 811, 829 (1997)). To have standing as legislators, plaintiffs must show either that they have "been singled out for specially unfavorable treatment as opposed to other Members of their respective bodies" or that "they have been deprived of something to which they personally are entitled—such as their seats as Members of Congress after their constituents had elected them." *Raines*, 521 U.S. at 821. As the Supreme Court recently explained, an "institutional injury" that "scarcely zeroed in on any individual Member" cannot support standing as an individual legislator plaintiff "could not tenably claim a 'personal stake' in the suit." *Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 801–02 (2015).

Yet that is precisely what Representative Toth attempts to do here. Plaintiff Toth's single allegation is that his authority as a legislator is being usurped by the voting options offered in Harris County. *See* Compl. ¶ 14. At most, this can be characterized as an institutional injury against the whole of the Legislature. Supreme Court precedent makes clear that such an injury cannot support standing for Plaintiff Toth, a single member of a single house of the Texas Legislature.  *See Bethune-Hill*, 139 S. Ct. at 1953; *Ariz. State Legis.*, 576 U.S. 787; *Raines*, 521 U.S. at 829. And while "legislators have standing to challenge official actions in *certain limited circumstances*," none of those limited circumstances apply here.  *Langley v. Dardenne*, 77 F.3d 479, 1996 WL 46781, *3 (5th Cir. 1996) (emphasis added).  "[T]he [alleged] refusal of another branch of government to follow law that was passed by a legislator does not qualify as the type

of 'loss of effectiveness' required for standing." *Id.*

Moreover, while legislators may obtain standing to defend the constitutionality of a legislative enactment when authorized by state law, *Arizonans for Official English v. Arizona*, 520 U.S. 43, 65 (1997),[6] this does not get Plaintiff Toth any closer to alleging an Article III injury. First, the constitutionality of a legislative enactment is not at issue. Second, Texas law does not authorize a single legislator to undertake this suit: "in general, individual legislators lack standing to sue to vindicate the Legislature's institutional prerogatives against executive-branch encroachment." *In re Hotze*, 20-0739, 2020 WL 5919726, at *5 (Tex. Oct. 7, 2020) (Blacklock, J. concurring); *see also* Tex. Gov't Code § 301.061 (allowing representation of the legislature in state or federal courts only under limited circumstances not met here). Consequently, Plaintiff Toth does not have standing.

## III.   Plaintiffs' Claims Lack Merit.

Plaintiffs' extreme view of the Elections Clause is unsupported by precedent and would upend election administration, and Plaintiffs' Equal Protection claim is baseless.

### A.   Drive-Thru Voting in Harris County Does Not Violate the Elections Clause.

Plaintiffs, unhappy with the outcome of their litigation to date, are seeking a do-over. But their policy objections to the manner in which the County is *implementing* state law do not establish a violation of the Elections Clause. As the County has ably laid out several times, the Elections Code explicitly permits drive-thru voting. Hollins, appropriately within his authority, *see, e.g.*, Tex. Elec. Code §§ 32.071, 32.072, 83.001, implemented drive-thru voting in Harris County for the November election. This was done with the approval of the Texas Secretary of State, who is

---

[6] *See also Donelon*, 522 F.3d at 566 ("The Supreme Court has held that state officials lack standing to challenge the constitutional validity of a state statute when they are not adversely affected by the statute, and their interest in the litigation is official, rather than personal.").

empowered to "assist and advise all elections authorities with regard to the application, operation, and interpretation of th[e Election Code] and of the election laws outside this code." Tex. Elec. Code § 31.004. There is no question that Hollins rests his authority *on* the Election Code, rather than despite it. And the Texas Supreme Court has twice rejected mandamus petitions seeking to block drive-thru voting based on such a dispute as to the interpretation of the Code.

Nevertheless, Plaintiffs apparently contend that, under the Elections Clause, no entity or official other than the State Legislature may take any action that is not explicitly spelled out by the State Legislature in legislation governing a federal election. While the County's actions here are based in the correct interpretation of the Elections Code, Plaintiffs' radical position fundamentally misapprehends how the implementation of law functions in reality and is squarely foreclosed by Supreme Court precedent and bedrock principles of federalism. *See Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2671 (2015) (holding that "legislature" as used in the Elections Clause means the "power that makes laws" consistent with a state's constitution, and encompassed the people of Arizona's exercise of the initiative process authorized by the Arizona Constitution); *id.* (reiterating holding in *Smiley v. Holm*, 285 U.S. 355 (1932), that "the Elections Clause . . . respect[s] the State's choice to include the Governor in [the lawmaking] process")).

Plaintiffs' extreme position would also wreak havoc on election administration. As the Supreme Court has stated, the "manner" of holding elections "encompasses matters like 'notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns." *Cook v. Gralike*, 531 U.S. 510, 523-524 (2001) (quoting *Smiley*, 285 U.S. at 366). Were state legislatures prohibited by the Elections Clause from delegating their authority to make laws concerning these matters, a host of state regulations governing the "time, place, and

manner" of federal elections would be invalidated. Moreover, if any supposed misadministration of the Texas Election Code by a county clerk did create an Election Clause violation, as Plaintiffs' position suggests here, federal courts would become inundated with any manner of mundane and petty election-administration disputes that belong in state courts potentially, as here, at the last hour and with chaotic consequences.

**B.      Plaintiffs' Equal Protection Claim Likewise Lacks Merit.**

Plaintiffs' Equal Protection claim is also baseless. Without more, mere variations in the number and types of polling locations between counties alone does not give rise to an equal protection violation. Indeed, *Bush v. Gore* itself recognized that "local entities, in the exercise of their expertise, may develop different systems for implementing elections." 531 U.S. 98, 109 (2000). Thus, Plaintiffs' repeated citation to *Bush v. Gore* in this context is entirely inapposite. The issue there was "the absence of specific standards to ensure . . . equal application" of a rule seeking to discern voters' intent. *Id.* at 106. The Court held that the absence of "specific rules designed to ensure uniform treatment" of the ballots meant that similarly situated votes might be treated differently, in violation of equal protection. The concern in *Bush v. Gore* that only some votes would be counted—disparity of outcome—is entirely orthogonal to Harris County's choice to provide a menu of options, including drive-thru voting, to registered voters in Harris County.

<u>**CONCLUSION**</u>

For the reasons set forth above, the Court should deny Plaintiffs' Motion for Preliminary Injunction.

Date: November 1, 2020

Sophia Lin Lakin
Davin Rosborough
Adriel I. Cepeda Derieux
Theresa J. Lee
Jennesa Calvo-Friedman
Ihaab Syed
Dale E. Ho

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2600
slakin@aclu.org
drosborough@aclu.org
acepedaderieux@aclu.org
tlee@aclu.org
jcalvo-friedman@aclu.org
isyed@aclu.org
dho@aclu.org

Respectfully submitted,

*/s/Andre Segura*
Andre Segura (Attorney-In-Charge)
(TX Bar No. 24107112; S.D. Tex. 3123385)
David Donatti (TX Bar No. 24097612, S.D.
Tex. 3371067)
Kathryn Huddleston
Edgar Saldivar (TX Bar No. 24038188; S.D.
Tex. 618958)
Anjali Salvador (TX Bar No. 24110324)

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF TEXAS, INC.
5225 Katy Fwy., Suite 350
Houston, Texas 77007
(713) 942-8146
asegura@aclutx.org
ddonatti@aclutx.org
khuddleston@aclutx.org
tbuser-clancy@aclutx.org
esaldivar@aclutx.org

Perry Grossman

NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street
New York, NY 10004
(212) 607-3000
pgrossman@nyclu.org