# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| STEVEN HOTZE, M.D. WENDELL CHAMPION, HON. STEVE TOTH, AND SHARON HEMPHILL, | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Case No. 4:20-cv-03709 |
| CHRIS HOLLINS, in his official capacity as Harris County Clerk, | § § § § | |
| *Defendant,* | § § | Judge Andrew S. Hanen |
| and | § § | |
| MJ FOR TEXAS; DSCC; DCCC; MARY CURRIE; CARLTON CURRIE JR.; JEKAYA SIMMONS, and DANIEL COLEMAN, | § § § § § | |
| *Proposed Intervenor-Defendants,* | § § | |
| and | § § | |
| CHRISTINA MASSARA, ALAN MAUK, JENN RAINEY, BRIAN SINGH, MARY BACON, KIMBERLY PHIPPS-NICHOL, NYGUEN GRIGGS, NELSON VANEGAS, JESSICA GOODSPERO, AMY ASHMORE, RICHARD FRANKEL, ELAINE FRANKEL, RYAN FRANKEL, CELIA VESELKA, SERGIO ALDANA, RUSSELL "RUSTY" HARDIN, DOUGLAS MOLL, AND CAREY JORDAN, | § § § § § § § § § § § § | |
| *Proposed Intervenor-Defendants.* | § § | |

**DRIVE THRU VOTERS' PROPOSED BRIEF IN OPPOSITION TO
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Proposed-Intervenor Defendants Christina Massara; Alan Mauk; Jenn Rainey; Brian Singh; Mary Bacon; Kimberly Phipps-Nichol; Nyguen Griggs; Nelson Vanegas; Jessica Goodspero; Amy Ashmore; Richard Frankel; Elaine Frankel; Ryan Frankel; Celia Veselka; Sergio Aldana; Russell "Rusty" Hardin; Douglas Moll; and Carey Jordan ("Drive-Thru Voters") file this Proposed Brief in Opposition to Plaintiffs' Motion for a Preliminary Injunction and would show this Court the following:

**I.    INTRODUCTION**

As former Republican Speaker of the Texas House of Representatives Joe Strauss recently tweeted, "The lawsuit attempting to disenfranchise more than 100,000 voters in Harris County is patently wrong.  All of us who believe in the core ideals of this country should want more votes counted and more voices heard."[1]  Drive-Thru Voters are voters who cast their ballots at Harris County's drive-thru polling locations.  They wish their votes to be counted and their voices to be heard.  They correctly believed that their votes were legal and valid.

Plaintiffs' challenge to Harris County's drive-thru voting procedures comes very late in the game, after Drive-Thru Voters and nearly 127,000 other Texans have already cast their ballots at drive-thru polling locations.  Despite having *months* to mount a challenge to drive-thru voting, Plaintiffs are only now bringing their challenge in this Court.   Plaintiffs now seek the extraordinary relief of preventing the counting of Drive-Thru Voters' votes, effectively disenfranchising Drive-Thru Voters.

This request for preliminary injunction is Plaintiffs' third bite of the apple. The Texas Supreme Court has already **twice** denied requests for mandamus relief aimed at invalidating

---

[1] Twitter, Nov. 1, 2020, @SpeakerJoeStrauss.

Harris County's drive-thru voting plan.[2] Indeed, on November 1, the Texas Supreme Court denied Plaintiffs' petition for mandamus based on the same equal-protection and state-law arguments presented here. This Court should reject Plaintiffs' belated and desperate attempt to thwart the electoral process.

Drive-Thru Voters join in and adopt all the arguments presented by Proposed Intervenor-Defendants MJ for Texas, DSCC, DCCC, Mary Currie, Carlton Currie, Jr. Jekaya Simmons, and Daniel Coleman ("MJ Intervenors"). Drive-Thru Voters write separately to raise four additional arguments.

*First*, Plaintiffs' Motion for a Preliminary Injunction should also be denied because Plaintiffs' have an adequate remedy at law. To the extent that Plaintiffs argue that votes cast at drive-thru polling locations are illegal, Texas law provides a remedy: an election contest under the Texas Election Code. Under Texas law, a contest may be brought only *after* the election, once all the votes are counted. By asking to prevent the tabulation of votes before Election Day, Plaintiffs put the cart before the horse.

*Second*, the balance of equities weighs against granting the injunction. While Plaintiffs have an adequate remedy at law, Drive-Thru Voters and others who similarly voted at drive-thru locations will be severely prejudiced if the injunction is granted. Preventing the counting of nearly 127,000 votes will not only disenfranchise voters in the races in which Plaintiffs Champion, Hemphill, and Toth are running, but will invalidate drive-thru votes in *all* races from the presidency on down to local races.

*Third*, the *Rooker-Feldman* doctrine counsels against this Court's exercising jurisdiction in this matter. The Texas Supreme Court has twice considered and denied relief on the same

---

[2] *See In re Hotze*, No. 20-0819, Order Denying Petition (Tex. Oct. 22, 2020); *In Re Hotze*, No. 20-0863, Order Denying Petition (Nov. 1, 2020).

claims that Plaintiffs make here.  Because Plaintiffs' claims are not merely intertwined with, but are identical to their claims in the Texas Supreme Court, the Court should decline to exercise jurisdiction.

***Fourth,*** Plaintiffs are essentially asking this Court to decide the proper construction of Texas election law.  But principles of comity and federalism—particularly in the election context—demand that this Court defer to the Texas Supreme Court's *two* prior decisions denying relief to Plaintiffs.

## II.   ARGUMENT

### A.   The Texas Election Code's election contest procedure provides an adequate remedy at law.

For plaintiffs to be entitled to injunctive relief, they must demonstrate that if the district court denies the preliminary injunction, irreparable harm will result.  *E.g.*, *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011).  "In general, harm is irreparable where there is no adequate remedy at law . . . ." *Id.*

Here, Plaintiffs seek to stop the counting of votes from drive-thru polling locations, and claim that they will suffer irreparable harm if these votes are counted.   Plaintiffs claim that drive-thru votes are illegal votes.  But Texas election law provides a remedy for an aggrieved candidate to challenge votes that have been cast or counted illegally: an election contest.  *See* TEX. ELEC. CODE, Title 14 Election Contests (chs. 22, 231–233, 241–43).  An election contest differs from the § 1983 lawsuit Plaintiffs have filed here (and Plaintiffs' twice-rejected request for mandamus at the Supreme Court of Texas) in important ways.  It "is not an ordinary case in law or in equity." *Regalado v. Munoz*, No. 13-14-00274-CV, 2014 WL 3542056, at *2 (Tex. App.—Corpus Christi July 17, 2014, no pet.) (citations omitted). Instead, it is "politically time sensitive," and triggers "legislative remedies" that must "be strictly followed." *Id*. (citations

4

omitted).  The Code provides specific procedures for venue, procedure, and deadlines.  *See, e.g.*, Tex. Elec. Code §§ 232.006, 232.008, 232.010. Most importantly, an election contest can be filed only *after* the election and does *not* stop the counting of votes; the canvassing and certification of election results continues as if a contest had not been filed.  TEX. ELEC. CODE § 221.006.

Filing an election contest after the election, rather than prematurely seeking to enjoin the tabulation of drive-thru votes—will also avoid unnecessary litigation.  For example, if Plaintiffs Champion, Hemphill, or Toth win their races even with the drive-thru votes, they will not need to file a contest.  Similarly, if they lose their races by a greater number of votes than those cast at drive-thru polling locations, there would also be no need for a contest, as drive-thru polling will not have affected the outcome.

**B.     The balance of the equities weighs against granting the injunction.**

When determining whether to grant a preliminary injunction, the Court must ask whether Plaintiffs' threatened injuries outweigh any damage the injunction may cause. *Tex. Voters All. v. Dallas Cnty.*, No. 4:20-CV-00775, 2020 WL 6146248, at *20 (E.D. Tex. Oct. 20, 2020).  Here, the balance of equities weighs strongly against granting the injunction.

In contrast to the Plaintiffs, who have an adequate legal remedy, a last-minute injunction to stop counting drive-thru  votes would instead irreparably harm Drive-Thru Voters and the electoral process.  The Supreme Court has made clear that "voter confusion" is a paramount concern whenever a court orders changes to election procedures on the eve of an election, and "[a]s an election draws closer, that risk will increase." *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006).  Here, if the preliminary injunction is granted, 127,000 voters, who had every reason to believe that their vote would be counted, will be disenfranchised.  The County Clerk may try to inform them that they can vote provisionally in-person on November 3, but given that the Court

is hearing Plaintiffs' Motion *the day before Election Day*, it is likely that a substantial percentage of early voters will not receive such notice. And many believing their votes to already have been legally cast, have other commitments and cannot vote in person on November 3.

Moreover, a preliminary injunction blocking the counting of drive-thru votes is a far blunter instrument than an election contest. It would not only apply to Plaintiff Champion, Hemphill, and Toth's races, but would also deny the Drive-Thru Voters their right to vote for the other candidates running for office. Were the Court to order Defendant Hollins to refrain from entering into the tally machine all memory cards from the ten drive-thru voting locations, there would be no way to ensure that the Drive-Thru Voters' other votes are counted even in the dozens of other races, from the race for the presidency to various other statewide, county, and district offices. What is more, if a candidate or voter challenges the legality of specific votes and a court ultimately upholds the manner in which they were cast, the Code contains no provision outlining a procedure for adding such votes back into the count. Thus, the Election Code provides no clear path for counting the Drive-Thru Voters' votes if they are not included in the original count.

Plaintiffs argue that the injunction they request would not cause harm to Defendant Hollins. Dkt. 4 at 12. Regardless of whether that is true, their position fails to account for the bludgeoning destruction of the Drive-Thru Voters' constitutional right to vote as well as the havoc the injunction would wreak for the Drive-Thru voters, for the candidates in every other election on the ballot, and for the electoral process generally. Such havoc can be avoided by denying Plaintiffs' request for an injunction and requiring them to employ the specific process that the Texas Legislature created: an election contest.

6

### C. The *Rooker-Feldman* doctrine counsels against the exercise of this Court's jurisdiction.

The Plaintiffs have ***twice*** petitioned the Texas Supreme Court to invalidate the "drive-thru" in-person voting method at issue here. Both times, the Texas Supreme Court has denied the requested relief. *See In re Hotze*, No. 20-0819, Order Denying Petition (Tex. Oct. 22, 2020); *In Re Hotze*, No. 20-0863, Order Denying Petition (Nov. 1, 2020). Now, in federal court, Plaintiffs have sued the same party, raised the same issues, and requested similar relief. In their third bite at the apple, Plaintiffs seek "what in substance would be appellate review of the state judgment." *Weaver v. Tex. Capital Bank, N.A.*, 660 F.3d 900, 904 (5th Cir. 2011). The *Rooker-Feldman* doctrine precludes such relief.

The *Rooker-Feldman* doctrine arises out of two Supreme Court decisions, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and provides that "federal district courts lack jurisdiction to entertain collateral attacks on state court judgments." *Liedtke v. State Bar of Tex.,* 18 F.3d 315, 317 (5th Cir. 1994). A state-court judgment is attacked for purposes of *Rooker–Feldman* "when the [federal] claims are 'inextricably intertwined' with a challenged state court judgment," *Richard v. Hoechst Celanese Chem. Grp., Inc.,* 355 F.3d 345, 350 (5th Cir. 2003), or where the losing party in a state-court action seeks "what in substance would be appellate review of the state judgment." *Johnson v. De Grandy,* 512 U.S. 997, 1005–06 (1994). The doctrine provides that federal courts should decline to exercise jurisdiction in "cases brought by state-court losers complaining of injuries caused by state-court judgments . . . ." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

The *Rooker–Feldman* doctrine applies when a case meets a four-prong test: (1) a state-court loser; (2) alleging harm caused by a state-court judgment; (3) that was rendered before the

district-court proceedings began; and (4) the federal suit requests review and reversal of the state-court judgment.  *Houston v. Venneta Queen*, 606 F. App'x. 725, 730 (5th Cir. 2015) (citing *Exxon*, 544 U.S. at 284).  A plaintiff "cannot escape *Rooker-Feldman*" by recasting its complaint in a different form.  *Id.*

Substantively, all four elements are met here.  Plaintiffs lost in the Texas Supreme Court—twice.  In the first instance, the Texas Supreme Court dismissed a mandamus petition challenging Harris County's drive-thru voting.  *See In re Hotze*, No. 20-0819, Order Denying Petition (Tex. Oct. 22, 2020).  Five days later, on October 27, 2020, many of the same plaintiffs from the prior lawsuit—including the named Plaintiff—filed a new mandamus petition in the Texas Supreme Court again requesting review of the drive-thru voting process.  That second mandamus petition was denied on Sunday, November 1, 2020.  *See In Re Hotze*, No. 20-0863, Order Denying Petition (Nov. 1, 2020).  The first element of the doctrine is therefore met.

After the determination of their first Mandamus, and while their second was pending, the Plaintiffs filed the instant lawsuit on October 28, 2020.  Accordingly, the first decision by the Texas Supreme Court was rendered before this lawsuit was filed, meeting the third element of the *Rooker-Feldman* doctrine.

In substance although they do not explicitly say so, the Plaintiffs seek the reversal of the Texas Supreme Court's mandamus decisions, and the injury Plaintiffs have purportedly suffered was caused by the Texas Supreme Court's failure to grant their desired relief.  That is sufficient to meet the remaining two elements under the *Rooker-Feldman* doctrine.

The Northern District of Mississippi's recent decision in *Bell v. Tallahatchie County*, 440 F. Supp. 3d 569, 572 (N.D. Miss. 2020) is instructive on this point.  There, Bell disputed the applicability of the *Rooker-Feldman* doctrine because he "d[idn't] specifically state that he was

1022180.3.docx

harmed by his state-court judgment, nor d[id] he ask for review or reversal of the state-court judgment." *Id.* The court rejected Bell's argument, instead holding that he was "attempting to relitigate the same claims brought forth in the state action and [was] essentially asking for both a reversal and a review. Bell [was] in essence asking this Court to review the claims that have been already filed in state court. Not only [were] Bell's claims 'inextricably intertwined,' several of his claims [were] identical to his state court claims." *Id.*

That is exactly the case here. The Plaintiffs' Petition "stripped to essentials, is an attack on the judgment of the state . . . court." *Liedtke*, 18 F.3d at 317–18. And Plaintiffs' claims are not only "inextricably intertwined," but, just like in *Bell*, are identical to the claims that the Texas Supreme Court has twice denied. Accordingly, this Court should decline to exercise jurisdiction under the *Rooker-Feldman* doctrine.

> **D.     Based on principles of comity and federalism, this Court should defer to the Texas Supreme Court's decisions denying Plaintiffs' requested relief.**

Principles of comity and federalism also counsel deference to the Texas Supreme Court's decisions to deny relief. In "most cases, comity and respect for federalism compel" federal courts to "defer to decisions of state courts on issues of state law." *See Bush v. Gore*, 531 U.S. 98, 112 (2000) (Rehnquist, C.J., concurring) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). The United States Supreme Court "repeatedly has held that state courts are the ultimate expositors of state law . . . and that we are bound by their constructions except in extreme circumstances . . . ." *Mullaney v. Wilbur*, 421 U.S. 684, 690–91 (1975). "Considerations of comity are particularly important in the context of state elections. We have repeatedly refused to get involved in resolving state election disputes arising under state laws." *Noble v. White*, 996 F.2d 797, 799–800 (5th Cir. 1993); *see also Hubbard v. Ammerman*, 465 F.2d 1169, 1181 (5th Cir.1972) ("Since this local election contest had turned toward the legality of ballots cast outside

9

the precincts of the voter, a violation of Texas law and obviously a state question, and since this issue was to govern the outcome of the contest, we must point out here that Federal Courts do not intervene in state election contests for the purpose of deciding state law, if no federal constitutional question is involved"). The Fifth Circuit has reiterated that even in circumstances where federal courts intervene in disputes concerning election laws, they should be "ever mindful of our commitment to comity." *Noble*, 996 F.2d at 800. Such principles militate against granting injunctive relief here.

The gravamen of Plaintiffs' petition concerns the proper statutory interpretation of the Texas Election Code. Even the constitutional arguments raised by the Plaintiffs assert that Defendant Hollins departed from the Texas Legislature's statutory scheme. Compl. ¶ 29-32. The Texas Election Code provides a mechanism for filing an original proceeding in "The Supreme Court or a court of appeals" to raise issues concerning the violation of "any duty imposed by law in connection with the holding of an election . . . ." TEX. ELEC. CODE § 273.061. The Plaintiffs availed themselves of this procedure twice, both times raising the same statutory-interpretation arguments before the Texas Supreme Court. And on both occasions, the Texas Supreme Court refused to grant the requested relief, and by implication, concluded that the "drive-thru" scheme did not violate the Texas Election Code.

"The principle that state courts are the final arbiters of state law is well-settled." *Levy Gardens Partners 2007, L.P. v. Commonwealth Land Title Ins. Co.*, 706 F.3d 622, 629 (5th Cir. 2013) (citing *Bell v. State of Md.*, 378 U.S. 226, 237 (1964)). The Texas Supreme Court is the final arbiter of Texas election law, and its decisions concerning the proper statutory interpretation of Texas law are entitled to deference by this Court on the basis of judicial comity and federalism. In accordance with those well-worn prudential principles, this Court should

decline to grant Plaintiffs the relief they already sought and were denied by the Texas Supreme Court.

## III. CONCLUSION

The Court should deny Plaintiffs' desperate third attempt to inject chaos into the election by disenfranchising those voters who voted in drive-thru polling locations. For the reasons set forth above and in the MJ Intervenors' Voters' Response, Drive-Thru Voters respectfully request that the Court deny Plaintiffs' Motion for a Preliminary Injunction.

Dated: November 2, 2020.

Respectfully submitted,

**SMYSER KAPLAN & VESELKA, L.L.P.**

*/s/ Larry R. Veselka*
Larry R. Veselka (Fed. Bar No. 6797)
State Bar No. 20555400
David Isaak (Fed. Bar No. 26694)
State Bar No. 24012887
717 Texas Avenue, Suite 2800
Houston, Texas 77002
(713) 221-2300 (phone)
(713) 221-2320 (fax)
lveselka@skv.com
disaak@skv.com

***ATTORNEYS FOR THE DRIVE-THRU VOTERS***

## CERTIFICATE OF SERVICE

I certify that on November 2, 2020, I caused a copy of the foregoing document to be served on all counsel of record by the Electronic Case Filing System for the United States District Court for the Southern District of Texas.

*/s/ Larry R. Veselka*
Larry R. Veselka

11