**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| STEVEN HOTZE, M.D., WENDELL CHAMPION, HON. STEVE TOTH, AND SHARON HEMPHILL, | ) ) ) ) | Civil Action No. 4:20-cv-03709-ASH |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| CHRIS HOLLINS, in his official capacity as Harris County Clerk, | ) ) ) | |
| Defendant. | ) ) | |

**BRIEF OF ELECTION LAW PROFESSORS
JOSEPH R. FISHKIN, STEPHEN I. VLADECK, AND D. THEODORE RAVE
AS *AMICI CURIAE* IN SUPPORT OF DEFENDANT**

Daniella D. Landers
Sarah M. Cummings
REED SMITH LLP
811 Main Street
Suite 1700
Houston, TX 77002-6110
dlanders@reedsmith.com
scummings@reedsmith.com

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

**Page**

INTEREST OF *AMICI CURIAE* .................................................................................................1

SUMMARY OF ARGUMENT ......................................................................................................2

ARGUMENT ................................................................................................................................3

The Meaning of Texas's Election Statutes Is Not a Question of Federal Law................................3

     A.      Chief Justice Rehnquist's concurrence in *Bush v. Gore* was not adopted by a
majority of the Court and has not been adopted by the Supreme Court or
Fifth Circuit, and would be applicable only in extraordinary circumstances ..........3

     B.      The non-binding concurrence in *Bush v. Gore* is limited to cases in which a
state court imposes new election rules in a way that undermines a statutory
scheme and its interpretation is so egregious that it violates due process ..............5

     C.      Plaintiffs' theory is unworkable, would violate federalism principles, and
would undermine the State's practical and legal authority to run elections ...........8

CONCLUSION............................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizona State Legislature v. Arizona Indep. Redistricting Comm'n,*
    576 U.S. 787 (2015)................................................................................................9

*Bouie v. City of Columbia,*
    378 U.S. 347 (1964)................................................................................................5

*Bush v. Gore,*
    531 U.S. 98 (2000)................................................................................2, 3, 4, 5, 8

*Democratic Nat'l Comm. v. Wisconsin State Legislature,*
    No. 20A66, 2020 WL 6275871 (U.S. Oct. 26, 2020) (Roberts, J., concurring
    in denial of application to vacate stay) .................................................................5

*Exxon Mobil Corp. v. Saudi Basic Undus. Corp.*,
    544 U.S. 280 (2005)..............................................................................................11

*In re Hotze,*
    No. 20-0819 (Tex. Oct. 22, 2020)........................................................................10

*In re Hotze,*
    No. 20-0863 (Tex. Nov. 1, 2020).........................................................................10

*In re Pichardo,*
    No. 14-20-00697-CV (Tex. App.--Houston [1st Dist] Oct. 14, 2020) ..................10

*NAACP v. Alabama ex rel. Patterson,*
    357 U.S. 449 (1958)................................................................................................5

*Smiley v. Holm,*
    285 U.S. 355, 372-73 (1932) ................................................................................9

**Constitutions and Statutes**

U.S. Const. Art. I § 4 ....................................................................................................2

Texas Const. art. III ......................................................................................................8

Tex. Const. art. IV § 14.................................................................................................9

Tex. Const. art. V § 3 ..................................................................................................10

Tex. Const. art. VI, § 2(a)............................................................................................8

## TABLE OF AUTHORITIES
### (Cont.)

**Page(s)**

Tex. Elec. Code § 32.075 .................................................................................................9

Tex. Elec. Code § 83.001(a) ............................................................................................6

Tex. Elec. Code § 85.062(b) ............................................................................................6

Tex. Elec. Code § 273.061 ...........................................................................................8, 10

Tex. Elec. Code § 273.081 ..............................................................................................10

## INTEREST OF *AMICI CURIAE*

*Amici curiae* are law professors who teach at law schools in Texas and whose research and teaching focus on United States constitutional law and federal and state election law. Amici have a professional interest in the proper construction of the Elections Clause. They submit this brief to assist the Court by explaining why plaintiffs' construction of the Elections Clause is incorrect, incompatible with principles of federalism, and would impair the States' ability to administer elections freely and fairly.

*Amici* are Professor Joseph R. Fishkin, Marrs McLean Professor in Law, University of Texas School of Law; Stephen I. Vladeck, Charles Alan Wright Chair in Federal Courts at the University of Texas School of Law; and D. Theodore Rave, George A. Butler Research Professor and Associate Professor of Law, University of Houston Law Center.

No counsel for a party authored this brief in whole or in part and no person or entity, other than *amici curiae* and their counsel, has contributed money that was intended to fund the preparation or submission of this brief.

## SUMMARY OF ARGUMENT

The federal Constitution's Elections Clause, U.S. Const., Art. I § 4, states:  "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof …." What the Texas Legislature has "prescribed" for Texas is a question of state law to be answered by state courts. The Texas Constitution mandates this. Moreover, the Texas Legislature has prescribed in the Texas Election Code that state courts are the proper venue for adjudicating any disputes about the Code's meaning. Questions of remedy in such disputes are also questions of state law.

The issues present in this case have already been decided in state court.  Plaintiffs now seek to re-litigate the state law issues in federal court on the basis of a novel and unfounded federal constitutional theory which would wrest control of Texas election law from the state authorities charged by law with implementing and interpreting it. The plaintiffs' novel theory is simply incorrect. The Elections Clause does not grant federal courts the power to override a State's construction of its own law or to create a private constitutional right of action in favor of individuals solely because they disagree with the State's construction of its election laws.

Plaintiffs contend that Chris Hollins, the Harris County Clerk, misinterpreted the Texas Election Code and that, as a result, this Court must nullify hundreds of thousands of ballots already cast. They are wrong as a matter of state law because the Texas Supreme Court rejected the same arguments that plaintiffs raise here. Thus, to rule in favor of plaintiffs, this Court would need to conclude that the meaning of Texas law is a question of federal law entrusted to this Court. Neither logic nor law supports that conclusion.

As support for their counterintuitive claim, plaintiffs rely heavily on a three-justice concurrence in *Bush v. Gore*, 531 U.S. 98 (2000). This concurrence is not the law of the land,

and even if it were, it would not affect the outcome of this case. To extend the concurrence's theory of the Constitution to this case's circumstances would have severe adverse consequences for this election and elections to follow. It would place federal courts in the position of overseeing all interpretations of state election law, upending our system of federalism. State courts are the final authority on questions of interpretation of state law.  This court should not entertain the plaintiffs' efforts to make an end run around the decision-makers authorized under state law—the Harris County Clerk, the Secretary of State, and the Texas Supreme Court—none of whom agree with the plaintiffs' interpretation of Texas election law.

## ARGUMENT

### The Meaning of Texas's Election Statutes Is Not a Question of Federal Law

Plaintiffs' dispute with the Harris County Clerk about whether the phrases "any structure" or "building" in the Texas Election Code encompass parking structures and semi-permanent tent structures does not present a federal question. The U.S. Supreme Court has never held that such a question of state law, standing alone, presents a federal question.

Plaintiffs rely on the concurrence in *Bush v. Gore*, 531 U.S. at 111 (Rehnquist, J., concurring), but six justices declined to join that concurrence, which means that the concurrence is not controlling law. Even if the concurrence were controlling, it would be inapplicable in this case.

**A.      Chief Justice Rehnquist's concurrence in *Bush v. Gore* was not adopted by a majority of the Court in that case and has not been adopted by the Supreme Court or Fifth Circuit, and would be applicable only in extraordinary circumstances**

In *Bush v. Gore*, the Supreme Court considered the Florida Supreme Court's order altering unambiguous election certification deadlines prescribed by the Florida Legislature and

3

directing a recount of certain improperly marked ballots to be recounted even though jurisdiction for election contests resided in state circuit courts. *Id.* at 100-103 (per curiam). The *Bush v. Gore* majority held that the Florida standards for ballot recounts were so arbitrary and inconsistent between counties so as to violate the federal Equal Protection Clause. *Id.* at 105. The majority denied the decision's precedential value, however, by stating that it's reasoning was "limited to the present circumstances." *Id.* at 109.

Three Justices filed a separate concurrence. In it, they argued—in addition to the Equal Protection Clause theory that the majority had adopted—that that "[a] significant departure from the legislative scheme for appointing Presidential electors presents a federal constitutional question." *Id.* at 112 (conc. of Rehnquist, J.). This theory was grounded in the language of Article II Section 1 of the United States Constitution, which states that "[e]ach State shall appoint" presidential electors "in such Manner as the Legislature thereof may direct." The concurring Justices argued that, in Florida, "the legislature ha[d] delegated the authority to run the elections and to oversee election disputes to the Secretary of State, and to state circuit courts," and that the Florida Supreme Court's actions were so far removed from the state legislative scheme that it wholly changed it. *Bush v. Gore*, 531 U.S. at 114 (conc. of Rehnquist, J.) ("Isolated sections of the code may well admit of more than one interpretation, but the general coherence of the legislative scheme may not be altered by judicial interpretation so as to wholly change the statutorily provided apportionment of responsibility among these various bodies.").

As precedent for abandoning the ordinary rule that "comity and respect for federalism compel us to defer to the decisions of state courts on issues of state law," the concurring justices in *Bush v. Gore* cited two extraordinary cases in which the United States Supreme Court had reviewed a state supreme court's interpretation of state law. *Id.* at 114-15 (conc. of Rehnquist, J.)

(citing *Bouie v. City of Columbia*, 378 U.S. 347 (1964); *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958)). In these cases, the State's interpretation of its own law was such a novel and extraordinary departure from a fair reading of the statute that it violated the plaintiff's right to due process. *See id.* at 114-15 (conc. of Rehnquist, J.).

The *Bush v. Gore* majority did not adopt this novel theory of federal jurisdiction. *Bush v. Gore*, 531 U.S. at 105 (per curiam). The Court has never subsequently adopted it. And recently, the Supreme Court declined to use this rationale to overturn settled federalism principles. *Democratic Nat'l Comm. v. Wisconsin State Legislature*, No. 20A66, 2020 WL 6275871, at *1 (U.S. Oct. 26, 2020) (Roberts, J., concurring in denial of application to vacate stay). The Fifth Circuit has likewise not adopted this theory.  The theory itself would only apply in extreme circumstances—which are absent here.

> **B.**    **The non-binding concurrence in *Bush v. Gore* is limited to cases in which a state court imposes new election rules in a way that undermines a statutory scheme and its interpretation is so egregious that it violates due process**

The *Bush v. Gore* concurrence was limited to the situation in which state courts interpret state law in a way that (a) is so wrong that it has "no basis" in state law and "no reasonable person" would interpret it that way, and (b) contravenes the express decision of the state official "authorized by law to issue binding interpretations of the Election Code." *Bush v. Gore,* 531 U.S. at 119-20 (conc. of Rehnquist, J.). Even on its own terms, the non-binding concurrence does not confer authority on federal courts to interpret state law as a general matter, but only in extraordinary cases where a state court's or state official's interpretation is so wrong and so unexpected that it violates due process.

In determining whether a state court's or state official's interpretation of state law is so wrong and so disruptive of settled expectations that it violates due process rights, the Court should consider how long the State has made its interpretation available to the public. In this case, for example, amici understand that the Secretary of State approved Harris County's interpretation of state law months in advance. If that understanding is correct, the Harris County Clerk's implementation of that interpretation cannot come as a surprise, and any person who disputed this implementation had months to pursue its dispute in the proper forum, a state court.

This Court should also consider whether the state court or state official has any discretion under state law. Here, for example, the Legislature provided that "[t]he early voting clerk shall conduct the early voting in each election" (Tex. Elec. Code § 83.001(a)) and that "[a] polling place established under this section may be located, subject to Subsection (d), at any place in the territory served by the early voting clerk and may be located in any stationary structure." (*id.* at § 85.062(b)). These provisions necessarily imbue the local early voting clerk with the discretion to find locations and determine what constitutes "any structure" subject to some reasonable limitation on the reading of the phrase.

Finally, this Court should consider whether, as in *Bush v. Gore*, a state court or state official was creating new rules after votes had already been cast. In this case, the Secretary of State and Harris County Clerk did not change the rules after votes had been cast. Rather, they announced their interpretation months in advance and followed through on that interpretation. It is plaintiffs, not the State, who seek to deprive voters of due process and equal protection by invalidating their votes after they were cast, indisputably in reliance on the State's stated interpretation and approved voting procedures. Harris County and 127,000 Harris County voters have acted reasonably in reliance on the Secretary of State's agreement that the phrase "any

6

structure" in the Election Code includes drive-thru structures, and on the Texas Supreme Court subsequently allowing this interpretation to proceed. Far from having no basis in state law, it is entirely reasonable to read the phrase "any structure" to mean any structure, including parking garages and reinforced, semi-permanent tent structures. And, unlike in *Bush v. Gore*, this case does not present an instance of a court creating new rules to govern the election after votes had been cast. The plaintiffs challenged Harris County's actions in state court and lost. The Texas Supreme Court and the Texas Secretary of State have affirmed that Harris County's actions fall within the discretion that the Legislature afforded to the County.

Even if the plaintiffs were right about their interpretation of "any structure," and even if positions of all the relevant actors had been reversed in the way that would have been most favorable to the plaintiffs, this case would not add up to "a significant departure" from the overall legislative scheme concerning the election. That is, suppose that the Secretary of State had *opposed* drive-thru voting and that a state court, misinterpreting state law, had imposed drive-thru voting rather than an election official having done so in furtherance of his or her obligation to implement state law. Even then, permitting drive-thru voting would not undercut "the general coherence of the legislative scheme" of elections.

Indeed, other portions of the Election Code allow voters to vote from their cars. The long-existing state practice of curbside voting in no way contemplates, much less requires, any application—sworn or otherwise—from a voter seeking to use it. No statute gives election workers the authority to question a voter's verbal request for curbside voting. So, even if Harris County, the Texas Secretary of State, and the Texas Supreme Court are wrong in their interpretations of the phrase "any structure" or "building" in the Texas Election Code, the

resulting error would not be so egregious as to undermine an entire statutory scheme and deprive any person of due process.

The correct procedure to challenge the Secretary of State and Harris County's interpretation of the Texas Election Code was to use the method the Legislature specified in the Texas Election Code: to bring a claim in state court, *see* Tex. Elec. Code § 273.061 (giving mandamus jurisdiction to the Texas Supreme Court over actions against election officials).  The system is working exactly as the Legislature designed it. And, the state authorities the Legislature has charged with interpreting state law have agreed with Harris County and the Secretary of State. This leaves no room for the claim that state courts have so departed from state law as to "wholly change" and destroy "the general coherence of the legislative scheme." *Bush v. Gore*, 531 U.S. at 114 (Rehnquist, J., conc.).

### C.   Plaintiffs' theory is unworkable, would violate federalism principles, and would undermine the State's practical and legal authority to run elections

Extending the *Bush v. Gore* concurrence to overturn the State's interpretation of its own law in the present circumstances would have disastrous practical consequences and would undermine core principles of federalism that the law has recognized for centuries.

A baseless theory of the Elections and Electors Clauses wholly fails to appreciate the nature of state government, and in particular, the role of state legislatures in the state constitutional scheme. State legislatures enact the laws regulating the conduct of federal elections. But state legislatures themselves are creatures of a state constitutional scheme. *See, e.g.* Texas Const. art. III. They exist only as a component of the state's own constitutionally created structure. Indeed, the Texas Constitution is what imbues the Legislature with its authority to provide for a popular voter for presidential electors.  Tex. Const. art. VI, § 2(a). And the

Supreme Court has recognized that the Elections Clause does not change the fact that state legislatures still exist only as part of an overall state constitutional structure. See, e.g., *Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 576 U.S. 787, 817 (2015) ("Nothing in [the Elections Clause] instructs, nor has this Court ever held, that a state legislature may prescribe regulations on the time, place, and manner of holding federal elections in defiance of provisions of the State's constitution."); *see also Smiley v. Holm*, 285 U.S. 355, 372-73 (1932) (holding that the Elections clause does not exempt state legislature's regulation of federal elections from "the veto power of the Governor as in other cases of the exercise of lawmaking power).

In Texas, the state legislature passes laws with the participation of the Governor, who has a veto power, Tex. Const. art. IV, § 14. The election laws the Texas legislature passes are not self-executing, so the legislature has statutorily empowered a variety of officials, including the Secretary of State and local election authorities, to carry out the statutory scheme. *See, e.g.*, Tex. Elec. Code § 32.075 ("a presiding [election] judge has the power of a district judge to enforce order and preserve the peace, including the power to issue an arrest warrant."). Implementing statutes necessarily involves reading the statutory language and using sound discretion as appropriate.

It is not possible for the Texas Legislature, which meets only once every other year, to create a statutory scheme detailed enough that other state and local officials would not need to exercise discretion when implementing its provisions. Adopting plaintiffs' theory, however, would eliminate the Legislature's ability to delegate any discretion to designated state officials, like the Harris County Clerk, over how to implement state election laws. If a federal judge disagreed with the way the official used that discretion, under plaintiffs' unfounded theory, this

9

would now present a federal question on which federal courts could substitute their judgment for that of the legislatively-appointed official. It would be perverse to hold that in order to respect the statutory structure created by a state legislature, a federal court may substitute its judgment in place of the very officials to whom the state legislature delegated its authority.

The state judiciary is an essential part of the state constitutional structure as well. *See* Tex. Const. art. V § 3 ("The Supreme Court shall exercise the judicial power of the state except as otherwise provided in this Constitution. Its jurisdiction shall be co-extensive with the limits of the State and its determinations shall be final except in criminal law matters."). Multiple Texas courts have declined to adopt Plaintiffs' interpretation of the Texas Election Code. *See* Dkt. 15-3 (Denial of Mandamus, *In re Hotze*, No. 20-0863 (Tex. Nov. 1, 2020); Denial of Mandamus, *In re Hotze*, No. 20-0819 (Tex. Oct. 22, 2020); Denial of Mandamus, *In re Pichardo*, No. 14-20-00697-CV (Tex. App.--Houston [1st Dist] Oct. 14, 2020). The Texas Legislature has expressly provided in the Election Code that in case of disputes about such interpretations, parties have recourse to state court, which then take responsibility for interpreting the legislation. Tex. Elec. Code §§ 273.061, 273.081 (allowing for mandamus and injunctive relief respectively in regards to violations of the Election Code).

Thus, not only does the Texas judiciary have independent constitutional significance, but the Texas Legislature has expressly defined the judiciary's role in the functioning of state elections. Thus, the state courts are a part of the legislative and state constitutional scheme for running an election, including elections for federal offices. It would undermine this scheme for a federal court to step in and replace a state court's judgment on state law with its own interpretation—especially where, as here, plaintiffs are simply attempting an end-run around the state courts in which they have decisively lost.

In short, no court has ever found that a provision of the United States Constitution imposes a structural limitation on state constitutions with regard to which entity has primacy when it comes to the separation of powers within the state constitutional structure itself or on the legislature's ability to determine what entities have jurisdiction to decide certain disputes.

Not only would plaintiffs' arguments upend the structure of state government, it would have untenable consequences for the federal court system itself. Federal courts would become courts of original jurisdiction for any dispute over *state* election laws in any even-year election because there are federal races on the ballot. This would deprive state courts of any meaningful role in election law cases, as their interpretations would automatically be subject to de facto appeal in a federal district court. Not only would this be practically unworkable, but it would result in a clear violation of the *Rooker-Feldman* doctrine which recognizes that federal district courts cannot act as courts of appeal for state court decisions. *Exxon Mobil Corp. v. Saudi Basic Undus. Corp.,* 544 U.S. 280, 284 (2005).

## CONCLUSION

The theory espoused by three concurring justices in *Bush v. Gore* has never been accepted. Accepting it now and applying it in this instant case would not only expand the theory beyond its own limitations, but it would cause irreparable damage to states. Such an expansion would eviscerate state constitutional structures and would upend the balance between state and federal courts. The framers, in respecting federalism by giving states the authority to regulate federal elections as well as their own, could not have intended the absurd consequence that federal courts would oversee state constitutional structures and be the final authority on interpreting state election laws.

Dated: November 2, 2020

Respectfully submitted,

/s/ Sarah M. Cummings
Daniella D. Landers
Sarah M. Cummings
REED SMITH LLP
811 Main Street
Suite 1700
Houston, TX 77002-6110
dlanders@reedsmith.com

*Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed using the Court's CM/ECF system. I certify that all participants are CM/ECF users and that service will be accomplished via CM/ECF system.

/s/ Sarah M. Cummings
Sarah M. Cummings
*Counsel for Amici Curiae*