IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

_____

| | |
|---|---|
| STEVEN HOTZE, M.D., WENDELL CHAMPION, HON. STEVE TOTH, AND SHARON HEMPHILL, } } } } | Civil No.4:20-cv-03709 |
| Plaintiffs, } } | |
| v. } } | |
| CHRIS HOLLINS, in his official capacity as Harris County Clerk, } } } | |
| Defendant. } } | |

_____

### *AMICI CURIAE* BRIEF OF 12 CITIES AND COUNTIES IN OPPOSITION TO PLAINTIFFS' REQUEST FOR EMERGENCY INJUNCTIVE RELIEF

Jessica N. Witte
THOMPSON & HORTON LLP
8300 N. MoPac Expressway, Suite 220
Austin, TX 78759
T: 512.615.2352
F: 512.597.1681
jwitte@thompsonhorton.com

Jonathan B. Miller, Legal Director
Victoria Stilwell, Staff Attorney
PUBLIC RIGHTS PROJECT
4096 Piedmont Avenue #149
Oakland, CA 94611

Lauren E. Miller
Special Assistant State's Attorney
Jessica M. Scheller
Chief; Advice, Business & Complex
Litigation Division
Cook County State's Attorney's Office
500 Richard J. Daley Center
Chicago, IL 60602

Dated: November 2, 2020

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT ............................. 1

INTERESTS OF *AMICI CURIAE* ...................................................................................... 1

SUMMARY OF ARGUMENT ........................................................................................... 3

ARGUMENT ................................................................................................................... 4

I.   THE BALANCE OF THE HARMS AND THE PUBLIC INTEREST STRONGLY
     DISFAVOR THE ISSUANCE OF A PRELIMINARY INJUNCTION ........................... 4

     A.   The Harms to Harris County Will Far Outweigh Plaintiffs' Asserted Injury ................. 4

          1.   The Administrative Burden of an Injunction Weighs in Harris County's Favor ......... 5

          2.   Laches Considerations Weigh in Harris County's Favor ............................................ 6

     B.   The Public Interest Heavily Weighs Against Issuance of an Injunction ......................... 8

          1.   Public Health Considerations Weigh in Harris County's Favor ................................. 8

          2.   Public Trust in Election Administration Weighs in Harris County's Favor ............. 10

          3.   The Severely Limited Ability to Remedy Any Disqualified Votes Weighs in
               Harris County's Favor ............................................................................................. 10

II.  HARRIS COUNTY'S DRIVE-THRU VOTING PROCEDURES ARE
     CONSISTENT WITH LONGSTANDING EQUAL PROTECTION PRINCIPLES ....... 11

     A.   Differences Among Counties in Certain Election Procedures Do Not Constitute
          Violations of the Fourteenth Amendment ................................................................... 12

     B.   No Equal Protection Claim Can Be Substantiated Given the Functional Similarities
          Between Curbside Voting and Drive-Thru Voting ....................................................... 14

CONCLUSION .............................................................................................................. 17

ADDITIONAL *AMICI CURIAE* .................................................................................... 18

# **TABLE OF AUTHORITIES**

CASES

*Benisek v. Lamone*,
    138 S. Ct. 1942 (2018) ................................................................................. 6

*Bush v. Gore*,
    531 U.S. 98 (2000) ..................................................................................... 13

*Carson v. Simon*,
    No. 20-3139, 2020 WL 6335967 (8th Cir. Oct. 29, 2020) ..................................... 11

*City of El Cenizo, Texas v. Texas*,
    890 F.3d 164 (5th Cir. 2018) ...................................................................... 1, 8

*Democratic National Committee v. Wisconsin State Legislature*,
    ___ U.S. ___, 2020 WL 6275871 (2020) ........................................................ 10

*Donald J. Trump for President, Inc. v. Boockvar*,
    No. 2:20-cv-066, 2020 WL 5997680 (W.D. Pa. Oct. 10, 2020) ......................... 11, 15

*Holmberg v. Armbrecht*,
    327 U.S. 392 (1946) .................................................................................. 6, 7

*Jackman v. Rosenbaum Co.*,
    260 U.S. 22 (1922) ..................................................................................... 14

*Paher v. Cegavske*,
    No. 20-243, 2020 WL 2748301 (D. Nev. May 27, 2020) ....................................... 13

*Ron Barber for Cong. v. Bennett*,
    No. 14-2489, 2014 WL 6694451 (D. Ariz. Nov. 27, 2014) .................................... 13

*Short v. Brown*,
    893 F.3d 671 (9th Cir. 2018) ....................................................................... 14

*Tex. Med. Providers Performing Abortion Servs. v. Lakey*,
    667 F.3d 570 (5th Cir. 2012) ......................................................................... 1

*Texans for Free Enter. v. Tex. Ethics Comm'n*,
    732 F.3d 535 (5th Cir. 2013) ......................................................................... 4

*Texas v. United States*,
    328 F. Supp. 3d 662 (S.D. Tex. 2018) .............................................................. 3

*Uptown Grill, L.L.C. v. Shwartz*,
    817 F.3d 251 (5th Cir. 2016) ......................................................................... 7

*Wexler v. Anderson*,
452 F.3d 1226 (11th Cir. 2006) ......................................................................... 13

STATUTES & REGULATIONS

950 Mass. Code Reg. § 47.04 (2020)..................................................................... 12

950 Mass. Code Reg. § 47.10 (2020)..................................................................... 12

Tex. Elec. Code § 64.009(a) ........................................................................... 14, 15

Tex. Elec. Code § 64.009(b) ................................................................................. 15

Tex. Elec. Code § 85.062(b) ……………………………………………………………15

OTHER AUTHORITIES

*49ers, Santa Clara County To Turn Levi's Stadium Into Voting Center For November
Election*, KPIX5 CBS SF Bay Area (Sept. 29, 2020), ,
https://sanfrancisco.cbslocal.com/2020/09/29/49ers-santa-clara-county-to-turn-levis-
stadium-into-voting-center-for-november-election/ ................................................ 9

Accessibility, Iowa Sec'y of State (2020)
https://sos.iowa.gov/elections/voterinformation/accessibility.html....................... 14

*Accessible Voting*, Va. Dep't of Elections (2019), https://www.elections.virginia.gov
/casting-a-ballot/accessible-voting/#curbside .......................................................... 14

Bhre Berry, *What you need to know about drive-thru voting in Harris County*, ABC13
(Oct. 16, 2020), https://abc13.com/drive-thru-voting-2020-election-ways-to-vote-harris-
county-locations/7074347/............................................................................................ 15

Colo. Sec't of State Elections Div., Health and Safety Guidance for the November 3, 2020
General Election 9 (2020),
https://www.sos.state.co.us/pubs/elections/files/COVID19guidance.pdf .............................. 12

*Community Outreach*, Placer County Elections Office,
https://www.placerelections.com/community-outreach/ ........................................ 9

*COVID in the U.S.: Latest Map and Case Count,* N.Y. Times,
https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html ............................. 8

Davis Cty., How & Where To Vote (2020), https://www.daviscountyutah.gov/clerk-
auditor/elections/how-where-to-vote ........................................................................ 9

*Drive Thru Voting*, Harris Cty. Clerk Election Div. (2020),
https://harrisvotes.com/drivethruvoting.................................................................. 15

Karen Shanton, Cong. Research Serv., R45549, T*he State and Local Role in Election Administration: Duties and Structures* 3 (2019), https://fas.org/sgp/crs/misc/R45549.pdf. ............................................................................ 9, 12

Katy Blakey, *North Texas Election Officials Prepare for Record Voter Turnout*, NBCDFW (Oct. 12, 2020), https://www.nbcdfw.com/news/politics/texas-politics /north-texas-election-officials-prepare-for-record-voter-turnout/2459452/ ...................... 9, 12

Maureen Halliday, Drive-thru voting now available in Lansing, WILX10 (Oct. 28, 2020), https://www.wilx.com/2020/10/28/drive-thru-voting-site-now-available-in-lansing/ ............. 9

November 3, 2020 General and Special Elections Early Voting Schedule, Harris County, https://www.harrisvotes.com/Docs/EarlyVotingPDFMaps/Early_Voting%20Schedule _November_2020.pdf…………………………………………………………………………7

*Polling Locations and Voters: Interim Guidance to Prevent Spread of Coronavirus Disease 2019 (COVID-19)*, Ctrs. For Disease Control & Prevention (Oct. 29, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/election-polling-locations.html…………………………………………………………………………...10

Riley Vetterkind, *State Elections Official: Democracy in the Park Doesn't Appear to Violate Law*, Wisc. State. J (Oct. 2, 2020), https://madison.com/wsj/news/local/govt-and-politics /state-elections-official-democracy-in-the-park-doesnt-appear-to-violate-law/article_7a9d976d-1d6e-5df5-8a2f-ee4b7ec067d9.html.......................................................5

Russell Berman, *If You Can Grocery Shop in Person, You Can Vote in Person*, The Atlantic (Sept. 8, 2020), https://www.theatlantic.com/politics/archive/2020/09/voting-during-pandemic-pretty-safe/616084 ...................................................................................................6

Shawn Arrajj, *Harris County Releases Details on Voting Precautions for July Runoffs*, Community Impact Newspaper (June 15, 2020), https://communityimpact.com/houston /cy-fair/vote/2020/06/15/harris-county-releases-details-on-voting-precautions-for-july-runoffs…………………………………………………………………………7

*The Americans with Disabilities Act and Other Federal Laws Protecting the Rights of Voters with Disabilities*, U.S. Dep't of Justice Civil Rights Div. Disability Rights Section (Oct. 10, 2014),  https://www.ada.gov/ada_voting/ada_voting_ta.htm................................ 14

U.S. Gov't Accountability Office, GAO-18-294, Elections: Observations on Voting Equipment Use and Replacement 9 (2018), https://www.gao.gov/assets/700/692024.pdf.... 12

*Voters with Disabilities*, Cal. Sec'y of State (2020), https://www.sos.ca.gov/elections/ voting-resources/voters-disabilities ....................................................................................... 12

Wis. Elections Comm'n, Curbside or Drive-Thru Voting (2020), https://elections.wi.gov/node/6986 ........................................................................................ 9

Zach Despart, *Harris County OKs $17 Million to Add Polls, Voting Hours and Drive-Thru Voting for November Election*, Houston Chron. (Aug. 25, 2020), https://www.houstonchronicle.com/politics/- houston/article/Harris-County-OKs -17M-to-add-polls-voting-hours-15514804.php ...................................................................... 7

## STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT

The issue before the Court is whether Plaintiffs are entitled, on the eve of Election Day, to a preliminary injunction arising out of their state and federal law challenges to Harris County's utilization of drive-thru voting and, as a result, to disqualify more than 127,000 votes cast using that method. "To be entitled to a preliminary injunction, the applicants must show (1) a substantial likelihood that they will prevail on the merits, (2) a substantial threat that they will suffer irreparable injury if the injunction is not granted, (3) their substantial injury outweighs the threatened harm to the party whom they seek to enjoin, and (4) granting the preliminary injunction will not disserve the public interest." *City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 176 (5th Cir. 2018) (quoting *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012)).

## INTERESTS OF AMICI CURIAE

*Amici* are a collection of city and county governments across the United States. These jurisdictions administer and/or facilitate federal, state, and local elections. Some *amici* run election operations directly by, among other things, setting up polling locations and counting mail-in or absentee ballots. Others facilitate local elections, protect public safety at polling locations, and engage their communities through registration drives, voter outreach, and other efforts to ensure that residents fulfill their civic duty to vote. Even in a federal election—and a national election, such as this year—local governments play a central and indispensable part in its administration.

The 2020 election year has proved to be one of the most challenging in recent memory. A global pandemic has required election administrators to alter planning and adjust protocols. To mitigate the health risks associated with contact outside of the home such as voting in person, some *amici* have mailed ballots to all eligible voters, while others have encouraged voters—especially

1

those with health risks or who are living with vulnerable family members—to use mail-in options to cast their ballots. Other jurisdictions have expanded early voting days and hours during those days; have added more early voting locations, including prominent places such as sports arenas; and have provided more delivery locations for voters to turn in their ballots. In many situations, efforts to mitigate public health risks have resulted in expanded access to the ballot and increased opportunities for participation in the franchise.

Beyond the COVID-19 pandemic, local jurisdictions have had to confront an erosion in confidence in the United States Postal Service ("USPS" or "Postal Service"), due to the revelation of compromising changes in policies over the summer. Public statements by Postmaster General Louis DeJoy as well as communications to all 50 states and Washington, D.C., created considerable concern about the mail system's ability to handle all ballots in and around the November election. Those concerns have come to fruition, as in spite of nationwide injunctions, USPS delays have slowed receipt and return of ballots across the country. These additional challenges have required local officials to refine plans as voter mindsets have moved from in-person voting to mail-in ballots and back to in-person voting or other alternatives such as ballot drop boxes or drive-thru voting. Local jurisdictions also have invested considerable resources in promoting voting options and reinforcing confidence in the voting process.

All *amici* have a vested interest in ensuring that elections are run effectively and fairly; protecting the fundamental rights of their constituents; and fulfilling their statutory obligations to run and support elections while complying with public health orders and recommendations. *Amici* submit this brief to offer perspective based on their deep expertise in the administration of elections, particularly in the current public health and logistical environment, and to emphatically

support the ability of Harris County to protect votes already cast and to make voting accessible and available to its entire voting populace.

## SUMMARY OF ARGUMENT

*Amici* join Defendant Chris Hollins as well as the Proposed Intervenor-Defendants in their arguments in opposition to Plaintiffs' request for emergency injunctive relief. *Amici* write separately to emphasize two points.

*First*, the third and fourth factors of the preliminary injunction standard strongly counsel against issuing emergency relief. These factors require that, even assuming Plaintiffs can show a violation of the law and irreparable harm, the Court must exercise sound discretion by balancing the relative harms to the parties as well as assessing the public interest at stake. *See, e.g.*, *Texas v. United States*, 328 F. Supp. 3d 662, 740–41 (S.D. Tex. 2018). As this Court noted in the DACA challenges, "one cannot unscramble the egg," *id.* at 742 (internal quotes omitted), which is equally apt here. Approximately 127,000 voters used drive-thru voting in Harris County. On the actual eve of Election Day, the burden on the County and its voters to overcome the invalidation of votes already cast would be extraordinary. Judicial restraint as well as the equities in this case strongly counsel against the issuance of any emergency relief for Plaintiffs.

*Second*, Harris County's utilization of drive-thru voting is consistent with longstanding jurisprudence under the Equal Protection Clause of the Fourteenth Amendment. Well-established precedent dictates that local jurisdictions in a state need not administer elections identically. Rather, localities may employ variations in voting procedures based on population demographics, density, and related factors to ensure their constituents' access to the ballot. Indeed, several states, as discussed below, allow for county-by-county variations in curbside voting and several others

have promoted the use of drive-thru voting in certain locations. Enhancing voter access within the permissible contours of state law does not give rise to constitutional violation.

## ARGUMENT

### I. THE BALANCE OF THE HARMS AND THE PUBLIC INTEREST STRONGLY DISFAVOR THE ISSUANCE OF A PRELIMINARY INJUNCTION

The "extraordinary remedy" of a preliminary injunction is inappropriate in this case. *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 536 (5th Cir. 2013). As Defendants and Proposed Intervenor-Defendants argue, Plaintiffs plainly fail to show entitlement to a preliminary injunction on the merits and as to their injury. *See City of El Cenizo, Texas*, 890 F.3d at 176 (listing the four preliminary injunction factors). But just as important, and as *amici* argue here, the equities underlying this challenge strongly counsel against emergency relief. These equities are best illustrated by the third and fourth factors that guide the Court's consideration of a preliminary injunction: the harm to the other parties (balance of the equities) and to the public interest.

#### A. The Harms to Harris County Will Far Outweigh Plaintiffs' Asserted Injury

Assuming *arguendo* that Plaintiffs' "substantial injury" exists, it cannot outweigh the enormous harm Harris County will face should the County's drive-thru voting be enjoined prior to Election Day. *See, e.g.*, *City of El Cenizo, Texas*, 890 F.3d at 176 (requiring plaintiffs to establish that "their substantial injury outweighs the threatened harm to the party whom they seek to enjoin" in order to establish entitlement to a preliminary injunction). Harris County, like *amici*, has taken a careful and considered approach to administering elections during this uncommon time. As the COVID-19 pandemic has swept across the country, *amici* have taken necessary—and legal—steps to protect the health of their communities as well as the fundamental right to vote of their constituents. Like Harris County, they have done so with approval of their secretaries of state or

similar elections officials, who have recognized the numerous challenges election administrators are facing this year.[1] With this eleventh-hour request for emergency relief, Plaintiffs now seek to undermine Harris County's lawful efforts to make voting during a global pandemic easier and safer for its constituents.

*Amici* therefore urge this Court to reject Plaintiffs' attempt to change rules of the game hours before Election Day. The administrative burden of an injunction would be extraordinary, and Plaintiffs waited too long to bring their request for emergency relief.

> 1. *The Administrative Burden of an Injunction Weighs in Harris County's Favor*

Plaintiffs' challenge seeks to alter election rules when the election is already underway and at great harm to Harris County. We stand on the eve of Election Day. Plaintiffs filed their "Complaint for Emergency Injunctive Relief" on October 28, 2020—six days before the General Election and after some 127,000 voters have cast their ballot via drive-thru early voting.[2] Dkt. 1. Should this Court invalidate all of these votes, with roughly 30 hours until the Election Day deadline, the burden on the county to find, connect with, and facilitate the vote of all 127,000 voters would be extraordinary. Efforts to remedy disqualified votes by Harris County would be incomplete given the timeframe and a substantial additional burden, given that it is simultaneously standing up Election Day operations. The burden for the elections official to implement a remedy would be compounded by the complexity. With fidelity to not count the disqualified votes, Harris

---

[1] *See, e.g.*, Riley Vetterkind, *State Elections Official: Democracy in the Park Doesn't Appear to Violate Law*, Wisc. State. J. (Oct. 2, 2020), https://madison.com/wsj/news/local/govt-and-politics/state-elections-official-democracy-in-the-park-doesnt-appear-to-violate-law/article_7a9d976d-1d6e-5df5-8a2f-ee4b7ec067d9.html (last visited Nov. 2, 2020).

[2] Alana Wise, *Republicans Seek to Toss Out 127,000 Ballots in Democratic-Leaning Texas County*, NPR (Nov. 1, 2020), https://www.npr.org/2020/11/01/930052598/republicans-seek-to-toss-out-127-000-ballots-in-democratic-leaning-texas-county (last visited Nov. 2, 2020).

County officials would need to contact voters and make sure they are able to vote again by another method despite systems set up to prevent double-voting.

As *amici* can attest, election administration is no simple matter. Like *amici*, Harris County has spent most of this year planning and implementing policies designed to engage voters and ensure voter turnout during a time where there is "legitimate concern" about voting in person.[3] Harris County and *amici* then embarked on the massive public education campaigns required for election administration. They have spent months explaining to voters the rules of the game, which, with early voting, has been in progress for more than two weeks. Plaintiffs' lawsuit threatens to undo these careful efforts. The Court should decline their invitation.

2.      *Laches Considerations Weigh in Harris County's Favor*

Second, Plaintiffs waited too long, and to the detriment of Harris County, to request the emergency relief they now seek. "[A] party requesting a preliminary injunction must generally show reasonable diligence"—"[t]hat is as true in election law cases as elsewhere." *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) (citing *Holmberg v. Armbrecht*, 327 U.S. 392 (1946)). The U.S. Supreme Court has therefore weighed a plaintiff's delay in asking for a preliminary injunction against his request in an elections case alleging a constitutional violation. *Id*. So, too, must this Court conduct a laches-like inquiry and consider Plaintiffs' delay.

"Equity has acted on the principle that laches is not . . . a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of . . . the parties." *Holmberg*, 327 U.S. at 396 (internal quotation marks omitted); *see also Uptown Grill, L.L.C. v. Shwartz*, 817 F.3d 251, 256

---

[3] Russell Berman, *If You Can Grocery Shop in Person, You Can Vote in Person*, The Atlantic (Sept. 8, 2020), https://www.theatlantic.com/politics/archive/2020/09/voting-during-pandemic-pretty-safe/616084 (last visited Nov. 2, 2020).

(5th Cir. 2016) (holding that in order to establish laches, the defendant must show that the plaintiff "delayed in asserting the rights at issue; that the delay is inexcusable; and that the [defendant] parties have suffered undue prejudice as a result of the delay"). In this case, Plaintiffs waited so late to challenge Defendant's implementation of drive-thru voting that the condition of Harris County, its constituents, and its voting apparatus is now significantly changed. Harris County first announced it was considering offering drive-thru voting on June 15, 2020.[4] On August 25, 2020, the Harris County Commissioners Court unanimously approved the list of early voting locations, including the drive-thru locations.[5] On October 13, 2020, early voting in Harris County began, and it concluded last Friday, on October 30, 2020.[6] Yet, Plaintiffs waited until October 28, 2020 to file their "Complaint for Emergency Injunctive Relief." Dkt. 1.  As a result, they waited until at least tens of thousands of votes already had been cast in this manner.

Plaintiffs have not attempted to explain their delay, and, indeed, their delay is inexcusable. It is crucially important for election administrators like Harris County and *amici* to have timely clarity as to what is allowed and to have sufficient time to explain it to the public. Plaintiffs' failure to bring their claims with reasonable diligence has prejudiced Harris County by injecting public confusion and distrust of their administration of the election and by raising the specter of voter

---

[4] *Shawn Arrajj*, *Harris County Releases Details on Voting Precautions for July Runoffs*, Community Impact Newspaper (June 15, 2020), https://communityimpact.com/houston/cy-fair/vote/2020/06/15/harris-county-releases-details-on-voting-precautions-for-july-runoffs (last visited Nov. 2, 2020).

[5] Zach Despart, *Harris County OKs $17 Million to Add Polls, Voting Hours and Drive-Thru Voting for November Election*, Houston Chron. (Aug. 25, 2020), https://www.houstonchronicle.com/politics/houston/article/Harris-County-OKs-17M-to-add-polls-voting-hours-15514804.php (last visited Nov. 2, 2020).

[6] November 3, 2020 General and Special Elections Early Voting Schedule, Harris County, https://www.harrisvotes.com/Docs/EarlyVotingPDFMaps/Early_Voting%20Schedule_November_2020.pdf (last visited Nov. 2, 2020).

disenfranchisement after ballots have been cast. Plaintiffs have sat on their alleged rights until the stroke of midnight. It is they, rather than the local government that administers the election, who should live with the consequences.

**B.     The Public Interest Heavily Weighs Against Issuance of an Injunction**

The great disservice that would be done to the public interest if emergency relief was granted also strongly cautions against the use of this powerful remedy. *See City of El Cenizo, Texas*, 890 F.3d at 176. First, in the midst of a global pandemic, voters need more options than in-person voting, not fewer. Second, enjoining use of drive-thru voting in Harris County, after the Secretary of State and Harris County's elected officials approved it, would erode public trust in the administration of elections. Third, thousands of electors have already cast their ballots via drive-thru voting, and the potential effects of invalidating this practice range up to and include disenfranchisement of these voters. These considerations overwhelmingly show that an injunction would not serve the public interest.

*1.     Public Health Considerations Weigh in Harris County's Favor*

The COVID-19 pandemic has overshadowed much of the 2020 election cycle. COVID-19 is a deadly, easily transmittable disease that has infected more than 9.2 million Americans and killed more than 230,900.[7] The United States is currently experiencing a third wave of these infections, with weekly infection reports reaching record levels in more than half the country during October.[8] This new reality has forced state and local governments everywhere to shrug off traditional conventions on how to conduct elections and embrace new solutions for helping their constituents exercise their fundamental right to vote.

---

[7] *COVID in the U.S.: Latest Map and Case Count*, N.Y. TIMES, https://www.nytimes.com /interactive/2020/us/coronavirus-us-cases.html (last visited Nov. 2, 2020).

[8] *Id.*

While states often "play the primary decisionmaking role in election administration," they do so by "delegat[ing] or defer[ring] responsibility for decisions about the administration of elections to other state or local officials and to voters."[9] Local governments like Harris County and *amici* have risen to meet this moment. They have done so by, for example, offering free public transportation during early voting,[10] working with professional franchises to use outdoor stadiums and indoor arenas as socially distanced early voting centers,[11] and encouraging high schoolers to serve as poll workers.[12] Drive-thru voting is just another example of this lawful innovation, and it is not unique to Harris County. Localities in Michigan, Utah, and Wisconsin have successfully implemented drive-thru voting procedures for the 2020 general election.[13] Given the pandemic, *amici* and other election administrators have made the choice to provide their voters with

---

[9] Karen Shanton, Cong. Research Serv., R45549, *The State and Local Role in Election Administration: Duties and Structures* 3 (2019), https://fas.org/sgp/crs/misc/R45549.pdf (last visited Nov. 2, 2020).

[10] Katy Blakey, *North Texas Election Officials Prepare for Record Voter Turnout*, NBCDFW (Oct. 12, 2020), https://www.nbcdfw.com/news/politics/texas-politics/north-texas-election-officials-prepare-for-record-voter-turnout/2459458/ (last visited Nov. 1, 2020).

[11] *49ers, Santa Clara County To Turn Levi's Stadium Into Voting Center For November Election*, KPIX5 CBS SF Bay Area (Sept. 29, 2020), https://sanfrancisco.cbslocal.com/2020/09/29/49ers-santa-clara-county-to-turn-levis-stadium-into-voting-center-for-november-election/ (last visited Nov. 2, 2020).

[12] *Community Outreach*, Placer County Elections Office, https://www.placerelections.com/community-outreach/ (last visited Nov. 2, 2020).

[13] Wis. Elections Comm'n, Curbside or Drive-Thru Voting (2020), https://elections.wi.gov/node/6986 (last visited Nov. 2, 2020); Davis Cty., How & Where To Vote (2020), https://www.daviscountyutah.gov/clerk-auditor/elections/how-where-to-vote (last visited Nov. 2, 2020); Maureen Halliday, Drive-thru voting now available in Lansing, WILX10 (Oct. 28, 2020), https://www.wilx.com/2020/10/28/drive-thru-voting-site-now-available-in-lansing/ (last visited Nov. 2, 2020).

alternatives to in-person voting, as recommended by the Centers for Disease Control and Prevention.[14] Their efforts should be supported, not thwarted.

> ### 2. *Public Trust in Election Administration Weighs in Harris County's Favor*

Last-minute challenges like Plaintiffs'—seeking to disqualify already cast ballots—erode public trust in the administration of elections to the detriment of Harris County and *amici*. Local governments around the country have worked hard to cultivate relationships with their communities and implement voting policies that are responsive to their needs. The trust of their constituents is a crucial prerequisite to local governments' abilities to encourage residents to exercise their civic duty during a global pandemic. This trust is undermined when voters watch their local governments, with the approval of state elections officials, offer creative, convenient, and safe voting options—only to be hauled into court in an attempt to invalidate those options on the eve of Election Day. The effect is compounded when voters themselves already have used such options and risk being disenfranchised after the fact. Maintaining the rules as they were when voters cast their votes is critical to maintaining that public trust.

> ### 3. *The Severely Limited Ability to Remedy Any Disqualified Votes Weighs in Harris County's Favor*

As noted, at least 127,000 voters have already cast ballots using Harris County's drive-thru option. If the Court concludes that Harris County must void these ballots, these voters risk being disenfranchised. Even assuming their right to a new ballot is affirmed *before* Election Day, these voters must somehow learn that they need to cast a new ballot and do so in a matter of hours. These voters cast their ballots during Harris County's early voting period, presumably in part because

---

[14] *Polling Locations and Voters: Interim Guidance to Prevent Spread of Coronavirus Disease 2019 (COVID-19)*, Ctrs. For Disease Control & Prevention (Oct. 29, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/election-polling-locations.html (last visited Nov. 2, 2020).

they found it more convenient than voting on Election Day itself. A last-minute injunction of drive-thru voting therefore risks permanent disenfranchisement of these voters. As a result, this case is distinguishable from recent decisions out of Wisconsin and Minnesota, after which voters had a number of days to cure the problem or cast a ballot in an unchallenged manner. *See Democratic Nat'l Comm. v. Wisconsin State Legislature*, ___ U.S. ___, 2020 WL 6275871, at *11 (October 26, 2020) (Kavanaugh, J., concurring); *Carson v. Simon*, No. 20-3139, 2020 WL 6335967, at *8 (8th Cir. Oct. 29, 2020).

In summary, the balance of the equities and the public interest each strongly weigh in Defendant's favor. Given that the exercise of the fundamental right to vote is at stake, the Court could and should, on these bases alone, reject Plaintiffs' request for emergency relief.

## II.   HARRIS COUNTY'S DRIVE-THRU VOTING PROCEDURES ARE CONSISTENT WITH LONGSTANDING EQUAL PROTECTION PRINCIPLES

Plaintiffs argue that Harris County violates the Equal Protection Clause of the Fourteenth Amendment because offering drive-thru locations differs from the election procedures among Texas counties. Dkt. 4 at 3. This argument misconstrues long-standing equal protection principles. First, it is well-established that "counties may, consistent with equal protection, employ entirely different election procedures and voting systems within a single state." *Donald J. Trump for President, Inc. v. Boockvar*, No. 2:20-cv-066, 2020 WL 5997680, at *44 (W.D. Pa. Oct. 10, 2020) (collecting cases). Plaintiffs' argument seeks to undermine this important principle of local deference and instead seeks to turn district courts into pre-clearance bodies whenever slight variations exist among counties. In any event, Plaintiffs also fail to demonstrate that drive-thru voting creates differential treatment for purposes of an Equal Protection claim.

11

**A.  Differences Among Counties in Certain Election Procedures Do Not Constitute Violations of the Fourteenth Amendment**

Plaintiffs' equal protection argument asks this Court to intervene, the day before an election, based upon a supposed variation in voting procedures. This equal protection theory, however, upsets the deference granted to local officials to employ election procedures tailored to the unique needs of their communities. While states typically have responsibility for setting the wide parameters within which elections should be administered, "the day-to-day implementation of election administration policy is still mostly handled by localities."[15] As such, local jurisdictions generally maintain responsibility for adding eligible voters to voter rolls; designing and printing ballots; recruiting and training poll workers; selecting and preparing polling places; storing and transporting voting equipment; and counting, canvassing, and reporting election results.[16] To execute these responsibilities, and to confront the unprecedented challenges of this election cycle, cities and counties across the country have used their role as the closest, most accessible, and most accountable form of government to support their electorates.

Indeed, as discussed above, the approaches taken by localities across the country are as varied as the localities themselves. In Dallas, officials have made public transportation free on Election Day and early voting days, with the goal of encouraging voter turnout and satisfying early voting demand.[17] Throughout Texas, many counties will track polling place wait times on their websites.[18] Municipalities in Massachusetts have the flexibility to determine the locations of both

---

[15] *See* Shanton, *supra* n.9 at 7.

[16] *Id.*; *see also* U.S. Gov't Accountability Office, GAO-18-294, Elections: Observations on Voting Equipment Use and Replacement 9 (2018), https://www.gao.gov/assets/700/692024.pdf (last visited Nov. 2, 2020).

[17] *See* Blakey, *supra* n.10.

[18] *Id.*

early voting polling places and drop-box locations consistent with their electorate's needs.[19] With respect to curbside voting, counties in Colorado and California employ curbside voting procedures on a county-by-county, discretionary basis.[20] In short, local governments have used, and will continue to use, their on-the-ground understanding of communities' needs to determine how best to meet them when implementing election administration plans.

Well-settled precedent overwhelmingly supports this local discretion to employ county-specific election procedures, irrespective of other counties' practices and consistent with equal protection principles. *See, e.g.*, *Wexler v. Anderson*, 452 F.3d 1226, 1231–33 (11th Cir. 2006) ("Plaintiffs do not contend that equal protection requires a state to employ a single kind of voting system throughout the state. Indeed, local variety in voting systems can be justified by concerns about cost, the potential value of innovation, and so on.") (internal quotation and alteration marks omitted); *Paher v. Cegavske*, No. 20-243, 2020 WL 2748301, at *9 (D. Nev. May 27, 2020) ("[I]t cannot be contested that Clark County, which contains most of Nevada's population—and likewise voters . . . —is differently situated than other counties. Acknowledging this as a matter of generally known (or judicially noticeable) fact and commonsense makes it more than rational for Clark County to provide additional accommodations to assist eligible voters."). Indeed, *Bush v. Gore*, 531 U.S. 98, 109 (2000)—the only case Plaintiffs invoke in support of their equal protection argument, Dkt. 4 at 10–11—explicitly clarifies that the question it considered was "not whether local entities, in the exercise of their expertise, may develop different systems for implementing

---

[19] 950 Mass. Code Regs. §§ 47.04, 47.10 (2020).

[20] Colo. Sec'y of State Elections Div., Health and Safety Guidance for the November 3, 2020 General Election 9 (2020), https://www.sos.state.co.us/pubs/elections/files/COVID19guidance.pdf (last visited Nov. 2, 2020); *Voters with Disabilities*, Cal. Sec'y of State (2020), https://www.sos.ca.gov/elections/voting-resources/voters-disabilities (last visited Nov. 2, 2020).

elections." *Bush*, 531 U.S. at 109; *see also Ron Barber for Cong. v. Bennett*, No. 14-2489, 2014 WL 6694451, at *5 (D. Ariz. Nov. 27, 2014) ("[*Bush v. Gore*] did not invalidate different county systems regarding implementation of election procedures.").

Plaintiffs' theory that Harris County must conform precisely to the election practices of other counties, with entirely different demographics and needs, distorts equal protection principles to inject district courts into an oversight role whenever slight variations occur. This is not what settled law permits:

> [T]he appellants' reading of the Supreme Court's voting cases would essentially bar a state from implementing any pilot program to increase voter turnout. Under their theory, unless California foists a new system on all fifty-eight counties at once, it creates "unconstitutional vote-dilution" in counties that do not participate in the pilot plan. Nothing in the Constitution, the Supreme Court's controlling precedent, or our case law suggests that we can micromanage a state's election process to this degree.

*Short v. Brown*, 893 F.3d 671, 679 (9th Cir. 2018); *see also Jackman v. Rosenbaum Co.*, 260 U.S. 22, 31 (1922) (explaining that equal protection does not require employing "mechanical compartments of law all exactly alike"). For these reasons, Plaintiffs' equal protection theory is without basis and cannot justify the disqualification of Harris County's drive-thru voting procedures.

**B.    No Equal Protection Claim Can Be Substantiated Given the Functional Similarities Between Curbside Voting and Drive-Thru Voting**

In any event, Harris County's drive-thru voting procedures do not constitute a variation from other counties' voting procedures such that it results in differential treatment for purposes of an equal protection claim. Voters across the country and other parts of Texas can seek curbside voting assistance, which often results in individuals voting in their cars.[21] As has been noted by

---

[21] *See supra* n.20; *see also* Tex. Elec. Code § 64.009(a) (providing for curbside voting); Accessibility, Iowa Sec'y of State (2020) https://sos.iowa.gov/elections/voterinformation /accessibility.html (last visited Nov. 2, 2020); *Accessible Voting*, Va. Dep't of Elections (2019),

Harris County, distinctions under Texas law exist between curbside voting—the process of providing accommodations at existing polling places—and drive-thru voting—a different physical layout of an in-person polling location, not a special accommodation for people with disabilities who cannot physically enter polling places. Functionally, and from the voter's experience, these two voting methods can be quite alike. For example, drive-thru voters vote use the same portable voting machines that county officials have used for years in accommodating curbside voters.[22] In addition, drive-thru voters have similar experiences to in-person polling location voters. For example, they are checked in at the polling location and subject to the same photo identification requirements. In other words, drive-thru procedures build upon the principles underlying curbside voting, including disability accommodation, but rely on the same procedures as in-person voting. There is nothing new about any of these processes.

Harris County has the ability to meet its voters' needs through these variations, whether voting inside the polling location is inaccessible or creates a "likelihood of injuring the voter's health," Tex. Elec. Code § 64.009(a), or simply to make voting more convenient and available to the general populace, *see also id.* at § 64.009(b) (allowing election officers to modify "regular voting procedures" when "necessary to conduct voting under this section"); *id* at. § 85.062(b) ("A polling place … may be located… at any place in the territory served by the early voting clerk and may be located in any stationary structure."). Accordingly, Plaintiffs fail to show that in employing

---

https://www.elections.virginia.gov/casting-a-ballot/accessible-voting/#curbside (last visited Nov. 2, 2020); *The Americans with Disabilities Act and Other Federal Laws Protecting the Rights of Voters with Disabilities*, U.S. Dep't of Justice Civil Rights Div. Disability Rights Section (Oct. 10, 2014), https://www.ada.gov/ada_voting/ada_voting_ta.htm (last visited Nov. 2, 2020).

[22] *Drive Thru Voting*, Harris Cty. Clerk Election Div. (2020), https://harrisvotes.com/drivethruvoting (last visited Nov. 2, 2020); Bhre Berry, *What you need to know about drive-thru voting in Harris County*, ABC13 (Oct. 16, 2020), https://abc13.com/drive-thru-voting-2020-election-ways-to-vote-harris-county-locations/7074347/ (last visited Nov. 2, 2020).

drive-thru voting, Harris County has created a constitutionally cognizable difference between its voters and voters throughout Texas. *See, e.g.*, *Boockvar*, 2020 WL 5997680, at *41 ("In the equal-protection context . . . the plaintiff must present evidence that s/he has been treated differently from persons who are similarly situated.") (internal quotations omitted).

## CONCLUSION

For the foregoing reasons and for the reasons provided by Defendant Chris Hollins as well as Proposed Defendant-Intervenors, the request for emergency injunctive relief should be denied.

Respectfully submitted,

**THOMPSON & HORTON LLP**

By:    //s// Jessica N. Witte
          Jessica N. Witte
          Texas Bar No. 24095026
          Southern District No. 2963452

          Attorney-in-Charge

          8300 N. MoPac Expressway, Suite 220
          Austin, Texas  78759
          (512) 615-2352 (telephone)
          (512) 597-1681 (facsimile)
          jwitte@thompsonhorton.com

          Jonathan B. Miller, Legal Director
          Victoria Stilwell, Staff Attorney
          PUBLIC RIGHTS PROJECT
          4096 Piedmont Avenue #149
          Oakland, CA 94611

          Lauren E. Miller
          Special Assistant State's Attorney
          Jessica M. Scheller
          Chief; Advice, Business & Complex
          Litigation Division
          Cook County State's Attorney's Office
          500 Richard J. Daley Center
          Chicago, IL 60602

          *Counsel for Amici Cities and Counties*

Dated:  November 2, 2020

## ADDITIONAL *AMICI CURIAE*

YIBIN SHEN
City Attorney
City of Alameda
2263 Santa Clara Avenue, Room #280
Alameda, CA 94501
*Attorney for the City of Alameda, California*

ANNE L. MORGAN
City Attorney
City of Austin
P.O. Box 1546
Austin, Texas 78701-1546
*Attorney for the City of Austin, Texas*

EUGENE L. O'FLAHERTY
Corporation Counsel
City of Boston
City Hall, Room 615
Boston MA, 02201
*Attorney for the City of Boston, Massachusetts*

MARK A. FLESSNER
Corporation Counsel
30 N. LaSalle Street
Suite 800
Chicago, IL 60602
*Attorney for the City of Chicago, Illinois*

MARGARET C. DAUN
Corporation Counsel
901 N. 9th St.  Rm. 303
Milwaukee, WI 53233
*Attorney for Milwaukee County, Wisconsin*

LYNDSEY M. OLSON
City Attorney, City of Saint Paul
400 City Hall and Court House
15 West Kellogg Boulevard
Saint Paul MN 55102
*Attorney for the City of Saint Paul, Minnesota*

JAMES R. WILLIAMS
County Counsel
70 W. Hedding Street,
East Wing, 9th Floor
San Jose, CA 95110
*Attorney for the County of Santa Clara, California*

PETER S. HOLMES
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA 98104-7097
*Attorney for City of Seattle*

FRANCIS X. WRIGHT, JR.
City Solicitor
City of Somerville
93 Highland Avenue
Somerville, MA 02143
*Attorney for the City of Somerville, Massachusetts*

DAVID A. ESCAMILLA
Travis County Attorney
P. O. Box 1748
Austin, TX 78767
*Attorney for Travis County, Texas*

MICHAEL JENKINS
City Attorney
Best Best & Krieger, LLP
1230 Rosecrans Avenue, Ste 110
Manhattan Beach, CA 90266
*Attorney for City of West Hollywood, California*

18

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 2, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which automatically serves notification of the filing on counsel for all parties.

*/s/ Jessica N. Witte*
Jessica N. Witte