**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| STEVEN HOTZE, M.D.; WENDELL CHAMPION; HON. STEVE TOTH; and SHARON HEMPHILL, <br><br> *Plaintiffs*, <br><br> v. <br><br> CHRIS HOLLINS, in his official capacity as Harris County Clerk, <br><br> *Defendant*, <br><br> and <br><br> TEXAS STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE ("NAACP") and COMMON CAUSE TEXAS, <br><br> *Proposed Intervenor-Defendants* | Civil Action No. 4:20-cv-03709 |

**PROPOSED INTERVENOR-DEFENDANTS TEXAS STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE ("NAACP") AND COMMON CAUSE TEXAS'S [PROPOSED] OPPOSITION TO MOTION FOR EMERGENCY INJUNCTIVE RELIEF**

**TABLE OF CONTENTS**

I. BACKGROUND ................................................................................................................ 2

    A. Harris County's Plans To Offer Drive-Thru Voting Have Been Public Since June. .......... 2

    B. Drive-Thru Voting Is Not Curbside Voting. ..................................................................... 3

    C. The Texas Supreme Court Has Already Rejected Two Petitions For Mandamus Seeking To Stop Drive-Thru Voting. .............................................................................................. 4

II. ARGUMENT ..................................................................................................................... 4

    A. The Court Is Jurisdictionally Barred From Entertaining This Case. ................................. 4

    B. Laches Bars Relief On All Claims .................................................................................... 7

    C. Plaintiffs Are Not Entitled To A Preliminary Injunction. .................................................. 8

        1. Plaintiffs Have Slept On Their Rights And Therefore Cannot Show Irreparable Harm. 9

        2. The Public Interest Favors Denial of an Injunction. ..................................................... 10

III. CONCLUSION ................................................................................................................ 11

Proposed Intervenor-Defendants Texas State Conference of the National Association for the Advancement of Colored People ("NAACP") and Common Cause Texas join Defendant Chris Hollins and other proposed-Intervenor Defendants in opposing Plaintiffs' motion for preliminary injunctive relief.

Every American citizen who is qualified to vote has "a constitutional right to vote and to have their votes counted." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). "Not only can this right to vote not be denied outright, it cannot, consistently with Article I, be destroyed . . ." *Id*. Plaintiffs' action and motion for injunctive relief, however, attack this sacred principle by seeking to invalidate thousands of votes cast validly, by eligible voters, in in accordance with official directives. Even if Plaintiffs were correct that Harris County did not have the statutory or constitutional authority to set up the drive-thru voting locations at issue (and Plaintiffs are decidedly not right) voiding these votes would offend the most basic principles of equity. Therefore, this Court should deny Plaintiffs' requested relief.

As a threshold matter, the Court should abstain from entertaining this case under the well-established *Younger* abstention doctrine because relitigating in this Court the proper interpretation of the Texas Election Code after the Texas Supreme Court has already decided the issue would destroy every notion of federal-state comity.

Plaintiffs have also filed their claims too late and this suit is barred by laches. The Harris County Clerk's plans to conduct drive-thru polling places have been well-publicized since June 2020. If Plaintiffs truly believed the Harris County Clerk's implementation of drive-thru polling places violated Plaintiffs' federal constitutional rights, they could have brought their complaint to this Court sooner – well before early voting at drive-thru polling locations began and before they twice brought virtually identical claims to the Texas Supreme Court and lost. The Court

should not countenance Plaintiffs' delay, much less reward it with a preliminary injunction in the midst of an election that would threaten to invalidate nearly 127,000 votes that had already been cast at drive-thru polling places by indisputably eligible voters, all but a handful of whom are not even parties before the court to defend their validly cast votes.

Even if the Court reaches the merits of Plaintiffs' motion for a preliminary injunction, it should deny the motion because it meets *none* of the four prerequisites to injunctive relief. Plaintiffs cannot establish the necessary elements for a preliminary injunction: they cannot show likelihood of success on the merits, irreparable harm, that the balance of the equities favors the injunction, or that an injunction would serve the public interest.

Plaintiffs have now brought these very claims to the Texas Supreme Court twice, only to be rejected twice. This Court should find similarly and dismiss Plaintiffs' motion for a preliminary injunction. To do otherwise would inject chaos into an ongoing election and destroy faith in the United States' electoral system.

## I.  BACKGROUND

### A.  Harris County's Plans To Offer Drive-Thru Voting Have Been Public Since June.

On June 15, 2020, Harris County first announced the prospect of drive-thru voting. *See* ECF No. 13-3 at 15. The office of the Harris County Clerk thereafter engaged in multiple conversations with the Secretary of State ("SOS") regarding drive-thru voting and the SOS approved the idea. *Id.* at 3, ¶¶ 4-5. The County Clerk's office also held a series of stakeholder meetings to discuss plans for the general election, including for drive-thru voting. *Id.* at 3, ¶ 6. On July 22, 2020 Hollins announced his office had conducted a pilot drive-thru voting service during the primary runoff and surveyed voters who used it for feedback. *Id.* at 17. The program was widely considered a success. *Id.* In late August, the Harris County Commissioners Court approved

funding for drive-thru voting during the November election.[1]  *Id.* at 18.  And on September 29, the Commissioners Court approved a $9.6 million grant to help expand drive-thru voting locations.  *See id.* at 116-117.

### B. Drive-Thru Voting Is Not Curbside Voting.

Plaintiffs falsely claim that drive-thru voting is the same as "curbside voting."  ECF No. 1 at ¶¶ 1, 19.  It is not.  Curbside voting is a method of voting offered to voters with certain disabilities.  Tex. Elec. Code § 64.009(a).  The state Election Code provides that if a voter is physically unable to enter the polling place without personal assistance or a likelihood of injuring the voter's health, on the voter's request, an election officer must deliver a ballot to the voter at the polling place entrance or the curb.  *Id.*  Texas requires curbside voting to be offered at all polling locations.  *Id.*

Harris County's ten drive-thru voting locations, in contrast, are their *own polling locations*.  Each is adjacent to a brick-and-mortar polling place and has its own election judge and clerks.  *See* ECF No. 13-3 at 3.  To access these polling locations, voters line up in their cars.  When voters enter the line, an election clerk has them turn off their cell phones, checks their identification, asks them the usual questions about whether their address is current, determines whether they are on the voter roll, and if so, has them sign the voting roster, then hands them a voting code and a voting machine—all as if they were voting in a brick-and-mortar polling location.  *Id.* at ¶ 10.  The same rules apply as at any other polling place.  For example, poll watchers may watch the processing of voters, and there is no electioneering permitted within 100

---

[1]   Zach Despart, Harris County OKs $17 million to add polls, voting hours and drive-thru voting for November election, Houston Chron. Aug. 25, 2020, https://www.houstonchronicle.com/politics/-houston/article/Harris-County-OKs-17M-to-add-polls-voting-hours-15514804.php.

3

feet of the drive-thru polling place. *See* Tex. Elec. Code §§ 33.056, 61.003.

Each evening, the counts of voters at each polling location (including drive-thru polling locations) are posted on the Harris Votes website. ECF No. 13-4. As of the end of the day on October 30, approximately 126,912 Harris County voters had voted in drive-thru polling sites, amounting to approximately 10.03% of total in-person votes. *Id.*; *see also* ECF No. 13-3 at ¶ 11.

### C. The Texas Supreme Court Has Already Rejected Two Petitions For Mandamus Seeking To Stop Drive-Thru Voting.

The Texas Supreme Court has already rejected two petitions for mandamus seeking to stop drive-thru voting, including a petition filed by the same plaintiffs in this action.

The first mandamus petition challenging Harris County's drive-thru voting was filed on October 15, 2020. That petition, which was brought by some of the Plaintiffs to this suit, challenged the drive-thru voting program under Texas's Election Code and sought an emergency stay to stop the program. On October 22, 2020, the Texas Supreme Court dismissed the petition. *In re Hotze*, No. 20-0819, Order Denying Petition (Tex. Oct. 22, 2020).

Undeterred, on October 27, 2020, a new mandamus petition was filed in the Texas Supreme Court by the exact same plaintiffs who filed the instant action in this Court the following day, October 28. *In re Hotze*, No. 20-0863, Pet. for Writ of Mandamus (Oct. 27, 2020). That Petition raises the same exact claims raised here. Once again, the Texas Supreme Court denied relief. *In re Hotze*, No. 20-0864, Order Denying Petition (Tex. Nov. 1, 2020).

## II. ARGUMENT

### A. The Court Is Jurisdictionally Barred From Entertaining This Case.

As a preliminary matter, Plaintiffs make no showing of irreparable injury or that they have standing to press a claim under the Elections Clause. The Supreme Court's decision in *Lance v. Coffman*, 549 U.S. 437 (2007), confirms that Plaintiffs' Elections Clause claim raises the kind of

4

generalized grievance that is insufficient to confer standing. *Id*. at 542 (Election Clause claim "is precisely the kind of undifferentiated, general grievance about the conduct of government that we have refused to countenance in the past").

This Court should also abstain from considering this case under the well-established *Younger* extension doctrine. *See Younger v. Harris*, 401 U.S. 37 (1971). Plaintiffs ask this Court to interpret the Texas Election Code in a manner that raises federal constitutional questions. But doing so would lead this Court to make "a constitutional determination [] predicated on a reading of the statute that is not binding on state courts and may be discredited at any time," which, under *Younger*, "essentially render[s] the federal-court decision advisory and the litigation underlying it meaningless." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987) (citing *Moore v. Sims*, 442 U.S. 415, 428, 99 S.Ct. 2371, 2379, 60 L.Ed.2d 994 (1979)). Thus, lest it violate the provision against advisory opinions that has existed nearly long as this country has existed, this Court must abstain from hearing this case.[2]

*Younger* stands for the proposition, *inter alia*, that "the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." 401 U.S. at 44. As further explained in *Pennzoil*, *Younger* abstention is necessary where, as here, "the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987); *see also Younger*, 401 U.S. at 43-44 ("courts of equity should not act . . . when the moving party has an adequate remedy at law and will not suffer

---

[2]   NAACP and Common Cause Texas also join in the *Pullman* abstention argument by Proposed Intervenor-Defendants MJ for Texas, et al. *See* ECF No. 13 at Section IV.A.

irreparable injury if denied equitable relief.")

Such is the case at hand. First and foremost, this Court's consideration of potential federal constitutional claims in this case would necessarily involve unwarranted interpretations of state statutes. Indeed, the Texas Supreme Court has already *twice* rejected Plaintiffs' claim that Harris County's determination – in consultation with the Secretary of State's Director of Elections – that the Texas Election Code authorized Defendant Hollins to recommend and the Harris County Commissioners Court to approve drive-thru voting locations during both the early voting period and on Election Day.[3] Were this Court to entertain Plaintiffs' motion, it would entirely disregard the notion of comity between the states and the federal government by relitigating a case already decided in the highest state court. Nor is there any contention that Plaintiffs do not have an adequate remedy at law. In fact, Plaintiffs have sought a remedy at law multiple times – including through multiple requests for mandamus relief at the Texas Supreme Court. That they have lost (twice) does not mean that they do not have relief: rather, it means that their claims are too legally deficient to warrant relief.

Second, Texas's interests here are so important that the exercise of federal judicial power would disregard the comity between the states and the federal judiciary. Drive-thru voting has been approved by actors in every echelon of the Texas government. The Texas Election Code enacted by the Legislature authorizes the county Commissioners Courts to determine polling locations; here, the Harris County Clerk recommended drive-thru voting locations in consultation with the Director of Elections of the Secretary of State, and those drive-thru voting locations were unanimously approved by the Commissioners Court. For a federal court to substitute its

---

[3] McCullough, Jolie. Texas Supreme Court rejects Republican-led effort to throw out nearly 127,000 Harris County votes, Texas Tribune (Nov. 1, 2020), available at: https://www.texastribune.org/2020/11/01/texas-drive-thru-votes-harris-county/.

interpretation of state law for the unanimous judgment of the state officials – both Republicans and Democrats – charged with implementing the Texas Election Code as well as the Texas Supreme Court – all Republicans – charged with interpreting the Texas Election Code would disregard Texas' ability to regulate its own elections.

Not only does this fly in the face of Texas state regulations allowing for county clerks and the Texas Secretary of State to regulate state elections, it undercuts the basic notion that "all political power flows from the people," who control a state's lawmaking processes. *See Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 576 U.S. 787, 824 (2015). Harris County officials acted pursuant to a lawful grant of authority from the Texas Legislature – an action that was subsequently upheld by the State's highest court. That ends the Election Clause inquiry right there. *Id*. at 813-14; *Riley v. Kennedy*, 553 U.S. 406, 425 (2008) ("A State's highest court is unquestionably the ultimate expositor of state law."); *see also Corman v. Torres*, 287 F. Supp. 3d 558, 573 (M.D. Pa. 2018).

### B. Laches Bars Relief On All Claims

Laches is founded on the "maxim that equity aids the vigilant and not those who slumber on their rights." *State of Kansas v. State of Colorado*, 514 U.S. 673, 687 (1995) (quoting Black's Law Dictionary 875 (6th ed. 1990)). Here, Plaintiffs delayed to such an extent that to allow them to conduct this eleventh-hour litigation would unreasonably prejudice Texas voters, including the members of NAACP and Common Cause Texas. *See Costello v. United States*, 365 U.S. 265, 282 (1961) ("Laches requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.").

There is no dispute that Plaintiffs have slept on their rights in bringing this action at this late date, and having already sought relief before the Texas Supreme Court (twice). Nor is it disputed that Harris County has already been engaged in drive-thru voting throughout the early

7

voting period, nor that the county's plans for drive-thru voting have been widely known and publicized for months. Rather, Plaintiffs bring this challenge just days before a general election, threatening nearly 127,000 voters who relied on a state-approved method of voting with the prospect of disenfranchisement. Failing to act quickly, as Plaintiffs failed to do, puts Proposed Intervenor-Defendants, nearly 127,000 Texas voters, and Texas election officials in an untenable position. That is why courts have refused to grant relief when plaintiffs delay, even in election cases. *See, e.g., Perry v. Judd*, 471 F. App'x 219, 224 (4th Cir. 2012) ("Despite the fact he was able to bring these constitutional challenges for over four months before the filing deadline of December 22, 2011, Movant waited until the eleventh hour to pursue his claims. . . . This deliberate delay precludes the possibility of equitable relief."); *see also White v. Daniel,* 909 F.2d 99 (4th Cir. 1990); *Ariz. Minority Coal. for Fair Redistricting v. Ariz. Ind. Redistricting Comm'n,* 366 F. Supp. 2d 887, 907-09 (D. Ariz. 2005).

"Under certain circumstances, such as where an impending election is imminent and a [s]tate's election machinery is already in progress, equitable considerations . . . justify a court in withholding relief." *Reynolds v. Sims*, 377 U.S. 533, 585 (1964). Injunctive relief is inappropriate in light of equitable considerations where "greater harm lies in casting doubt on and imperiling the upcoming election." *Berry v. Kander*, 191 F. Supp. 3d 982, 988 (E.D. Mo. 2016) (denying candidate's request for injunction against Secretary of State's enforcement of congressional districts in upcoming election). Because Plaintiffs' inexcusable delay has prejudiced Proposed Intervenor-Defendants and Texas voters, laches bars Plaintiffs' claims, and the Court should deny Plaintiffs' motion for a preliminary in-junction.

    **C.**    **Plaintiffs Are Not Entitled To A Preliminary Injunction.**

If the Court proceeds to consider the merits of Plaintiffs' claims (which it should not), it should reject Plaintiffs' motion for a preliminary injunction because Plaintiffs have not

established any of the four factors required for such relief: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest. *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 537 (5th Cir. 2013).

NAACP and Common Cause Texas join the arguments made by Defendant Hollins and Proposed Intervenor-Defendants MJ for Texas, et al. in opposing Plaintiffs' motion. *See* ECF No. 22 at Sections V.A, V.B, V.C; ECF No. 13-1 at Sections B.1, B.3 and B.4.

### 1. Plaintiffs Have Slept On Their Rights And Therefore Cannot Show Irreparable Harm.

For the same reasons that Plaintiffs' claims are barred by laches, Plaintiffs also cannot show irreparable harm in the absence of an injunction. *See Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013).

"A long delay by plaintiff after learning of the threatened harm also may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction." Wright & Miller, 11A Federal Practice and Procedure, § 2948.1 (3d ed., April 2017 update). Undue delay negates the contention that the feared harm will truly be irreparable. *See Gonannies, Inc. v. Goupair.com, Inc.*, 464 F. Supp. 2d 603, 609 (N.D. Tex. 2006); *see also Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1193 (5th Cir. 1975) (affirming denial of temporary injunction due in part to three-month delay in seeking relief).

Here, the drive-thru voting process was not a secret. It was widely and effectively publicized by the Harris County Clerk this summer. If not, members of the public, including Plaintiffs, would not have known that such process was available. If Plaintiffs had truly believed that their federal constitutional rights would be injured by having drive-thru polling locations,

9

they could have, and should have, filed an action in this Court months ago – before the first day of early voting, before twice going to the Texas Supreme Court, and before nearly 127,000 eligible voters cast their ballots at drive-thru polling locations with every reason to believe their votes had been validly cast and would be counted.  Plaintiffs chose instead to seek redress in the State Court, and initiated their first failed action in State Court on October 15, 2020, once early voting was already underway.  Thus, Plaintiffs were fully aware of the process *before* even one ballot was cast and *still* delayed.  Had Plaintiffs truly believed that their federal rights were implicated, they could have initiated an action before this Court on that date.  Instead, Plaintiffs waited until October 28, 2020 to file their Complaint – after losing their first case in the Texas Supreme Court and the day after filing a second case in the Texas Supreme Court, which has since been rejected.  Plaintiffs' decision to wait resulted in thousands of voters casting ballots through the challenged process.

Assuming *arguendo* that there is any merit to Plaintiffs' claims, Plaintiffs now seek to invalidate ballots cast by indisputably eligible voters that could have been cast in a different manner had Plaintiffs filed their claims sooner and been successful in obtaining relief.  Plaintiffs' dilatory actions should not be rewarded.  *See Smith v. Johnson*, 440 F.3d 262 (5th Cir. 2006); *Harris v. Johnson*, 376 F.3d 414 (5th Cir. 2004).  It is simply bad public policy to permit this type of litigation at this late date.  The relief sought would serve no purpose other than to disenfranchise voters.  Worse still, it would disenfranchise those who already have voted via a process approved by all levels of Texas state government.

### 2.     The Public Interest Favors Denial of an Injunction.

The protection of voters' franchise-related rights is "without question in the public interest."  *Charles H. Wesley Educ. Fdn., Inc. v. Cox*, 408 F.3d 1349, 1355 (11th Cir. 2005).  Here, granting an injunction the day before the election would unquestionably disserve the public

interest. *Garza v. Dallas Indep. Sch. Dist.*, 2001 WL 492384, at *2 (N.D. Tex. May 4, 2001). A preliminary injunction would introduce chaos: voters facing the prospect of disenfranchisement will seek to cast valid ballots on Election Day but will be worried about voting twice and being prosecuted for voter fraud, while other voters will simply accept the fact that they will have no way of knowing whether their vote was counted.

  This is the exact type of chaos that the *Purcell* doctrine seeks to avoid. *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) (per curiam) (cautioning federal courts from enjoining election rules at the last minute); *see also Republican Nat'l Comm. v. Democratic Nat'l Comm.,* 140 S. Ct. 1205, 1207 (2020) ("lower federal courts should ordinarily not alter the election rules on the eve of an election"); *Texas Alliance for Retired Americans v. Hughs,* 976 F.3d 564 (5th Cir. 2020) (noting the "value of preserving the status quo in a voting case on the eve of an election"). This Court should apply the *Purcell* principle and decline Plaintiffs' requested relief.

### III.   CONCLUSION

  For the foregoing reasons, this Court should deny Plaintiffs' request for a preliminary injunction.

Dated: November 2, 2020

Jon Greenbaum*
Ezra Rosenberg*
John Libby*
John Powers*
Voting Rights Project
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005
Tel: (202) 662-8300
jgreenbaum@lawyerscommittee.org
erosenberg@lawyerscommittee.org
jlibby@lawyerscommittee.org
jpowers@lawyerscommittee.org

Robert Notzon
THE LAW OFFICE OF ROBERT NOTZON
1502 West Ave.
Austin, Texas 78701
Tel: (512) 474-7563
robert@notzonlaw.com

Nickolas Spencer
SPENCER & ASSOCIATES, PLLC
8403 Westglen Drive, Suite 2000
Houston, TX 77063
Tel: (713) 863-1409
nas@naslegal.com

Respectfully submitted,

  /s/ Lindsey B. Cohan
Lindsey B. Cohan
State Bar No. 24083903
Dechert LLP
515 Congress Avenue, Suite 1400
Austin, TX 78701-3902
(512) 394-3000
lindsey.cohan@dechert.com

Neil Steiner
May Chiang
Julia Markham-Cameron
DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036-6797
Tel: (212) 698-3500
neil.steiner@dechert.com
may.chiang@dechert.com
julia.markham-cameron@dechert.com

Erik Snapp*
DECHERT LLP
35 West Wacker Drive, Suite 3400
Chicago, IL 60601
Tel: (312) 646-5800
Erik.Snapp@dechert.com

*Counsel for Proposed Intervenor-Defendants Texas State Conference of NAACP Branches, Common Cause Texas, Andrea Chilton Greer, and Yekaterina Snezhkova*

*Pro hac vice motion forthcoming*