IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISON

| | |
|---|---|
| STEVEN HOTZE, M.D., WENDELL CHAMPION, HON. STEVE TOTH AND SHARON HEMPHILL<br>    Plaintiffs<br><br>v.<br><br>CHRIS COLLINS, IN HIS INDIVIDUAL CAPACITY<br>    Defendant | § § § § § § § § § § § § | CIVIL ACTION NO. 4:20-cv-3709 |

**MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT
BY ELIZABETH HERNANDEZ FOR CONGRESS**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Elizabeth Hernandez for Congress, Proposed Intervenor, files this Motion to Intervene pursuant to Rule 24(a), asking this Court to intervene in this action as a matter of right, and alternatively, for permissive intervention pursuant to Rule 24(b). Elizabeth Hernandez for Congress is the official campaign of the Democratic nominee for the United States House of Representatives, Texas' 8th Congressional District (the "Hernandez Campaign"). Because Plaintiffs' claims directly threaten the rights and interests of the Hernandez Campaign, this Court should find that the Hernandez Campaign is entitled to intervene in this case as a matter of right under Rule 24(a)(2). In the alternative, the Hernandez Campaign should be granted permissive intervention pursuant to Rule 24(b).

**I.
INTRODUCTION AND BACKGROUND**

A.   **Harris County's drive-thru voting was approved by the Texas Secretary of State and has been used by over 100,000 Texas voters.**

In preparation for the upcoming 2020 General Election, the Harris County Clerk, Chris

Hollins, announced his intention to offer drive-thru voting. In light of the COVID-19 pandemic currently raging throughout the country, Hollins, as did many state and local officials across the country, was rushing to find avenues for voters to safely and efficiently vote in the 2020 General Election. Hollins received approval from the Texas Secretary of State, and in the July primary run-off election, Harris County conducted a pilot program with drive-thru voting. The program was highly successful.

In August, the Harris County Commissioners Court unanimously approved the list of early voting locations, which included drive-thru locations. Harris County approved funding for the drive-thru voting, and on October 13, when early voting began in Texas, Harris County offered voters ten drive-thru voting locations, which operated at ten early voting locations. During the period for early voting in Harris County, nearly 127,000 votes were cast at those sites.

**B.  The Texas Supreme Court Has Already Rejected the Same Challenge by These Same Plaintiffs.**

On October 22, 2020, the Texas Supreme Court rejected a mandamus petition challenging Harris County's drive-thru voting program. *In re Steven Holtze, M.D., Harris Cnty. Republican Party, Hon. Keith Nielsen, and Sharon Hemphill*, No. 20-0819, Order Denying Petition (Oct. 22, 2020) (denying Relators' arguments that Harris County's drive-thru voting program violated Texas's Election Code and that Harris County should be prohibited from using the program).

Nevertheless, in a maneuver of political gamesmanship in its worst form, on October 27, Plaintiffs Hotze, Rep. Toth, Champion and Hemphill filed yet another mandamus action in the Texas Supreme Court. *See In re Steven Holtze, M.D., Wendell Champion, Hon. Steven Toth, and Sharon Hemphill*, No. 20-0863, Petition for Writ of Mandamus (Oct. 27, 2020). In that Petition,

the relators again challenged Harris County's drive-thru voting as unlawful under the Texas Election Code. Notably, the claims raised in No. 20-0863 are identical to the challenges that Plaintiffs are raising in this suit. Moreover, the arguments raised here directly contradict rulings of both the Harris County Commissioners Court, which unanimously approved the list of early voting locations which included drive-thru locations, and the Texas Secretary of State, who also had approved the drive-thru voting program.

On November 1, 2020, the Texas Supreme Court again ruled that Harris County may proceed with its drive-thru voting program. *In re Hotze*, No. 20-0863, Order Denying Petition (Nov. 1, 2020). Yet, Plaintiffs persist in attempting to invalidate the votes of 127,000 Texans.

By filing this Motion to Intervene, the Hernandez Campaign does not want to make even the slightest suggestion that this suit has merit. It does not. Because the Texas Supreme Court is the ultimate arbiter of the Texas Election Code, this federal action is a frivolous attempt to have a federal court weigh in on a question of Texas state law that has been resolved by the Texas Supreme Court. As such it should promptly be dismissed, and the Hernandez Campaign seeks intervention in this case in order to publicly protect the rights of the voters of Harris County, Texas, which this suit despicably seeks to remove.

## II.
## ARGUMENT

**A.      The Hernandez Campaign is Entitled to Intervene Pursuant to Rule 24(a).**

Under Rule 24(a) of the Federal Rules of Civil Procedure, the Court must permit a third party to intervene as of right in a litigation if four conditions are met:

1)      the motion to intervene is timely;
2)      the potential intervener asserts an interest that is related to the property or transaction that forms the basis of the controversy in the case into which she seeks to intervene;
3)      the disposition of that case may impair or impede the potential intervener's ability to protect her interest; and

4) the existing parties do not adequately represent the potential intervener's interest. *John Doe No. 1 v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001). "Rule 24 is to be liberally construed," and "[f]ederal courts should allow intervention when no one would be hurt and the greater justice could be attained." *Wal–Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016) (quoting *Texas v. United States*, 805 F.3d 653, 656 (5th Cir. 2015).

In considering these factors, the Hernandez Campaign easily makes the required showing. First, the Hernandez Campaign seeks intervention very early in this action. Therefore, the Hernandez Campaign's intervention will not delay the resolution of this matter, and will not prejudice any party. As such, the intervention in timely. *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994) ("[P]rejudice must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervener to participate in the litigation.").

Second, the "interest test" is to determine whether the potential intervenor has a "'direct, substantial, [and] legally protectable' interest in the property or transaction that forms the basis of the controversy in the case into which she seeks to intervene." *John Doe No. 1*, 256 F.3d at 379 (quoting *Espy*, 18 F.3d at 1207). Here, the Hernandez Campaign has significant protectable interests in the outcome of this litigation. As the Fifth Circuit has explained, "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Espy*, 18 F.3d at 1207.

The Hernandez Campaign has legally protectable interests in ensuring that ballots that were cast at drive-thru voting locations are counted and that such locations remain open for voters to access. Courts have routinely concluded that interference with a political party's electoral prospects constitutes a direct injury that satisfies Article III standing, which is an even

higher burden than the showing needed for intervention under Rule 24(a)(2). *See, e.g., Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586–87 (5th Cir. 2006); *see also Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020).

Moreover, the Hernandez Campaign has an interest in ensuring that election procedures are not changed during an election, which would require these organizations to retool campaigns and divert resources to counteract the disruptive and disenfranchising effects of Plaintiffs' action—a separate legally protected interest. *See, e.g., OCA-Greater Houston v. Texas*, 867 F.3d 604, 610-12 (5th Cir. 2017) (finding standing where an organization was required to dedicate additional resources to assisting voters navigate the polls); *Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007) (finding standing because a "new law injure[d] the Democratic Party by compelling the party to devote resources" that it would not have needed to devote absent the new law), *aff'd*, 553 U.S. 181 (2008); *Democratic Nat'l Comm. v. Reagan*, 329 F. Supp. 3d 824, 841 (D. Ariz. 2018) (finding standing where law "require[d] Democratic organizations . . . to retool their [get-out-the-vote] strategies and divert [] resources"), *rev'd on other grounds sub nom. Democratic Nat'l Comm. v. Hobbs*, 948 F.3d 989 (9th Cir. 2020) (en banc); *Issa v. Newsom*, No. 2:20-cv-01044, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020) (explaining courts "routinely" find a protectible interest where proposed intervenors will be required to "divert[] their limited resources to educate their members on the election procedures"). Accordingly, both the Hernandez Campaign and the voters satisfy the interest requirement of Rule 24(a).

Third, disposition of the action may impair or impede the Hernandez Campaign's ability to protect its interests. *See Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014). The Proposed Intervenor need not show that its interests "will" be impaired by disposition of the ligation; only

that it "may" be. *See id.* Indeed, "[t]he very purpose of intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions." *Id.* at 345. The stated purpose of this suit is to invalidate ballots and end what is an extremely popular form of voting in Harris County—a county which, notably, now has only one ballot return drop box for over two million voters. Should this litigation succeed, the voters may have little time, or no time at all, to re-cast a ballot that will be counted.

Finally, the Hernandez Campaign's interests may not be adequately represented by the County Defendant. The burden to satisfy this factor is "minimal." *Espy*, 18 F.3d at 1207; *John Doe I,* 256 F.3d at 380 ("The potential intervener need only show that the representation *may* be inadequate.") (internal citation and quotation omitted). The fact that Defendant is likely to oppose Plaintiffs' request for relief is not sufficient to establish that Defendant will adequately represent the Hernandez Campaign. *See Brumfield*, 749 F.3d at 345-46. Nor does Defendant's status as a government actor establish that he will adequately represent Proposed Intervenor's interests.

As the Fifth Circuit has explained, because the government is charged with "represent[ing] the broad public interest," those interests may diverge from the interests of the Hernandez Campaign. *Espy*, 18 F. 3d at 1208; *see also Clark v. Putnam Cnty*., 168 F.3d 458, 461-62 (11th Cir. 1999) (finding county defendants did not adequately represent the interests of voters because county officials "have a duty to consider the expense of defending [the lawsuit] out of county coffers," which could lead the county defendants to take a different litigation strategy). *See also Issa*, 2020 WL 3074351, at *3 (holding that although "Defendants and the Proposed Intervenors fall on the same side of the dispute, Defendants' interests in the implementation of the [challenged law] differ from those of the Proposed Intervenors . . . since

6

the Proposed Intervenors are concerned with ensuring their party members and the voters they represent have the opportunity to vote in the upcoming federal election."

In other words, Defendant's stake in this lawsuit is defined solely by his statutory duties to conduct elections and his interest in protecting the public at large, which differ from the interests of the Hernandez Campaign, which is to ensure every eligible Democratic voter in Harris County has his or her ballot counted. Thus, because the Campaign cannot rely on Defendant to protect its distinct interests, it has satisfied the fourth requirement and are entitled to intervention as of right under Rule 24(a)(2).

**B.     In the alternative, the Hernandez Campaign should be granted permissive intervention.**

Alternatively, this Court should grant the Hernandez Campaign permissive intervention under Federal Rule of Civil Procedure 24(b)(1)(B). This rule authorizes permissive intervention on a timely motion, where the applicant "has a claim or defense that shares with the main action a common question of law or fact" and where intervention will not delay or prejudice adjudication of the existing parties' rights. Fed. R. Civ. P. 24(b)(1)(B), (b)(3); *see also United States v. League of United Latin Am. Citizens*, 793 F.2d 636, 644 (5th Cir. 1986) ("Although the court erred in granting intervention as of right, it might have granted permissive intervention under Rule 24(b) because the intervenors raise common questions of law and fact . . . .").

The Hernandez Campaign easily meets the requirements for permissive intervention. First, it will inevitably raise common questions of law and fact, including whether Harris County's drive-thru program is legal under the Texas Election Code, whether this Court should abstain from hearing this case, whether Plaintiffs have alleged viable claims, and the likely harm to voters, among other issues. Second, for the reasons set forth above, the motion to intervene is timely, and given the early stage of this litigation, intervention will not unduly delay or prejudice

the adjudication of the rights of the original parties. Rule 24 does not "require prospective intervenors to wait on the sidelines until after a court has already decided enough issues contrary to their interests." *Brumfield*, 749 F.3d at 344–45. Instead, "[t]he very purpose of intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions." *Id.* The Hernandez Campaign has amply established the extensive harm each would be likely to suffer from an adverse judgment or ruling in this action. Thus, the Hernandez Campaign respectfully requests permissive intervention if it is not granted intervention as of right.

### III.
### CONCLUSION

For the reasons stated, the Hernandez Campaign is entitled to intervention as of right. In the alternative, the Hernandez Campaign requests that the Court grant permissive intervention.

Respectfully submitted,

/s/ Nasim Ahmad
Nasim Ahmad
Texas Bar No. 24014186
P.O. Box 131300
Spring, Texas 77380
Telephone: (713) 254-3761
Telecopier: (281) 864-4379
Nasim931@gmail.com

ATTORNEY FOR PROPOSED
INTERVENOR, ELIZABETH
HERNANDEZ FOR CONGRESS

**CERTIFICATE OF CONFERENCE**

I hereby certify that I attempted to confer with Plaintiffs' counsel regarding whether Plaintiffs opposed the intervention of Elizabeth Hernandez for Congress. As of the time of the filing of this Motion, the undersigned had not heard back regarding whether Plaintiffs are opposed.

/s/ Nasim Ahmad
Nasim Ahmad

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of November, 2020, a true and correct copy of the above and foregoing document has been forwarded to all counsel of record as follows:

Jared Woodfill
Woodfill Law Firm, P.C.
3 Riverway, Suite 750
Houston, Texas 77056

/s/ Nasim Ahmad
Nasim Ahmad