United States Courts
Southern District of Texas
FILED
November 30, 2021
Nathan Ochsner, Clerk of Court

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
October 25, 2021
Lyle W. Cayce
Clerk

No. 20-20574

STEVEN F. HOTZE, *M.D.*; WENDELL CHAMPION; *Honorable* STEVE TOTH; SHARON HEMPHILL,

*Plaintiffs—Appellants,*

versus

TENESHIA HUDSPETH, *in her official capacity as* HARRIS COUNTY CLERK,

*Defendant—Appellee,*

ANDREA CHILTON GREER; YEKATERINA SNEZHKOVA; JOY DAVIS-HARASEMAY; DIANA UNTERMEYER; MICHELLE COLVARD; KAREN VIDOR; MALKIA HUTCHINSON-ARVIZU; ANTON MONTANO; HELEN SHELTON; ELIZABETH FURLER; ALAN MAUK; JENN RAINEY; BRIAN SINGH; MARY BACON; KIMBERLY PHIPPS-NICHOL; NYGUEN GRIGGS; NELSON VANEGAS; JESSICA GOODSPERO; AMY ASHMORE; RICHARD FRANKEL; ELAINE FRANKEL; RYAN FRANKEL; CELIA VESELKA; SERGIO ALDANA; RUSSELL "RUSTY" HARDIN; DOUGLAS MOLL; CAREY JORDAN; CHRISTINA MASSARA; JERELYN M. GOODEN; STANLEY G. SCHNEIDER; MARY CURRIE; CARLTON CURRIE, JR.; JEKAYA SIMMONS; DANIEL COLEMAN; DAVID HOBBS; BETTYE HOBBS,

*Intervenor Defendants—Appellees.*

No. 20-20574

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CV-3709

Before DAVIS, HAYNES, and OLDHAM, *Circuit Judges*.

HAYNES, *Circuit Judge*:

Having fully considered the briefing, record, and oral argument on appeal, we conclude that Plaintiffs' request to enjoin Harris County's administration of drive-thru voting in the November 2020 election is moot. *Lopez v. City of Houston*, 617 F.3d 336, 340 (5th Cir. 2010).[1] Since Plaintiffs filed their appeal, the November 2020 election has been completed; the results have been certified; and new officeholders have been sworn in. Therefore, the "issues presented are no longer 'live.'" *La. Env't Action Network v. EPA*, 382 F.3d 575, 581 (5th Cir. 2004) (quotation omitted).

Plaintiffs recognize that their claims are moot as to the November 2020 election and argue instead that drive-thru voting should be enjoined for future elections. In their briefing, they failed to identify any evidence in the record before the district court demonstrating that Harris County will offer that sort of voting again in the future, let alone that it will offer it in such a way as to evade judicial review. *See Libertarian Party v. Dardenne*, 595 F.3d 215, 218 (5th Cir. 2010). While this appeal was pending, the Texas legislature passed S.B.1, which addresses drive-thru voting. The parties filed supplemental briefing regarding the fact that this statute takes effect on

---

[1] Although Plaintiffs sought various forms of relief from the district court, they only briefed arguments concerning injunctive relief on appeal and have therefore forfeited any arguments concerning the continuing vitality of any other form of relief. *Douglas W. ex rel. Jason D.W. v. Hous. Indep. Sch. Dist.*, 158 F.3d 205, 210 n.4 (5th Cir. 1998) (per curiam).

2

No. 20-20574

December 2, 2021. We conclude that the challenge raised in last year's case before the district court is moot as to elections after December 2, 2021.

Nothing in the district court record specifically addresses the gap in time between now and December 2, 2021, of course. But the only election Plaintiffs can point to during that time gap, where Harris County could conceivably once again engage in drive-thru voting and where the merits would fall under law preceding S.B.1, is the election set for November 2, 2021.

Thus, we turn to a different jurisdictional question—standing. "Unless a party seeking a remedy can show direct injury, this court will deny standing." *Friends of St. Frances Xavier Cabrini Church v. FEMA*, 658 F.3d 460, 466 (5th Cir. 2011). One of the plaintiffs, Hotze, is a Harris County voter. The other three were candidates in the 2020 election, two for state positions (Toth for state representative and Hemphill for state district judge) and one for a federal position (Champion for Congress). The four plaintiffs asserted a joint contention that drive-thru voting hurt the "integrity" of the election process. This claim is far too generalized to warrant standing. *Lance v. Coffman*, 549 U.S. 437, 441–42 (2007) (per curiam) (concluding that voters lacked standing to bring an Elections Clause challenge regarding a congressional redistricting plan enforced by a state supreme court). While they addressed the separate question of candidate standing in passing in their brief to this court, we conclude that they failed to meaningfully brief that issue, therefore forfeiting it. *See Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004).

Even if we consider the argument that candidates have standing and assume arguendo that candidates do have standing to challenge election

procedures,[2] that standing would pertain only to their claim as to the November 2020 election, the only election in which they claimed to be candidates. Standing, while addressed at the time of filing, is evaluated "on a claim-by-claim basis." *Id.* The November 2021 election does not include congressional offices, and Plaintiffs have not even claimed that they are otherwise up for election in November 2021 or have any other basis for standing that differs from any other Harris County voter. Thus, they fall simply in the general group of voters, who, as stated above, lack standing in this case. Thus, we lack jurisdiction to address any claims regarding the November 2021 election as well.

Accordingly, we AFFIRM the district court's denial of injunctive relief and the district court's dismissal of Plaintiffs' claims for want of jurisdiction. Since the district court likewise lacked jurisdiction, we also VACATE its advisory discussion of the legality of drive-thru voting without offering any opinion as to the merits of that reasoning.

---

[2] This issue is far from clear, but we need not reach it here. *Compare Carson v. Simon*, 978 F.3d 1051, 1058–59 (8th Cir. 2020) (per curiam) (concluding that candidates for presidential elector had standing under the Electors Clause), *with Bognet v. Sec'y of Pa.*, 980 F.3d 336, 351–52 & n.6 (3d Cir. 2020) (specifically declining to follow *Carson* and concluding that a candidate lacked a cognizable injury under the Elections and Electors Clauses), *vacated and remanded with instructions to dismiss as moot sub nom. Bognet v. Degraffenreid*, No. 20-740, 2021 WL 1520777 (U.S. April 19, 2021) (mem.). Notably, however, contrary to the dissenting opinion's assertion, there was no indication of how the candidates would be specifically harmed by allowing *all* voters to do drive-thru voting. Just challenging the "integrity" of the voting process is too general to suffice. As the Supreme Court explained in *Lance v. Coffman*, an alleged injury based solely on an allegation "that the law—specifically, the Elections Clause—has not been followed" amounts to an "undifferentiated, generalized grievance about the conduct of government" insufficient to establish standing. 549 U.S. 437, 442 (2007) (per curiam) (concluding that voters lacked standing to bring an Elections Clause challenge regarding a congressional redistricting plan enforced by a state supreme court). That is precisely the sort of alleged harm that all of the Plaintiffs claim that they experienced here.

No. 20-20574

ANDREW S. OLDHAM, *Circuit Judge*, dissenting:

The majority confuses standing and mootness. I respectfully dissent.

I.

Let's start with standing. The plaintiff invoking our judicial power must have an injury-in-fact, traceable to the defendant, and redressable by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Standing is determined at the time a suit is filed. *See Davis v. FEC*, 554 U.S. 724, 734 (2008) ("While the proof required to establish standing increases as the suit proceeds, the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome *when the suit was filed.*" (emphasis added) (quotation omitted)); *see also Lujan*, 504 U.S. at 570 n.4 (opinion of Scalia, J.) (noting the Court's "longstanding rule that jurisdiction is to be assessed under the facts existing when the complaint is filed"); *accord Pederson v. La. State Univ.*, 213 F.3d 858, 870 (5th Cir. 2000).

At the time the plaintiffs filed this action, at least one candidate for office had standing. The candidate's injury-in-fact should be self-evident. Candidates for office spend money, devote time, and otherwise injuriously rely on provisions of the Election Code in organizing, funding, and running their campaigns. Suppose, for example, the Election Code specifies a 12-day period for in-person early voting. Suppose further a candidate injuriously relies on that Code provision and budgets $500,000 for get-out-the-vote efforts during that 12-day period. Would she be injured in fact if the county clerk unlawfully shortened in-person voting from 12 *days* to 12 *hours*? Of course she would: The candidate could point to, among other injuries, the fact that she injuriously relied on the Code to set aside $500,000 that she could've spent elsewhere. It should be equally obvious that the injury is traceable to the county clerk's unlawful decision, and that the injury is

5

redressable by enjoining the unlawful shortening of in-person voting. In short, the candidate would have Article III standing.

The majority's response is to suggest that a candidate might not suffer a "cognizable injury" from an unlawful election. *See ante*, at 4 n.2. That's equally startling and wrong. For one thing, the majority's support for that proposition is a now-vacated decision by the Third Circuit. *See Bognet v. Sec'y of Pa.*, 980 F.3d 336 (3d Cir. 2020), *vacated and remanded with instructions to dismiss as moot sub nom. Bognet v. Degraffenreid*, No. 20-740, 2021 WL 1520777 (U.S. Apr. 19, 2021) (mem.). Vacated authority, of course, is no authority at all. For another thing, it makes no sense to say (as the Third Circuit said) that violations of the Election Code do not affect a candidate "in a particularized way." *Bognet*, 980 F.3d at 351. The candidate who pours money and sweat into a campaign, who spends time away from her job and family to traverse the campaign trail, and who puts her name on a ballot has an undeniably different—and more particularized—interest in the lawfulness of the election as compared to the interests of some random voter. In fact, it's hard to imagine anyone who has a more particularized injury than the candidate has. And that presumably explains why the only non-vacated circuit authorities to confront this question have held that candidates *do* have standing to contest violations of election law. *See Carson v. Simon*, 978 F.3d 1051, 1058 (8th Cir. 2020) (per curiam) (framing the interest as being "in ensuring that the final vote tally accurately reflects the legally valid votes cast"); *Trump v. Wis. Election Comm'n*, 983 F.3d 919, 924 (7th Cir. 2019) ("As a candidate for elected office, the President's alleged injury is one that affects him in a personal and individual way." (quotation omitted) (citing *Lujan*, 504 U.S. at 560, and *Carson*, 978 F.3d at 1058)).

The majority further suggests that the candidates' injuries are "undifferentiated, generalized grievances." *See ante*, at 4 n.2 (quoting *Lance v. Coffman*, 549 U.S. 437, 442 (2007) (per curiam)). There are at least two

problems with that. First, *Lance* was about whether *voters* had standing to bring an Elections Clause claim. It said nothing about *candidates*, who clearly have different (and more particularized) interests. And second, an injury is a "generalized grievance" if the injured party is "claiming only harm to his *and every citizen's* interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him that it does the public at large." *Lujan*, 504 U.S. at 573–75 (emphasis added). But the injury suffered by a candidate for office is in no sense "common to all members of the public." *Ex parte Levitt*, 302 U.S. 633, 634 (1937) (per curiam). It's not something "all citizens share." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 217 (1974). It's something only candidates experience.

If one of the candidate plaintiffs had standing at the time the suit was filed, the candidate has standing now. "It is quite clear, that the jurisdiction of the Court depends upon the state of things at the time of the action brought, and that after vesting, it cannot be ousted by subsequent events." *Smith v. Sperling*, 354 U.S. 91, 93 n.1 (1957) (quoting *Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539 (1824)); *see also Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991) (per curiam) ("We have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events."); *accord Carr v. Alta Verde Indus., Inc.*, 931 F.2d 1055, 1061 (5th Cir. 1991) ("As with all questions of subject matter jurisdiction except mootness, standing is determined as of the date of the filing of the complaint, and subsequent events do not deprive the court of jurisdiction."); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189–92 (2000) (comparing standing with the doctrine of mootness, which *is* affected by subsequent events). It's therefore not true that the standing "issue is far from clear." *Ante*, at 4 n.2. It's pellucid. At least one candidate had standing at the filing, and that's the only standing that matters.

No. 20-20574

## II.

Now let's talk about mootness. There was a time, a long time ago, when some thought that mootness was "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue through its existence (mootness)." Henry P. Monaghan, *Constitutional Adjudication: The Who and When*, 82 YALE L.J. 1363, 1384 (1973); *see also, e.g., Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (appearing to endorse Monaghan's view). If that were the law today, you might understand the majority's approach because the majority could concede (the undeniable proposition) that the candidates had standing when the suit started but then conclude (the erroneous proposition) that the candidates lost standing after the election, thus mooting the case.

But the law has been otherwise for more than a generation. In 2000, the *Laidlaw* Court largely rejected Monaghan's view of mootness. The Court held that "[c]areful reflection on the long-recognized exceptions to mootness," such as the capable-of-repetition-yet-evading-review doctrine, "reveals that the description of mootness as 'standing set in a time frame' is not comprehensive." *Laidlaw*, 528 U.S. at 190. "[T]here are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness." *Ibid.*

This is the precise case that *Laidlaw* described. In a supplemental letter brief, Harris County not only refused to disclaim unlawful drive-through voting for future elections—it promised to continue that practice.[1]

---

[1] This is a 180 from Harris County's previous litigation position. *Compare* Red Br. at 14 ("[N]othing in this record indicates that drive-through voting will recur in the

No. 20-20574

No matter whether that's enough to confer standing, Harris County's promise is certainly enough to prevent the case from becoming moot. The plaintiffs sought prospective relief: They asked for an injunction prohibiting unlawful drive-through voting in future elections. And in contrast to its earlier representations, Harris County now *promises* to use drive-through voting in future elections. *See* n.1, *supra*.

The majority's only response is that the candidate plaintiffs might have standing to challenge violations of the Election Code in the November 2020 election, but that "claim" is now moot. *See ante*, at 4 & n.2. Again, this confuses standing and mootness. Mootness does not attach to *claims*; mootness is a function of the Article III power over an *entire case*. *See DeFunis v. Odegaard*, 416 U.S. 312 (1974) (per curiam); R. FALLON, J. MANNING, D. MELTZER & D. SHAPIRO, HART AND WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 201 (7th ed. 2015). And the *case* plainly is not moot for the reasons given above.

### III.

Because the district court had subject-matter jurisdiction, I turn briefly to the merits. I can be brief because the merits are straightforward.

The plaintiffs sought relief under 42 U.S.C. § 1983 for, *inter alia*, violations of the Elections Clause. *See* U.S. CONST. art. I, § 4, cl. 1. The Elections Clause provides that "The Times, Places and Manner" of congressional elections "shall be prescribed in each State by the Legislature thereof." *Ibid*. To show a violation of the Elections Clause, the plaintiffs must

---

future."), *with* Suppl. Br. at 3 ("[T]he newly-appointed Harris County Elections Administrator has publicly stated an intention to conduct drive-through voting in [the November 2021] election using the same measures as in prior elections."), *and id.* at 2 (arguing that "S.B. 1 appears to validate [Harris County's] approach" to drive-through voting).

No. 20-20574

show a "significant departure" from the election scheme enacted by the Legislature. *Bush v. Gore*, 531 U.S. 98, 113 (2000) (Rehnquist, C.J., concurring).[2] Such a departure occurs when the "general coherence" of the legislative scheme is "altered" or "wholly change[d]" by officials outside the Legislature. *Id.* at 114.

Harris County has taken the remarkable position that it (1) wholly ignored provisions of the Texas Election Code in 2020, and (2) can continue wholly ignoring those provisions in future elections—notwithstanding the Legislature's express instructions to the contrary. The Texas Election Code specifically contemplates voting without entering a polling place—but only for a limited class of voters. The Legislature made this accommodation available *only* to those "physically unable to enter the polling place without personal assistance or likelihood of injuring the voter's health." TEX. ELEC. CODE § 64.009; *see also* Red Br. at 41 (acknowledging the accommodation applies only to "voters with special physical disabilities or health risks"). Harris County made this option available to "all voters who would like to be able to vote from the safety and comfort of [their] vehicle[s]."

---

[2] The parties agree that Chief Justice Rehnquist's concurrence in *Bush v. Gore* provides the relevant legal standard. *See* Blue Br. at 26; Red Br. at 31. That proposition is not self-evident. *Bush v. Gore* involved the Elec*tors* Clause in Article II; this case involves the Elec*tions* Clause in Article I. *Compare* U.S. CONST. art. II, § 1, cl. 2 ("Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors."), *with* U.S. CONST. art. I, § 4, cl. 1 ("The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof."). But any distinction between the two clauses militates in the plaintiffs' favor: The text of the Elections Clause is arguably more specific, tasking the Legislature with prescribing "The Times, Places, and Manner" of holding elections. So while "significant departure" is the standard for assessing violations of the Elec*tors* Clause, the Elec*tions* Clause is at least that protective of the Legislature's choices if not more protective.

No. 20-20574

Harris County's decision to permit *all* voters to participate in drive-through voting poses two clear textual problems. First, it violates the principle that the expression of one thing implies the exclusion of others (*expressio unius est exclusio alterius*). *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 107–11 (2012). In § 64.009, the Texas Legislature clearly specified that voters with special physical disabilities or health risks be permitted to vote without entering a polling place. By extending the accommodation to that group *only*, the Legislature impliedly excluded everyone else.

Second, reading the Election Code to permit drive-through voting for all voters renders § 64.009 meaningless: There is no need for a special accommodation if the voters covered by § 64.009—like everyone else—can vote from their vehicles. And an interpretation that reads § 64.009 right out of the Code cannot be correct. *See Marx v. Gen Revenue Corp.*, 568 U.S. 371, 385 (2013) (surplusage canon is "strongest when an interpretation would render superfluous another part of the same statutory scheme"); SCALIA & GARNER, *supra*, at 174 (No provision should "be given an interpretation that causes it . . . to have no consequence.").

And of course, Election Code § 64.009 is not the only provision of Texas law Harris County has ignored (and promises to continue ignoring). *See* Blue Br. at 22–23, 26 (pointing to other provisions). Consider just a few more examples:

- Texas Election Code § 61.003 makes it a criminal offense for a person to post or use "political signs or literature" within 100 feet of a polling place. Yet Harris County candidly admits that it did nothing to enforce this provision against electioneering bumper stickers on vehicles in its drive-through voting stations.

11

- Texas Election Code § 64.002(a) provides that, "[e]xcept as otherwise provided by this code, only one person at a time may occupy a voting station." Yet Harris County candidly admits that it did nothing to prevent more than one person from occupying vehicles in its drive-through voting stations. To the contrary, Harris County publicly invited its residents to violate this provision by carpooling.
- Texas Election Code § 62.004(1) requires Harris County to arrange its voting stations so that "the voting area is in view of the election officers, watchers, and persons waiting to vote but is separated from the persons waiting to vote." The same section requires Harris County to ensure that "the voting area is adequately lighted." *Id.* § 62.004(3). The undisputed record evidence shows that Harris County wholly ignored this provision, too.
- Texas Penal Code § 46.03(a)(2) makes it a criminal offense to possess a firearm (among other weapons) "on the premises of a polling place on the day of an election or while early voting is in progress." Yet again, Harris County candidly admits that it did nothing to prevent voters from bringing firearms to its drive-through voting stations.

Harris County's only response to these problems is that it can wholly ignore *some* provisions of Texas law without altering the "general coherence" of the legislative scheme enacted by the Legislature. *Bush v. Gore*, 531 U.S. at 114 (Rehnquist, C.J., concurring). When asked at argument how many provisions of Texas law the County could ignore before violating the Elections Clause, Harris County had no answer. And when invited to file a supplemental brief to address a new law—passed by the Legislature to put beyond doubt the illegality of Harris County's conduct—the County doubled down with the head-scratching insistence that the new law somehow *blessed* its violations of the law in the past and its plans to violate it in the future.

No. 20-20574

Reasonable people can disagree about the wisdom or folly of drive-through voting. The place for that debate is in the Legislature. Once the dispute enters our courts, however, the only question is what the law commands. And the law could not be clearer in its prohibition of Harris County's conduct.

I respectfully dissent.